## Exhibit B

(Blackline)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| YOUFIT HEALTH CLUBS, LLC, *et al.*,[1] | Case No. 20-12841 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket ~~No~~Nos. ~~—~~81, 154** |

### ORDER AUTHORIZING DEBTORS TO EMPLOY AND
### RETAIN FOCALPOINT SECURITIES, LLC AS INVESTMENT
### BANKER, EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE

Upon the *Application of Debtors to Employ and Retain FocalPoint Securities, LLC as Investment Banker, Effective* Nunc Pro Tunc *to the Petition Date* (the "**Application**"),[2] of the above-captioned debtors and debtors in possession (the "**Debtors**"); and upon the *Declaration of Richard F. NeJame in Support of the Application of Debtors to Employ and Retain FocalPoint Securities, LLC as Investment Banker, Effective* Nunc Pro Tunc *to the Petition Date* annexed thereto as **Exhibit B** (the "**NeJame Declaration**"); and upon the *Supplemental Declaration of Richard F. NeJame in Support of the Application of Debtors to Employ and Retain FocalPoint Securities, LLC as Investment Banker, Effective* Nunc Pro Tunc *to the Petition Date* (the "**Supplemental Declaration**") [Docket No. 154]; and the Court having reviewed the Application, the First Day Declaration, ~~and~~ the NeJame Declaration, and the Supplemental Declaration and having considered the statements of counsel with respect to the Application at a hearing (if any) before this Court (the "**Hearing**"); the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the

---

[1]    The last four digits of YouFit Health Clubs, LLC's tax identification number are 6607.  Due to the large number of debtor entities in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the claims and noticing agent at www.donlinrecano.com/yfhc. The mailing address for the debtor entities for purposes of these chapter 11 cases is: 1350 E. Newport Center Dr., Suite 110, Deerfield Beach, FL 33442.

[2]    Capitalized terms not otherwise defined herein have the meaning given to them in the Application.

United States District Court for the District of Delaware, dated as of February 29, 2012; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having jurisdiction to enter a final order consistent with Article III of the United States Constitution; and venue of these cases and the Application in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the legal and factual bases set forth in the Application establish just cause for the relief granted herein, including but not limited to the Fee and Expense Structure set forth in the Engagement Agreement and summarized in the Application (as modified by this Order); and the Court having found that the terms and conditions of FocalPoint's employment, including the compensation structure set forth in the Engagement Agreement, are reasonable as required by section 328(a) of the Bankruptcy Code; and it appearing that proper and adequate notice of the Application has been given and that no other or further notice is necessary; and this Court being satisfied based on the representations made in the Application and in the NeJame Declaration and the Supplemental Declaration that (a) FocalPoint does not hold or represent an interest adverse to the Debtors' estates and (b) FocalPoint is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code as modified by section 1107(b) of the Bankruptcy Code, and as required by section 327(a) of the Bankruptcy Code; and this Court having determined that there is good and sufficient cause for the relief set forth in this Order; and after due deliberation thereon,

**IT IS HEREBY ORDERED THAT:**

1.    The Application is **GRANTED** as set forth herein.

2.    The Debtors are authorized to retain and employ FocalPoint as the exclusive investment banker to the Debtors in these cases pursuant to sections 327 and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-2,

2

effective *nunc pro tunc* to the Petition Date, to pay fees and reimburse expenses to FocalPoint, on the terms and conditions set forth in the Application and the Engagement Agreement attached hereto as **Exhibit 1**, as modified by this Order.

3.    Except to the extent set forth herein, the Engagement Agreement (together with all annexes thereto), including without limitation the Fee and Expense Structure, are approved pursuant to Bankruptcy Code sections 327(a) and 328(a), and the Debtors are authorized to perform their payment, reimbursement, contribution, and indemnification obligations and their non-monetary obligations in accordance with the terms and conditions, and at the times specified, in the Engagement Agreement, as modified by this Order.

4.    Notwithstanding anything to the contrary herein, the fees and expenses payable to FocalPoint pursuant to the Engagement Agreement are hereby approved pursuant to and shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to any other standard of review including, but not limited to, that set forth in Bankruptcy Code section 330; provided, that notwithstanding the foregoing, this Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to object to and/or to challenge the reasonableness of FocalPoint's compensation and expense reimbursements under sections 330 and 331 of the Bankruptcy Code; provided, however, that "reasonableness" shall be evaluated by comparing (among other things) the fees payable in these cases to fees paid to comparable investment banking firms with similar experience and reputation offering comparable services in other chapter 11 cases and shall not be evaluated solely on an hourly or length-of-case based criteria. Accordingly, nothing in this Order or the record shall constitute a finding of fact or

3

conclusion of law binding on the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of FocalPoint's compensation.

5.      None of the fees payable to FocalPoint shall constitute a "bonus" or fee enhancement under applicable law.

6.      The Debtors are authorized to pay FocalPoint's fees and to reimburse FocalPoint for its reasonable, documented, out-of-pocket costs and expenses as provided in the Engagement Agreement, including but not limited to in-sourced document production costs, travel costs, meals, and the reasonable, actual, documented, out-of-pocket costs, fees, disbursements and other charges of FocalPoint's external legal counsel (without the need for such legal counsel to be retained as a professional in these cases and without regard to whether such legal counsel's services satisfy section 330(a)(3)(C) of the Bankruptcy Code). In the event that FocalPoint seeks reimbursement from the Debtors for attorneys' fees and expenses pursuant to the Application and the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in FocalPoint's own applications, both interim and final, and these invoices and time records shall be subject to the U.S. Trustee Guidelines and the approval of the Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

7.      FocalPoint shall file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court; provided, however, that the requirements of the Bankruptcy Code, the Bankruptcy Rules, the U.S. Trustee Guidelines, and Local Rule 2016-2 and any other

4

procedures of this Court are hereby modified such that (a) FocalPoint's restructuring professionals and legal personnel shall be required only to keep time records (in summary format) of the services rendered for the Debtors or in connection with these cases, as applicable, including summary descriptions of those services, the approximate time expended in providing those services (in half-hour increments), and the identity of the restructuring or legal personnel who provided those services; (b) FocalPoint's restructuring professionals shall not be required to keep time records on a "project category" basis; (c) FocalPoint shall not be required to provide or conform to any schedule of hourly rates; and (d) FocalPoint's non-restructuring professionals (excluding legal personnel) and personnel in administrative departments (including legal)shall not be required to maintain any time records. To the extent that FocalPoint would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, or other applicable procedures and orders of the Court, such requirements are hereby waived.

8. The indemnification, contribution, and reimbursement provisions set forth in the Engagement Agreement (including the Indemnification Provisions) are approved, subject to the following:

(a) Subject to the provisions of subparagraphs (b) and (c) below, FocalPoint shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Agreement for services, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court;

(b) The Debtors shall have no obligation to indemnify FocalPoint, or provide contribution or reimbursement to FocalPoint, for any claim or expense that is either: (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from FocalPoint's gross negligence, fraud, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; (ii) for a contractual dispute in which the Debtors allege the breach of FocalPoint's contractual obligations, unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United*

5

*Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing, to be a claim or expense for which FocalPoint should not receive indemnity, contribution or reimbursement under the terms of the Engagement Agreement as modified by this Order; and

(c) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these cases, FocalPoint believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Agreement (as modified by this Order), including, without limitation, the advancement of defense costs, FocalPoint must file an application therefor in this Court, and the Debtors may not pay any such amounts to FocalPoint before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by FocalPoint for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify FocalPoint. All parties in interest shall retain the right to object to any demand by FocalPoint for indemnification, contribution, or reimbursement.

9.    Notwithstanding anything to the contrary herein, any provision in the Engagement Agreement that serves to limit remedies or actions that would otherwise be available to the Debtors shall not apply or otherwise be enforceable during the pendency of these cases.

10.    ~~9.~~ The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding the possible applicability of Bankruptcy Rules 6004, 7062, or 9014.

11.    ~~10.~~ The relief granted herein shall be binding upon any chapter 11 trustee appointed in these cases or upon any chapter 7 trustee appointed in the event of a subsequent conversion of these cases to cases under chapter 7.

12.    ~~11.~~ Notwithstanding any provision in the Engagement Agreement to the contrary, for services rendered during these cases, the contribution obligations of FocalPoint shall not be limited to the aggregate amount of fees actually received by FocalPoint from the Debtors pursuant to the Engagement Agreement, this Order, or subsequent orders of this Court.

6

13.    12. Notwithstanding anything to the contrary in the Application, any of its attachments, or the Engagement Agreement, FocalPoint shall not seek reimbursement of any fees or expenses arising from the defense against any objections to any of FocalPoint's monthly fee statements or applications in these cases.

14.    13. In the event of any inconsistency between the Engagement Agreement, the Application and this Order, this Order shall govern.

**[Remainder of page intentionally left blank]**

15.    14. The Debtors are not subject to any stay in the implementation, enforcements, or realization of the relief granted in this Order.

16.    15. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

17.    16. Notwithstanding any provision in the Engagement Agreement to the contrary, this Court shall retain exclusive jurisdiction during the pendency of FocalPoint's engagement.

ACTIVE 53467291v553964850v1

**<u>Exhibit 1</u>**

**Engagement Agreement**

*ACTIVE 53467291v553964850v1*


FOCALPOINT
Investment Banking

**FocalPoint Securities, LLC**
11150 Santa Monica Blvd. Suite 1550
Los Angeles, CA 90025
O:310.405.7000 F:310.405.7077
www.focalpointllc.com

## PRIVATE AND CONFIDENTIAL

June 2, 2020

MR. BRIAN F. GLEASON
CHIEF RESTRUCTURING OFFICER
YOUFIT HEALTH CLUBS, LLC
6161 9TH AVENUE NORTH
ST. PETERSBURG, FL 33710

Re: Financial Advisory Services Engagement Letter

Dear Mr. Gleason:

This letter agreement (the "Agreement") will confirm the understanding between **YOUFIT HEALTH CLUBS, LLC** (together with its subsidiaries and affiliates, the "Company") and FocalPoint Securities, LLC ("FocalPoint"), pursuant to which FocalPoint has been retained, on the terms and subject to the conditions set forth herein, as the Company's exclusive investment banker in connection with a possible sale, merger, acquisition, reorganization, financial restructuring or recapitalization of the Company, its business or assets, or any portion thereof in a single or multiple transactions including, without limitation, the confirmation of a plan of reorganization under Chapter 11 of the Bankruptcy Code (a "Plan") or a sale of assets under Section 363 of the Bankruptcy Code (collectively or individually referred to herein as a "Transaction"). Unless otherwise noted, all capitalized terms used herein shall have the meaning set forth in the Appendix A to this Agreement.

## Services to be Rendered ("Services")

As part of our engagement, we will, if appropriate and requested:

- To the extent we deem it necessary, appropriate and feasible, familiarize ourself with the business, operations, assets, financial condition and prospects of the Company;

- Evaluate the Company's debt capacity in light of its projected cash flows and assist in the determination of an appropriate capital structure for the Company;

- Advise the Company in analyzing its strategic alternatives and re-structuring and effecting the financial aspects of any Transaction;

- Design the appropriate process to effect and initiate any Transaction, including an analysis of the various alternatives and, identify potential lenders, purchasers and investors ("Counterparties") to be contacted for the Transaction;

W02-WEST:1ZMT1\404180519.3                    -1-

Mr. Brian F. Gleason
YOUFIT HEALTH CLUBS, LLC
June 2, 2020                                                                                       Page 2 of 8

- Prepare any appropriate financial models, financial analysis, and marketing materials necessary to initiate and effect any Transaction including those to be provided to Counterparties in conjunction with any Transaction, including a confidential information memorandum to be distributed to potential Counterparties;

- Assist the Company in creating, populating and administering an electronic data room with appropriate due diligence materials relative to a proposed Transaction;

- As appropriate, solicit interest from Counterparties in any Transaction;

- Assist the Company and its other professionals in negotiating the terms of the anticipated stalking horse credit bid by the Prepetition Lenders, including the terms of the proposed asset purchase agreement (a "Credit Bid");

- Assist the Company and its other professionals in designing appropriate sale procedures, including an appropriate sale time line and bidding and auction procedures;

- Assist the Company and its other professionals in reviewing and evaluating the terms of any proposed Transaction and, if directed, negotiating the terms thereof;

- Advise the Company on the risks and benefits of considering a Transaction with respect to the Company's intermediate and long-term business prospects and strategic alternatives to maximize the business enterprise value of the Company;

- Determine a range of values for the company and any securities that the Company offers or proposes to offer in connection with a Transaction;

- Assist or participate in negotiations with parties in interest, including any current or prospective creditors of, holders of equity in, or claimants against the Company and/or their respective representative in connection with a Transaction;

- Advise the Company with respect to, and attend, meetings of the Company's Board of Directors (or equivalent body) and its committees, creditor groups, official constituencies and other interested parties, as necessary; and

- As appropriate, provide relevant testimony with respect to any Transaction.

Professional Fees and Expenses

In consideration of the Services provided by FocalPoint, the Company, and its successors, if any, agrees to pay FocalPoint the following fees in cash:

1. Commencing as of the date hereof, whether or not a Transaction is proposed or consummated, an advisory fee (the "Monthly Advisory Fee") of $35,000 per month during the term hereof. The initial Monthly Advisory Fee shall be earned, due and payable upon the execution of this Agreement by the Company. Thereafter, a Monthly Advisory Fee shall be earned due and payable on each monthly anniversary of the date of this Agreement.

2. With respect to any Restructuring with a party other than an acquisition by the Prepetition Lenders, a fee (the "Completion Fee") of $1,000,000 payable upon the earlier of: (a) the completion of any Restructuring including, without limitation, the confirmation and

effectiveness of a Plan or (b) the closing of any Restructuring transaction.  Notwithstanding the foregoing, if any Restructuring is to be completed through a "pre-packaged" or "pre-arranged" Plan, the Completion Fee shall be earned and shall be payable upon the <u>earlier</u> of (x) execution of definitive agreements with respect to such Plan or (y) delivery of binding consents to such Plan by a sufficient number of creditors to bind the creditors to the Plan; <u>provided,</u> that in the event that FocalPoint is paid a fee in connection with a "pre-packaged" or "pre-arranged" Plan and such Plan is not consummated, FocalPoint shall return such fee to the Company; and, <u>provided, further,</u> that such fee shall be payable in all events prior to the commencement of any bankruptcy proceeding relating thereto.

3. In the event that the Company closes a Financing with a party other than some or all of the Prepetition Lenders, a fee (the "<u>Financing Fee</u>") to be paid either as underwriting discounts, placement fees or other compensation upon the closing of any Financing equal to:

   a. **1.5%** of the gross amount of funded or committed indebtedness that is secured by a first lien in a debtor-in-possession financing, to the extent directed by the Company to arrange such Financing; <u>plus</u>

   b. **1.5%** of the gross amount of funded or committed indebtedness other than debtor-in-possession financing; <u>plus</u>

   c. **5.0%** of the gross amount of any funded or committed preferred or common equity, convertible or otherwise equity-linked securities or obligations.

4. In the event that the Company closes a Sale to a party other than the Prepetition Lenders, a fee (the "<u>Sale Fee</u>") to be paid upon the closing of any Sale equal to **1.75%** of Transaction Value.

5. In the event that the Company closes a Restructuring with, or Sale through a Credit Bid by the Prepetition Lenders, a fee to be paid upon such closing equal to $500,000 (the "<u>Prepetition Lender Transaction Fee</u>").  Notwithstanding any other provision of this Agreement (inclusive of Exhibit A), the Prepetition Lender Transaction Fee shall be the only fee payable to FocalPoint to the extent the Prepetition Lenders acquire any of the assets or equity of the Company whether through a Credit Bid, a sale under section 363 of the Bankruptcy Code or a Plan that incorporates Sale, issuance of stock, or any other transaction between the Company and the Prepetition Lenders (or any plan consummated after such a transaction is closed), provided that the Prepetition Lenders are not fully repaid, or otherwise satisfied in such Transaction. In the event the Prepetition Lenders acquire the Company in a Sale at a Transaction Value that would fully satisfy the Prepetition Lender claim and yields additional cash to the Company's estate in excess of the Prepetition Lender claim, FocalPoint shall earn a Sale Fee in accordance with Paragraph 4, above.

6. The parties acknowledge that more than one fee may be payable to FocalPoint pursuant to the provisions herein.

7. In the event that FocalPoint is entitled to a Sale Fee <u>and</u> a Completion Fee, FocalPoint shall also credit **100%** of any Sale Fee(s) earned and paid to FocalPoint against the Completion Fee; <u>provided</u>, that in no case shall the Completion Fee be less than zero.

Expenses will be invoiced separately by FocalPoint each month and will be reimbursed by the Company in accordance with <u>Appendix A</u> in addition to the fees set forth above.  The expenses incurred will consist

Mr. Brian F. Gleason
YOUFIT HEALTH CLUBS, LLC
June 2, 2020                                                                 Page 4 of 8

of, but are not limited to, the following: postage and shipping charges, use of third-party databases, telephone, copying, facsimiles, printing, travel, lodging, overtime meals, transportation, and other miscellaneous engagement expenses, including, but not limited to, the reasonable fees and expenses of its outside legal counsel, in an amount of up to $5,000, incurred in connection with the performance of this Agreement and the matters contemplated hereby.

This Agreement, together with Appendix A attached hereto, constitutes the entire agreement of the parties hereto with respect to this engagement, supersedes all other oral or written representations, understanding or agreements relating to this Agreement, and may not be amended except by written agreement signed by both parties.

We appreciate the opportunity to provide you with our professional services. If this engagement letter meets with your approval, please sign a copy of this Agreement, initial a copy of Appendix A and include the payment of the initial Monthly Advisory Fee and return it to us. If you have any further questions or comments, please feel free to contact Duane Stullich at 310-405-7070.

Very truly yours,

FOCALPOINT SECURITIES, LLC


By: _____          By: _____
    Duane Stullich                          David Porter
    Managing Partner                        Chief Compliance Officer


Confirmed and agreed to on _____, 2020


YOUFIT HEALTH CLUBS, LLC

By: _____
                                    Brian F. Gleason
                                    2020.06.02 16:38:48 -04'00'
    Brian F. Gleason
    Chief Restructuring Officer


                          Company's Tax Identification Number:     46-5176607

## APPENDIX A
## GENERAL BUSINESS TERMS

This Appendix A is attached to the Letter Agreement, dated June 2, 2020 between **YOUFIT HEALTH CLUBS, LLC** and FocalPoint Securities, LLC. Unless otherwise noted, all capitalized terms used herein shall have the meaning set forth in the Agreement.

1.  **Definitions.** For purposes of this Agreement, capitalized terms shall have the following definitions:

    a.  "<u>Transaction Fee</u>" or "<u>Transaction Fees</u>" shall collectively refer to any Completion Fee, Financing Fee, Prepetition Lender Transaction Fee or Sale Fee on a combined or individual basis.

    b.  "<u>Transaction Value</u>" shall be the total proceeds and other consideration paid or received (including assets retained as described below), or to be paid or received, by the Company or its security holders, employees or creditors in connection with a Transaction (which consideration shall be deemed to include amounts in escrow), including, without limitation, the gross value of all cash and the fair market value of: (i) equity securities (including, but not limited to, common stock, preferred stock, warrants, options, stock appreciation rights, in each case whether or not vested or issued), equity interests, carried interests and equity reinvestment, in the Company, its successor or buyer; (ii) straight or convertible debt instruments or other obligations held by the Company or its security holders, whether or not vested or issued; (iii) interest-bearing debt (including capitalized leases) and pension (including SERP liabilities or obligations) and other unfunded liabilities assumed or refinanced in connection with a Transaction; (iv) guarantees and other similar liabilities of the Company; (v) assets or businesses retained by the Company, in the event of an asset sale, or distributed to the Company's shareholders, in the event of a stock sale, merger or similar reorganization; (vi) amounts paid with respect to other assets or businesses in which the Company or its security holders or creditors have an interest and that are included in the Transaction; (vii) amounts paid to the Company, its security holders, employees or directors in connection with non-competition agreements; (viii) amounts paid with respect to severance, employee benefit plans, management retention, consulting, lease, royalty, licensing or any similar agreements; (ix) excess amounts paid for above market employment and consulting agreements; (x) amounts paid, at any time during FocalPoint's period of engagement, as extraordinary dividends or other compensation paid to the Company's security holders in contemplation of a Transaction; and (xi) any obligations of the Company or its security holders', including transaction expenses, which are forgiven or assumed by a purchaser or, in the event of a stock sale, merger or similar organization, which are left outstanding after a Transaction. In the event of a sale of less than 100% of the equity interests of the Company, the Transaction Value shall be calculated as if 100% of the ownership of the equity interests of the Company has been sold dividing (i) the Transaction Value by (ii) the percentage of ownership which is sold. The face amount of all escrowed funds, promissory notes, seller notes, fixed future payments, or other non-contingent future payments will be considered received by Company at Closing and included in Transaction Value for purposes of calculating FocalPoint's Transaction Success Fee.

    c.  For the purpose of calculating the Transaction Value, any securities will be valued at the time of the closing of the Transaction as follows: (i) if such securities are traded on a stock exchange or the National Market System, the securities will be valued at the average last sale or closing price for the ten trading days immediately prior to the closing of the Transaction; (ii) if such securities are traded primarily in over-the-counter transactions (OTC), the securities will be valued at the mean of the closing bid and asked quotations similarly averaged over a ten trading day period immediately prior to the closing of the Transaction; and (iii) if such securities have not been traded prior to the closing of the Transaction, FocalPoint will prepare a valuation of the securities and FocalPoint and the Company will mutually agree on a fair valuation thereof for the purposes of calculating FocalPoint's Transaction Success Fee (or, if FocalPoint and the Company cannot agree, as determined by an independent third-party accounting or valuation firm mutually chosen by the

APPENDIX A
GENERAL BUSINESS TERMS

parties).  Any other non-cash consideration shall be valued at the fair market value thereof as of the day prior to the closing of the Transaction, as such fair market value shall be mutually agreed by FocalPoint and the Company acting in good faith (or, if FocalPoint and the Company cannot agree, as determined by an independent third-party accounting or valuation firm mutually chosen by the parties).

d.  In the event that the Company proceeds with a Transaction that includes earn-out provisions or other performance-based contingent consideration ("Earnouts"), the Company and FocalPoint will negotiate in good faith to agree on the value of such Earnout for the purpose of calculating that portion of the Transaction Success Fee to be paid to FocalPoint upon the Closing in consideration thereof, and, if they cannot so agree, the value of the Earnout shall be included in Transaction Value for the purposes of FocalPoint's fee calculation hereunder only if and when paid to the Company or its security holders.[1]

e.  "Financing" shall mean: (i) a private issuance, sale or placement of the equity, equity-linked or debt securities (including any 144A offering), instruments or obligations of the Company with one or more Counterparties except to the extent issued to existing security holders of the Company in exchange for their existing securities, or (ii) any secured or unsecured loan or other financing, including any "debtor in possession financing" or "exit financing" in connection with a case under the Bankruptcy Code, and (iii) any rights offering.

f.  "Restructuring" shall mean any recapitalization or restructuring (including, without limitation, through any exchange, conversion, cancellation, forgiveness, retirement and/or a material modification or amendment to the terms, conditions or covenants thereof) of the Company's debt securities and/or equity securities and/or other indebtedness, obligations or liabilities (including, without limitation, preferred stock, partnership interests, lease obligations, trade credit facilities, tort obligations or other secured and unsecured claims or indebtedness) including pursuant to any repurchase, exchange transaction, a Plan or solicitation of consents, waivers, acceptances or authorizations.

g.  "Sale" shall mean the disposition to one or more third parties in one or a series of transactions of (i) all or substantially all  of the equity securities of the Company, or (ii) all or substantially all of the assets (including the assignment of any executory contacts) or businesses of the Company or its subsidiaries, in either case, including through a sale or exchange of capital stock, options or assets, a lease of assets with or without a purchase options, a merger, consolidation or other business combination, an exchange or tender offer, a recapitalization, the formation of a joint venture, partnership or similar entity or any similar transaction.  For avoidance of doubt, "Sale" shall include a credit bid by any secured lender, a sale under section 363 of the Bankruptcy Code or a Plan that incorporates a Sale.

h.  "Prepetition Lenders" shall mean the lenders as of the date of this Agreement, both in their capacity as prepetition lenders and in their capacity as debtor-in-possession financing lenders, under that certain Credit and Guaranty Agreement, dated as of April 16, 2019 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time), by and among the Company, You Fit, LLC, and certain subsidiaries of the Company from time to time party thereto, as borrowers, Holdings and certain subsidiaries of Holdings from time to time party thereto, as guarantors, the lenders from time to time party thereto and Cortland Capital Market Services, LLC, as administrative agent (together with its permitted successors in such capacity).

APPENDIX A
GENERAL BUSINESS TERMS

2. **Payment of Invoices.** FocalPoint's invoices are due upon presentation. Any Monthly Advisory Fees, Transaction Fees or unpaid expenses owing to FocalPoint shall be paid at each applicable Closing, except as set forth in the Agreement with respect to Earnouts. Transaction Fees (and any unpaid expenses or other fees) shall be paid in full to FocalPoint at the Closing directly by the Company out of the proceeds of the initial funding under any Transaction or from other cash available to the Company, including, without limitation, through borrowings under existing or new lines of credit. The Company agrees that the consummation of the Closing shall be expressly conditioned on the concurrent payment by the Company of such amount to FocalPoint. In the event of any dispute over the amount of any fee payable, the Company hereby irrevocably agrees to escrow the disputed amount from the proceeds of the Transaction and immediately pay to FocalPoint any portion of the Transaction Success Fee not in dispute upon Closing. Notwithstanding the foregoing, in the event the Company commences a case under Chapter 11, then the payment of fees and reimbursement of expenses shall be governed by the terms of the order employing FocalPoint in said Chapter 11 case.

3. **Term.** This Agreement shall commence on the date hereof and shall terminate upon the date this Agreement is terminated by either party at any time for any reason by giving written notice to the other party not less than thirty (30) days before the effective date of such termination. Upon termination of the Agreement, the Company will reimburse FocalPoint for all unpaid expenses incurred in connection with this Agreement through the effective date of termination. Notwithstanding the foregoing, if within **eighteen (18)** months following the termination by either party of this Agreement (the "Fee Period"): the Company (x) consummates a Transaction or (y) enters into a definitive agreement to effect a Transaction that is consummated concurrently therewith or at any time thereafter (including following the expiration of the Fee Period), FocalPoint will be entitled to receive upon the Closing thereof the Transaction Success Fee. The provisions of this Agreement relating to payment of the Transaction Success Fee on any Earnouts, Transactions during the Fee Period, limitation on warranties, limitation on damages and indemnification set forth in Section 9 of this Appendix A, Company responsibilities, limitation on actions, confidentiality obligations set forth in Section 14 of this Appendix A, public references, credit, interpretation, assignment, waiver of jury trial/legal fees, arbitration and governing law shall survive any termination hereof.

4. **Exclusivity.** The Company agrees that FocalPoint shall be the Company's sole and exclusive investment banker in connection with any proposed Transaction. The Company shall promptly identify to FocalPoint: (a) all potential Counterparties who have been in contact with the Company during the six months prior to FocalPoint's engagement; and (b) all potential Counterparties who make inquiries to the Company during the term of the Agreement.

5. **Reasonableness of Fees.** The parties acknowledge that a substantial professional commitment of time and effort will be required of FocalPoint and its professionals to provide the Services, and that such commitment may foreclose other opportunities for FocalPoint. Moreover, the actual time and commitment required to provide the Services may vary substantially, creating "peak load" issues for FocalPoint. Given the numerous issues that may arise in engagements such as this, FocalPoint's commitment to the variable level of time and effort necessary to address such issues, the expertise and capabilities of FocalPoint that will be required in this engagement, and the market rate for FocalPoint's services of this nature, the parties agree that the fee arrangement provided for herein is reasonable, fairly compensates FocalPoint, and provides the requisite certainty to the Company. Furthermore, FocalPoint shall not be required to maintain time records.

6. **Retention of FocalPoint.** In the event that the Company becomes or is a debtor under Chapter 11 of the Bankruptcy Code, the Company shall use good faith efforts to promptly apply to the bankruptcy court having jurisdiction over the chapter 11 case or cases (the "Bankruptcy Court") for the approval pursuant to sections 327 and 328 of the Bankruptcy Code of this Agreement and FocalPoint's retention by the Company under the terms of this Agreement and subject to the standard of review provided in section

APPENDIX A
GENERAL BUSINESS TERMS

328(a) of the Bankruptcy Code and not subject to any other standard of review under section 330 of the Bankruptcy Code (the "Application"). The Company shall supply FocalPoint with a draft of the Application and any proposed order authorizing FocalPoint's retention sufficiently in advance of the filing to enable FocalPoint and its counsel to review and comment thereon. FocalPoint shall cooperate with the Company in the preparation of the Application and will provide the Company and its counsel with the information and support necessary to prepare the Application. FocalPoint shall have no obligation to provide any services under this agreement unless the terms of this agreement are approved under section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration (other than under Fed. R. Civ. P. 60 or Fed. R. Bankr. P. 9024) or petition for certiorari, and which order is acceptable to FocalPoint in all respects. FocalPoint acknowledges that in the event that the Bankruptcy Court approves its retention by the Company, FocalPoint's fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and any applicable fee and expense guidelines and orders.

7.  **Fee Protections.** The Company shall use good faith efforts to obtain "carve-outs" from secured lenders and/or an order from the Court, in each case acceptable to FocalPoint, that provide that the Monthly Advisory Fees, Transaction Fees and other obligations owed to FocalPoint under this Agreement will be paid either directly from the proceeds of any Transaction, paid from other cash available to the Company including under new or existing credit lines, or paid from a "carve-out" from the collateral of the secured creditor (collectively, the "Fee Protections"), without further order from the Court, subject to authorization under section 328 of the Bankruptcy Code. FocalPoint shall be under no obligation to provide the services under this Agreement without Fee Protections acceptable to FocalPoint in its sole discretion, such acceptance not to be unreasonably withheld.

8.  **Company Responsibilities and Cooperation.**

    a.  The Company shall cooperate with FocalPoint in the performance by FocalPoint of the Services, including, without limitation, by providing FocalPoint with reasonable facilities and timely access to data, information and personnel of the Company. The Company shall be responsible for the performance of its personnel and agents and for the accuracy and completeness of all data and information provided to FocalPoint for purposes of the performance by FocalPoint of the Services. The Company acknowledges and agrees that FocalPoint's performance is dependent upon the timely and effective satisfaction of the Company's responsibilities hereunder and timely decisions and approvals of the Company in connection with the Services. FocalPoint shall be entitled to rely on all decisions and approvals of, and data and information provided by, the Company without independent verification. The Company will promptly notify FocalPoint in writing of any material inaccuracy or misstatement in, or material omissions from, any information previously delivered to FocalPoint, or any materials provided to any interested party.

    b.  The Company, in consultation with its legal counsel, as appropriate, shall, without limitation, be solely responsible for the following in connection with the Services: (i) preparation of any historical and prospective financial statements, including, without limitation, financial projections supported by appropriate assumptions which, to the Company's best knowledge and belief represent the Company's results of operations and changes in financial position; (ii) providing or preparing all data, material and other information concerning, without limitation, the business, assets, liabilities, and cash flows of the Company that FocalPoint reasonably requests in connection with the Services; (iii) preparation, negotiation, review, and execution of all documentation with respect to any transaction; (iv) determination of the value range or range of terms within which negotiations shall occur with respect to any transaction as well as the ultimate value, pricing and/or terms to be agreed to in connection with any transaction; and (v) designation of a management-level individual or individuals to be responsible for all decisions with respect to the Services and FocalPoint's involvement in activities associated with the Services, including, without limitation, the adequacy

APPENDIX A
GENERAL BUSINESS TERMS

thereof.

c.  The Company agrees that it is solely responsible for ensuring that any Transaction complies with applicable law.  The Company further agrees that FocalPoint is not being engaged to: (i) provide, any fairness opinion with respect to a Transaction or its terms or any valuation of the Company, its securities or its assets, (ii) provide, nor shall it be responsible for providing, legal, tax or accounting advice, (iii) participate in the preparation or interpretation of any legal documents or (iv) conduct any appraisal of assets or liabilities of the Company or any other person.  Furthermore, FocalPoint's services are limited to those specifically provided for in this Agreement, or subsequently agreed upon, in writing, by the parties hereto.  FocalPoint shall have no obligation or responsibility for any other services.

d.  It is expressly understood that, unless otherwise provided for herein, FocalPoint's reports, recommendations, analyses, conclusions and other documents, if any, whether written or oral, do not, in whole or in part, constitute a fairness or solvency opinion or feasibility determination and the Services will be advisory in nature.  FocalPoint will not render any advice as to whether, or at what price, any Transaction should be entered into.  The Company acknowledges that FocalPoint cannot commit the Company to the terms of any transaction, or consummate any transaction on behalf of the Company, and that the Company, through its management, shall make all decisions that commit the Company with respect to any transaction.

e.  The Company agrees that none of it or its management will initiate any discussions regarding a Transaction during the term of this Agreement except with prior consultation with FocalPoint.  In the event the Company or its management receives any inquiry regarding a Transaction from any party, the Company shall promptly inform FocalPoint of such inquiry so that FocalPoint can assist the Company in evaluating such party and its interest in a Transaction and in any resulting negotiations.

f.  The Company represents and agrees as follows:

    i.   If applicable, the Company shall assist FocalPoint with the preparation of a private placement memorandum or similar marketing document (the "Memorandum").  The Company shall not distribute the Memorandum to any potential lender, investor or other third party without the prior written concurrence of FocalPoint.

    ii.  The Company agrees that it is solely responsible for the accuracy, completeness and appropriateness of any Memorandum, including, without limitation, all information contained in or omitted from any such Memorandum.

9.  **Limitation on Damages and Indemnification.**

a.  As a material part of the consideration for the agreement of FocalPoint to provide the Services, the Company shall: (i) indemnify and hold harmless FocalPoint and its affiliates, and their respective past, present and future directors, officers, shareholders, partners, members, employees, agents, representatives, advisors, subcontractors and controlling persons (collectively, the "Indemnified Parties"), to the fullest extent lawful, from and against any and all claims, losses, damages, expenses or liabilities (or actions in respect thereof), joint or several, (collectively "Claims") arising out of or related to this Agreement, FocalPoint's engagement under this Agreement, any transaction or any action taken or omitted to be taken by an Indemnified Party or the Company in connection with this Agreement and (ii) reimburse each Indemnified Party for all expenses (including, without limitation, the fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, settling or compromising any action, suit, dispute, inquiry,

-9-

APPENDIX A
GENERAL BUSINESS TERMS

investigation or proceeding, pending or threatened, brought by or against any person (including, without limitation, any shareholder or derivative action), arising out of or relating to the formulation or consummation of any transaction, this Agreement, or other such engagement, transaction or action. However, the Company shall not be liable under the foregoing indemnity and reimbursement agreement for any Claim which is finally judicially determined by a court of competent jurisdiction to have resulted solely from the bad faith, gross negligence or intentional misconduct of FocalPoint.

b.  In circumstances where all or any portion of the provisions of this paragraph are finally judicially determined to be unenforceable, insufficient or unavailable for any reason the Company shall contribute to any Claims relating to this engagement in such proportion that reflects the relative benefits to the Company, on the one hand, and to FocalPoint, on the other hand (whether or not a transaction is consummated). For purposes of this paragraph, the relative benefits to the Company and FocalPoint arising out of this engagement shall be deemed to be in the same proportion as the total value received or contemplated to be received by the Company as a result of or in connection with the Transaction contemplated by this Agreement bears to the fees actually paid to FocalPoint by the Company hereunder. If the allocation provided in the two immediately preceding sentences is unenforceable or unavailable for any reason, the Company shall contribute to such Claims, as is appropriate to reflect not only the relative benefits received or contemplated to be received, as provided above, but also the relative fault that FocalPoint's conduct bears to all other conduct giving rise to such Claims.

c.  The Company shall not settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action, suit, dispute, inquiry, investigation or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not an Indemnified Party is an actual or potential party thereto), unless such settlement, compromise, consent or termination contains a release of the Indemnified Parties reasonably satisfactory in form and substance to FocalPoint.

d.  No Indemnified Party shall have any liability (whether direct or indirect and regardless of the legal theory advance) to the Company or any of its creditors, employees, directors or shareholders or any person or entity asserting claims for any Claims in an aggregate amount in excess of the fees paid by the Company to FocalPoint pursuant to this Agreement, except and solely to the extent that they are determined to have resulted solely from the bad faith, gross negligence or intentional misconduct of FocalPoint. In no event shall any Indemnified Party be liable for consequential, special, indirect, incidental, punitive, or exemplary loss, damage, or expense relating to this engagement.

e.  The indemnity, reimbursement, and other obligations and agreements of the Company set forth herein: (i) shall apply to any services provided by FocalPoint to the Company prior to the date hereof and to any modifications of this Agreement; (ii) shall be in addition to any obligation or liability which such parties may otherwise have to any Indemnified Party, (iii) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of such parties or any Indemnified Party or any person controlling any of them, and (iv) shall survive the completion of the Services and any expiration or termination of the relationship established by this Agreement.

f.  Notwithstanding any provisions herein to the contrary, in the event the Company is or becomes a debtor under Chapter 11 of the Bankruptcy Code, whether voluntarily or involuntarily, the following provision will apply to the indemnification provided by this Appendix A.

    i.  The Company shall have no obligation to indemnify FocalPoint or provide contribution or reimbursement to FocalPoint: (A) for any claim or expense that is judicially determined (the

-10-

APPENDIX A
GENERAL BUSINESS TERMS

determination having become final) to have arisen from FocalPoint's bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct, (B) for a contractual dispute in which the Company alleges the breach of FocalPoint's contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Company, et al.*, 315 F.3d 217 (3d Cir. 2003), or (C) for any claim or expense that is settled prior to a judicial determination as to the exclusions set forth in clauses (A) and (B) above, but determined by the Court, after notice and a hearing, to be a claim or expense for which FocalPoint should not receive indemnity, contribution or reimbursement under the terms of the Agreement.

ii. If, before the earlier of: (A) the entry of an order confirming a chapter 11 plan in the Chapter 11 case(s) (that order having become final and no longer subject to appeal), and (B) the entry of an order closing the chapter 11 case(s), an Indemnified Party believes that it is entitled to the payment of any amounts by the Company on account of an Indemnifying Party's indemnification, contribution and/or reimbursement obligations under this <u>Appendix A</u>, including, without limitation, the advancement of defense costs, such Indemnified Party must file an application therefore with the Bankruptcy Court, and the Company may not pay any such amounts to such Indemnified Party before entry of an order by the Bankruptcy Court approving the payment. This paragraph is intended only to specify the period of time under which the Bankruptcy Court shall have jurisdiction over any request for payment by an Indemnified Party, and not a provision limiting the duration of the Company's obligation to indemnify such Indemnified Party. All parties in interest in the chapter 11 case(s) shall retain the right to object to any demand by an Indemnified Party for indemnification, contribution and/or reimbursement.

10. **Limitation on Warranties. THIS IS A SERVICES ENGAGEMENT. FOCALPOINT WARRANTS THAT IT SHALL PERFORM THE SERVICES WITH DUE PROFESSIONAL CARE. FOCALPOINT DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. THE COMPANY'S EXCLUSIVE REMEDY FOR ANY BREACH OF THIS WARRANTY SHALL BE FOR FOCALPOINT, UPON RECEIPT OF WRITTEN NOTICE, TO USE COMMERCIALLY REASONABLE EFFORTS TO CURE SUCH BREACH, OR, FAILING ANY CURE IN A REASONABLE PERIOD OF TIME, THE RETURN OF PROFESSIONAL FEES PAID TO FOCALPOINT HEREUNDER WITH RESPECT TO THE SERVICES GIVING RISE TO SUCH BREACH.**

11. **Limitation on Actions.** Except as otherwise required by law or with respect to indemnification, no action, regardless of form, relating to this engagement, may be brought by either party more than one year after the party bringing such action receives notice or otherwise becomes aware of the facts or circumstances giving rise to such cause of action, except that an action for non-payment may be brought by a party not later than one year following the date (including any extensions thereof) of the last payment due to such party bringing such action.

12. **Force Majeure.** Neither party shall be liable for any delays or nonperformance resulting from circumstances or causes beyond its reasonable control, including, without limitation, acts or omissions or the failure to cooperate by the other party (including, without limitation, entities or individuals under its control, or any of their respective officers, directors, employees, other personnel and agents), acts or omissions or the failure to cooperate by any third party, fire or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order, or requirement of any governmental agency or authority.

13. **Independent Contractor.** It is understood and agreed that each party hereto is an independent

APPENDIX A
GENERAL BUSINESS TERMS

contractor and that neither party is, nor shall be considered to be, the other's agent, distributor, partner, fiduciary, joint venturer, co-owner, or representative. Neither party shall act or represent itself, directly or by implication, in any such capacity or in any manner assume or create any obligation on behalf of, or in the name of, the other.

14. **Confidentiality.**  Except as contemplated by the terms hereof or as required by applicable law or legal process, FocalPoint shall keep confidential all material non-public information (the "<u>Information</u>") provided by the Company and shall not disclose such Information to any third party involved in a Transaction until such party has executed and delivered a confidentiality agreement in form and substance reasonably acceptable to the Company. The term "Information" does not include information which: (a) was already in FocalPoint's possession prior to the time of disclosure to it by the Company or any of its representatives, provided that such information was not furnished to FocalPoint known by it to be bound by a confidentiality agreement with the Company with respect to such information, (b) was or becomes generally available to the public other than as a result of a disclosure by FocalPoint, (c) becomes available to FocalPoint on a non-confidential basis from a source other than the Company or any of its representatives, provided that such source is not known by FocalPoint to be bound by a confidentiality agreement with the Company with respect to such information, or (d) which was or is independently developed or discovered by FocalPoint without violating its obligations hereunder. Nothing in this paragraph 14 shall prohibit the disclosure of Information by FocalPoint (a) to its members, managers, officers, employees, representatives and agents who need to know for purposes of rendering the Services (and who agree to keep such Information confidential), (b) as required, upon the advice of FocalPoint's counsel, by an order, subpoena, legal demand or request from any governmental agency, court or legal forum, or (c) as may be required by applicable laws, rules or regulations, including but not limited to, the USA Patriot Act and anti-money laundering regulations.

15. **Information.**  In the event that the Information belonging to the Company is stored electronically on FocalPoint's computer systems, FocalPoint shall not be liable for any damages resulting from unauthorized access, misuse or alteration of any such information by persons not acting on its behalf, <u>provided</u>, that FocalPoint has exercised the same degree of care in protecting the confidentiality of, and in preventing unauthorized access to, the Information that it exercises with regard to its own most sensitive proprietary information.

16. **Public References.**  Any advice (whether written or oral) rendered by FocalPoint pursuant to this Agreement is intended solely for the use of the Company in considering the matters to which the Agreement relates, and such advice may not be relied upon by any other person or used for any other purpose. No advice rendered by, or communication from, FocalPoint in connection with the services performed by FocalPoint pursuant to this Agreement will be disseminated to any third party or summarized, quoted or otherwise referred to, in any report, document, release or other communication, whether written or oral, prepared, issued or transmitted by the Company or any person or corporation controlling, controlled by or under common control with the Company or any director, officer, employee, or representative of any thereof, without FocalPoint's prior written authorization, or except as otherwise required by law. If FocalPoint resigns prior to the dissemination of any Memorandum, forms of the definitive agreement or any other documents or information prepared in connection with the Transaction, no reference shall be made therein to FocalPoint.

17. **Credit.**  FocalPoint may, at its own expense, place announcements on its corporate website, in marketing materials, and in financial and other newspapers and periodicals or distribute announcements via electronic mail (such as customary "tombstone" advertisements) describing its services in connection with this Agreement. The Company agrees that, if requested by FocalPoint, that any press release by the Company announcing the Transaction shall include a mutually acceptable reference to FocalPoint's role as financial advisor to the Company with respect thereto.

APPENDIX A
GENERAL BUSINESS TERMS

18. **Interpretation.** The Company acknowledges and agrees that no affiliated or related entity of FocalPoint shall have any liability hereunder to the Company or any other person and the Company will not bring any action against any such affiliated or related entity in connection with this engagement. Without limiting the foregoing, affiliated and related entities of FocalPoint are intended third-party beneficiaries of these terms, including, without limitation, the limitation on liability and indemnification and reimbursement provisions of paragraph 9, and the agreements and undertakings of the Company contained in the Agreement. Any affiliated or related entity of FocalPoint may in its own right enforce such terms, agreements and undertakings. Any duties arising hereunder on the part of FocalPoint shall be owed solely to the Company. This Agreement has been reviewed by the signatories hereto and their counsel. There shall be no construction of any provision against FocalPoint because this Agreement was drafted by FocalPoint, and the parties waive any statute or rule of law to such effect.

19. **Assignment.** This Agreement shall be binding upon FocalPoint and the Company and their respective successors and assigns (including, in the case of the Company, any successor to all or a portion of the assets and/or the businesses of the Company pursuant to any form of change of control, asset purchase or other transaction). Notwithstanding the foregoing, neither party may assign, transfer, or delegate any of its rights or obligations hereunder (including, without limitation, interests or Claims) if the other party withholds consent to such assignment, such consent not to be unreasonably withheld. Notwithstanding the foregoing, the Company hereby irrevocably consents to FocalPoint assigning or subcontracting any of FocalPoint's rights and obligations hereunder to: (a) any affiliate or related entity, or (b) any entity that acquires all or a substantial part of the assets or business of FocalPoint.

20. **Services to Other Parties.** The Company acknowledges that FocalPoint engages in providing investment banking, financing and financial advisory services to a wide range of institutions and individuals. The Company further agrees that nothing herein shall preclude FocalPoint from pursuing, investigating, analyzing or engaging in business relationships that involve the Company, or other entities engaged in a business that is similar to the business of, or the same industry as, the Company.

21. **Governing Law/Waiver of Jury Trial/Legal Fees.** THIS AGREEMENT HAS BEEN NEGOTIATED, EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF CALIFORNIA. ANY DISPUTES ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW AND, SUBJECT TO THE REQUIREMENTS OF SECTION 22, SHALL BE BROUGHT EXCLUSIVELY IN THE STATE OR FEDERAL COURT OF IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, PROVIDED, THAT THE COMPANY IS NOT IN A BANKRUPTCY CASE, IN WHICH CASE THE BANKRUPTCY COURT SHALL BE THE COURT OF EXCLUSIVE COMPETENT JURISDICTION. BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT. EACH PARTY HEREBY WAIVES ANY OBJECTION WHICH IT MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT. THE COMPANY AND FOCALPOINT EACH CONSENTS TO SERVICE OF PROCESS IN ACCORDANCE WITH CALIFORNIA LAW. THE PARTIES HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM RELATING TO THIS AGREEMENT OR THE PERFORMANCE BY FOCALPOINT OF THE SERVICES CONTEMPLATED BY THIS AGREEMENT. IF LITIGATION IS EVER INSTITUTED BY EITHER PARTY HERETO TO ENFORCE, OR SEEK TO ENFORCE, OR TO SEEK DAMAGES FOR THE BREACH OF, ANY PROVISION HEREOF, THE PREVAILING PARTY SHALL BE ENTITLED TO RECOUP FROM THE OTHER ALL REASONABLE ATTORNEYS' FEES INCURRED BY THE PREVAILING PARTY IN THAT LITIGATION.

## APPENDIX A
### GENERAL BUSINESS TERMS

22. **Arbitration.** Provided that the Company is not in a bankruptcy case, in which case the bankruptcy court shall be the court of exclusive competent jurisdiction, any dispute arising out of or relating to this Agreement shall be determined by binding arbitration in Los Angeles, California before one arbitrator. The arbitration shall be administered by JAMS pursuant to its Streamlined Arbitration Rules and Procedures. Judgment on the arbitration award may be entered in any court having jurisdiction. This clause shall not preclude the parties from seeking provisional remedies in advance of arbitration from a court of appropriate jurisdiction. The arbitrator may, in the arbitration award, allocate all or part of the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party.

23. **Notice.** All notices given pursuant to any of the provisions of this Agreement shall be in writing and shall be mailed or delivered: (a) to the Company, at its offices at 6161 9TH AVENUE NORTH, ST. PETERSBURG, FL 33710 Attention: Brian F. Gleason (with a copy, which shall not constitute notice to Bruce March and Nancy Peterman via email at bgleason@phoenixmanagement.com marchb@gtlaw.com and petermann@gtlaw.com); and (b) to FocalPoint, at its offices at 11150 Santa Monica Boulevard, Suite 1550, Los Angeles, CA 90025, Attention: David Porter, Chief Compliance Officer. Notice shall be effective upon receipt.

24. **Severability.** If it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that any term or provision of this Agreement is invalid or unenforceable: (a) the remaining terms and provisions hereof shall be unimpaired and shall remain in full force and effect, and (b) the invalid or unenforceable provision or term shall be replaced by a term or provision that is valid and enforceable and that comes closest to expressing the intention of such invalid or unenforceable term or provision.

25. **Counterparts.** This Agreement may be executed in any number of counterparts, each of which will be deemed an original and all of which together shall be considered a single document. Such counterparts may be delivered by one party to the other by facsimile, e-mail or other electronic transmission, and such counterparts shall be valid for all purposes.

26. **Other.** The Company agrees that, in order to assist the government in its efforts to fight the funding of terrorism and money laundering activities, the Company shall provide FocalPoint with any and all information as FocalPoint may reasonably request that pertains to: (a) the Company and its affiliates, and (b) any entity that is a source of funds or assets in connection with a Transaction, as applicable. In connection with the foregoing, the Company further agrees that FocalPoint may provide any such information to a third party, subject to confidentiality restrictions, in order that such third party may assist FocalPoint in verifying the background of the Company, its affiliates and the source of such funds or assets. FocalPoint maintains a Business Continuity Plan, a written summary of which may be obtained by writing to FocalPoint Securities, LLC, 11150 Santa Monica Blvd., Suite 1550, Los Angeles, CA 90025.

27. **Representation**. The Company represents and warrants to FocalPoint that (a) it has all requisite power and authority to enter into this Agreement, (b) this Agreement has been duly and validly authorized by all necessary action on its part, (c) this Agreement has been duly executed and delivered on its part and (d) this Agreement constitutes a legal, valid and binding agreement of it, enforceable in accordance with its terms.

By initialing below, YouFit Health Clubs, LLC and FocalPoint Securities, LLC hereby acknowledge that they have read and agree to and accept the terms and conditions set forth in this Appendix A.

FOCALPOINT SECURITIES, LLC

YOUFIT HEALTH CLUBS, LLC

Brian F. Gleason
2020.06.02 16:43:20 -04'00'

-14-