## Exhibit A

**Second Further Revised Sale Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| YOUFIT HEALTH CLUBS, LLC, *et al.*,[1] | Case No. 20-12841 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos. 17, 26, 137, 146** |

**ORDER (I) AUTHORIZING THE SALE OF ALL OF THE DEBTORS'**
**ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES,**
**AND OTHER INTERESTS, (II) AUTHORIZING AND APPROVING THE DEBTORS'**
**PERFORMANCE UNDER THE STALKING HORSE PURCHASE AGREEMENT,**
**(III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN OF THE**
**DEBTORS' EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED**
**THERETO AND (IV) GRANTING RELATED RELIEF**

Upon consideration of the motion [Docket No. 17] (the "Motion")[2] of the above-captioned

debtors and debtors in possession (the "Debtors") for the entry of an order pursuant to sections

105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002,

6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United

States Bankruptcy Court for the District of Delaware (the "Local Rules"), among other things, (i)

authorizing the sale of the Acquired Assets (the "Sale") free and clear of liens, claims,

encumbrances, and other interests, except as provided by that Asset Purchase Agreement, dated

November 10, 2020, by and between the Debtors (the "Sellers" and each a "Seller") and YF FC

---

[1]    The last four digits of YouFit Health Clubs, LLC's tax identification number are 6607.  Due to the large number of debtor entities in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the claims and noticing agent at www.donlinrecano.com/yfhc.  The mailing address for the debtor entities for purposes of these chapter 11 cases is: 1350 E. Newport Center Dr., Suite 110, Deerfield Beach, FL 33442.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in either the Motion or the Stalking Horse Purchase Agreement (as defined herein), as applicable.

Acquisition LLC as the Stalking Horse Bidder (the "Buyer"), as amended by that certain First Amendment to Asset Purchase Agreement, dated as of December 4, 2020 (copies of which are attached hereto as **Exhibit A**, as the same may be further amended, supplemented or otherwise modified in accordance with its terms, together with all exhibits and schedules thereto, the "Stalking Horse Purchase Agreement"), (ii) authorizing the Sellers' performance under the Stalking Horse Purchase Agreement, (iii) approving the assumption and assignment of certain of the Sellers' executory Contracts and unexpired Leases related thereto (any such executory Contract or unexpired Lease assumed and assigned pursuant to the Sale, including any such executory Contract or unexpired Lease placed on the Designation List and assumed and assigned pursuant to the Sale after the Closing Date, an "Assumed Contract"), and (iv) granting related relief; the Court having entered an order approving the Bidding Procedures and granting certain related relief on November 23, 2020 [Docket No. 136] (the "Bidding Procedures Order") after a hearing on the same (the "Bidding Procedures Hearing"); and the Debtors having submitted the *Declaration of Richard NeJame in Support of the Bidding Procedures and Sale Motion* [Docket No. 26], the *Declaration of Brian Gleason in Support of the Sale Motion* [Docket No. 526], and the *Supplemental Declaration of Richard NeJame in Support of Sale Motion* [Docket No. 532]; and the Buyer having submitted the *Declaration of Kam Miramadi of Mackinac Partners Regarding Adequate Assurance of Future Performance and in Support of the Sale of Substantially All of the Debtors' Assets* [Docket No. 536]; no auction (the "Auction") having been held because no additional Qualified Bids on the Acquired Assets were received by the Debtors other than the Stalking Horse Bid and the Stalking Horse Purchase Agreement; the Buyer having been deemed the Successful Bidder by the Debtors pursuant to the Bidding Procedures Order; the Debtors having filed a *Notice of Proposed Sale, Bidding Procedures, Auction, and Sale Hearing* [Docket

No. 137] (the "Auction and Sale Notice"), a *Notice of Potential Assumption and Assignment* [Docket No. 146] (the "Assumption Notice"), a *First Supplemental Notice of Potential Assumption and Assignment* [Docket No. 210], and a *Notice of Cancellation of Auction* [Docket No. 521]; the Court having conducted a hearing on the Motion on December 23, 2020 and December 28, 2020 (collectively, the "Sale Hearing") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; the Court having been advised that the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases (the "Committee") provided a draft objection to the Debtors and the Buyer, which objection was resolved as set forth in this Sale Order and as read into the record at the Sale Hearing (the "Committee Objection Resolution"); and the Court having reviewed and considered the Motion and other evidence submitted in support of the Motion, the objections thereto, the Final DIP Order,[3] the Stalking Horse Purchase Agreement, and the Bidding Procedures Order; upon the record of the hearing on the Final DIP Order (the "Final DIP Hearing"), the Bidding Procedures Hearing and the Sale Hearing; the Court having heard statements and arguments of counsel and the evidence presented with respect to the relief requested in the Motion at the Sale Hearing; due notice of the Motion, the Stalking Horse Purchase Agreement, the Bidding Procedures Hearing, Bidding Procedures Order and the cancellation of the Auction having been provided, and the Member Notice, the Member Notice Period, the Challenge Expiration Notice, and the Challenge Expiration Notice Period (each as defined below) having been approved; the Court having determined that a sound business purpose exists for the Sale, the relief requested in the Motion is in the best interests of the Debtors, their estates, their

---

[3]  As used herein, "Final DIP Order" shall mean that certain *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507, Bankruptcy Rules 2002, 4001, 6004 and 9014 and Local Bankruptcy Rule 4001-2 (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Superpriority Financing, (II) Authorizing the Debtors' Limited Use of Cash Collateral, (III) Granting Adequate Protection to the Prepetition Secured Parties, and (IV) Granting Related Relief* [Docket No. 231].

stakeholders, and all other parties in interest, the Sale was negotiated and proposed in good faith and the Purchase Price is fair and reasonable and in the best interest of the Debtors' estates; the Court having jurisdiction over this matter; the legal and factual bases set forth in the Motion and at the Sale Hearing establishing just cause for the relief granted herein; and after due deliberation thereon,

### THE COURT HEREBY FURTHER FINDS AND DETERMINES THAT:[4]

I.       **Jurisdiction, Final Order and Statutory Predicates**

A.       The Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a) and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.       This order (this "Sale Order") constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, expressly waives any stay, and expressly directs entry of judgment as set forth herein.

C.       The statutory predicates for the relief requested in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014 and Local Rule 6004-1.

---

[4]    All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Motion are hereby incorporated herein to the extent not inconsistent herewith.

D.      The findings of fact and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

## II.    Notice of the Sale, Auction, and the Cure Amounts

E.      Actual written notice of the Bidding Procedures Hearing, the Sale Hearing, the Auction, the Motion, the Sale, the assumption, assignment, cure and sale of the Assumed Contracts to be assigned to the Buyer pursuant to the Stalking Horse Purchase Agreement (including, as of the date hereof, those which are identified on **Exhibit B** hereto) has been timely and properly provided to, and a reasonably calculated, fair and reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to, all known interested persons and entities, including, but not limited to the following parties:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (iii) counsel to the DIP Lenders and the DIP Agent (each as defined in the Final DIP Order); (iv) respective counsel to the Prepetition Lender Representative and the Prepetition Agent (each as defined in the Final DIP Order); (v) all other known parties with liens of record on assets of the Debtors and claims against the Debtors as of the Petition Date; (vi) the local office for the Internal Revenue Service; (vii) the Securities and Exchange Commission; (viii) the Office of the United States Attorney for the District of Delaware; (ix) any party having filed requests for notice in the Chapter 11 Cases; (x) the U.S. Department of Justice; (xi) the offices of the attorneys general for the states in which the Debtors operate; (xii) counsel to the Stalking Horse Bidder; (xiii) counsel for the Committee; and (xiv) all parties that had expressed an interest

in purchasing the Debtors' assets.  The requirements of Bankruptcy Rule 6004(a) and all applicable Local Rules are satisfied by such notice.

F.    In accordance with the provisions of the Bidding Procedures Order, the Debtors caused the Cure Notice to be served, in compliance with the requirements of due process and the Bankruptcy Code, upon the Buyer and the non-Debtor counterparties to the executory Contracts or unexpired Leases (each, a "Contract Counterparty," and, collectively, the "Contract Counterparties"), noticing such parties:  (i) that the Sellers may seek to assume and assign the Assumed Contracts on the Closing Date or such later date as contemplated by the terms of the Stalking Horse Purchase Agreement; and (ii) of the relevant Cure Amounts.  The Court finds that: (i) the Buyer and the Contract Counterparties have had an opportunity to object to the Cure Amounts set forth in the Cure Notice; (ii) the Cure Notice provided the Buyer and the Contract Counterparties with proper notice of the potential assumption and assignment of the Assumed Contracts and any Cure Amount relating thereto; (iii) the service of such Cure Notice was good, sufficient, and appropriate under the circumstances; (iv) no further notice need be given in respect of establishing Cure Amounts for the Assumed Contracts; and (v) the procedures set forth in the Bidding Procedures Order with regard to objecting to any such Cure Amount satisfy the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

G.    The Debtors' Auction and Sale Notice provided all interested persons and entities with timely and proper notice of, and a reasonable opportunity to object and be heard with respect to, the assumption and assignment of the Assumed Contracts, the Sale, the Sale Hearing, and the Auction.

H.    As evidenced by the affidavits of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, the Bidding Procedures, the assumption and

assignment of the Assumed Contracts, the Auction, the cancellation of the Auction, the Sale Hearing, and the Sale has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014.  The Debtors also have complied with all obligations to provide notice of the assumption and assignment of the Assumed Contracts, the Auction, the cancellation of the Auction, the Sale Hearing, and the Sale required by the Bidding Procedures Order.  In addition, the Debtors have agreed to provide the Member Notice and the Challenge Expiration Notice pursuant to the provisions of this Sale Order.  The notices described in this Section II were, or will be once made with respect to the Member Notice and the Challenge Expiration Notice, good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the assumption and assignment of the Assumed Contracts, the Auction, the cancellation of the Auction, the Sale Hearing, Sale, or the assumption, assignment, and sale of the Assumed Contracts is required.

I.     The disclosures made by the Debtors concerning the Motion, the Bidding Procedures, the Stalking Horse Purchase Agreement, the assumption and assignment of the Assumed Contracts, the cancellation of the Auction, the Sale, and the Sale Hearing, were good, complete, and adequate.

## III.   <u>Good Faith of the Buyer and Sellers</u>

J.     The Buyer is purchasing the Acquired Assets, including all the properties, rights, interests, and other tangible and intangible assets of the Sellers acquired by the Sellers before the Closing, including all of the Sellers' estate's claims and causes of action, including the Sellers' Prepetition Lien and Claim Matters (as defined in the Final DIP Order), the Sellers' fraudulent transfer claims, claims of the Sellers against the Sellers' directors, officers and employees, and claims and causes of action relating to or arising under Chapter 5 of the Bankruptcy Code, including sections 544, 545, 547, 548, and 550, or any other similar state or federal law, and any

7

and all products, rents, offspring, profits, and proceeds of same (collectively, the "Avoidance Actions"), and excluding the Excluded Assets, and not including direct claims or direct causes of action of any Person that is not a Debtor. The Stalking Horse Purchase Agreement was negotiated, proposed, and entered into by the Sellers and the Buyer, including their respective boards of directors or equivalent governing bodies, officers, directors, employees, agents, professionals, and representatives, without collusion, in good faith, and from arm's-length bargaining positions. The Buyer is making such purchase in good faith and is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, in that among other things: (i) the Buyer's Qualified Bid contained no break-up fee or expense reimbursement requirement; (ii) the Buyer's Qualified Bid was subject to a marketing process in a time frame approved by the Court through the Bidding Procedures Order; (iii) the Debtors conducted the marketing process in consultation with the Committee and contacted all potential bidders suggested by the Committee; (iv) the Buyer did not attempt to limit the Debtors' freedom to deal with any other party interested in acquiring the Acquired Assets; and (v) all payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed. There was no evidence of insider influence or improper conduct by the Buyer in connection with the negotiation of the Stalking Horse Purchase Agreement with the Debtors, no evidence of fraud, collusion, or bad faith on the part of the Buyer, no evidence of the Buyer doing anything to control or otherwise influence the marketing or sale process, including anything to control or otherwise influence the purchase price paid for the Acquired Assets, and no evidence that the Buyer violated section 363(n) of the Bankruptcy Code. The Buyer is not an "insider" of any Debtor (as defined under section 101(31) of the Bankruptcy Code). Accordingly, the Buyer is entitled to the full protections of section 363(m) of the Bankruptcy Code.

K.      As demonstrated by (i) any testimony and other evidence proffered or adduced at the Sale Hearing, and (ii) the representations of counsel made on the record at the Sale Hearing, substantial marketing efforts and a competitive sale process were conducted in accordance with the Bidding Procedures Order and, among other things:  (a) the Sellers and the Buyer complied with the provisions in the Bidding Procedures Order; (b) the Buyer agreed to subject its bid to the competitive Bidding Procedures set forth in the Bidding Procedures Order; and (c) the Buyer in no way improperly induced or caused the chapter 11 filing by the Debtors.

## IV.    **Highest and Best Offer**

L.      The Debtors' marketing and sale process, including the Debtors' prepetition marketing process, with respect to the Acquired Assets in accordance with the Bidding Procedures, which were followed by the Debtors, afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Acquired Assets.  The Debtors implemented the Bidding Procedures and cancelled the Auction in accordance with the provisions of the Bidding Procedures Order, and the Debtors have otherwise complied with the Bidding Procedures Order in all respects.  Such process was duly noticed and conducted in a noncollusive, fair, and good faith manner, in consultation with the Committee (including contacting all potential bidders suggested by the Committee), and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Acquired Assets.  The Debtors received no Qualified Bids by the Bid Deadline other than the Qualified Bid submitted by the Buyer.  The Bidding Procedures provide that if no Qualified Bids (other than the Qualified Bid

submitted by the Buyer) were received by the Bid Deadline, the Auction would not be conducted and the Buyer's Qualified Bid would be the Successful Bid for the Acquired Assets.

M.     The Stalking Horse Purchase Agreement represents a fair and reasonable offer to purchase the Acquired Assets under the circumstances of the Chapter 11 Cases, including in light of the fact that no other Qualified Bids were received.  The consideration provided by the Buyer under the Stalking Horse Purchase Agreement, including the assumption of the Assumed Liabilities, is fair and adequate, represents the highest and best available offer, including by providing the highest economic value available to the Debtors' estates, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. Accordingly, the Stalking Horse Purchase Agreement constitutes the highest and best offer for the Acquired Assets and a valid, reasonable, and sound exercise of the Debtors' business judgment consistent with their fiduciary duties, and complies in all respects with the Bid Procedures Order.

N.     Approval of the Motion and the Stalking Horse Purchase Agreement and the consummation of the Sale contemplated thereby is in the best interests of the Debtors, their creditors, their estates, and other parties in interest.

**V.     Secured Claims and Credit Bid/Assumption of Debt**

O.     The Buyer is a Delaware limited liability company that was formed on behalf of the Prepetition Lenders and the DIP Lenders, and upon the Closing Date will be owned by the Prepetition Lenders and the DIP Lenders.  Pursuant to the terms of the Stalking Horse Purchase Agreement and the Final DIP Order, (i) the DIP Lenders are secured creditors of the Debtors, holding allowed claims (as that term is defined in section 101(5) of the Bankruptcy Code) in the amount of the DIP Obligations secured by valid, binding, perfected, and enforceable first-priority security interests in and liens against each of the Debtors, their estates, and the property of their estates, subject to any Permitted Encumbrances (as defined in the Final DIP Order), certain

amounts of which may be credit bid in connection with the Sale (such DIP Obligations, the "DIP Credit Bid Claim"), and (ii) subject and subordinate to the DIP Obligations, the Prepetition Lenders are secured creditors of the Debtors, holding allowed claims (as that term is defined in section 101(5) of the Bankruptcy Code) in the amount of the Prepetition Liabilities secured by valid, binding, perfected, and enforceable first-priority security interests in and liens against each of the Debtors, their estates, and the property of their estates, subject to any Permitted Encumbrances, certain amounts of which may be credit bid in connection with the Sale (such Prepetition Liabilities, the "Prepetition Credit Bid Claim" and, together with the DIP Credit Bid Claim, the "Credit Bid Claims"); the amount of such Credit Bid Claims, the "Credit Bid Consideration").  The Buyer, or its assignee, has the right under section 363(k) of the Bankruptcy Code and is authorized by this Court pursuant to the Bidding Procedures Order, the Final DIP Order, and this Sale Order to credit bid and/or assume up to the full amount of the DIP Obligations and Prepetition Liabilities.

P.       Pursuant to the Stalking Horse Purchase Agreement, the Buyer agrees to provide, as consideration for the Acquired Assets, (a) $85 million, payable in the form of, in the Buyer's discretion, (i) Credit Bid Consideration, plus (ii) assumption of DIP Obligations and Prepetition Obligations, plus (b) assumption of the Assumed Liabilities (including the Cure Amounts), comprising the Purchase Price as set forth in Section 2.5 of the Stalking Horse Purchase Agreement.  The Purchase Price is a valid and proper offer pursuant to the Bidding Procedures Order, this Sale Order, and sections 363(b) and 363(k) of the Bankruptcy Code.  After the Closing Date, in accordance with the Committee Objection Resolution, the Prepetition Lenders shall have an allowed general unsecured claim in the aggregate amount of its deficiency not to exceed $23.5

million, with such deficiency claim to be treated as described in the Committee Objection Resolution.

## VI.    No *Sub Rosa* or *De Facto* Plan

Q.      Good and sufficient reasons for approval of the Stalking Horse Purchase Agreement and the transactions to be consummated in connection therewith have been articulated, and the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.  The Debtors have demonstrated compelling circumstances and good, sufficient, and sound business purposes and justifications for the Sale outside the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code, before, and outside of, a plan of reorganization, in that, among other things, the immediate consummation of the Sale with the Buyer is necessary and appropriate to maximize the value of the Debtors' estates, and the Sale will provide the means for the Debtors to maximize distributions to creditors.

R.      The Sale does not constitute a *sub rosa* or *de facto* plan of reorganization or liquidation as it does not propose to (i) impair or restructure existing debt of, or equity interests in, the Debtors, (ii) impair or circumvent voting rights with respect to any plan that may be proposed by the Debtors, (iii) circumvent Chapter 11 safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code, or (iv) classify claims or equity interests or extend debt maturities.  Accordingly, the Sale neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating chapter 11 plan for the Debtors.

## VII.    Successor Liability Matters

S.      By virtue of the consummation of the Sale, (i) the Buyer is not a continuation of the Debtors or their respective estates, there is no continuity between the Buyer and the Debtors, there is no common identity between the Buyer and the Debtors, and there is no continuity of

enterprise between the Buyer and the Debtors, (ii) the Buyer is not holding itself out to the public as a continuation of the Debtors or their respective estates, including, but not limited to, as to any warranty or similar obligations, and (iii) the Sale does not amount to a consolidation, merger, or *de facto* consolidation or merger of the Buyer and any of the Debtors and the Debtors' respective estates. The Buyer is not, and shall not be considered, a successor to the Debtors or their respective estates by reason of any theory of law or equity, including, but not limited to, under any federal, state or local statute or common law, or revenue, pension, ERISA, tax, labor, employment, environmental, escheat or unclaimed property laws, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine or common law, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, and the Buyer and its affiliates shall have no liability or obligation under the Workers Adjustment and Retraining Act (the "WARN Act"), 929 U.S.C. §§ 210 et seq. and shall not be deemed to be a "successor employer" for purposes of the Internal Revenue Code of 1986, Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disability Act, the Family Medical Leave Act, the National Labor Relations Act, the Labor Management Relations Act, the Older Workers Benefit Protection Act, the Equal Pay Act, the Civil Rights Act of 1866 (42 U.S.C. 1981), the Employee Retirement Income Security Act, the Multiemployer Pension Protection Act, the Pension Protection Act, and/or the Fair Labor Standards Act; the Buyer is not a continuation or substantial continuation of any of the Debtors or their respective estates, business or operations or any enterprise of the Debtors; the Buyer does not have a common identity of incorporators, directors or equity holders with the Debtors; and the Sale does not amount to a

consolidation, merger, or *de facto* merger of the Buyer and the Debtors or their respective estates. Accordingly, the Buyer is not and shall not be deemed a successor to the Debtors or their respective estates as a result of the consummation of the Sale pursuant to the Stalking Horse Purchase Agreement and this Sale Order.

## VIII.  No Fraudulent Transfer; Validity of Transfer

T.      The Stalking Horse Purchase Agreement was not entered into by the Buyer and the Sellers for the purpose of hindering, delaying, or defrauding creditors under either the Bankruptcy Code or the other laws of the United States, or the laws of any state, territory, possession, or the District of Columbia (including, without limitation, the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act).  Neither the Debtors nor the Buyer entered into the Stalking Horse Purchase Agreement fraudulently, nor are they are entering into or consummating the transactions contemplated by the Stalking Horse Purchase Agreement fraudulently, including under applicable federal and state fraudulent conveyance and fraudulent transfer laws.  The consideration provided by the Buyer pursuant to the Stalking Horse Purchase Agreement, (i) was negotiated at arm's-length, (ii) is fair, adequate, and reasonable, (iii) is the highest or otherwise best offer for the Acquired Assets, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the other laws of the United States, and the laws of any state, territory, possession, or the District of Columbia (including, without limitation, the Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act).  No other person or entity or group of entities has offered to purchase the Acquired Assets for greater economic value to the Debtors' estates than the Buyer.  For the purposes of statutory and common law fraudulent conveyance and fraudulent transfer claims, neither the Sellers nor the Buyer are entering into or consummating the transactions contemplated by the Stalking Horse Purchase

14

Agreement fraudulently.  Approval of the Motion, the Stalking Horse Purchase Agreement, the Sale, and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

U.     The Debtors are the sole and lawful owners of the Acquired Assets.  The Acquired Assets constitute property of the Debtors' estates and title to the Acquired Assets is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  The Sellers and the Buyer have full corporate power and authority to execute, deliver, and perform the Stalking Horse Purchase Agreement and all other documents contemplated thereby, and no further consents or approvals are required for the Sellers or the Buyer to consummate the transactions contemplated by the Stalking Horse Purchase Agreement or the other documents contemplated thereby, except as otherwise set forth in the Stalking Horse Purchase Agreement or such other documents.

V.     Subject to section 363(f) of the Bankruptcy Code, the transfer of each of the Acquired Assets to the Buyer will be, as of the Closing Date, a legal, valid, and effective transfer of the Acquired Assets, which transfer vests or will vest the Buyer with all right, title, and interest of the Debtors in, to, and under the Acquired Assets free and clear of (i) all Liens (as defined in the Stalking Horse Purchase Agreement) and other liens (including any liens as that term is defined in section 101(37) of the Bankruptcy Code) and encumbrances relating to, accruing, or arising at any time prior to the Closing Date (collectively, as defined in this clause (i) and as set forth in clauses (i)–(vii) of Paragraph W below, the "Liens"), other than Permitted Liens (as defined in the Stalking Horse Purchase Agreement), and (ii) all debts arising under, relating to, or in connection with any act of the Debtors, claims (as that term is defined in section 101(5) of the Bankruptcy Code) or causes of action, liabilities, obligations, demands, guaranties, options in favor of third parties, rights, easements, servitudes, restrictive covenants, encroachments, contractual

commitments, restrictions, interests, mortgages, hypothecations, charges, indentures, loan

agreements, instruments, collective bargaining agreements, leases, subleases, licenses, deeds of

trust, security interests, conditional sale or other title retention agreements, pledges, judgments,

claims for reimbursement, contribution, indemnity, exoneration, infringement, products liability,

alter-ego, and matters of any kind and nature, including any Challenge (as defined in the Final DIP

Order), whether arising prior to or subsequent to the commencement of the Chapter 11 Cases, and

whether imposed by agreement, understanding, law, equity, or otherwise, known or unknown,

contingent or matured, liquidated or unliquidated, and all rights and remedies with respect thereto

(a) that purport to give to any party a right of setoff or recoupment against, or a right or option to

effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or

repurchase right or option, or termination of, any of the Debtors' or the Buyer's interests in the

Acquired Assets, or any similar rights, or (b) in respect of taxes, restrictions, rights of first refusal,

charges of interests of any kind or nature, if any, including without limitation, any restriction of

use, voting, transfer, receipt of income or other exercise of any attributes of ownership

(collectively, as defined in this clause (ii) and as set forth in clauses (i)–(vii) of Paragraph W below,

the "Claims"), relating to, accruing or arising at any time prior to entry of this Sale Order, other

than Assumed Liabilities, including amounts necessary under sections 365(b)(1)(A) and (B) and

365(f)(2)(A) of the Bankruptcy Code to cure all defaults and pay all actual pecuniary losses under

the Assumed Contracts (the "Cure Amounts") or any other obligations arising under the Assumed

Contracts to the extent set forth in the Stalking Horse Purchase Agreement or this Sale Order.

## IX.    Section 363(f) Is Satisfied

W.    The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full;

therefore, the Debtors may sell the Acquired Assets free and clear of any interests in the Acquired

Assets; *provided*, *however*, that the provisions of this Sale Order and the sale and transfer to the

Buyer of any Acquired Assets that are customer accounts, customer purchases, customer lists, membership or personal training agreements, or Membership Information (collectively, the "Membership Assets"), shall be subject to the Member Notice Period provisions set forth in paragraph 9(b) hereof.  The Buyer would not have entered into the Stalking Horse Purchase Agreement and would not consummate the transactions contemplated thereby if the sale of the Acquired Assets to the Buyer and the assumption, assignment, and sale of the Assumed Contracts to the Buyer were not, except as otherwise provided in the Stalking Horse Purchase Agreement with respect to the Assumed Liabilities and Permitted Liens, free and clear of all Claims and Liens of any kind or nature whatsoever of the Sellers, or if the Buyer would, or in the future could (except and only to the extent expressly provided in the Stalking Horse Purchase Agreement and with respect to the Assumed Liabilities and Permitted Liens), be liable for any of such Claims and Liens, including, but not limited to, Claims and Liens in respect of the following:  (i) all mortgages, deeds of trust, and security interests; (ii) any pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Sellers; (iii) any other employee, worker's compensation, occupational disease, unemployment, or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Notification Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (l) any other

state or federal benefits or claims relating to any employment with the Sellers or any of its predecessors; (iv) any bulk sales or similar law; (v) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (vi) any environmental laws, including any Environmental, Health and Safety Requirement(s); and (vii) any theories of successor or transferee liability.

X.    The Sellers may sell the Acquired Assets free and clear of all Claims and Liens against the Sellers, their respective estates, or any of the Acquired Assets (except for any Assumed Liabilities and Permitted Liens under the Stalking Horse Purchase Agreement) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Holders of such Claims or Liens fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Claims or Liens attach to the net cash proceeds of the Sale, if any, ultimately attributable to the Acquired Assets in which such creditor or interest holder alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor or interest holder had prior to the Sale, subject to any claims and defenses the Sellers and their estates may possess with respect thereto. Those holders of Claims or Liens against or in the Sellers, their estates or any of the Acquired Assets who did not object, who withdrew their objection, or whose objection was overruled, to the Sale or the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

Y.    The sale, conveyance, assignment and transfer of any personally identifiable information pursuant to the terms of the Stalking Horse Purchase Agreement and this Sale Order complies with the terms of the Debtors' policy regarding the transfer of such personally identifiable information as of the Petition Date and, as a result, consummation of the Sale is

permitted pursuant to Section 363(b)(1)(A) of the Bankruptcy Code.  Accordingly, appointment of a consumer privacy ombudsman in accordance with sections 363(b)(1) or 332 of the Bankruptcy Code is not required with respect to the Sale.

### X.    Assumption and Assignment of the Assumed Contracts

Z.    The assumption and assignment of the Assumed Contracts pursuant to the terms of this Sale Order is integral to the Stalking Horse Purchase Agreement and is in the best interests of the Debtors and their estates, creditors, interest holders, and other parties in interest and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

AA.    The Cure Amounts set forth on **Exhibit B** annexed hereto are the sole amounts necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure all monetary defaults and pay all actual pecuniary losses under the Assumed Contracts.

BB.    Pursuant to the terms of the Stalking Horse Purchase Agreement and this Sale Order, the Buyer shall have:  (i) either or both cured and provided adequate assurance of cure of any defaults existing before the Closing Date under any of the Assumed Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; and (ii) provided compensation or adequate assurance of compensation to any party for actual pecuniary loss to such party resulting from a default prior to the Closing Date under any of the Assumed Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.  After the payment of the relevant Cure Amounts by the Buyer and as required by the Stalking Horse Purchase Agreement and this Sale Order, the Sellers shall not have any further liabilities to the Contract Counterparties on or after the applicable Assumption Effective Date.[5]  The Buyer provided adequate assurance of its future performance

---

[5] For the avoidance of doubt, with respect to any Designated Contract that is assumed and assigned to the Buyer in accordance with the Stalking Horse Purchase Agreement and Paragraph 23 of this Sale Order, "Assumption Effective Date" shall mean either such date as identified as identified in a separate order of this Court approving the assumption and assignment or the later of: (i) the Objection Deadline (as defined below); or (ii) the date of resolution of any timely

under the relevant Assumed Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code. Other than the Adjourned Objections (as defined below), any non-Debtor counterparty to an Assumed Contract who did not timely file an objection to the assumption of its Assumed Contract shall be deemed to have consented to its assumption and assignment to the Buyer pursuant to section 365 of the Bankruptcy Code in accordance with the Stalking Horse Purchase Agreement.

CC.     No default exists in the Sellers' performance under the Assumed Contracts as of the Closing Date other than the failure to pay Cure Amounts or defaults that are not required to be cured as contemplated in section 365(b)(1)(A) of the Bankruptcy Code.

## XI.     Compelling Circumstances for an Immediate Sale

DD.     Good and sufficient reasons for approval of the Stalking Horse Purchase Agreement and the Sale have been articulated. The relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest. To maximize the value of the Debtors' assets and preserve the viability of the business to which the Acquired Assets relate, it is essential that the Sale be approved and occur promptly within the time constraints set forth in the Stalking Horse Purchase Agreement. Time is of the essence in effectuating the Stalking Horse Purchase Agreement and consummating the Sale, both to preserve and maximize the value of the Debtors' assets for the benefit of the Debtors, their estates, their creditors, interest holders, and all other parties in interest in the Chapter 11 Cases and to provide the means for the Debtors to maximize creditor and interest holder recoveries. As such, the Debtors and the Buyer intend to close the Sale of the Acquired Assets as soon as reasonably practicable. The Debtors have demonstrated both compelling circumstances and a good, sufficient, and sound business purpose

---

objection to the assumption and assignment of such Designated Contract in accordance with Paragraph 23 of this Sale Order.

and justification for immediate approval and consummation of the Stalking Horse Purchase Agreement.

EE.    The consummation of the transactions set forth in the Stalking Horse Purchase Agreement and the assumption and assignment of the Assumed Contracts are legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f), and all of the applicable requirements of such sections have been complied with in respect of such transactions.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**<u>General Provisions</u>**

1.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the Chapter 11 Cases pursuant to Bankruptcy Rule 9014. To the extent that any findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are adopted as such.  Any findings of fact or conclusions of law stated by the Court on the record at the Sale Hearing are hereby incorporated.

2.    The relief requested in the Motion is granted and the transactions contemplated thereby and by the Stalking Horse Purchase Agreement are approved for the reasons set forth in this Sale Order and on the record of the Sale Hearing, which is incorporated fully herein as if fully set forth in this Sale Order, and the Sale contemplated by the Stalking Horse Purchase Agreement is approved.

3.    Other than the Adjourned Objections, all objections, statements, and reservations of rights to the Motion and the relief requested therein and to the entry of this Sale Order or the relief granted herein, that have not been withdrawn, waived, adjourned, settled as announced to

the Court (including the Committee Objection Resolution) at any prior hearing, at the Sale Hearing, or by stipulation filed with the Court, or previously overruled, including, without limitation, all reservations of rights included therein or otherwise, are hereby overruled and denied on the merits with prejudice, except as expressly set forth herein.  Those parties who did not object, or withdrew their objections to the Motion, are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.

4.    This Court's findings of fact and conclusions of law set forth in the Bidding Procedures Order and the Final DIP Order are incorporated herein by reference.

**Approval of the Stalking Horse Purchase Agreement**

5.    The Stalking Horse Purchase Agreement and all other ancillary documents, and all of the respective terms and conditions thereof, including the Credit Bid Claims and the Credit Bid Consideration, the Sale contemplated thereby, and the Purchase Price are hereby approved.  The Sellers are authorized to enter into the Stalking Horse Purchase Agreement and all other ancillary documents to be executed in connection with the Stalking Horse Purchase Agreement as may be necessary.

6.    Pursuant to sections 363 and 365 of the Bankruptcy Code, entry by the Sellers into the Stalking Horse Purchase Agreement is hereby authorized and approved.  The Sellers and the Buyer acting by and through their existing agents, representatives, and officers are authorized, empowered and directed, without further order of this Court, to use their reasonable best efforts to take any and all actions necessary or appropriate to (i) consummate and close the Sale in accordance with the terms and conditions of the Stalking Horse Purchase Agreement and this Sale Order, (ii) transfer and assign all rights, title, and interest to all assets, property, licenses, and rights of the Sellers to be conveyed in accordance with the terms and conditions of the Stalking Horse Purchase Agreement, and (iii) execute and deliver, perform under, consummate, implement, and

close fully the Stalking Horse Purchase Agreement, including the assumption and assignment to the Buyer of the Assumed Contracts, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Stalking Horse Purchase Agreement and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Stalking Horse Purchase Agreement, this Sale Order, and such other ancillary documents, including any actions that otherwise would require further approval by shareholders, members, or their boards of directors, as the case may be, without the need to obtain such approvals.  The Sellers are hereby authorized to perform their covenants and undertakings as provided in the Stalking Horse Purchase Agreement and any ancillary documents before or after the Closing Date without further order of the Court.  Neither the Buyer nor the Sellers shall have any obligation to proceed with the Closing under the Stalking Horse Purchase Agreement until all conditions precedent to their obligations to do so have been met, satisfied, or waived, except as otherwise contemplated and provided for in the Stalking Horse Purchase Agreement and this Sale Order.

7.      This Sale Order and the Stalking Horse Purchase Agreement shall be binding in all respects upon the Debtors, including the Debtors' estates, all holders of equity interests in any Debtor, all holders of Claims or Liens (whether known or unknown) against any Debtor, including the Committee, any holders of Claims or Liens against or on all or any portion of the Acquired Assets, all Contract Counterparties, the Buyer and all successors and assigns of the Buyer, the Acquired Assets, all successors and assigns of the Debtors, any party in interest with standing to commence a Challenge, and any subsequent trustees appointed in any of the Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Chapter 11 Cases, and shall not be subject to rejection or unwinding.  This Sale Order and the Stalking Horse Purchase

23

Agreement shall inure to the benefit of the Debtors, their estates, their creditors, the Buyer and their respective successors and assigns. Nothing in any chapter 11 plan confirmed in the Chapter 11 Cases, the confirmation order confirming any such chapter 11 plan, any order approving the wind down or dismissal of the Chapter 11 Cases, or any order entered upon the conversion of the Chapter 11 Cases to one or more cases under chapter 7 of the Bankruptcy Code or otherwise shall alter, conflict with, or derogate from, the provisions of the Stalking Horse Purchase Agreement or this Sale Order.

8.      Upon the entry of this Sale Order (i) the Challenge Deadline[6] and the rights set forth in Paragraph 16(a) of the Final DIP Order shall automatically expire and (ii) no subsequent trustee (including any Chapter 7 trustee), responsible person, examiner with expanded powers, any other estate representative, or any party-in-interest and all of their successors-in-interest and assigns, including, without limitation, the Committee, shall have any right to pursue any Challenge against any lender, the agent (and any former agent), or any predecessor thereof. The admissions, stipulations agreements, releases and waivers provided for in the Final DIP Order, including, but not limited to, Paragraph C thereof, shall be effective on a final basis and shall be binding, conclusive and final on any subsequent trustee (including any Chapter 7 trustee), responsible person, examiner with expanded powers, any other estate representative, any person, entity and party-in-interest and all of their successors-in-interest and assigns, including, without limitation, the Committee, and in any successor case and shall not be subject to challenge or objection by any such party, as set forth in Paragraph 16(b) of the Final DIP Order. The DIP Agent or the Lender Representative (in its capacity as such or as sub-agent), at the direction of the Required DIP Lenders, and the Prepetition Agent or the Lender Representative (in its capacity as sub-agent), at

---

[6] Capitalized terms used in this paragraph not otherwise defined herein shall have the meanings ascribed to them in the Final DIP Order.

the direction of the Required Lenders (as defined in the Prepetition Credit Agreement) (or the respective designees of any of the foregoing) shall have the exclusive rights set forth in Paragraph 32 of the Final DIP Order, without regard to Paragraph 16 thereof. Within one (1) business day of entry of this Sale Order, the Debtors shall provide fourteen (14) days' notice to parties-in-interest of the expiration of the Challenge Deadline (as set forth herein) pursuant to the Committee Objection Resolution (the "Challenge Expiration Notice Period") in the form of notice attached hereto as **Exhibit C** (the "Challenge Expiration Notice").  Service shall be effectuated by the Debtors on the parties on the 2002 Service List and any other party on whom the Debtors served the Final DIP Order.  Upon the expiration of such fourteen (14) day period, the expiration of the Challenge Deadline shall be applicable to all parties-in-interest (other than the Debtors and the Committee for whom the Challenge Deadline expires immediately upon entry of this Sale Order). If any objection to the expiration of the Challenge Deadline is timely filed by a party-in-interest (other than the Debtors and the Committee) prior to the expiration of the fourteen (14) day period, the Challenge Deadline is deemed extended through the earlier of (i) the Challenge Deadline (as set forth in the Final DIP Order solely for such party filing such objection), (ii) the date such objection is resolved amongst the DIP Agent, the DIP Lenders, the Debtors, and the objecting party, or (iii) the date the Court acts on such objection.  To the extent any such objections are filed and not resolved among the DIP Agent, the DIP Lenders, the Debtors, and the objecting party, if any, such parties' rights are reserved to request a hearing on the matter on shortened notice.

**Transfer of the Acquired Assets**

9.        (a)  Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Sellers are authorized and directed to transfer the Acquired Assets to the Buyer on the Closing Date.  The transfer of the Acquired Assets to the Buyer under the Stalking Horse Purchase Agreement does not require any consents other than as specifically provided for in the Stalking

Horse Purchase Agreement. The transfer of the Sellers' rights, title, and interest in the Acquired Assets to the Buyer pursuant to the Stalking Horse Purchase Agreement and this Sale Order shall be deemed transferred to the Buyer upon and as of the Closing Date, and such transfer of the Acquired Assets and the consummation of the Sale and any related actions contemplated thereby constitute a legal, valid, binding, and effective transfer of the Sellers' right, title, and interest in the Acquired Assets and shall vest the Buyer with all the rights, title and interest of the Sellers in and to the Acquired Assets as set forth in the Stalking Horse Purchase Agreement, free and clear of all Claims and Liens (except Assumed Liabilities and Permitted Liens). Upon the Closing, the Buyer shall take title to and possession of the Acquired Assets subject only to the Assumed Liabilities and Permitted Liens. Pursuant to section 363(f) of the Bankruptcy Code, the transfer of title to the Acquired Assets and the Assumed Contracts shall be free and clear of all Claims and Liens including, without limitation, all Claims pursuant to any successor or successor-in-interest liability theory, except for Assumed Liabilities and Permitted Liens.

(b) Within one (1) business day of entry of this Sale Order, the Debtors will provide notice to the Debtors' current members (the "Members") of the sale and transfer of the Membership Assets free and clear of any and all Claims and Liens pursuant to section 363 or section 365 of the Bankruptcy Code in the form of notice attached hereto as **Exhibit D** (the "Member Notice") by (a) sending the Member Notice by electronic mail to the Members for whom the Debtors have electronic mail addresses, (b) posting the Member Notice in each of the Debtors' open club locations, (c) posting the Member Notice on the Debtors' website, and (d) posting the Member Notice on the website of the Court-appointed claims and noticing agent. Members will be afforded fourteen (14) days (the "Member Notice Period") from the transmittal or posting of the Member Notice to object to the sale of their Member Asset and all of their rights in this regard are expressly

reserved during such Member Notice Period.  To the extent a Member does not object within the Member Notice Period, notwithstanding anything in the Stalking Horse Purchase Agreement, the Membership Assets of such Member shall be Acquired Assets under Section 2.1(b) of the Stalking Horse Purchase Agreement and the findings of fact and conclusions of law applicable to Acquired Assets under this Sale Order shall apply to such Membership Assets without further order of the Court; *provided* that the Buyer may designate Membership Assets as Excluded Assets or Delayed Acquired Assets (as defined below).  To the extent a Member timely objects to the sale of its Membership Assets, the findings of fact and conclusions of law applicable to Acquired Assets under this Sale Order shall not apply solely as to that Member's Membership Assets or any Claims of such Member pertaining to such Membership Assets pending resolution among the Debtors, the Buyer, and the objecting party, if any, or, to the extent the parties cannot resolve such objection, further Court order.  To the extent any such objections are filed and not resolved, such parties' rights are reserved to request a hearing on the matter on shortened notice.

10.     All of the rights of the Buyer, the DIP Agent, and the DIP Lenders under the Stalking Horse Purchase Agreement and the DIP Credit Documents are fully reserved. Notwithstanding anything therein or herein to the contrary, it shall be a condition to the Buyer's obligation to close the Sale that the transaction (including resolution of the Challenge Deadline expiration and purchase of the Membership Assets) be satisfactory to the Buyer in its sole discretion .  Notwithstanding anything to the contrary in the Stalking Horse Purchase Agreement, including Section 8.2 thereof, upon any termination by the Buyer as a result of the conditions set forth herein, all rights and obligations of the Parties under the Stalking Horse Purchase Agreement shall automatically end without Liability against any other Party or its Affiliates except that Section 5.7 and Article IX (other than Section 9.9) shall remain in full force and survive any

27

termination by the Buyer of the Stalking Horse Asset Purchase Agreement. Nothing herein shall permit the Sellers to terminate the Stalking Horse Asset Purchase Agreement. The Buyer, the DIP Agent, and the DIP Lender are not waiving any existing or future defaults or events of default under the DIP Credit Documents or the Stalking Horse Purchase Agreement nor are the Buyer, the DIP Agent, and the DIP Lenders committing, agreeing, or required to amend, forbear, extend (including extend the Scheduled Maturity Date or the End Date), otherwise modify the DIP Credit Documents, or provide additional funding thereunder after (i) the occurrence of an Event of Default under the DIP Credit Documents other than failure of this Sale Hearing to be concluded by December 24, 2020 or (ii) the Scheduled Maturity Date; *provided*, *however*, nothing in this Sale Order shall prevent the Debtors, the DIP Agent or the DIP Lenders from agreeing to modify the DIP Credit Documents (including to provide additional funding thereunder), subject to any required notice and/or approval by this Court..[7]

11. The sale of the Avoidance Actions pursuant to the Stalking Horse Purchase Agreement is hereby approved; *provided* that, as provided for in the Committee Objection Resolution, the Avoidance Actions and proceeds thereof set forth on **Exhibit E** attached hereto shall not be Acquired Assets of the Buyer as of the Closing Date and shall vest in a liquidating trust for the specific benefit of general unsecured creditors in accordance with any confirmed chapter 11 plan in these Chapter 11 Cases (the "Committee Avoidance Actions"); *provided, however,* if no chapter 11 plan is confirmed in these Chapter 11 Cases, without further order of this Court and without further action of any party, upon the conversion of the Chapter 11 Cases to chapter 7, or dismissal of the Chapter 11 Cases, the Committee Avoidance Actions shall be Acquired Assets under the Stalking Horse Purchase Agreement and this Sale Order. Standing to

---

[7] Capitalized terms used in this paragraph not otherwise defined herein shall have the meanings ascribed to them in the Final DIP Order.

file, prosecute, settle any and all claims or causes of action that are Acquired Assets, including, but not limited to, the Avoidance Actions (other than the Committee Avoidance Actions, to the extent not an Acquired Asset in accordance with this Paragraph 11) shall be irrevocably vested in the Buyer to the fullest extent permitted by applicable law and the Buyer shall have the unconditional right to file, prosecute, settle, and/or collect such claims or causes of action, including, but not limited to, the Avoidance Actions (other than the Committee Avoidance Actions, to the extent not an Acquired Asset in accordance with this Paragraph 11), in the name of the Debtors or on the Debtors' behalf as if such claims or causes of action, including, but not limited to, the Avoidance Actions (other than the Committee Avoidance Actions, to the extent not an Acquired Asset in accordance with this Paragraph 11), were retained by the Debtors and is hereby appointed irrevocable attorney-in-fact for that purpose.

12.     On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Sellers' rights, title, and interest in the Acquired Assets or a bill of sale transferring good and marketable title in such Acquired Assets to the Buyer on the Closing Date pursuant to the terms of the Stalking Horse Purchase Agreement and this Sale Order, free and clear of all Claims and Liens (other than Assumed Liabilities and Permitted Liens).  For the avoidance of doubt, the Excluded Assets set forth in the Stalking Horse Purchase Agreement and herein are not included in the Acquired Assets, and the Excluded Liabilities set forth in the Stalking Horse Purchase Agreement and herein are not Assumed Liabilities.

13.     The Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Sellers constituting Acquired Assets, and all such licenses, permits, registrations, and governmental authorizations and

approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date as provided by the Stalking Horse Purchase Agreement.  To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any grant, permit, or license relating to the operation of the Acquired Assets sold, transferred, assigned, or conveyed to the Buyer on account of the filing or pendency of the Chapter 11 Cases or the consummation of the Sale.

14.     Except with respect to Assumed Liabilities and Permitted Liens, all persons and entities holding Claims against the Debtors or Claims or Liens in all or any portion of the Acquired Assets arising under or out of, in connection with or in any way relating to the Debtors, the Acquired Assets, the operation of the Debtors' business prior to the Closing Date, the transfer of the Acquired Assets to the Buyer, or otherwise, are hereby forever barred, estopped, and permanently enjoined from asserting against the Buyer or its successors or assigns, their property, or the Acquired Assets such persons' or entities' Claims against the Debtors or Claims or Liens in and to the Acquired Assets.  On and after the Closing Date, each creditor is authorized and directed to execute such documents and take all other actions as may be deemed by the Buyer to be necessary or desirable to evidence the release of Claims or Liens, if any, as provided for herein, as such Claim or Lien may have been recorded or may otherwise exist.

15.     All persons and entities that are presently, or on the Closing Date may be, in possession of some or all of the Acquired Assets to be sold, transferred, or conveyed (wherever located) to the Buyer pursuant to the Stalking Horse Purchase Agreement are hereby directed to surrender possession of such Acquired Assets to the Buyer on the Closing Date.  To the extent that any such person or entity fails or refuses to surrender possession of such Acquired Assets on or after the Closing Date, the Buyer has the right to commence a turnover action and have it

30

considered on an expedited basis. All persons are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with, or which would be inconsistent with, the ability of the Sellers to sell and transfer any or all of the Acquired Assets to the Buyer, or the ability of the Buyer to take title and possession of any or all of the Acquired Assets, in accordance with the terms of the Stalking Horse Purchase Agreement and this Sale Order.

16.     This Sale Order is and shall be effective as a determination that, as of the Closing Date, all Claims and Liens of any kind or nature whatsoever existing as to the Acquired Assets before the Closing, other than Assumed Liabilities and Permitted Liens, or as otherwise provided in this Sale Order, shall have been unconditionally released, discharged, and terminated. Moreover, this Sale Order is and shall be effective as a determination that, as of the Closing Date, the conveyances described herein have been affected, with all such Claims and Liens to attach to any net proceeds received by the Sellers ultimately attributable to the Acquired Assets against, or in, which such Claims or Liens are asserted, subject to the terms thereof, with the same validity, force, and effect, and in the same order of priority, which such Claims or Liens now have against the Acquired Assets, subject to any rights, claims, and defenses that the Sellers or their estates, as applicable, may possess with respect thereto.

17.     This Sale Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and

ACTIVE 54439676v3

entities is hereby authorized and directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Stalking Horse Purchase Agreement.

18.     Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Stalking Horse Purchase Agreement.  A certified copy of this Sale Order may be:  (i) filed with the appropriate clerk; (ii) recorded with the recorder; or (iii) filed or recorded with any other governmental agency to act to cancel any of the Claims, Liens, and other encumbrances of record.

19.     If any person or entity that has filed statements or other documents or agreements evidencing Claims or Liens in all or any portion of the Acquired Assets has not delivered to the Sellers prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of Liens and Claims and any other documents necessary or desirable to the Buyer for the purpose of documenting the release of all Claims and Liens (other than Assumed Liabilities or Permitted Liens), which the person or entity has or may assert with respect to all or any portion of the Acquired Assets, then the Buyer and the Sellers are hereby authorized to execute and file such statements, instruments, releases and other documents in the name and on behalf of such person or entity with respect to the Acquired Assets; *provided* that, notwithstanding anything in this Sale Order or the Stalking Horse Purchase Agreement to the contrary, the provisions of this Sale Order shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.

ACTIVE 54439676v3

**DIP Facility Obligations; Continuing Lien**

20.     On the Closing Date, subject only to retaining Excluded Cash, the Debtors shall pay directly to the Buyer all remaining cash collateral and all cash in immediately available funds, without deduction or setoff, which payment shall be indefeasible once made, and not subject to recovery, diminution, reduction, or reversal on any basis, free and clear of all Claims, Liens, interests and encumbrances, including those of the Prepetition Secured Parties (as defined in the Final DIP Order) under the Final DIP Order.  Notwithstanding anything to the contrary contained in this Sale Order or otherwise, the liens and claims of the DIP Agent and the DIP Lenders (each as defined in the Final DIP Order), as applicable, pursuant to the Final DIP Order shall continue to attach to all cash and cash collateral remaining at the Debtors, including the Excluded Cash, with the same priority, validity, extent, force, and effect as they now have to secure the obligations owed by the Debtors to the Buyer to pay to the Buyer any funds remaining in the Debtors' accounts after payment of the amounts set forth in the Approved DIP Budget (as defined in the Final DIP Order); *provided, however*, that notwithstanding the occurrence of the Scheduled Maturity Date (as defined in the Final DIP Order), the Debtors shall be authorized to continue to use Excluded Cash to fund the Approved DIP Budget in accordance with the Final DIP Order and to fund costs incurred in performing their obligations under any Transition Services Agreement in accordance with an agreement with the Buyer, including on a budget with respect thereto.  At such time as the funds remaining at the Debtors are no longer necessary to fund the Approved DIP Budget or agreed costs incurred in performing their obligations under any Transition Services Agreement, such funds shall be promptly paid to the Buyer and the Final DIP Order and all the rights, claims, and interests of the DIP Agent and the DIP Lenders, as applicable, pursuant thereto shall remain in full force and effect until such payments have been indefeasibly paid in cash to the Buyer.

21.     Without limitation to the other provisions of this Sale Order, at the Closing, the Prepetition Secured Parties (as such term is defined in the Final DIP Order), shall execute such documents and take such other actions as may be reasonably necessary to release their Claims and Liens in and to the Cash of the Debtors as of the Closing that is transferred to the Buyer; *provided*, *however*, any failure to do so shall not in any way affect the validity of such transfer pursuant to this Sale Order.

**Assumed Contracts**

22.     The Sellers are hereby authorized and directed in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to (a) assume and assign the Assumed Contracts to the Buyer free and clear of all Claims, Liens, and other interests of any kind or nature whatsoever (other than the Assumed Liabilities), subject to the terms of the Stalking Horse Purchase Agreement and this Sale Order, as of the applicable Assumption Effective Date and (b) execute and deliver to the Buyer such documents or other instruments as the Buyer deems necessary to assign and transfer the Assumed Contracts to the Buyer in accordance with the Stalking Horse Purchase Agreement. The payment of the applicable Cure Amounts (if any) by the Buyer as required by the Stalking Horse Purchase Agreement and this Sale Order shall (i) effect a cure of all defaults existing thereunder as of the applicable Assumption Effective Date, (ii) compensate for any actual pecuniary loss to the applicable Contract Counterparty resulting from such default, and (iii) together with the assignment by the Sellers to and the assumption of the Assumed Contracts by the Buyer, constitute adequate assurance of future performance thereof.

23.     On the Closing Date, the Debtors shall assume and assign to Buyer each Assumed Contract designated by Buyer for assumption and assignment on the Closing Date in accordance with the Stalking Horse Purchase Agreement and this Sale Order, and which Assumed Contracts are set forth on **Exhibit B** attached hereto.  In accordance with the terms of the Stalking Horse

34

Purchase Agreement and this Sale Order, through the earlier of (i) the ninety (90) days following the Closing Date and (ii) the expiration of the Debtors' deadline to assume or reject unexpired leases of non-residential real property pursuant to section 365(d)(4) of the Bankruptcy Code, subject to any and all rights to seek an extension thereof (the "Designation Rights Period"), the Buyer may deliver written notice (each, a "Designation Notice") to the Debtors designating any Contract or Lease (each a "Designated Contract") set forth on the notice attached hereto as **Exhibit F-1**, including, but not limited to, those set forth on **Exhibit F-2** (collectively, the "Notice of Designated Contracts") for either: (a) assumption and assignment to the Buyer, or (ii) rejection. Any such Designation Notice must be provided by the Buyer to the Debtors at least three (3) Business Days prior to the expiration of the Designation Rights Period. Within two (2) Business Days following the Debtors' receipt of any such Designation Notice, the Debtors shall file a notice on the docket in the above-captioned case and provide notice to the counterparty to such Designated Contract (each a "Designation Counterparty"), and its counsel, if known, of the Debtors' intent to assume and assign or reject such Designated Contract, which notice shall include, among other things, a deadline (the "Objection Deadline") of no less than ten (10) Business Days from the date of service of such notice to object to the assumption and assignment of such Designated Contract. Upon the expiration of this Objection Deadline, no further Court approval shall be required for the transfer of such Contract or Leases in accordance with the terms of the Stalking Horse Purchase Agreement unless (1) the counterparty to the Designated Contract timely serves an objection upon the Debtors and the Buyer that relates to adequate assurance of future performance or a cure issue that could not have been raised in an objection to any Cure Notice prior to the Sale Hearing and pertains to matters arising after the Closing; *provided, however*, that the rights of the parties set forth on **Exhibit G** attached hereto are fully reserved

relating to section 365 of the Bankruptcy Code including assumption, assumption and assignment, adequate assurance of future performance, and the cure of defaults, and such objections are hereby adjourned until a hearing on the assumption of their Assumed Contract or Designated Contract, unless otherwise resolved by the Buyers, the Debtors, and such objecting parties (the "Adjourned Objections"), or (2) the Designation Counterparty otherwise consents to the assumption and assignment on terms mutually agreed by the Buyer and the Designation Counterparty.  To the extent a Designation Counterparty timely files an objection with respect to the assumption and assignment or rejection of such Designated Contract, the Debtors shall be authorized to settle or resolve such objection pursuant to the terms of the Stalking Horse Purchase Agreement and this Sale Order without further order from this Court; *provided, however*, that if the Debtors, Buyer, and objecting Designation Counterparty are unable to resolve such objection, the Debtors shall schedule the matter for hearing on no less than five (5) Business Days' notice.

24.     No finding of fact or conclusion of law set forth in this Sale Order concerning the assumption and assignment of any executory contract or real property Lease that is the subject of an Adjourned Objection shall apply, be binding upon, be law of the case, or operate to collaterally estop any argument by the parties set forth on **Exhibit G** solely in connection with the resolution of an Adjourned Objection, unless agreed to by the counterparty to such executory contract or real property Lease or otherwise ordered by the Court after a hearing on the Adjourned Objection.  Any executory contract or real property Lease subject to an Adjourned Objection, shall not be assigned to the Buyer or a designee of the Buyer, as applicable, until such Adjourned Objection is resolved or adjudicated.

25.     During the Designation Rights Period, the Buyer may deliver a written notice to the Debtors of Buyer's entry into an agreement with a Designation Counterparty pursuant to which

such Designation Counterparty consents to the assumption and assignment to Buyer or its designee of such Designated Contract on the terms set forth in such agreement (each, an "Amended Designated Contract").  The assumption and assignment of such Amended Designated Contract shall be effective on the date set forth in the written notice provided to the Debtors without further order of the Court, unless (a) the counterparty, the Debtors, and the Buyer agree or (b) the Court adjudicates otherwise.  During the Designation Rights Period, to the extent the Buyer is operating the Debtors' locations, there shall be insurance covering the operations.

26.    Pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Sellers of the Assumed Contracts shall not be a default thereunder.  After the payment of the relevant Cure Amounts as required by the Stalking Horse Purchase Agreement and this Sale Order, the Sellers shall not have any further liabilities to the Contract Counterparties, and the counterparties shall be estopped from asserting any and all Claims or Liens, whether known or unknown, against the Sellers on account of the Assumed Contract.

27.    Any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract to the Buyer or allows the party to such Assumed Contract to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract to the Buyer, constitute anti-assignment provisions that are unenforceable and will have no force and effect solely with respect to assumption and assignment pursuant to this Sale Order or any subsequent assumption and assignment order.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Sellers and assignment to the Buyer of the Assumed Contracts have been satisfied.

28.     Upon the applicable Assumption Effective Date of any Assumed Contract, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title and interest of the Sellers under such Assumed Contract.  To the extent provided in the Stalking Horse Purchase Agreement, the Debtors shall cooperate with and take all actions reasonably requested by the Buyer to effectuate the foregoing.

29.     Upon the applicable Assumption Effective Date and the payment of the relevant Cure Amount, if any, the Buyer shall be deemed to be substituted for the Sellers as a party to the applicable Assumed Contract and the Sellers shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under such Assumed Contract.

30.     Upon the applicable Assumption Effective Date and the payment of the relevant Cure Amount, if any, the Assumed Contracts will remain in full force and effect (subject to any amendments agreed to between the counterparty to such Assumed Contract and the Buyer), and no default shall exist under the Assumed Contracts and no counterparty to any Assumed Contract shall be permitted (i) to declare a default by the Buyer under such Assumed Contract, or (ii) to otherwise take action against the Buyer as a result of any Debtors' financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assumed Contract.  Each non-Debtor party to any Assumed Contract hereby is also forever barred, estopped, and permanently enjoined from (a) asserting against the Debtors or the Buyer, or the property of any of them, any default or Claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the applicable Assumption Effective Date, or, against the Buyer, any counterclaim, defense, setoff, or any other Claim asserted or assertable against the Debtors, expect as otherwise provided in this Sale Order, and (b) imposing or charging against the Buyer or its affiliates any rent accelerations, assignment fees, increases (including advertising rates), or any

other fees as a result of the Debtors' assumption and assignments to the Buyer of the Assumed Contracts.

31.     Nothing in this Sale Order or the Stalking Horse Purchase Agreement shall affect or modify the Debtors' obligations pursuant to section 365(d)(3) of the Bankruptcy Code.

32.     For the avoidance of doubt and notwithstanding anything to the contrary contained herein or in the Stalking Horse Purchase Agreement, the Buyer shall be liable for all obligations and liabilities under the Assumed Contracts that are leases of non-residential real property, as may be modified by agreement of the Buyer and the counterparty to such Assumed Contract, to the extent such obligations or liabilities arise or are (as required by the applicable lease) billed after the Closing Date or the Assumption Effective Date, as applicable, including, but not limited to any and all liabilities or obligations arising under the leases with respect to any accruing and not yet due adjustments or reconciliations (including, without limitation, for royalties, percentage rent, utilities, taxes, common area or other maintenance charges, promotional funds, insurance, fees, or other charges) when billed in the ordinary course, regardless of whether such obligations or liabilities are attributable to the period prior to the Closing Date or the Assumption Effective Date, as applicable, unless otherwise agreed to in writing by the Buyer and the counterparty to such Assumed Contract, in each case subject to the terms and conditions of the lease, as may be modified by agreement of the Buyer and the counterparty to such Assumed Contract.

33.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, other than the right to payment of any Cure Amount, all Contract Counterparties are forever barred and permanently enjoined from raising or asserting against either the Sellers or the Buyer any assignment fee, default, breach, Claim, pecuniary loss, or condition to assignment arising under or

related to the Assumed Contracts (other than those subject to Adjourned Objections) existing as of the Closing Date or arising by reason of the Closing.

34.     Notwithstanding that as of the Assumption Effective Date, as provided for by this Sale Order and the Stalking Horse Purchase Agreement, the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assigned Contracts, any counterparty to an Assumed Contract may seek to recover from the Debtors indemnification obligations, if any, arising from third-party claims asserted with respect to or arising from the Debtors' use and occupancy of Leased Real Property prior to the Assumption Effective Date for which the Debtors have a duty to indemnify such Lease counterparty pursuant to any Lease, solely with respect to available insurance coverage.

35.     Any Contract Counterparty who did not timely file an objection to the assumption of its Assumed Contract shall be deemed to have consented to the Assumed Contract's assumption and assignment to the Buyer pursuant to section 365 of the Bankruptcy Code.  Other than the Adjourned Objections, all objections to the assumption and assignment of the Assumed Contracts that have not been withdrawn, waived, settled, or adjourned, as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included in such objections or otherwise, are hereby denied and overruled on the merits with prejudice.

36.     All non-Debtor counterparties to the Assumed Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable request of the Buyer, any instruments, applications, consents, or other documents that may be required or requested by any public authority or other party or entity to effectuate the applicable transfers in connection with the sale of the Acquired Assets.

**Other Provisions**

37.     The Committee Objection Resolution shall become effective after the expiration of the Challenge Expiration Notice Period and the Member Notice Period if no objections are received or if the DIP Lenders otherwise agree.

38.     The *Preliminary Objection of Jason Blank, Individually and on Behalf of Similarly Situated Class Members, to the Sale Motion* [Docket No. 513] and the *Objection of Jason Blank, Individually and on Behalf of Similarly Situated Class Members, to the Sale Motion, Declaration of Brian Gleason in Support of Sale Motion, the Debtors' Omnibus Reply in Support of Sale Motion, and BCG Lender Rep, LLC's Omnibus Response in Support of Sale Motion* [Docket No. 531], were withdrawn on the record for purposes of the Sale Hearing at the Sale Hearing; provided that such objecting party reserves the right to file an objection to the sale of Membership Assets in accordance with paragraph 9(b) above on any grounds including issues raised in the previously filed Objections [Docket Nos. 513 and 531] and all parties' rights to object thereto, including issues previously raised in response to such Objections, are expressly reserved.   Notwithstanding anything to the contrary in this Sale Order or in the Stalking Horse Asset Purchase Agreement, (i) Assumed Liabilities shall not include any Liabilities relating to Jason Blank, any customer account, customer purchases, membership or personal training agreement, or other Contract, if any, with Jason Blank, and any Customer Credits of Jason Blank, all of which shall be Excluded Liabilities and (ii) Acquired Assets shall not include any customer account, customer purchases, membership or personal training agreement, or other Contract, if any, with Jason Blank, all of which shall be Excluded Assets.

39.     With respect to the Debtors' assets located in the jurisdictions set forth below (collectively, the "Tax Authorities"), to the extent an Acquired Asset, the property shall be conveyed subject to existing senior liens for unpaid ad valorem taxes of the respective Tax

41

Authorities for the 2020 calendar year in the maximum principal amounts set forth below for each

Tax Authority, which liens shall be Permitted Liens and to the extent a Liability, such Liabilities

shall not be Excluded Liabilities, in each case subject to the resolution of any objections (as

discussed below), as follows:

- Maricopa County, in a principal amount not to exceed $ 29,574.98;
- Denton County, in a principal amount not to exceed $1,068.84;
- Broward County, in a principal amount not to exceed $ 105,312.63;
- Harris County, in a principal amount not to exceed $13,395.98;
- Dallas County, in a principal amount not to exceed $ 23,188.56;
- Lewisville ISD, in a principal amount not to exceed $ 6,400.62; and
- Tarrant County, in a principal amount not to exceed $ 5,579.54.

Further, should the property subject to the tax liens be conveyed as an Acquired Asset to

the Purchaser on or after January 1, 2021, such property shall be conveyed subject to existing

senior liens for unpaid ad valorem taxes of the respective Tax Authorities for the 2021 calendar

year which liens shall also be Permitted Liens and, to the extent Liabilities, such taxes shall not be

Excluded Liabilities, in each case subject to the resolution of any objections (as discussed

below).  The foregoing 2020 tax amounts do not constitute an allowance of the claims of the Tax

Authorities or of the amounts such Tax Authorities may be entitled to receive. The claims and liens

of any Tax Authority shall remain subject to any objections made by any party (including the

Debtors and the Buyer) who would otherwise be entitled to raise any objection as to, among other

things, the claim amount or the priority, validity, or extent of such liens.  Further, in the event such

taxes are not paid timely pursuant to applicable non-bankruptcy law, the Tax Authorities may

proceed to collect all amounts owed pursuant to their state law remedies, without further order or

recourse to this Court, subject to the respective rights and defenses of the Debtors and Buyer.

40.    The Change in Control Severance Agreement dated as of September 30, 2019, by

and between Debtor YouFit Health Clubs, LLC and Christy Berks-Stross (the "Severance

Agreement") shall be a Designated Contract as of the Closing Date.  The Buyer shall have the right to designate the Severance Agreement, and Christy Berks-Stross shall have the right to oppose the same, in accordance with the terms of the Stalking Horse Purchase Agreement and Paragraph 23 of this Sale Order.  All rights, claims, defenses, and arguments of the Debtors, the Buyer, and Christy Berks-Stross with respect to the assumption, assignment, or rejection of the Severance Agreement, are expressly reserved.

41.    Pursuant to the Court's ruling at the Sale Hearing, (a) that certain Preferred Unit Purchase Agreement, dated April 8, 2014, by and among, among others, Debtor YouFit Health Clubs, LLC, Rick Berks, Christy Berks-Stross, and Jason Stross, (b) that certain Profits Interest Unit Agreement, dated December 31, 2014, by and between Debtor YouFit Health Clubs, LLC and Christy Berks-Stross, and (c) that certain Profits Interest Unit Agreement, dated August 10, 2016, by and between Debtor YouFit Health Clubs, LLC and Christy Berks-Stross (collectively, (a), (b) and (c), the "Berks-Stross Agreements") are hereby deemed to be included in the list of assets defined as "Excluded Assets" in the Stalking Horse Purchase Agreement and Section 2.1(q) of the Stalking Horse Purchase Agreement is hereby deleted and replaced with "Reserved."  For the avoidance of doubt, the Berks-Stross Agreements shall not be transferred to the Buyer in connection with the Sale.

42.    Any Prepetition Liabilities or DIP Obligations not included in the Credit Bid Consideration and not assumed by the Buyer as specified in Paragraph P of this Sale Order shall remain outstanding against the relevant Debtors until such Prepetition Liabilities are indefeasibly repaid in full in cash or other otherwise satisfied in a manner acceptable to the Prepetition Lenders.

43.    If and to the extent the Debtors' Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, any cash or cash collateral held by the Debtors for which no

potential expense exists under the Approved DIP Budget shall be remitted to the Buyer prior to such conversion.

44.     Absent the express written consent of the Buyer, the Debtors shall not settle or otherwise resolve any Litigation with any third party or any Governmental Entity other than any settlement pursuant to which (i) any Liability thereunder will be an Excluded Liability, (ii) no payment from the Buyer is sought or required, and (iii) no restrictions are placed on or affecting the Business or Acquired Assets.

45.     The consideration provided by the Buyer for the Sellers' rights, title, and interest in the Acquired Assets under the Stalking Horse Purchase Agreement constitutes reasonably equivalent value and fair consideration for the Acquired Assets under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and other applicable law within the meaning of section 544(b) of the Bankruptcy Code, under the laws of the United States, any state, territory, possession, or the District of Columbia.

46.     Effective upon the Closing Date, except as set forth in the Stalking Horse Purchase Agreement with respect to Assumed Liabilities and Permitted Liens, all persons and entities are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Buyer, its successors and assigns, or the Acquired Assets, with respect to any (i) Claims and Liens arising under, out of, in connection with or in any way relating to the Sellers, the Buyer, the Acquired Assets, or the operation of the Acquired Assets prior to the Closing or (ii) successor liability based, in whole or in part, directly or indirectly, on any theory of successor or vicarious liability of any kind of character, or based upon any theory of antitrust, environmental, successor or transferee liability, *de facto* merger or substantial continuity, labor

and employment, or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, or liquidated or unliquidated, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against the Buyer, its successors or assigns, assets, or properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Buyer, its successors or assigns, assets, or properties; (c) creating, perfecting, or enforcing any Claims or Liens against the Buyer, its successors or assigns, assets, or properties; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Buyer or its successors or assigns; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating, or failing or refusing to renew any license, permit or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with the Acquired Assets; *provided, however*, that any right of setoff or recoupment of counterparties that filed Adjourned Objections is preserved to the extent such rights exist under applicable law, but subject to the rights of the Debtors, the Buyer, and any of their affiliates and successors to contest any such rights of setoff and/or recoupment.

47.    Except for the Assumed Liabilities and Permitted Liens, the Buyer shall not have any liability or other obligation of the Debtors arising under or related to any of the Acquired Assets or the Stalking Horse Purchase Agreement or the transactions related thereto.  Without limiting the generality of the foregoing, and except for the Assumed Liabilities or Permitted Liens provided in the Stalking Horse Purchase Agreement, the Buyer shall not be liable for any Claims or Liens against the Sellers  or any of their  predecessors or affiliates, and the Buyer shall have no

successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto* merger or substantial continuity, labor and employment, or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, or liquidated or unliquidated, with respect to the Sellers or any obligations of the Sellers arising before the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of any of the Acquired Assets before the Closing.

48.    The transactions contemplated by the Stalking Horse Purchase Agreement are undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assumed Contracts), unless such authorization and such Sale are duly stayed pending such appeal.  The Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

49.    No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the transactions with the Debtors that are approved by this Sale Order, including, without limitation, the Stalking Horse Purchase Agreement and the Sale.

50.    The failure specifically to include any particular provision of the Stalking Horse Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Stalking Horse Purchase Agreement be authorized and approved in its entirety.

**Amendment to Stalking Horse Purchase Agreement**

51.     Subject to Paragraph 23 above, Section 2.7 of the Stalking Horse Purchase Agreement shall be amended to also provide the following:

> The Buyer shall have the option to delay the purchase of any Acquired Assets hereunder (the "Delayed Acquired Assets") to one or more days following the Closing Date at the Buyer's expense as set forth in any Transition Services Agreement.  The Buyer shall notify the Sellers of any Delayed Acquired Assets by written notice given prior to the Closing Date.  In the ninety (90) day period following the Closing Date, the Buyer shall have the option to designate any Delayed Acquired Asset as an Acquired Asset or an Excluded Asset by providing notice of such designation to the Sellers.  At such time, the Delayed Acquired Asset shall be deemed an Acquired Asset or an Excluded Asset for all purposes herein and under the Sale Order; provided that no additional consideration shall be due for any Delayed Acquired Assets.  The Sellers and the Buyer shall execute, acknowledge, and deliver such other instruments and take commercially reasonable efforts as are reasonably practicable to implement the foregoing.

52.     The Stalking Horse Purchase Agreement and any related or ancillary agreements, documents or other instruments may be further modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court; *provided* that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.  The Stalking Horse Purchase Agreement shall not be altered, amended, rejected, discharged, or otherwise affected without the prior written consent of the Buyer.

53.     To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in the Chapter 11 Cases, the terms of this Sale Order shall govern.  To the extent there are any inconsistencies between the terms of this Sale Order and the Stalking Horse Purchase Agreement (including any ancillary documents executed in connection therewith), the terms of this Sale Order shall govern.

54.     The provisions of this Sale Order are nonseverable and mutually dependent.

55.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

ACTIVE 54439676v3

56.     The transactions authorized herein shall be of full force and effect, regardless of any Debtors' lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

57.     From time to time, as and when requested, all parties shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as the requesting party may reasonably deem necessary or desirable to consummate the Sale, including such actions as may be necessary to vest, perfect, or confirm or record or otherwise in the Buyer its right, title, and interest in and to the Acquired Assets.

58.     Subject to the Debtors' performance under the terms of any Transition Services Agreement, neither the Debtors nor any of their affiliates shall use, license, or permit any third party to use any name, slogan, logo, or trademark which is similar to any of the names, trademarks, or service marks included in the Intellectual Property in the Acquired Assets, and the Sellers are directed to change its corporate name to a name which (i) does not use the name "YouFit" or any other name that references or reflects any of the foregoing in any manner whatsoever, (ii) is otherwise substantially dissimilar to its present name, and (iii) is approved in writing by the Buyer. Within a reasonable time after the Closing Date, the Debtors shall file a separate motion consistent with Local Rule 9004-1(c) seeking to modify the case caption to reflect the Sellers' new corporate name and serve the same in accordance with Local Rule 9006-1.

59.     The Debtors are authorized to take all actions necessary to effect the relief granted pursuant to this Sale Order in accordance with the Motion.

60.     The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified, lifted, and annulled with respect to the Debtors and the Buyer to the extent necessary,

without further order of this Court, to (i) allow the Buyer to deliver any notice provided for in the Stalking Horse Purchase Agreement, and (ii) allow the Buyer to take any and all actions permitted under the Stalking Horse Purchase Agreement or any other Sale-related document in accordance with the terms and conditions thereof.  The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Stalking Horse Purchase Agreement or any other Sale-related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence.  The portion of the DIP Obligations and the Prepetition Liabilities in excess of the Credit Bid Claim and those assumed as part of the Purchase Price shall remain outstanding against the applicable Debtors and any of their assets not purchased by the Buyer until such Prepetition Liabilities are indefeasibly repaid in full in cash or other otherwise satisfied in a manner acceptable to the Prepetition Lenders, and the Prepetition Agent and the Prepetition Lenders shall continue to be protected by and entitled to the benefit of the terms and provisions of the Prepetition Credit Documents and DIP Credit Documents (as defined in the Final DIP Order) and other orders entered by this Court in respect thereof.

61.     Notwithstanding the provisions of Bankruptcy Rule 6004(h) and Bankruptcy Rule 6006(d), and pursuant to Bankruptcy Rules 7062(g) and 9014, this Sale Order shall not be stayed, shall be effective immediately upon entry, and the Debtors and the Buyer are authorized to close the Sale immediately upon entry of this Sale Order.  Time is of the essence in closing the transactions referenced herein, and the Debtors and the Buyer intend to close the Sale as soon as practicable.

62.     This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Stalking Horse Purchase

*ACTIVE 54439676v3*

Agreement, all amendments thereto as well as any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party and adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

## Exhibit A

**Stalking Horse Purchase Agreement**

## **Exhibit A–1**

**Asset Purchase Agreement**
**November 10, 2020**

# ASSET PURCHASE AGREEMENT

**by and between**

**YOUFIT HEALTH CLUBS, LLC AND CERTAIN OF ITS DIRECT AND INDIRECT SUBSIDIARIES NAMED HEREIN, COLLECTIVELY, as Seller**

**and**

**YF FC Acquisition, LLC, as Buyer.**

**November 10, 2020**

# TABLE OF CONTENTS

Page

**ARTICLE I** DEFINITIONS ................................................................................... 1

**ARTICLE II** PURCHASE AND SALE ............................................................... 14
**Section 2.1**   Purchase and Sale of Acquired Assets.......................................... 14
**Section 2.2**   Excluded Assets............................................................................ 17
**Section 2.3**   Assumed Liabilities....................................................................... 17
**Section 2.4**   Excluded Liabilities ...................................................................... 18
**Section 2.5**   Consideration................................................................................ 20
**Section 2.6**   Assumption and Assignment of Contracts, Leases, Employee Benefit Plans and Permits ........................................................................................ 20
**Section 2.7**   Designation Rights........................................................................ 24
**Section 2.8**   Closing.......................................................................................... 25
**Section 2.9**   Deliveries at Closing .................................................................... 25
**Section 2.10**  Allocation...................................................................................... 26
**Section 2.11**  Proration of Taxes and Other Items.............................................. 27

**ARTICLE III** REPRESENTATIONS AND WARRANTIES OF THE SELLERS. ................. 28
**Section 3.1**   Organization of Each Seller; Good Standing................................ 28
**Section 3.2**   Authorization of Transaction ........................................................ 29
**Section 3.3**   Noncontravention; Consents and Approvals................................. 29
**Section 3.4**   Title to Acquired Assets ............................................................... 30
**Section 3.5**   Contracts ....................................................................................... 30
**Section 3.6**   Legal Compliance......................................................................... 32
**Section 3.7**   Litigation ...................................................................................... 32
**Section 3.8**   Environmental, Health and Safety Matters................................... 32
**Section 3.9**   Employees and Employment Matters............................................ 33
**Section 3.10**  Employee Benefit Plans ............................................................... 33
**Section 3.11**  Leased Real Property .................................................................... 33
**Section 3.12**  Permits .......................................................................................... 34
**Section 3.13**  Insurance....................................................................................... 34
**Section 3.14**  Absence of Changes...................................................................... 34
**Section 3.15**  Intellectual Property...................................................................... 34
**Section 3.16**  Brokers' Fees................................................................................. 35
**Section 3.17**  Taxes............................................................................................. 35
**Section 3.18**  No Other Representations or Warranties ....................................... 35

**ARTICLE IV** REPRESENTATIONS AND WARRANTIES OF THE BUYER ................ 36
**Section 4.1**   Organization of the Buyer ............................................................ 36
**Section 4.2**   Authorization of Transaction ........................................................ 36
**Section 4.3**   Noncontravention.......................................................................... 37
**Section 4.4**   Litigation ...................................................................................... 37

i

Page

| Section 4.5 | Brokers' Fees | 37 |
| Section 4.6 | Financial Capacity | 38 |
| Section 4.7 | Condition of the Business | 38 |
| Section 4.8 | Adequate Assurances Regarding Executory Contracts | 38 |
| Section 4.9 | Good Faith Purchaser | 38 |

**ARTICLE V PRE-CLOSING COVENANTS** ..... 39
| Section 5.1 | Certain Efforts; Cooperation | 39 |
| Section 5.2 | Notices and Consents | 39 |
| Section 5.3 | Bankruptcy Actions | 39 |
| Section 5.4 | Conduct of Business | 41 |
| Section 5.5 | Notice of Developments | 43 |
| Section 5.6 | Access | 43 |
| Section 5.7 | Press Releases and Public Announcements | 43 |
| Section 5.8 | Bulk Transfer Laws | 43 |
| Section 5.9 | Post-Closing Operation of the Sellers | 43 |
| Section 5.10 | Transfer of Permits | 44 |
| Section 5.11 | Bankruptcy Court Approval | 44 |

**ARTICLE VI OTHER COVENANTS** ..... 45
| Section 6.1 | Cooperation | 45 |
| Section 6.2 | Further Assurances | 45 |
| Section 6.3 | Availability of Business Records | 46 |
| Section 6.4 | Employee Matters | 46 |
| Section 6.5 | Transfer Taxes | 47 |
| Section 6.6 | Wage Reporting | 47 |
| Section 6.7 | Insurance Policies | 47 |
| Section 6.8 | Collection of Accounts Receivable | 48 |
| Section 6.9 | Reasonable, Out-of-Pocket, Non-Fixed Costs | 48 |

**ARTICLE VII CONDITIONS TO OBLIGATION TO CLOSING** ..... 48
| Section 7.1 | Conditions to the Buyer's Obligations | 48 |
| Section 7.2 | Conditions to the Sellers' Obligations | 50 |
| Section 7.3 | No Frustration of Closing Conditions | 51 |

**ARTICLE VIII TERMINATION** ..... 51
| Section 8.1 | Termination of Agreement | 51 |
| Section 8.2 | Effect of Termination | 52 |
| Section 8.3 | Expenses | 52 |
| Section 8.4 | Acknowledgement | 52 |

**ARTICLE IX MISCELLANEOUS** ..... 53
| Section 9.1 | Entire Agreement | 53 |
| Section 9.2 | Incorporation of Annexes, Exhibits and Disclosure Schedule | 53 |
| Section 9.3 | Amendments and Waivers | 53 |

*ACTIVE 53667627v2*

AmericasActive:14734294.18

Table of Contents (continued)

Page

**Section 9.4**   Succession and Assignment.................................................................53
**Section 9.5**   Notices.................................................................................................54
**Section 9.6**   Governing Law: Jurisdiction................................................................55
**Section 9.7**   Consent to Service of Process..............................................................55
**Section 9.8**   WAIVERS OF JURY TRIAL...............................................................55
**Section 9.9**   Specific Performance...........................................................................56
**Section 9.10**  Severability..........................................................................................56
**Section 9.11**  No Third-Party Beneficiaries...............................................................56
**Section 9.12**  No Survival of Representations, Warranties and Agreements..............56
**Section 9.13**  Construction.........................................................................................57
**Section 9.14**  Computation of Time...........................................................................57
**Section 9.15**  Mutual Drafting...................................................................................57
**Section 9.16**  Disclosure Schedule............................................................................57
**Section 9.17**  Headings; Table of Contents................................................................58
**Section 9.18**  Counterparts: Facsimile and Email Signatures.....................................58
**Section 9.19**  Time of Essence...................................................................................58

*ACTIVE 53667627v2*

AmericasActive:14734294.18

Exhibit A – Additional Seller Parties
Exhibit B – Bill of Sale
Exhibit C – Assignment and Assumption Agreement
Exhibit D – Intellectual Property Assignment
Exhibit E – Bidding Procedures

*ACTIVE 53667627v2*

AmericasActive:14734294.18

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (this "Agreement") is entered into as of November 10, 2020, by and among (a) (i) YouFit Health Clubs, LLC, a Delaware limited liability company ("Holdings") and (ii) the direct and indirect Subsidiaries of Holdings set forth on Exhibit A, (collectively, all of the Persons listed in this clause (a) are the "Sellers" and each a "Seller") and (b) YF FC Acquisition, LLC, a Delaware limited liability company (the "Buyer"). The Sellers and the Buyer are sometimes referred to collectively herein as the "Parties." Capitalized terms used but not otherwise defined herein shall have the meanings assigned to them in Article I.

WHEREAS, the Sellers are debtors-in-possession having commenced cases (the "Sellers' Chapter 11 Cases") under title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), through the filing of their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on November 9, 2020 (the "Petition Date") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, the Sellers conduct, among other things, the business of owning and operating gyms and other health clubs (the "Business");

WHEREAS, (i) the Sellers wish to sell, transfer and assign to the Buyer, and the Buyer wishes to purchase, acquire and assume from the Sellers, the Acquired Assets (as defined below) and (ii) the Buyer wishes to assume from the Sellers the Assumed Liabilities (as defined below), on the terms and subject to the conditions set forth herein and in accordance with sections 105, 363 and 365 and other applicable provisions of the Bankruptcy Code; and

WHEREAS, the Sellers have agreed to file the Sale Motion (as defined below) with the Bankruptcy Court and take the other steps set forth herein and in the Bidding Procedures Order, the Bidding Procedures and the Sale Order (as each such term is defined below) to implement the transactions contemplated hereby upon the terms and subject to the conditions set forth herein and in the Sale Order.

NOW, THEREFORE, in consideration of the mutual promises herein made, and in consideration of the representations, warranties and covenants herein contained, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Parties, the Parties agree as follows.

## ARTICLE I
## DEFINITIONS

For purposes of this Agreement, capitalized terms set forth in this Agreement shall have the meaning ascribed to such terms in this Article I.

"Accounts Receivable" means (a) all trade accounts receivable and other rights to payment from customers of any Seller (whether current or non-current), (b) all other accounts receivable, notes receivable, and other receivables of any Seller (whether current or non-current), (c) other amounts due to any Seller that such Seller has historically classified as accounts receivable in the consolidated balance sheet of such Seller (whether current or non-current), and

*ACTIVE 53667627v2*

(d) any security interest, claim, cause of action, remedy, or other right related to any of the foregoing, in each case, arising out of or in connection with the Business prior to the Closing.

"Acquired Assets" has the meaning set forth in Section 2.1.

"Affiliate" when used with reference to another Person means any Person, directly or indirectly, through one or more intermediaries, Controlling, Controlled by, or under common Control with, such other Person.

"Agreement" has the meaning set forth in the preamble.

"Allocation" has the meaning set forth in Section 2.10.

"Allocation Objection Notice" has the meaning set forth in Section 2.10.

"Alternative Transaction" means any transaction or series of related transactions (other than pursuant to this Agreement), whether effectuated pursuant to a merger, consolidation, tender offer, exchange offer, share exchange, amalgamation, stock acquisition, asset acquisition, business combination, restructuring, recapitalization, liquidation, dissolution, joint venture or similar transaction, whether or not proposed by the Sellers, pursuant to which one or more Sellers: (i) accept a Qualified Bid, other than that of the Buyer or its Affiliates, as the highest or otherwise best offer; or (ii) sell, transfer, lease or otherwise dispose of, directly or indirectly, including through an acquisition, asset sale, stock sale, purchase, merger, reorganization, recapitalization or other similar transaction with or involving any equity securities in any Seller or other interests in the Acquired Assets, including a stand-alone plan of reorganization, plan of liquidation, or refinancing, all or substantially all of the Acquired Assets (or agrees to any of the foregoing) in a transaction or series of transactions to a party or parties other than the Buyer or its Affiliates.

"Approved Budget" has the meaning set forth in the DIP Credit Agreement.

"Arbitrating Accountant" has the meaning set forth in Section 2.10.

"Assignment and Assumption Agreement" has the meaning set forth in Section 2.9(a)(iii).

"Assumable Permits" means all Permits relating to the Business that are transferable in accordance with their terms.

"Assumed Contracts" means those Leases and Contracts that have been, or will be, assigned to and assumed by the Buyer pursuant to Sections 2.6 or 2.7, as applicable, and section 365 of the Bankruptcy Code.

"Assumed Employee Benefit Plan" has the meaning set forth in Section 2.1(t).

"Assumed Employee Benefit Plan Schedule" has the meaning set forth in Section 2.6(c).

ACTIVE 53667627v2

AmericasActive:14734294.18

"Assumed Liabilities" has the meaning set forth in Section 2.3.

"Assumed Location" has the meaning set forth in Section 2.3(e).

"Assumed Employee Benefit Plan Schedule" has the meaning set forth in Section 2.6(c).

"Assumed Permit" has the meaning set forth in Section 2.1(i).

"Assumed Permit Schedule" has the meaning set forth in Section 2.6(c).

"Assumption Approval" has the meaning set forth in Section 2.6(g).

"Assumption Effective Date" has the meaning set forth in Section 2.6(d).

"Auction" means the auction for the sale and assumption of the Sellers' assets and certain liabilities, conducted by the Sellers pursuant to, and in accordance with, the Bidding Procedures and Bidding Procedures Order.

"Back-Up Bidder" means the qualified bidder chosen by the Sellers at the Auction, if any, who submitted the second-highest or otherwise best bid at the conclusion of such Auction.

"Bankruptcy Code" has the meaning set forth in the recitals.

"Bankruptcy Court" has the meaning set forth in the recitals.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, each a "Bankruptcy Rule."

"Bidding Procedures" means the bidding procedures to be approved by the Bankruptcy Court pursuant to the Bidding Procedures Order, which order shall be in all respects reasonably satisfactory to the Buyer; provided that Bidding Procedures substantially in the form attached hereto as Exhibit E are reasonably satisfactory to Buyer.

"Bidding Procedures Order" means the order to be entered by the Bankruptcy Court approving, among other things, the Buyer as the "stalking horse Buyer," and the Bidding Procedures, which order shall be in all respects satisfactory to the Buyer.

"Bill of Sale" has the meaning set forth in Section 2.9(a)(ii).

"Business" has the meaning set forth in the recitals.

"Business Day" means any day other than a Saturday, a Sunday, or a day on which banks located in Wilmington, Delaware shall be authorized or required by Law to close.

"Buyer" has the meaning set forth in the preamble.

"Capital Leases" means all leases required to be capitalized in accordance with GAAP.

3

"CARES Act" means the Coronavirus Aid, Relief, and Economic Security Act.

"Cash" means cash (including all cash located in Sellers' bank accounts, lock-boxes, and cash in transit), cash equivalents, investment accounts, certificates of deposit, and liquid investments.

"Challenge" means any complaint, motion, contest, challenge or other pleading filed with the Bankruptcy Court or any other court which contests, or seeks to limit, curtail, reduce, suspend, stay or enjoin, as the case may be, (i) the existence, validity, enforceability or amount of any principal, interest, fees, charges, costs, expenses, reimbursements or other indebtedness owing under the DIP Credit Agreement or related agreements, the Interim DIP Order, the Final DIP Order or the Prepetition Credit Documents (as defined in the DIP Credit Agreement), (ii) the existence, validity, enforceability or priority of any Liens securing the DIP Obligations or Prepetition Liabilities, or (iii) the rights of the Buyer, the DIP Agents (or their sub-agents) and/or the DIP Lenders, or any of their assignees, to credit bid all or part of the DIP Obligations and/or Prepetition Liabilities for the Acquired Assets pursuant to this Agreement, the DIP Credit Agreement, the Interim DIP Order, the Final DIP Order, the Bidding Procedures Order or applicable Law.

"Chapter 11 Documents" has the meaning set forth in Section 5.3(d).

"Claim" has the meaning set forth in section 101(5) of the Bankruptcy Code.

"Closing" has the meaning set forth in Section 2.8.

"Closing Assumed Benefit Plan List" has the meaning set forth in Section 2.6(c).

"Closing Assumed Contract List" has the meaning set forth in Section 2.6(c).

"Closing Assumed Permit List" has the meaning set forth in Section 2.6(c).

"Closing Date" has the meaning set forth in Section 2.8.

"Consent" means any approval, consent, ratification, permission, clearance, designation, qualification, waiver or authorization, or an order of the Bankruptcy Court that deems or renders unnecessary the same.

"Consent Deadline" has the meaning set forth in Section 2.6(g).

"Contract" means any written or oral agreement, contract, indenture, mortgage, instrument, guaranty, loan or credit agreement, note, bond, customer order, membership agreement, purchase order, sales order, sales agent agreement, supply agreement, development agreement, joint venture agreement, license agreement, contribution agreement, partnership agreement or other arrangement, understanding, permission or commitment that, in each case, is legally binding, but excluding Leases.

"Contract and Cure Schedule" has the meaning set forth in Section 2.6(c).

4

"<u>Control</u>" means, when used with reference to any Person, the power to direct the management or policies of such Person, directly or indirectly, by or through stock or other equity ownership, agency or otherwise, or pursuant to or in connection with any Contract; and the terms "<u>Controlling</u>" and "<u>Controlled</u>" shall have meanings correlative to the foregoing.

"<u>Cure Amounts</u>" has the meaning set forth in <u>Section 2.6(f)</u>.

"<u>Cure Notice</u>" has the meaning set forth in <u>Section 5.3(c)</u>.

"<u>Customer Credits</u>" means customer credits, prepayments, and overpayments with respect to monthly, annual, personal training and paid in full membership fees.

"<u>D&O Causes of Action</u>" means any claims, causes of action, demand, actions, suits, obligations, liabilities, cross-claims, counterclaims, offsets, or setoffs of any kind or character whatsoever against any Person who on the Petition Date was a director, manager, officer, employee, or other representative of one or more of the Sellers.

"<u>Decree</u>" means any judgment, decree, ruling, decision, opinion, injunction, assessment, attachment, undertaking, award, charge, writ, executive order, judicial order, administrative order or any other order of any Governmental Entity.

"<u>Designation Deadline</u>" has the meaning set forth in <u>Section 2.6(c)</u>.

"<u>Designation List</u>" has the meaning set forth in <u>Section 2.7</u>.

"<u>DIP Agents</u>" means the "Agents" as defined in the DIP Credit Agreement.

"<u>DIP Credit Agreement</u>" means that certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement, dated as of November 10, 2020, by and among You Fit, Holdings and certain subsidiaries of Holdings from time to time party thereto, as the borrowers, the lenders from time to time thereto and Alter Domus (US) LLC, as administrative agent and as collateral agent.

"<u>DIP Lenders</u>" means the "Lenders" as defined in the DIP Credit Agreement.

"<u>DIP Obligations</u>" means the "Obligations" as defined in the DIP Credit Agreement.

"<u>Disclosure Schedule</u>" has the meaning set forth in <u>Article III</u>.

"<u>Employee Benefit Plan</u>" means any "employee benefit plan" (as such term is defined in Section 3(3) of ERISA) and any other benefit or compensation plan, program, agreement or arrangement of any kind, in each case, maintained or contributed to by a Seller, in which a Seller participates or participated, in which a Seller has any Liability (contingent or otherwise), or through which current or former Service Providers of the Business are eligible to receive benefits or compensation.

"End Date" means the close of business no later than thirty (30) days following the entry of the Sale Order.

"Enforcing Parties" has the meaning set forth in Section 9.9(a).

"Environmental, Health and Safety Requirements" means, as enacted and in effect on or prior to the Closing Date, all applicable Laws concerning worker health and safety, the treatment, disposal, emission, discharge, Release or threatened Release of, or exposure to, Hazardous Material, pollution or the protection of the environment.

"ERISA" means the United States Employee Retirement Income Security Act of 1974, as amended.

"Excluded Assets" means, collectively, the following assets of the Sellers: (a) all of Sellers' certificates of incorporation or certificates of formation and other organizational documents, qualifications to conduct business as a foreign entity, arrangements with registered agents relating to foreign qualifications, taxpayer and other identification numbers, seals, minute books, stock or other equity transfer books, stock or membership certificates relating to the Sellers and other documents relating to the organization, maintenance and existence of any Seller as a corporation or limited liability company; (b) all Records related to Taxes paid or payable by any Seller; provided that the Buyer shall have the right to make copies of any portions of such excluded Records to the extent that such portions relate to the Business, any Acquired Asset or any Assumed Liability; (c) (i) Owned Equity Interests (unless the Buyer expressly elects to acquire Owned Equity Interests of a particular Seller pursuant to Section 2.1) and (ii) if the Buyer has elected pursuant to Section 2.1 to acquire the Owned Equity Interests of a particular Seller as Acquired Assets, all other assets of such Seller that are being acquired via such Owned Equity Interests shall be Excluded Assets hereunder notwithstanding anything else in Section 2.1 to the contrary; (d) all Contracts and Leases that are not Assumed Contracts; (e) any (i) confidential personnel and medical Records pertaining to any Service Provider to the extent the disclosure of such information is prohibited by applicable Law and (ii) other Records that any Seller is required by Law to retain; provided that the Buyer shall have the right to make copies of any portions of such excluded Records to the extent that such portions relate to the Business, any Acquired Asset, any Assumed Liability or any Service Provider hired by the Buyer on the Closing Date (to the extent not prohibited by applicable Law); (f) any documents and agreements of any Seller relating to the Sellers' Chapter 11 Cases or to the sale or other disposition of the Business or the Acquired Assets or the sale or other disposition of any Excluded Assets; provided that the Buyer shall have the right to make copies of any portions of such excluded Records to the extent that such portions relate to the Business, any Acquired Asset or any Assumed Liability; (g) all Permits that are not Assumed Permits; and (h) any Excluded Cash.

"Excluded Cash" means the portion of funds provided in connection with debtor-in-possession financing specifically allocated for the wind-down of the Sellers or otherwise specifically allocated to the Sellers to cover Excluded Liabilities, if any, and the costs of any post-Closing obligations provided for in this Agreement and any Transition Services Agreement.

6

"Excluded Liabilities" has the meaning set forth in Section 2.4.

"Families First Act" means the Families First Coronavirus Response Act.

"Final DIP Order" has the meaning set forth in the DIP Credit Agreement.

"Final Order" means an order of the Bankruptcy Court or other court of competent jurisdiction: (i) as to which no appeal, notice of appeal, motion to amend or make additional findings of fact, motion to alter or amend judgment, motion for rehearing or motion for new trial has been timely filed or, if any of the foregoing has been timely filed, it has been disposed of in a manner that upholds and affirms the subject order in all respects without the possibility for further appeal or rehearing thereon; (ii) as to which the time for instituting or filing an appeal, motion for rehearing or motion for new trial shall have expired; and (iii) as to which no stay is in effect; provided, however, that the filing or pendency of a motion under Federal Rule of Bankruptcy Procedure 9024(b) shall not cause an order not to be deemed a "Final Order" unless such motion shall be filed within fourteen (14) calendar days of the entry of the order at issue.  In the case of (i) the Sale Order, a Final Order shall also consist of an order as to which an appeal, notice of appeal, motion to amend or make additional findings of fact, motion to alter or amend judgment, motion for rehearing or motion for new trial has been filed, but as to which the Buyer, in its sole and absolute discretion, elects to proceed with Closing, and (ii) any other order that is required hereunder to be a Final Order, a Final Order shall also consist of an order as to which an appeal, notice of appeal, motion to amend or make additional findings of fact, motion to alter or amend judgment, motion for rehearing or motion for new trial has been filed, but as to which the Buyer, in its sole and absolute discretion, elects to proceed.

"Furnishings and Equipment" means tangible personal property (other than Inventory) and that is used or held for use in the operation of the Business, regardless of where located.

"GAAP" means United States generally accepted accounting principles.

"Governmental Entity" means any United States federal, state or local or non-United States governmental or regulatory authority, agency, commission, court, body or other governmental entity.

"Hazardous Material" means any waste or other substance that is listed, defined, designated or classified as hazardous, radioactive or toxic or a pollutant or a contaminant under any Environmental, Health and Safety Requirements, including any admixture or solution thereof, and including petroleum and all derivatives thereof or synthetic substitutes therefor, asbestos or asbestos-containing materials in any form or condition and polychlorinated biphenyls.

"Holdings" has the meaning set forth in the preamble.

"Holdings Preferred Unit Purchase Agreement" means that certain Preferred Unit Purchase Agreement, dated as of April 8, 2014, by and among Holdings, YF-GEF Holdings LLC, a Delaware limited liability company, YF Lime, LLC, a Florida limited liability company, the shareholders of YF Lime, LLC named therein and Rick Berks.

7

"<u>Holdings Subsidiaries</u>" has the meaning set forth in <u>Exhibit A</u>.

"<u>Indebtedness</u>" of any Person means, without duplication, (a) the principal of and premium (if any) in respect of (i) indebtedness of such Person for money borrowed and (ii) indebtedness evidenced by notes, debentures, bonds or other similar instruments for the payment of which such Person is responsible or liable, (b) all obligations of such Person issued or assumed as the deferred purchase price of property, all conditional sale obligations of such Person, and all obligations of such Person under any title retention agreement (but excluding trade accounts payable for goods and services and other accrued current liabilities arising in the Ordinary Course of Business), (c) all obligations of such Person under Capital Leases, (d) all obligations of such Person for the reimbursement of any obligor on any letter of credit, banker's acceptance, or similar credit transaction, (e) the liquidation value of all redeemable preferred stock of such Person, (f) all obligations of the type referred to in clauses (a) through (e) of any Persons for the payment of which such Person is responsible or liable, directly or indirectly, as obligor, guarantor, surety or otherwise, including guarantees of such obligations, and (g) all obligations of the type referred to in clauses (a) through (f) of other Persons secured by any lien on any property or asset of such Person (whether or not such obligation is assumed by such Person).

"<u>Initial Allocation</u>" has the meaning set forth in <u>Section 2.10</u>.

"<u>Insurance Policies</u>" has the meaning set forth in <u>Section 3.13</u>.

"<u>Intellectual Property</u>" means any and all rights, title and interest in or relating to intellectual property of any type, which may exist or be created under the Laws of any jurisdiction throughout the world, including: (a) patents and patent applications, together with all reissues, provisionals, continuations, continuations-in-part, divisionals, renewals, extensions and reexaminations in connection therewith; (b) trademarks, service marks, trade dress, logos, slogans, trade names, service names, brand names, internet domain names, social media accounts and all other source or business identifiers and intangibles of a like nature, along with all applications, registrations and renewals and extensions in connection therewith, and all goodwill associated with any of the foregoing; (c) rights associated with works of authorship, including software, databases, websites, exclusive exploitation rights, mask work rights, copyrights, database and design rights, whether or not Registered or published, all registrations and recordations thereof and applications in connection therewith, along with all extensions and renewals thereof and all moral rights associated with any of the foregoing; and (d) trade secrets, know-how and other proprietary and confidential information, including inventions (whether or not patentable), invention disclosures, improvements, algorithms, source code, data analytics, methods, processes, designs, drawings, customer lists, supplier lists, together with all embodiments and fixations of any of the foregoing and all related documentation.

"<u>Intellectual Property Assets</u>" has the meaning set forth in <u>Section 2.1(l)</u>.

"<u>Intellectual Property Assignment</u>" has the meaning set forth in <u>Section 2.9(a)(iv)</u>.

"<u>Interim DIP Order</u>" has the meaning set forth in the DIP Credit Agreement.

"<u>Inventory</u>" means all inventory (including merchandise, raw materials, component parts, supplies, packing and shipping materials, products in-process and finished products) of any Seller, whether temporarily out of such Seller's custody or possession, in transit to or from any Seller and whether in any Seller's gyms, health clubs, warehouses, distribution facilities, held by any third parties or otherwise, and all other Inventory (as defined in the UCC), including any returned goods and any documents of title representing any of the foregoing.

"<u>IRC</u>" means the United States Internal Revenue Code of 1986, as amended.

"<u>Knowledge</u>" of a Person (and other words of similar import) (a) in reference to the Sellers means the knowledge of Brian Gleason, Pamela Corrie and David Mayer, together with all facts of which such persons should be aware, in each case after reasonable investigation and (b) in reference to the Buyer means the knowledge of BGC Lender Rep LLC, a Delaware limited liability company, together with all facts of which such persons should be aware, in each case after reasonable investigation. For the avoidance of doubt, no Person named in this definition shall have any personal liability or obligations solely rising out of such Knowledge.

"<u>Law</u>" means any federal, state, provincial, local, municipal, foreign or other law, statute, legislation, constitution, principle of common law, resolution, ordinance (including with respect to zoning or other land use matters), code, treaty, convention, rule, regulation, requirement, edict, directive, pronouncement, determination, proclamation or Decree of any Governmental Entity.

"<u>Leased Real Property</u>" means all leasehold or subleasehold estates and other rights to use or occupy any land, buildings, structures, improvements, fixtures or other interest in real property of Seller which is used in the Business.

"<u>Leases</u>" means all leases, subleases, licenses, concessions, and other agreements, including all amendments, extensions, renewals, guaranties, and other agreements with respect thereto, in each case pursuant to which a Seller holds or has any interest in Leased Real Property, but excluding Contracts.

"<u>Liability</u>" means any liability, Indebtedness, guaranty, claim, loss, damage, deficiency, assessment, responsibility or obligation of whatever kind or nature (whether known or unknown, whether asserted or unasserted, whether absolute or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, whether due or to become due, whether determined or determinable, whether choate or inchoate, whether secured or unsecured and whether matured or not yet matured).

"<u>Lien</u>" means any mortgage, deed of trust, hypothecation, contractual restriction, pledge, lien, encumbrance, interest, charge, security interest, put, call, other option, right of first refusal, right of first offer, servitude, right of way, easement, conditional sale or installment contract, finance lease involving substantially the same effect, security agreement or other encumbrance or restriction on the use, transfer or ownership of any property of any type (including real property, tangible property and intangible property). For the avoidance of doubt, the definition of Lien shall not be deemed to include the grant of any non-exclusive license or sublicense of Intellectual Property by a Seller.

9

"Litigation" means any action, cause of action, suit, claim, investigation, mediation, audit, grievance, demand, hearing or proceeding, whether civil, criminal, administrative or arbitral, whether at law or in equity, and whether before any Governmental Entity or arbitrator.

"Material Adverse Effect" means any state of facts, change, event, effect, development, condition, circumstance or occurrence (when taken together with all other states of fact, changes, events, effects, developments, conditions, circumstances or occurrences), that (a) is materially adverse to the financial condition or results of operations of the Business (taken as a whole), including (for the avoidance of doubt and notwithstanding any carve out in the following provisions) the re-escalation (or "2nd wave") of the COVID-19 pandemic or (b) would reasonably be expected to prevent, materially delay or materially impair the ability of the Sellers to consummate the transactions contemplated by this Agreement or the Related Agreements on the terms set forth herein and therein; provided, however, that with respect to clause (a) only, no change event, development or occurrence related to any of the following shall be deemed to constitute, and none of the following shall be taken into account in determining whether there has been a Material Adverse Effect: (i) national or international business, economic or political conditions, including the engagement by the United States of America in international hostilities (not domestic), affecting (directly or indirectly) the industry in which the Business operates, whether or not pursuant to the declaration of war, or the occurrence of any military or terrorist attack upon the United States of America or any of its territories, possessions or diplomatic or consular offices or upon any military installation, equipment or personnel of the United States of America, except to the extent that such change has a materially disproportionate adverse effect on the Business relative to the adverse effect that such changes have on other companies in the industry in which the Business operates; (ii) financial, banking or securities markets (including any disruption thereof or any decline in the price of securities generally or any market or index), except to the extent that such change has a materially disproportionate adverse effect on the Business relative to the adverse effect that such changes have on other companies in the industry in which the Business operates; (iii) any change in GAAP or Law except to the extent that such change has a materially disproportionate adverse effect on the Business relative to the adverse effect that such changes have on other companies in the industry in which the Business operates; (iv) any changes directly attributable to the announcement of this Agreement or any Related Agreement, including by reason of the identity of the Buyer or any of its Affiliates; (v) resulting from any act of God except to the extent that such change has a materially disproportionate adverse effect on the Business relative to the adverse effect that such changes have on other companies in the industry in which the Business operates; or (vi) in the case of the Sellers or the Business, (A) the failure to meet or exceed any projection or forecast (it being understood that, with respect to this clause (vi) (A), the underlying facts or circumstances giving rise or contributing to the failure to meet such projection(s) or forecast(s) may be deemed to constitute, or be taken into account in determining whether there has been, a Material Adverse Effect), or (B) changes in the business or operations of any Seller (including changes in credit terms offered by suppliers or financing sources) resulting from the announcement or the filing of the Sellers' Chapter 11 Cases and the Sellers' financial condition or the Sellers' status as debtors under Chapter 11 of the Bankruptcy Code.

"Material Contract" has the meaning set forth in Section 3.5(a).

10

"Necessary Consents" has the meaning set forth in Section 2.6(g).

"Opt Out Deadline" has the meaning set forth in Section 2.6(c).

"Ordinary Course of Business" means the ordinary course of business consistent with past custom and practice as such customs and practices existed prior to February 15, 2020, as such practices may have been modified for purposes of implementing enhanced cleaning and disinfecting measures in response to the COVID-19 pandemic.

"Owned Equity Interests" means any equity interests or securities of any Seller held by any other Seller.

"Party" has the meaning set forth in the preamble.

"Permit" means any franchise, approval, permit, license, order, registration, certificate, variance, Consent, exemption, ratification, waiver or similar right or authorization issued, granted, given or otherwise obtained from or by any Governmental Entity, under the authority thereof, or pursuant to any applicable Law.

"Permitted Liens" means Liens (a) for Taxes not yet delinquent or which are being contested in good faith by appropriate proceedings and, in either case, to the extent reserved on the books and records of the applicable Seller and set forth on Section 2.1 of the Disclosure Schedule, (b) with respect to leased or licensed personal property, the terms and conditions of the lease or license applicable thereto to the extent constituting an Assumed Contract and (c) with respect to Capital Leases for an aggregate amount of Indebtedness not to exceed Ten Thousand Dollars ($10,000).

"Person" means an individual, a partnership, a corporation, a limited liability company, an association, a joint stock company, a trust, a joint venture, an unincorporated organization or any other entity, including any Governmental Entity or any group or syndicate of any of the foregoing.

"Personal Property Taxes" means personal property Taxes of the Sellers to the extent they become allowed claims in the Sellers' Chapter 11 Cases under sections 503(b)(1)(B) or 507(a)(8)(B) of the Bankruptcy Code.

"Petition Date" has the meaning set forth in the recitals.

"Prepetition Liabilities" has the meaning given to such term in the DIP Credit Agreement.

"Previously Omitted Contract" has the meaning set forth in Section 2.6(j).

"Purchase Price" has the meaning set forth in Section 2.5.

"Qualified Bid" means competing bids that are submitted by a qualified bidder in accordance with the Bidding Procedures and Bidding Procedures Order.

11

"Records" means, with respect to the Business, the books, records, information, ledgers, files, invoices, documents, work papers, correspondence, lists (including client and customer lists, supplier lists and mailing lists), plans (whether written, electronic or in any other medium), drawings, designs, specifications, creative materials, advertising and promotional materials, marketing plans, studies, reports, data, supplier and vendor lists, purchase orders, sales and purchase invoices, production reports, personnel and employment records, financial and accounting records and similar materials related to the Business and specifically excluding Sellers' corporate minutes book and related corporate records and books, files and papers not otherwise relating exclusively to the Business.

"Registered" means issued by, registered with, renewed by or the subject of a pending application before any Governmental Entity or domain name registrar.

"Related Agreements" means the Bill of Sale, the Assignment and Assumption Agreement, the Intellectual Property Assignment and each other agreement, document or instrument executed or delivered by a Party in connection with the foregoing, this Agreement, the Sale Order or the transactions contemplated hereby or thereby.

"Related Party" means any officer, director, manager or equity holder of any Seller, or any member of the immediate family of the foregoing.

"Release" means the release, spill, emission, leaking, pumping, pouring, emptying, escaping, dumping, injection, deposit, disposal, discharge, dispersal, leaching or migrating of any Hazardous Material into the environment.

"Representative" of a Person means such Person's officers, directors, managers, employees, advisors, representatives (including its legal counsel and its accountants) and agents of such Person.

"Sale Motion" means that motion to be filed in the Sellers' Chapter 11 Cases requesting that the Bankruptcy Court (a) enter the Bidding Procedures Order and (b) enter the Sale Order at the final hearing on the Sale Motion, and approve all related transactions.

"Sale Order" means an order of the Bankruptcy Court entered in the Sellers' Chapter 11 Cases pursuant to sections 105, 363, and 365 of the Bankruptcy Code, approving this Agreement and the transactions contemplated hereby, in all respects as shall be reasonably satisfactory to the Sellers and the Buyer (i) approving the sale and transfer of the Acquired Assets to the Buyer free and clear of all liens, claims and interests other than Permitted Liens, if any, pursuant to section 363(f) of the Bankruptcy Code; (ii) approving the assumption and assignment to the Buyer of the Assumed Contracts; (iii) authorizing the Buyer, the DIP Agents (or their sub-agents), the DIP Lenders, or their assignees to credit bid or assume all or part of the DIP Obligations and Prepetition Liabilities; (iv) authorizing consummation of the transactions contemplated hereby; (v) containing a finding that the transactions contemplated by this Agreement are undertaken by the Sellers and the Buyer (solely in its capacity as such) at arm's length, without collusion, and finding that the Buyer is a good-faith Buyer entitled to the protections of section 363(m) of the Bankruptcy Code; (vi) finding that due and adequate notice of the approval of the sale hearing

12

and proposed Sale Order and an opportunity to be heard were provided to all Persons entitled thereto, including but not limited to, federal, state and local taxing and regulatory authorities; (vii) confirming that the Buyer is acquiring the Acquired Assets free and clear of all Liabilities, other than the Assumed Liabilities; (viii) assuring that the Buyer will not be subject to successor liability for any claims or causes of action of any kind or character against any Seller, whether known or unknown, unless expressly assumed as an Assumed Liability pursuant to this Agreement; (ix) authorizing the Buyer to freely own and operate the Acquired Assets; (x) providing that the Bankruptcy Court shall retain jurisdiction to hear any disputes arising in connection with the transactions contemplated by this Agreement; (xi) providing that the provisions of Federal Rules of Bankruptcy Procedure 6004(h) and 6006(d) are waived and there will be no stay of execution of the Sale Order under Rule 62(a) of the Federal Rules of Civil Procedure; (xii) permitting the Buyer to waive, in its sole discretion, the 14-day stay period under Rule 6004(h) of the Federal Rules of Bankruptcy Procedure; and (xiii) granting related relief, which order shall be in all respects reasonably satisfactory to the Buyer.

"Seller" has the meaning set forth in the preamble.

"Sellers' Chapter 11 Cases" has the meaning set forth in the recitals.

"Service Provider" means any director, officer, full-time or part-time employee, independent contractors, independent consultants or temporary employees, of any Seller.

"Subsidiary" means, with respect to any Person, any corporation, limited liability company, partnership, association or other business entity of which (a) if a corporation, a majority of the total voting power of shares of stock entitled (without regard to the occurrence of any contingency) to vote in the election of directors, managers or trustees thereof (or other persons performing similar functions with respect to such corporation) is at the time owned or controlled, directly or indirectly, by that Person or one or more of the other Subsidiaries of that Person or a combination thereof, or (b) if a limited liability company, partnership, association or other business entity (other than a corporation), a majority of partnership or other similar ownership interest thereof is at the time owned or controlled, directly or indirectly, by that Person or one or more Subsidiaries of that Person or a combination thereof and for this purpose, a Person or Persons owns a majority ownership interest in such a business entity (other than a corporation) if such Person or Persons shall be allocated a majority of such business entity's gains or losses or shall be or control any managing director, managing member or general partner of such business entity (other than a corporation). The term "Subsidiary" shall include all Subsidiaries of such Subsidiary.

"Successful Bidder" means the bidder who shall have submitted the highest or otherwise best bid at the conclusion of the Auction in accordance with the Bidding Procedures and Bidding Procedures Order.

"Tax" or "Taxes" means any net or gross income, net or gross receipts, net or gross proceeds, capital gains, capital stock, sales, use, user, leasing, lease, transfer, natural resources, premium, ad valorem, value added, franchise, profits, gaming, license, capital, withholding, payroll or other employment, estimated, goods and services, severance, excise, stamp, fuel,

13

interest equalization, registration, recording, occupation, turnover, personal property (tangible and intangible), real property, unclaimed or abandoned property, alternative or add-on, windfall or excess profits, environmental, social security, disability, unemployment or other tax or customs duties or amount imposed by (or otherwise payable to) any Governmental Entity, or any interest, any penalties, additions to tax or additional amounts assessed, imposed or otherwise due or payable under applicable Laws with respect to taxes, in each case, whether disputed or not.

"Tax Return" means any return, declaration, report, claim for refund or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

"Transfer Tax" has the meaning set forth in Section 6.5.

"Transferred Employee" has the meaning set forth in Section 6.4(a).

"Transition Services Agreement" has the meaning set forth in Section 2.9(a)(iv).

"UCC" means the Uniform Commercial Code as the same may from time to time be in effect in the State of Delaware, or in any other state to the extent the law of such other state shall govern or apply to a specific asset or property of a Seller.

"WARN Act" has the meaning set forth in Section 3.9(a).

"YF Arizona" has the meaning set forth in Exhibit A.

"YF Arizona Subsidiaries" has the meaning set forth in Exhibit A.

"YF Group A" has the meaning set forth in Exhibit A.

"YF Group A Subsidiaries" has the meaning set forth in Exhibit A.

"YF SE FLA" has the meaning set forth in Exhibit A.

"YF SE FLA Subsidiaries" has the meaning set forth in Exhibit A.

"You Fit" has the meaning set forth in Exhibit A.

"You Fit Subsidiaries" has the meaning set forth in Exhibit A.

**ARTICLE II**
**PURCHASE AND SALE**

**Section 2.1    Purchase and Sale of Acquired Assets**.  On the terms and subject to the conditions of this Agreement and the Sale Order, at the Closing, the Buyer shall purchase, acquire, and accept from each Seller, and each Seller shall sell, transfer, assign, convey, and deliver to the Buyer (or its assignee pursuant to Section 9.4), all of such Seller's right, title and interest in and to all of the properties, rights, interests and other tangible and intangible assets of such Seller, of every kind and description, real, personal or mixed, tangible or intangible, known

14

or unknown, and wherever located (whether or not required to be reflected on a balance sheet prepared in accordance with GAAP), including any and all assets acquired by such Seller after the date hereof but prior to the Closing Date (collectively, the "Acquired Assets"), free and clear of all Liens (other than Permitted Liens set forth on Section 2.1 of the Disclosure Schedule), for the consideration specified in Section 2.5; provided, however, that the Acquired Assets shall not include any Excluded Assets. Without limiting the generality of the foregoing, the Acquired Assets shall include all of the following (but excluding in each case, for the avoidance of doubt, any Excluded Asset):

(a)     all Accounts Receivable of such Seller;

(b)     all customer lists, customer files and customer accounts of the Business;

(c)     all vehicles used in the Business, whether or not titled or registered with a Governmental Entity;

(d)     all Assumed Contracts that have been assumed by and assigned to the Buyer pursuant to Sections 2.6 and 2.7; provided, however, that if any Assumed Contract is recharacterized by a Final Order to not be an executory Contract or unexpired Lease, then the property that is subject to such Assumed Contract and all of such Seller's rights thereunder shall be an Acquired Asset;

(e)     all machinery, fixtures, furniture, equipment, computer and other information technology equipment, data files, applications, systems, leasehold improvements (to the extent of any Seller's rights to any leasehold improvements under Leases that are Assumed Contracts), materials, parts, supplies, tools and other tangible property owned by any Seller and all other Furnishings and Equipment;

(f)     to the extent assignable, all of each Seller's rights under all third-party manufacturing and vendor warranties relating to the Acquired Assets;

(g)     each Seller's Records;

(h)     all goodwill associated with the Business and/or any of the Acquired Assets, including all goodwill associated with the Intellectual Property owned by any Seller and all rights of any Seller under non-disclosure or confidentiality, work-for-hire, intellectual property, non-compete or non-solicitation agreements with current or former Service Providers and agents of any Seller with third parties;

(i)     all Assumable Permits to the extent such Assumable Permit is assumed pursuant to Sections 2.6 or 2.7, as applicable (each an "Assumed Permit");

(j)     all rights to any insurance proceeds, including those proceeds received by any Seller after the date hereof, in respect of (i) the loss, destruction or condemnation of any Acquired Assets, occurring prior to, on or after the Closing or (ii) any Assumed Liabilities;

15

(k)     to the extent transferable, all Insurance Policies that, on or prior to the Closing, the Buyer designates in writing and provides the same to the Sellers as Acquired Assets hereunder, and all rights and benefits of any Seller of any nature under such Insurance Policies;

(l)     all of the Intellectual Property owned by any Seller; or used or held for use by any Seller in the conduct of the Business, including the Intellectual Property set forth on Section 3.15 of the Disclosure Schedule, together with all claims, demands, income, damages, royalties, payments, accounts and accounts receivable now or hereafter due and payable, and rights to causes of action and remedies, related to any of the foregoing, including all proceeds to infringement suits, the right to sue and prosecute for past, present and future infringement, misappropriation or other violation of rights related to any of the foregoing (collectively, the "Intellectual Property Assets");

(m)     all Inventory, supplies, materials and spare parts of any Seller (including all rights of any Seller to receive such Inventory, supplies, materials and spare parts that are on order) and all open purchase orders with suppliers;

(n)     to the extent the Buyer advises the Sellers in writing on or prior to the Closing Date that it is going to acquire any Owned Equity Interests of any Seller as Acquired Assets, such Owned Equity Interests;

(o)     all Cash of any Seller other than Excluded Cash;

(p)     all claims, rights, credits, causes of action (including any commercial tort claims), defenses and rights of set-off of any type of any Seller, including D&O Causes of Action, and any proceeds of, or property and interests recovered in respect of, and the right to control, all claims, counterclaims, causes of action and defenses of any Seller, including all causes of action pursuant to chapter 5 of the Bankruptcy Code or similar state laws, and all claims arising under or in connection with director and officer insurance policies, non-disclosure, confidentiality, non-compete, and/or non-solicitation agreements, and all proceeds of the foregoing, in each case whether or not the Buyer chooses to settle, dismiss, prosecute, defend or otherwise pursue or resolve such claims, rights, credits, causes of action, defenses and/or rights of set-off;

(q)     the benefits of Holdings under the Holdings Preferred Unit Purchase Agreement, including Sections 6.9 and 6.11 thereof;

(r)     all prepaid expenses, unbilled services, refundable deposits and cash or other collateral provided in connection with the Business and all Assumed Contracts;

(s)     all tax refunds, refundable VAT, rebates, credits or similar benefits relating to Taxes and other governmental charges related to the Acquired Assets;

(t)     all assets maintained pursuant to or in connection with any Employee Benefit Plan to the extent such Employee Benefit Plan is assumed pursuant to Sections 2.6 or 2.7, as applicable (each an "Assumed Employee Benefit Plan"); and

16

(u)      all other assets that are related to or used in connection with the Business and that are owned, leased or licensed by any Seller.

**Section 2.2     Excluded Assets**.  Nothing contained herein shall be deemed to sell, transfer, assign or convey the Excluded Assets to the Buyer, and the applicable Seller shall retain all of its right, title and interest to, in and under the Excluded Assets.

**Section 2.3     Assumed Liabilities**.  On the terms and subject to the conditions of this Agreement and the Sale Order, at the Closing (or, with respect to assumed liabilities under Assumed Contracts or Assumed Permits that are assumed by the Buyer after the Closing, such later date of assumption as provided in Sections 2.6 or 2.7, as applicable), the Buyer shall assume and become responsible for the following Liabilities (collectively, the "Assumed Liabilities") and no other Liabilities, including the Excluded Liabilities, of any Seller, and from and after the Closing (or such later date of assumption as provided in Sections 2.6 or 2.7, as applicable), agrees to timely pay, honor and discharge, or cause to be timely paid, honored and discharged, all Assumed Liabilities when due and in a timely manner in accordance with the terms thereof, and except for the Assumed Liabilities, the Buyer shall not be deemed to have assumed any other Liabilities of the Sellers, any of their Affiliates or any predecessors of the foregoing:

(a)      subject to Section 2.3(e) with respect to Customer Credits, all Liabilities arising after the Closing Date under the Assumed Contracts, the Assumed Permits and the Accounts Receivables included in the Acquired Assets that are incurred from the use of the Acquired Assets and conduct of the Business by the Buyer following the Closing Date (other than Liabilities attributable to any failure by any Seller to comply with the terms thereof or to the extent attributable to any conduct of any Seller with respect to any event or condition first occurring prior to the Closing Date, in each case to the extent not otherwise an Assumed Liability);

(b)      Five Hundred Thousand Dollars ($500,000) in investment banking fees owing to FocalPoint Partners LLC under its engagement letter to the extent approved by the Court if Buyer is the Successful Bidder at the Purchase Price;

(c)      subject to Section 2.3(e) with respect to Customer Credits, all Cure Amounts pursuant to Section 2.6(f); and

(d)      all Liabilities for Taxes borne by the Buyer pursuant to Section 6.5;

(e)      all Liabilities relating to Customer Credits (i) (A) related to gym locations that are leased pursuant to Leases that are Assumed Contracts or (B) which arise under customer Contracts which are otherwise expressly set forth on the Closing Assumed Contract List or (ii) related to gym locations that are leased pursuant to Leases that are not Assumed Contracts so long as (A) the Buyer fails to notify the Sellers  that it intends to reject such Lease pursuant to Section 2.6 at least fourteen (14) days prior to the Closing, (B) the Customer Credit is on account of a customer payment made after the Petition Date and (C) the Seller is unable, after using commercially reasonable efforts, to sell the draft for such customer in a manner that would minimize or eliminate such liabilities; and

17

(f)     (i) all accrued vacation and sick time of the Transferred Employees that remains unused or unpaid as of the Closing; (ii) any payroll amounts and related employer Taxes accrued during the payroll period that includes the Closing Date with respect to the Transferred Employees that remains unpaid as of the Closing; and (iii) any other Liabilities described as being assumed or fulfilled by Buyer in Section 6.4.

**Section 2.4     Excluded Liabilities**.  Notwithstanding anything herein to the contrary, the Parties expressly acknowledge and agree that the Buyer shall not assume, be obligated to pay, perform or otherwise discharge or in any other manner be liable or responsible for any Liabilities of any Seller, whether existing at any time before or after the Closing Date or arising thereafter, other than the Assumed Liabilities (all such Liabilities that the Buyer is not assuming being referred to collectively as the "Excluded Liabilities").  Without limiting the foregoing, the Buyer shall not be obligated to assume, does not assume and hereby disclaims all the Excluded Liabilities, including the following Liabilities of any Seller whether incurred or accrued at any time before or after the Closing Date:

(a)     except with respect to payroll and related employer Taxes with respect to Transferred Employees, and except as otherwise provided in Section 2.11 or Section 6.5, (i) all Taxes of any Seller or any of its Affiliates, including Taxes imposed on any Seller under Treasury Regulations Section 1.1502-6 and similar provisions of state, local or foreign Tax Law accruing prior to the Closing and (ii) all Liabilities for Taxes relating to the Business, Acquired Assets or Covered Employees for all Taxable periods (or portions thereof) ending on or prior to the Closing Date (including, for the avoidance of doubt, any payroll or other employment Taxes deferred by any Seller pursuant to Section 2302 of the CARES Act);

(b)     all Liabilities of the Sellers for fees, costs and expenses incurred in connection with Sellers' Chapter 11 Cases or negotiating, preparing, closing and carrying out this Agreement and the transactions contemplated hereby, including (i) any fees and expenses of attorneys, investment bankers (other than as provided in Section 2.3(b)) finders, brokers, accountants and consultants and (ii) any fees, costs and expenses or payments related to any transaction bonus, discretionary bonus, change-of-control payment, retention or other compensatory payments made to any Service Provider (including the employer portion of any payroll, social security, unemployment or similar Taxes related thereto);

(c)     all Personal Property Taxes;

(d)     all Liabilities of any Seller in respect of Indebtedness (except to the extent of any Cure Amounts under any Assumed Contracts and any capitalized leases that are Assumed Contracts);

(e)     all Liabilities arising in connection with any violation of any applicable Law relating to the period prior to the Closing Date by any Seller, including any Environmental, Health and Safety Requirements and the items set forth on Section 3.8 of the Disclosure Schedule;

18

(f)     all litigation claims and any other Liabilities, including any tort claims, breach of contract claims, employment claims and discrimination claims, which are not Assumed Liabilities, to the extent relating to Claims (including Claims instituted after the Closing Date), events or conditions arising out of or relating in any way to the conduct or operation of the Business or the ownership of the Acquired Assets prior to the Closing Date even if instituted after the Closing Date;

(g)     All Liabilities and obligations arising out of, relating to or in connection with incidents or events occurring prior to the Closing Date by any Person employed by, or acting as an independent contractor on the property of or on behalf of, any Seller for payment, claims or benefits under workers' compensation Laws or any other Law;

(h)     all Liabilities of Seller with respect to, or relating to or arising out of the employment, service or termination of employment or service of Service Providers of any Seller (except to the extent assumed pursuant to Section 2.3(f));

(i)     all Liabilities arising in connection with or in any way relating to any Seller (or any predecessor or any prior owner of all or part of their business and assets), any property now or previously owned, leased or operated by any Seller or the Acquired Assets or any activities or operations occurring or conducted at any real property used or held for use by any Seller (including offsite disposal), which (i) arise under or relate to any Environmental, Health and Safety Requirements and (ii) relate to actions occurring or conditions existing on or prior to the Closing Date;

(j)     all Liabilities arising out of or related to any Excluded Asset;

(k)     all Liabilities to any (i) owner or former owner of capital stock or other equity interests of any Seller, (ii) current or former officer or director of any Seller, or (iii) any Subsidiary of the Sellers, in each case in their capacity as such;

(l)     all other Liabilities that are not Assumed Liabilities, including all Liabilities arising under or in connection with written or oral Contracts;

(m)     all Liabilities of the Sellers constituting accounts payable incurred prior to the Closing Date to the extent not included as a Cure Amount, or otherwise expressly included as an Assumed Liability pursuant to Section 2.3;

(n)     all Liabilities under the Paycheck Protection Program or similar programs;

(o)     all assets maintained pursuant to or in connection with any Employee Benefit Plan that is not an Assumed Employee Benefit Plan; and

(p)     all other Liabilities of any Seller under this Agreement and the Related Agreements and the transactions contemplated hereby or thereby (excluding all the Assumed Liabilities).

19

**Section 2.5** __Consideration__.  The aggregate consideration for the sale and transfer of the Acquired Assets to the Buyer (the "Purchase Price") shall be not less than Seventy-Five Million Dollars ($75,000,000), which shall be payable in the form of: (a) a credit bid or assumption by the Buyer or its assignee of up to the full amount of the DIP Obligations; plus (b) a credit bid or assumption by the Buyer or its assignee of the remaining balance in an amount up to the full amount of the Prepetition Obligations; plus (c) the assumption of Assumed Liabilities (including the Cure Amounts).  Not later than two (2) Business Days following the entry of the Bidding Procedures Order, the Buyer will confirm the then current dollar amount of the Purchase Price in writing to the Sellers, which amount shall be subject to upward adjustment at any time prior to or during the Auction.

**Section 2.6** __Assumption and Assignment of Contracts, Leases, Employee Benefit Plans and Permits__.

(a)    The Sale Order shall provide for the assumption by the applicable Seller, and the assignment to the extent legally capable of being assigned by such Seller to the Buyer, of the Assumed Contracts on the terms and conditions set forth in the remainder of this Section 2.6 and Section 2.7.

(b)    At the Buyer's request, the applicable Seller shall reasonably cooperate from the date hereof forward with the Buyer as reasonably requested by the Buyer (i) to allow the Buyer to enter into an amendment of any Contract or Lease upon assignment to the Buyer of such Contract or Lease (and such Seller shall reasonably cooperate with the Buyer to the extent reasonably requested with the Buyer in negotiations with the applicable non-debtor counterparties and/or landlords), or (ii) to otherwise amend any Contract or Lease to the extent such amendments would not adversely affect such Seller in a material manner unless the Buyer indemnifies such Seller; provided that such Seller shall not be required to enter into any such amendment if such amendment would result in an assumption by such Seller of such Lease, unless such Lease will be assigned to (and Liabilities associated therewith assumed by) Buyer at the time of such assumption or contemporaneously therewith.    The Buyer shall compensate the Sellers for any reasonable, out-of-pocket, non-fixed costs with respect to the foregoing.

(c)    Section 2.6(c)(i) of the Disclosure Schedule sets forth a true, correct, and complete list of all Contracts and Leases to which any Seller is a party.  Section 2.6(c)(ii) of the Disclosure schedule sets forth a true, correct, and complete list of all of the Sellers' Employee Benefit Plans.  Section 2.6(c)(iii) of the Disclosure schedule sets forth a true, correct, and complete list of all of the Assumable Permits.  The proposed Cure Amounts in respect of each Contract are also set forth in Section 2.6(c)(i) of the Disclosure Schedule.  Buyer has advised the Sellers that it may want the Sellers to assume and assign certain of the Contracts and Leases set forth in Section 2.6(c)(i) of the Disclosure Schedule, Employee Benefit Plans set forth in Section 2.6(c)(ii) of the Disclosure Schedule and Assumable Permits set forth in Section 2.6(c)(iii) of the Disclosure Schedule, in each case, under section 365 of the Bankruptcy Code.  The inclusion of any Contract or Lease on Section 2.6(c)(i) of the Disclosure Schedule, Employee Benefit Plan on Section 2.6(c)(ii) of the Disclosure Schedule or Assumable Permit on Section

20

2.6(c)(iii) of the Disclosure Schedule does not constitute an admission that a particular contract is an executory contract or unexpired lease within the meaning of the Bankruptcy Code or require or guarantee that such Contract, Lease, Employee Benefit Plan or Assumable Permit will ultimately be assumed.  All rights of Buyer with respect thereto are reserved.  The Buyer shall, no later than two (2) days prior to the earlier of (i) a scheduled Auction or, (ii) in the event no Auction is held, prior to the hearing scheduled to consider entry of the Sale Order (the "Designation Deadline"), identify in writing to the Sellers the Contracts, Leases, Employee Benefit Plans and Assumable Permits that the Buyer has decided, subject to its other rights in this Section 2.6, will be (x) Assumed Contracts by putting such agreements onto a contract and cure schedule (the "Contract and Cure Schedule"), will be Assumed Employee Benefit Plans by putting such Employee Benefit Plans on the "Assumed Employee Benefit Plan Schedule") or will be Assumed Permits by putting such Assumable Permits on the "Assumed Permit Schedule"), which may be modified from time to time as set forth herein or (y) put onto the Designation List.  Notwithstanding the foregoing,  subject to its other rights in this Section 2.6, if the Buyer is designated as the Successful Bidder at the Auction, no later than two (2) days prior to the Closing Date (the "Opt Out Deadline"), the Buyer may add or remove any Contract, Lease, Employee Benefit Plan or Assumable Permit to or from the Contract and Cure Schedule, Assumed Employee Benefit Plan Schedule or Assumed Permit Schedule, as applicable, in each case as may have been amended prior thereto by the Buyer in accordance with this clause (c), and, in the case of any Contract or Lease that is removed from the Contract and Cure Schedule, Employee Benefit Plan that is removed from the Assumed Employee Benefit Plan Schedule or Assumable Permit that is removed from the Assumed Permit Schedule, as applicable, either advise the applicable Seller it has no objection to the Seller rejecting such Contract, Lease, Employee Benefit Plan or Assumable Permit or with respect to any Contract, Lease, Employee Benefit Plan Assumable Permit put such Contract, Lease, Employee Benefit Plan or Assumable Permit on the Designation List, in each case by providing notice thereof to the Sellers along with a further modified Contract and Cure Schedule, Assumed Employee Benefit Plan Schedule or Assumed Permit Schedule, as applicable.  The final Contract and Cure Schedule, as modified by any such designations, removals, or as otherwise provided in Section 2.7, is referred to as the "Closing Assumed Contract List".  The final Assumed Employee Benefit Plan Schedule, as modified by any such designations, removals, or as otherwise provided in Section 2.7, is referred to as the "Closing Assumed Employee Benefit Plan List".  The final Assumed Permit Schedule, as modified by any such designations, removals, or as otherwise provided in Section 2.7, is referred to as the "Closing Assumed Permit List".  For the avoidance of doubt, at any time and from time to time prior to the Designation Deadline, or if the Buyer is designated as the Successful Bidder at the Auction, the Opt Out Deadline, the Buyer shall have the right, in its sole and absolute discretion, to designate a Contract, Lease, Employee Benefit Plan or Assumable Permit for exclusion and rejection by delivering written notice to the Sellers along with (x) a modified Contract and Cure Schedule (and all such Contracts and Leases shall be Excluded Assets and all Liabilities arising under or in connection with such Contracts shall be Excluded Liabilities (other than Customer Credits that are Assumed Liabilities in accordance with Section 2.3)), (y) a modified Assumed Employee Benefit Plan Schedule (and all such Employee Benefit Plans shall be Excluded Assets and all

21

Liabilities arising under or in connection such Employee Benefit Plans shall be Excluded Liabilities) or (z) a modified Assumed Permit Schedule (and all such Assumable Permits shall be Excluded Assets and all Liabilities arising under or in connection with such Assumable Permits shall be Excluded Liabilities), without the necessity of providing prior notice to any non-debtor counterparty to any such Contract, Lease, Employee Benefit Plan or Assumable Permit.

(d)　　Unless the Bankruptcy Court orders otherwise, each Contract and Lease included on the Closing Assumed Contract List, Employee Benefit Plan included on the Closing Assumed Employee Benefit Plan List and Assumable Permit included on the Closing Assumed Contract List will be deemed to have been assigned to the Buyer and become an Assumed Contract, Assumed Employee Benefit Plan or Assumed Permit, as applicable, on the date (the "Assumption Effective Date") that is the later of: (i) the Closing Date, or (ii) contemporaneously with the resolution of any objections to the assumption and assignment of such Contract or Lease (or to a proposed Cure Amount), Employee Benefit Plan or Assumable Permit.

(e)　　As part of the Sale Motion (or as necessary in one or more separate motions), the Sellers shall request that, by virtue of the Sellers providing ten (10) Business Days' prior notice of its intent to assume and assign any Contract, Lease, Employee Benefit Plan or Assumable Permit, which notice shall be provided on or after the Designation Deadline or the Opt Out Deadline, as applicable, the Bankruptcy Court shall deem (by way of the Bidding Procedures Order or such other order of the Bankruptcy Court) any non-debtor party to such Contract, Lease, Employee Benefit Plan or Assumable Permit that does not file an objection with the Bankruptcy Court during such notice period to have given any required Consent to the assumption of the Contract, Lease, Employee Benefit Plan or Assumable Permit by the relevant Seller and assignment to the Buyer.  Subject to Section 2.6(j), (i) each Contract and Lease that is listed on Section 2.6(c)(i) of the Disclosure Schedule, but not the Closing Assumed Contract List, shall be rejected by the applicable Seller, (ii) each Employee Benefit Plan that is listed on Section 2.6(c)(ii) of the Disclosure Schedule, but not the Closing Assumed Employee Benefit Plan List shall be rejected by the applicable Seller and (iii) each Assumable Permit that is listed on Section 2.6(c)(iii) of the Disclosure Schedule, but not the Closing Assumed Permit List shall be rejected by the applicable Seller, in each case of (i), (ii) and (iii), subject to approval by the Bankruptcy Court.

(f)　　In connection with the assumption and assignment to the Buyer of any Assumed Contract, the cure amounts, as agreed among the applicable non-debtor counterparty, the Sellers and the Buyer, or as determined by the Bankruptcy Court, if any necessary to cure all defaults, if any, and to pay all actual or pecuniary losses that have resulted from such defaults under the Assumed Contracts, including any amounts payable to any landlord under any Lease that is an Assumed Contract, in each that relates to the period prior to the Assumption Effective Date (such amounts, the "Cure Amounts"), shall be paid by the Buyer, on the Assumption Effective Date, and not by any Seller and no Seller shall have liability therefor, and the Cure Amounts paid by the Buyer shall not reduce, directly or indirectly, any consideration received by the Sellers hereunder.

22

(g)    The Sellers shall use their commercially reasonable efforts to obtain an order of the Bankruptcy Court (including the Sale Order) to assign the Assumed Contracts to Buyer (the "<u>Assumption Approval</u>") on the terms set forth in this <u>Section 2.6</u>. In the event the Sellers are unable to assign any such Assumed Contract, Assumed Employee Benefit Plan or Assumed Permit to the Buyer pursuant to an order of the Bankruptcy Court for any reason, including that the Consent of Governmental Entity or third party is necessary to assume and assign such Assumed Contracts to the Buyer (the "<u>Necessary Consents</u>") and such Necessary Consent has not yet been obtained, then the Parties shall use their commercially reasonable efforts until the ninetieth (90th) day after the Closing Date (the "<u>Consent Deadline</u>") to obtain, and to cooperate in obtaining, all Consents from Governmental Entities and third parties necessary to assume and assign such Contract, Lease, Employee Benefit Plan or Assumable Permit to the Buyer, including, in the case of the Buyer, paying any applicable Cure Amounts.

(h)    To the extent that any Consent that is required to assign to the Buyer any Contract or Lease is not obtained by the Closing Date, the applicable Seller shall, with respect to each such Contract or Lease, from and after the Closing and until the earliest to occur of (x) the date on which such applicable Consent is obtained (which Consents the Parties shall use their commercially reasonable efforts, and cooperate with each other, to obtain promptly), and (y) the Consent Deadline, use commercially reasonable efforts to (i) provide to the Buyer the benefits under such Contract or Lease Contract, (ii) cooperate in any reasonable and lawful arrangement (including holding such Contract or Lease in trust for the Buyer pending receipt of the required Consent) designed to provide such benefits to the Buyer, and (iii) use its commercially reasonable efforts to enforce for the account of the Buyer any rights of the applicable Seller under such Contract or Lease (including the right to elect to terminate such Contract or Lease Contract in accordance with the terms thereof upon the written direction of the Buyer). The Buyer shall reasonably cooperate with the applicable Seller in order to enable the applicable Seller to provide to the Buyer the benefits contemplated by this <u>Section 2.6(h)</u>. The Buyer shall compensate the Sellers for any reasonable, out-of-pocket, non-fixed costs with respect to any Assumed Contract for which a Necessary Consent has not been obtained until such time as such Assumed Contract is either (a) assumed by the applicable Seller and assigned to the Buyer or (b) rejected by the applicable Seller.

(i)    Notwithstanding the foregoing, a Contract or Lease shall not be an Assumed Contract hereunder and shall not be assigned to, or assumed by, the Buyer to the extent that such Contract or Lease (i) is rejected by the applicable Seller or validly terminated by the applicable Seller in accordance with the terms hereof or by the other party thereto, or terminates or expires by its terms, on or prior to the Closing Date and is not continued or otherwise extended upon assumption, or (ii) requires a Consent of any Governmental Entity or other third party (other than, and in addition to, that of the Bankruptcy Court) in order to permit the sale or transfer to the Buyer of such Seller's rights under such Contract, and no such Consent has been obtained prior to the Consent Deadline. In addition, a Permit shall not be assigned to, or assumed by, the Buyer to the extent that such Permit requires a Consent of any Governmental Entity or other third party (other than, and in addition to, that of the Bankruptcy Court) in order to permit the

23

sale or transfer to the Buyer of the applicable Seller's rights under such Permit, and no such Consent has been obtained prior to the Closing or such later date as may be agreed among the applicable Seller and the Buyer (and all costs and expenses associated with such extension shall be borne by the Buyer).

(j)    If prior to the Closing, it is discovered that a Contract should have been listed on Section 2.6(c) of the Disclosure Schedule but was not so listed (any such Contract, a "Previously Omitted Contract"), the Sellers shall, promptly following the discovery thereof (but in no event later than five (5) Business Days following the discovery thereof), notify the Buyer in writing of such Previously Omitted Contract and provide the Buyer with a copy of such Previously Omitted Contract and the Cure Amount (if any) in respect thereof. The Buyer shall thereafter deliver written notice to the Sellers, no later than five (5) Business Days following such notice of such Previously Omitted Contract from the Sellers, if the Buyer elects to so include such Previously Omitted Contract on the Contract & Cure Schedule.

(k)    If the Buyer includes a Previously Omitted Contract on the Contract & Cure Schedule in accordance with Section 2.6(j), the applicable Seller shall file and serve a notice on the contract counterparties to such Previously Omitted Contract notifying such counterparties of such Seller's intention to assume and assign to the Buyer such Previously Omitted Contract, including the proposed Cure Amount (if any). Such notice shall provide such contract counterparties with ten (10) Business Days to object, in writing, to the Sellers and the Buyer to the assumption of its Contract or Lease. If such counterparties, the Sellers and the Buyer are unable to reach a consensual resolution with respect to the objection, the Sellers shall seek an expedited hearing before the Bankruptcy Court to seek approval of the assumption and assignment of such Previously Omitted Contract. If no objection is timely served on the Sellers and the Buyer, then such Previously Omitted Contract shall be deemed assumed by such Seller and assigned to the Buyer pursuant to the Sale Order. The Sellers and the Buyer shall execute, acknowledge and deliver such other instruments and take commercially reasonable efforts as are reasonably practicable for the Buyer to assume the rights and obligations under such Previously Omitted Contract.

**Section 2.7    Designation Rights.** Section 2.7 of the Disclosure Schedule contains a list of Contracts and Leases that shall not constitute Assumed Contracts hereunder, Employee Benefit Plans that shall not constitute Assumed Employee Benefit Plans hereunder and Assumable Permits that shall not constitute Assumed Permits hereunder, but that the applicable Seller (at the Buyer's expense as set forth in any Transition Services Agreement) shall not assume or reject at the Closing (the "Designation List"). In accordance with its rights under Section 2.6 or otherwise in the ninety (90) day period following the Closing Date, the Buyer shall have the option to designate any Contract or Lease listed on the Designation List as an Assumed Contract, Employee Benefit Plan listed on the Designation List as an Assumed Employee Benefit Plan or Assumable Permit listed on the Designation List as an Assumed Permit in each case by providing notice of such designation to the Sellers. In such event, the Sellers shall provide notice of the assumption and assignment of such Lease, Contract, Employee Benefit Plan or Assumable Permit to the applicable counterparty and, if applicable, the Buyer

24

shall pay all Cure Amounts required to be paid in connection with such assumption and assignment. Such notice shall provide such lessors with ten (10) Business Days to object, in writing, to the Sellers and the Buyer to the assumption and assignment of its Lease, Contract, Employee Benefit Plan or Assumable Permit. If such counterparties, the Sellers and the Buyer are unable to reach a consensual resolution with respect to the objection, the Sellers shall seek an expedited hearing before the Bankruptcy Court to seek approval of the assumption and assignment of such Lease, Contract, Employee Benefit Plan or Assumable Permit. If no objection is timely served on the Sellers and the Buyer, then such Lease, Contract, Employee Benefit Plan or Assumable Permit shall be deemed assumed by the Sellers and assigned to the Buyer pursuant to the Sale Order. The Sellers and the Buyer shall execute, acknowledge and deliver such other instruments and take commercially reasonable efforts as are reasonably practicable to implement the foregoing. The Buyer shall compensate the Sellers for any reasonable, out-of-pocket, non-fixed costs with respect to any Assumed Contract, Assumed Employee Benefit Plan or Assumed Permit for which a Necessary Consent has not been obtained until such time as such Assumed Contract, Assumed Employee Benefit Plan or Assumed Permit is either (a) assumed by the applicable Seller and assigned to the Buyer or (b) rejected by the applicable Seller.

**Section 2.8** <u>Closing</u>. The Parties agree that the closing of the purchase and sale of the Acquired Assets pursuant to this Agreement (the "<u>Closing</u>") shall take place at the offices of Winston & Strawn LLP, 200 Park Avenue, New York, NY 10166 (or such other location as shall be mutually agreed upon by the Sellers and the Buyer), if not conducted electronically at the option of the Buyer, commencing at 10:00 a.m. (prevailing Eastern time) on the date that is the second (2nd) Business Day after the date on which all conditions to the obligations of the Sellers and the Buyer to consummate the transactions contemplated hereby set forth in <u>Article VII</u> have been satisfied or waived (other than conditions with respect to actions that either or both the Sellers and the Buyer will take at the Closing itself, but subject to the satisfaction or waiver (by the Party entitled to waive such condition) of those conditions), or at such other time or on such other date as shall be mutually agreed upon by the Sellers and the Buyer prior thereto (the "<u>Closing Date</u>"); <u>provided</u>, <u>however</u>, the Closing shall occur prior to the End Date. The date and time on and at which the Closing actually occurs is referred to in this Agreement as the "Closing Date."

**Section 2.9** <u>Deliveries at Closing</u>.

(a) At the Closing, the Sellers shall deliver to the Buyer the following documents and other items, duly executed by the Sellers, as applicable:

(i) the Acquired Assets;

(ii) a Bill of Sale substantially in the form of <u>Exhibit B</u> attached hereto (the "<u>Bill of Sale</u>");

(iii) an Assignment and Assumption Agreement substantially in the form of <u>Exhibit C</u> attached hereto (the "<u>Assignment and Assumption Agreement</u>");

25

(iv)     an Intellectual Property Assignment substantially in the form of Exhibit D attached hereto together with any short-form assignments requested by the Buyer for recordation with the U.S. Patent and Trademark Office, the U.S. Copyright Office or any other Governmental Entity or domain name registrar (collectively, the "Intellectual Property Assignment");

(v)     one or more Transition Services Agreements in all respects reasonably satisfactory to the Buyer and the applicable Sellers (each a "Transition Services Agreement");

(vi)     a certificate signed by an authorized officer of each Seller to the effect that each of the conditions specified in Section 7.1(a) and Section 7.1(b) is satisfied in accordance with the terms thereof; and

(vii)     from each Seller, a duly completed and executed Internal Revenue Service Form W-9 certifying that such Seller is a "U.S. person" and is not subject to United States backup withholding.

(b)     At the Closing, the Buyer shall deliver to the Sellers, the following documents, consideration and other items, duly executed by the Buyer, as applicable:

(i)     the Purchase Price;

(ii)     the Assignment and Assumption Agreement;

(iii)     the Intellectual Property Assignment;

(iv)     any Transition Services Agreement;

(v)     a certificate to the effect that each of the conditions specified in Section 7.2(a) and Section 7.2(b) is satisfied in accordance with the terms thereof; and

(vi)     a copy of the Buyer's certificate of incorporation, certificate of formation or other formation document certified as of a date on or soon before the Closing Date by the Secretary of State (or comparable governmental officer) of the respective jurisdictions of the Buyer's incorporation or organization.

**Section 2.10    Allocation**.  As soon as reasonably practicable and in no event later than sixty (60) days after the Closing Date, the Buyer shall provide the Sellers with a draft allocation of the Purchase Price for federal income tax purposes, including any liabilities properly included therein among the Acquired Assets and the agreements provided for herein, for federal, state and local income tax purposes (the "Initial Allocation").  Within forty-five (45) days of the receipt of the Initial Allocation, the Sellers may deliver a written notice (the "Allocation Objection Notice") to the Buyer, setting forth in reasonable detail those items in the Initial Allocation that the Sellers dispute, if any.  The Sellers may make reasonable inquiries of the Buyer and its accountants and Service Providers relating to the Initial Allocation, and the Buyer shall use

26

reasonable efforts to cause any such accountants and Service Providers to cooperate with, and provide such requested information to, the Sellers in a timely manner. If prior to the conclusion of such forty-five (45)-day period, the Sellers notify the Buyer in writing that they will not provide any Allocation Objection Notice or if the Sellers do not deliver an Allocation Objection Notice within such forty-five (45)-day period, then the Buyer's proposed Initial Allocation shall be deemed final, conclusive and binding upon each of the Parties. Within thirty (30) days of the Sellers' delivery of the Allocation Objection Notice, the Sellers and the Buyer shall attempt to resolve in good faith any disputed items, and failing such resolution, the unresolved disputed items shall be referred for final binding resolution to a mutually agreeable accounting firm (the "Arbitrating Accountant"). The fees and expenses of the Arbitrating Accountant shall be paid fifty percent (50%) by the Buyer and fifty percent (50%) by the Sellers. Such determination by the Arbitrating Accountant shall be (i) in writing, (ii) furnished to the Buyer and the Sellers as soon as practicable (and in no event later than thirty (30) days after the items in dispute have been referred to the Arbitrating Accountant), (iii) made in accordance with the principles set forth in this Section 2.10, and (iv) non-appealable and incontestable by the Buyer and the Sellers. As used herein, the "Allocation" means the allocation of the Purchase Price, the Assumed Liabilities and other related items among the Acquired Assets and the agreements provided for herein as finally agreed between the Buyer and the Sellers or ultimately determined by the Arbitrating Accountant, as applicable, in accordance with this Section 2.10. The Allocation shall be prepared in accordance with IRC Section 1060 and the treasury regulations promulgated thereunder (and any similar provision of state, local or foreign Law, as appropriate). The Buyer and the Sellers shall each report the federal, state and local income and other Tax consequences of the transactions contemplated hereby in a manner consistent with the Allocation, including, if applicable, the preparation and filing of Forms 8594 under IRC Section 1060 (or any successor form or successor provision of any future Tax Law) with their respective federal income Tax Returns for the taxable year which includes the Closing Date, and neither will take any position inconsistent with the Allocation unless otherwise required under applicable Law. The Sellers shall provide the Buyer and the Buyer shall provide the Sellers with a copy of any information required to be furnished to the Secretary of the Treasury under IRC Section 1060.

   **Section 2.11   Proration of Taxes and Other Items.** Except as otherwise provided in this Agreement with respect to Tax items allocable to a particular Party, to the extent that any of the items listed below in this Section 2.11 are paid by the Sellers prior to the Closing or are payable by the Buyer or the Sellers after the Closing Date, such items shall be apportioned as of the Closing Date such that (i) the Sellers shall be liable for (and shall reimburse the Buyer to the extent that the Buyer shall pay) that portion of such of the foregoing relating or attributable to periods prior to the Closing Date; and (ii) the Buyer shall be liable (and shall reimburse the Sellers, to the extent the Sellers shall have paid) that portion of the foregoing relating or attributable to periods on or after the Closing Date. Should any amounts to be prorated not have been finally determined on the Closing Date, a mutually satisfactory estimate of such amounts made on the basis of the Sellers' records shall be used as a basis for settlement at the Closing, and the amount finally determined will be prorated as of the Closing Date and appropriate settlement made as soon as practicable after such final determination, with final settlement to be made no later than sixty (60) days after the Closing Date. The items to be prorated in accordance with this Section 2.11 shall include, without limitation: (a) personal property, real estate, retail

27

sales, occupancy and use Taxes, if any, on or with respect to the Business, the Acquired Assets and/or the Assumed Liabilities, except to the extent the date of the assessment of such Taxes falls before the Closing Date, in which case such Taxes shall be Excluded Liabilities; (b) lease payments under any Assigned Contract that is a Lease for the month in which the Closing occurs; and (c) insurance premiums of any policies acquired by the Buyer at the Closing.  The Sellers and the Buyer agree to furnish each other with such documents and other records as each Party reasonably requests in order to confirm all adjustment and proration calculations made pursuant to this Section 2.11.

**ARTICLE III**
**REPRESENTATIONS AND WARRANTIES OF THE SELLERS.**

Each Seller represents and warrants to the Buyer that except as set forth in the disclosure schedule accompanying this Agreement as of the date hereof and as of Closing (the "Disclosure Schedule"):

**Section 3.1      Organization of Each Seller; Good Standing.**

(a)      Such Seller is a limited liability company or corporation duly organized, validly existing and in good standing under the Laws of its jurisdiction of formation or incorporation.

(b)      Such Seller has all requisite limited liability company or corporate power and authority to own, lease and operate its assets and to carry on the Business as currently conducted.

(c)      Such Seller is duly authorized to do business and is in good standing as a foreign limited liability company or corporation in each jurisdiction where the ownership or operation of the Acquired Assets or the conduct of the Business requires such qualification, except for failures to be so authorized or be in such good standing, as would not, individually or in the aggregate, have a Material Adverse Effect.

(d)      Except as set forth on Section 3.1(d) of the Disclosure Schedule, such Seller has no Subsidiaries.  Except as set forth on Section 3.1(d) of the Disclosure Schedule, all outstanding equity interests of each Subsidiary of such Seller are held of record by such Seller and beneficially owned by such Seller, and at the Closing will be conveyed free and clear of all Liens (other than Permitted Liens).  All outstanding equity interests of each Subsidiary, if any, of such Seller have been duly authorized and are fully paid and non-assessable.  There are no outstanding or authorized, and there is no obligation of any Subsidiary of such Seller to issue or grant, any options, warrants, purchase rights, subscription rights, conversion rights, exchange rights, preemptive rights, redemption rights, repurchase rights, rights of first refusal or other rights, or Contracts that could require any Subsidiary of such Seller to issue, sell or otherwise cause to become outstanding or that otherwise relate to the equity interests of any Subsidiary of such Seller or to redeem or otherwise acquire any of its outstanding equity interests, or obligate any Subsidiary of such Seller to grant, extend or enter into any such agreements.

28

**Section 3.2    Authorization of Transaction**.  Subject to the Sale Order having been entered and still being in effect and not subject to any stay pending appeal at the time of Closing:

(a)    Such Seller has all requisite limited liability company or corporate power and authority to execute and deliver this Agreement and all Related Agreements to which it is a party and to perform its obligations hereunder and thereunder; the execution, delivery and performance of this Agreement and all Related Agreements to which such Seller is a party have been duly authorized by such Seller, and no other limited liability company or corporate action on the part of such Seller is necessary to authorize this Agreement or the Related Agreements to which it is party or to consummate the transactions contemplated hereby or thereby; and

(b)    This Agreement has been duly and validly executed and delivered by such Seller, and, upon execution and delivery in accordance with the terms of this Agreement, each of the Related Agreements to which such Seller is a party will have been duly and validly executed and delivered by such Seller.  Assuming that this Agreement constitutes a valid and legally binding obligation of the Buyer, this Agreement constitutes the valid and legally binding obligations of such Seller, enforceable against such Seller in accordance with its terms and conditions, subject to applicable bankruptcy, insolvency, moratorium or other similar Laws relating to creditors' rights and general principles of equity.  Assuming, to the extent that it is a party thereto, that each Related Agreement constitutes a valid and legally binding obligation of the Buyer, each Related Agreement to which such Seller is a party, when executed and delivered, constituted or will constitute the valid and legally binding obligations of such Seller, as applicable, enforceable against such Seller in accordance with their respective terms and conditions, subject to applicable bankruptcy, insolvency, moratorium or other similar Laws relating to creditors' rights and general principles of equity.

**Section 3.3    Noncontravention; Consents and Approvals**.

(a)    Neither the execution and delivery of this Agreement, nor the consummation of the transactions contemplated hereby (including the assignments and assumptions referred to in Article II), will, subject to the Sale Order having been entered and still being in effect and not subject to any stay pending appeal at the time of Closing, (i) conflict with or result in a breach of the certificate of incorporation, certificate of formation, limited liability company agreement, by-laws or other organizational documents of such Seller, (ii) violate any Law to which such Seller is, or its respective assets or properties are, subject, or (iii) conflict with, result in a breach of, constitute a default under, result in the acceleration of, create in any party the right to accelerate, terminate, modify or cancel or require any notice under any Contract to which such Seller is a party or by which it is bound or to which any of the Acquired Assets is subject, except as set forth on Section 3.3(a) of the Disclosure Schedule and, in the case of clause (ii) or (iii), for such violations, conflicts, breaches, defaults, accelerations, rights or failures to give notice as would not, individually or in the aggregate, have a Material Adverse Effect.

29

(b)     Subject to the Sale Order having been entered and still being in effect and not subject to any stay pending appeal at the time of Closing and except as set forth on Section 3.3(b) of the Disclosure Schedule, no Consent, notice or filing is required to be obtained by such Seller from, or to be given by such Seller to, or made by such Seller with, any Governmental Entity in connection with the execution, delivery and performance by such Seller of this Agreement or any Related Agreement. Subject to the Sale Order having been entered and still being in effect (and not subject to any stay pending appeal at the time of Closing) and except as set forth on Section 3.3(b) of the Disclosure Schedule, no Consent, notice or filing is required to be obtained by such Seller from, or to be given by such Seller to, or made by such Seller with, any Person that is not a Governmental Entity in connection with the execution, delivery and performance by such Seller of this Agreement or any Related Agreement, and except where the failure to give notice, file or obtain such authorization, consent or approval would not, individually or in the aggregate, have a Material Adverse Effect.

**Section 3.4     Title to Acquired Assets**.  Such Seller has good and valid title to, or, in the case of leased assets, has good and valid leasehold interests in, the Acquired Assets, and at the Closing will convey the Acquired Assets free and clear of all Liens (except for Permitted Liens).  At the Closing or such time as title is conveyed under Section 2.6 or Section 2.7, as applicable, such Seller will convey to the Buyer, (b) subject to the Sale Order having been entered and still being in effect and not subject to any stay pending appeal at the time of Closing, good and valid title to, or valid leasehold interests in, all of the Acquired Assets, free and clear of all Liens (except for Permitted Liens).

**Section 3.5     Contracts**.

(a)     Section 3.5(a) of the Disclosure Schedule sets forth, to the Sellers' Knowledge, a true, correct and complete list of all Material Contracts to which any Seller is a party and copies of all such Contracts and all other material Contracts or instruments entered into or delivered in connection therewith, as amended through the date hereof, have been delivered to or made available to the Buyer. Section 3.5(a) of the Disclosure Schedule specifically identifies the following Contracts related to the Business to which such Seller is a party with respect to the Business or by which the Business is bound (each item disclosed or required to be disclosed on Section 3.5(a) of the Disclosure Schedule, a "Material Contract"):

(i)     any membership agreement or other Contract with the customers of each Seller, which shall be listed on a location by location basis that denotes what Lease relates to the "home" or "primary" gym or other health club location for such customer;

(ii)     any Contract for the lease of personal property to or from any Person providing for lease payments in excess of $25,000 per annum;

(iii)     any Contract for the purchase or sale of equipment, supplies, products, goods on order, Inventory (as defined in the UCC) or other personal

30

property, the performance of which will extend over a period of more than six months after the Closing Date or involves consideration in excess of $50,000 per annum;

(iv)    any Contract, excluding any employment Contract, for services, including services performed by any Service Provider involving consideration in excess of $50,000 per annum;

(v)    any employment Contract providing for services performed by any Service Provider involving consideration in excess of $50,000 per annum;

(vi)    any Contract that is a collective bargaining agreement;

(vii)    any licenses of Intellectual Property to or from any Person (other than licenses for commercially available, off-the-shelf, or click-wrap software);

(viii)    any Contract prohibiting such Seller from freely engaging in any material business (other than pursuant to any radius restriction contained in any lease, reciprocal easement or development, construction, operating or similar agreement);

(ix)    any Contract relating to Indebtedness;

(x)    any Contract granting any Person a Lien on all or any part of any of the Acquired Assets;

(xi)    any Contract (including the Leases) that involves the lease of real property or that obligates such Seller to purchase real property;

(xii)    any Contract granting to any Person an option or a first refusal, first-offer, or similar preferential right to purchase or acquire any of the Acquired Assets;

(xiii)    any Contract that creates or governs a partnership, joint venture, strategic alliance or similar arrangement;

(xiv)    any Contract (other than those set forth above in clauses (i) through (viii)) with suppliers to the Business that involves consideration in excess of $25,000 per annum; and

(xv)    any Contract with any Related Party.

(b)    Each Material Contract is valid and binding on the Seller party thereto in accordance with its terms and is in full force and effect.  Except as set forth on <u>Section 3.5 of the Disclosure Schedule</u>, none of the Sellers or, to the Sellers' Knowledge, any other party thereto is in breach of or default under (or is alleged to be in breach of or default under), or has provided or received any notice of any intention to terminate, any

31

Material Contract.  Except as set forth on <u>Section 3.5 of the Disclosure Schedule</u>, no event or circumstance has, to the Sellers' Knowledge, occurred that, with notice or lapse of time or both, would constitute an event of default under any Material Contract or result in a termination thereof or would cause or permit the acceleration or other changes of any right or obligation or the loss of any benefit thereunder.  No Seller, and, to the Sellers' Knowledge, no other party to any Material Contract, has commenced any action against any of the parties to any such Material Contract.

**Section 3.6    Legal Compliance**.  Such Seller is in compliance with all material Laws applicable to the Business or the Acquired Assets, except in any such case where the failure to be in compliance would not have a Material Adverse Effect, and such Seller has not received any written notice within the past twelve (12) months relating to violations or alleged violations or material defaults under any Law, Decree or any Permit, in each case, with respect to the Business.

**Section 3.7    Litigation**.  Except as set forth on <u>Section 3.7 of the Disclosure Schedule</u>, there is no Litigation pending or, to the Knowledge of the Sellers, threatened, before any Governmental Entity brought by or against such Seller, whether on an individual or a class-action basis, and including any investigations by any attorney general or similar office on behalf of any Governmental Entity, that, if adversely determined, would be material to the Business or materially impair such Seller's ability to consummate the transactions contemplated hereby or by the Related Agreements.

**Section 3.8    Environmental, Health and Safety Matters**.

(a)    Except as set forth on <u>Section 3.8 of the Disclosure Schedule</u>, such Seller is, and since January 1, 2016, has been, in compliance with all applicable Environmental, Health and Safety Requirements with respect to the Leased Real Property, except in any such case where the failure to be in compliance would not have a Material Adverse Effect, and there are no Liabilities under any Environmental, Health and Safety Requirements with respect to the Business which would have a Material Adverse Effect.

(b)    Except as set forth on <u>Section 3.8 of the Disclosure Schedule</u>, since January 1, 2016, such Seller has not received any written notice or report regarding any violation of Environmental, Health and Safety Requirements or any Liabilities relating to the Business or any Leased Real Property arising under Environmental, Health and Safety Requirements.  There are no Decrees outstanding, or any Litigations pending or, to the Knowledge of the Sellers, threatened, relating to compliance with or Liability under any Environmental, Health and Safety Requirements affecting the Business or any Leased Real Property.

(c)    Such Seller has made available to the Buyer such environmental reports, documents, studies, analyses, investigations, audits and reviews in such Seller's possession as necessary to reasonably disclose to the Buyer any environmental, health or safety liability known to such Seller with respect to the Leased Real Property which would have a Material Adverse Effect.

*ACTIVE 53667627v2*

AmericasActive:14734294.18

**Section 3.9     Employees and Employment Matters**.

(a)     Such Seller is not a party to or bound by any collective bargaining agreement covering the Covered Employees, nor has any of them experienced any strike, walkout, work stoppage or other material collective bargaining dispute with respect to the Business within the twelve (12) months prior to the date hereof.  Such Seller has not committed any material unfair labor practice within the twelve (12) months prior to the date hereof.  Within the twelve (12) months prior to the date hereof, such Seller has not implemented any plant closing or layoff of the Covered Employees in violation of the United States Worker Adjustment and Retraining Notification Act, or any similar applicable Law (collectively, the "WARN Act").  Seller is not a party to any pending, or, to the Knowledge of the Sellers, threatened employment-related matters, and is in material compliance with all employment Laws.

(b)     Except as set forth on Section 3.9(b) of the Disclosure Schedules, there are no written employment contracts or severance agreements with any Covered Employees.

**Section 3.10     Employee Benefit Plans**.

(a)     Section 3.10 of the Disclosure Schedule lists each Employee Benefit Plan that such Seller maintains with respect to the Covered Employees.  With respect to each such Employee Benefit Plan:

(i)     such plan, if intended to meet the requirements of a "qualified plan" under Section 401(a) of the IRC, has received a favorable determination letter from the United States Internal Revenue Service or may rely on a favorable opinion letter issued by the Unites States Internal Revenue Service; and

(ii)     Such Seller has made available to the Buyer summaries of all such Employee Benefit Plans.

(b)     Each Employee Benefit Plan has been established, funded, maintained and administered, in each case, in all material respects, in accordance with its terms and all applicable Laws.  There is no material pending or, to the Knowledge of the Sellers, threatened, Litigation relating to the Employee Benefit Plans.  Such Seller does not maintain, sponsor or contribute to, and has not maintained, sponsored or contributed to, (i) any plan subject to Title IV of ERISA, Section 302 of ERISA or Section 412 of the IRC, (ii) any "multiemployer plan" (as defined in Section 3(37) of ERISA), (iii) any "multiple employer plan" (as defined in Section 413(c) of the IRC), or (iv) any "multiple employer welfare arrangement" (as defined in Section 3(40) of ERISA).

**Section 3.11     Leased Real Property**.  Section 3.11 of the Disclosure Schedule sets forth the address of each Leased Real Property, and a true and complete list of all Leases for such Leased Real Property.  Such Seller has made available to the Buyer true and complete copies of such Leases and all other material Contracts or instruments entered into or delivered in connection therewith, as amended through the date hereof.  With respect to each of the Leases:

33

(a)        such Lease is legal, valid, binding, enforceable and in full force and effect against such Seller subject to proper authorization and execution of such Lease by the other party thereto and the application of any bankruptcy or other creditor's rights Laws; and

(b)        other than as set forth on <u>Section 3.11 of the Disclosure Schedule</u>, except as to the pendency of Sellers' Chapter 11 Cases, such Seller is not in breach or default under such Lease and, to the Knowledge of the Sellers, no event has occurred or circumstance exists which, with the delivery of notice, the passage of time or both, would constitute such a breach or default, except to the extent such breach or default would not, individually or in the aggregate, materially impair the continued use and operation of the Leased Real Property to which it relates in the conduct of the Business as presently conducted.

**Section 3.12    Permits**.  <u>Section 3.12 of the Disclosure Schedule</u> contains a list of all material Permits that such Seller holds in connection with the operations of the Business and whether such Permits are Assumable Permits.  There is no Litigation pending, nor to the Knowledge of the Sellers, threatened in writing, that seeks the revocation, cancellation, suspension, failure to renew or adverse modification of any material Permits, except where a failure of this representation and warranty to be so true and correct would not reasonably be expected to have a Material Adverse Effect.

**Section 3.13    Insurance**.  <u>Section 3.13 of the Disclosure Schedule</u> contains a list of all material, primary, excess and umbrella insurance policies, bond and other forms of material insurance owned or held by or on behalf, or providing insurance coverage to the Business, such Seller and its operations, properties and assets (collectively, the "<u>Insurance Policies</u>"), excluding director and officer, fiduciary or executive liability policies.  The term "Insurance Policies" does not include policies of insurance that fund or relate to any Employee Benefit Plan.  To the Knowledge of the Sellers, all of the Insurance Policies are in full force and effect and no written notice of cancellation or termination has been received by the Sellers with respect to any of the Insurance Policies.

**Section 3.14    Absence of Changes**.    Except as set forth on <u>Section 3.14 of the Disclosure Schedule</u>, except with respect to the Sellers' Chapter 11 Cases, and except for the impact of COVID-19 and responses thereto, since January 1, 2020, the Business has been conducted only in the Ordinary Course of Business, and there is no state of facts, change, event, effect, development, condition, circumstance or occurrence that has occurred or, to the Knowledge of the Sellers, been threatened that (when taken together with all other states of fact, changes, events, effects, developments, conditions, circumstances or occurrences) has had or is reasonably likely to have, a Material Adverse Effect.

**Section 3.15    Intellectual Property**.  <u>Section 3.15 of the Disclosure Schedule</u> sets forth a true and complete list of all Intellectual Property owned by such Seller that is an issued patent, a registration or an application for a patent or registration and all material unregistered trademarks and software owned by such Seller.  In addition, <u>Section 3.15 of the Disclosure Schedule</u> sets forth a true and complete list of all material Intellectual Property used by each such

34

Seller (other than licenses for commercially available, off-the-shelf or click-wrap software).  All such Intellectual Property and all rights therein or associated therewith are valid and enforceable. The use and commercial exploitation of the Intellectual Property Assets has not infringed or otherwise violated, and does not infringe or otherwise violate, any Intellectual Property of any other Person and, to the Sellers' Knowledge, no Person is infringing or otherwise violating the Intellectual Property Assets of the Sellers.

**Section 3.16   Brokers' Fees**.  The Sellers are seeking to retain FocalPoint Partners LLC to serve as the Sellers' investment banker in connection with, *inter alia*, the marketing and sale of the Sellers' assets and, as such, upon approval, will be entitled to certain fees and/or other compensation as and to the extent set forth in the order of the Bankruptcy Court authorizing such retention.    Such Seller has not otherwise entered into any Contract to pay any fees or commissions to any broker, finder or agent with respect to the transactions contemplated by this Agreement for which the Buyer could become liable or obligated to pay.

**Section 3.17   Taxes**.

(a)    Each Seller has complied with all laws relating to Taxes in all material respects.  Each Seller has timely filed all income and other material Tax Returns required to be filed by it with respect to the Business, Acquired Assets or Covered Employees and all such Tax Returns were true, correct and complete in all respects.  All Taxes due and owing by the Sellers (including Taxes withheld or required to have been withheld by the Sellers) have been timely paid in full.  There are no Liens for Taxes (other than Permitted Liens) on any of the Acquired Assets.  There are no Tax audits, assessments or other actions in process or pending with respect to the Business, Acquired Assets or Covered Employees.  No Seller has (i) received from any Governmental Entity any Tax ruling, administrative relief, technical advice or change of method of accounting relating to or affecting the Business, Acquired Assets or Covered Employees or made any request therefor that is still pending or (ii) executed or entered into a closing agreement relating to or affecting the Business, Acquired Assets or Covered Employees pursuant to Section 7121 of the IRC or any predecessor provision thereof or any similar provision of any Law.  No Seller has received a written claim from a Governmental Entity in a jurisdiction in which it does not file a Tax Return that it may be subject to taxation by (or required to file a Tax Return in) that jurisdiction that has not yet been settled or otherwise resolved. No Seller has waived any statute of limitations in respect of Taxes or agreed to any extension of time with respect to a material Tax assessment or deficiency, which waiver or extension is currently effective, nor has any Seller made any request in writing for any such extension or waiver that is currently outstanding.

(b)    Section 3.17 of the Disclosure Schedule sets forth a true and complete list of elections that have been made (or are pending) and actions that have been taken (or are pending) by any Seller pursuant to Sections 2301-2308 of the CARES Act or Sections 7001-7005 of the Families First Act.

**Section 3.18   No Other Representations or Warranties**.    Except for the representations and warranties contained in this Article III (as qualified, amended, supplemented

and modified by the Disclosure Schedule), neither such Seller nor any other Person makes (and the Buyer is not relying upon) any other express or implied representation or warranty with respect to such Seller, the Business, the Acquired Assets (including the value, condition or use of any Acquired Asset), the Assumed Liabilities or the transactions contemplated by this Agreement, and such Seller disclaims any other representations or warranties, whether made by such Seller, any other Seller, any Affiliate of any Seller or any of their respective officers, directors, employees, agents or Representatives.  Except for the representations and warranties contained in this <u>Article III</u> (as qualified, amended, supplemented and modified by the Disclosure Schedule), such Seller (i) expressly disclaims and negates any representation or warranty, express or implied, at common law, by statute or otherwise, relating to the condition of the Acquired Assets (including any implied or expressed warranty of title, merchantability or fitness for a particular purpose, or of the probable success or profitability of the ownership, use or operation of the Business or the Acquired Assets by the Buyer after the Closing), and (ii) disclaims all liability and responsibility for any representation, warranty, projection, forecast, statement or information made, communicated or furnished (orally or in writing) to the Buyer or its Affiliates or Representatives (including any opinion, information, projection or advice that may have been or may be provided to the Buyer by any director, officer, employee, agent, consultant or Representative of such Seller).  The disclosure of any matter or item in the Disclosure Schedule shall not be deemed to constitute an acknowledgment that any such matter is required to be disclosed or is material or that such matter would result in a Material Adverse Effect.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF THE BUYER

The Buyer represents and warrants to the Sellers as of the date hereof and as of the Closing as follows:

**Section 4.1    Organization of the Buyer**.  The Buyer is a limited liability company duly organized, validly existing and in good standing under the Laws of the State of Delaware and has all requisite limited liability company power and authority to own, lease and operate its assets and to carry on its business as now being conducted.

**Section 4.2    Authorization of Transaction**.

(a)    The Buyer has full power and authority to execute and deliver this Agreement and all Related Agreements to which it is a party and to perform its obligations hereunder and thereunder.

(b)    The execution, delivery and performance of this Agreement and all other Related Agreements to which the Buyer is a party have been duly authorized by the Buyer, and no other limited liability company action on the part of the Buyer is necessary to authorize this Agreement or the Related Agreements to which it is a party or consummate the transactions contemplated hereby or thereby.

36

(c)     This Agreement has been duly and validly executed and delivered by the Buyer, and, upon execution and delivery or the Related Agreements in accordance with the terms of this Agreement, each of the Related Agreements to which the Buyer is a party will have been duly and validly executed and delivered by the Buyer. Assuming that this Agreement constitutes a valid and legally binding obligation of the Sellers, this Agreement constitutes a valid and legally binding obligation of the Buyer, enforceable against the Buyer in accordance with its terms and conditions, subject to applicable bankruptcy, insolvency, moratorium or other similar Laws relating to creditors' rights and general principles of equity. Assuming that each Related Agreement constitutes a valid and legally binding obligation of the Sellers, each Related Agreement to which the Buyer is a party, when executed and delivered, constituted or will constitute the valid and legally binding obligations of the Buyer, enforceable against the Buyer in accordance with the respective terms and conditions or the Related Agreements, subject to applicable bankruptcy, insolvency, moratorium or other similar Laws relating to creditors' rights and general principles of equity.

**Section 4.3    Noncontravention**.     Neither the execution and delivery of this Agreement, nor the consummation of the transactions contemplated hereby (including the assignments and assumptions referred to in Article II), will (i) conflict with or result in a breach of the certificate of formation, or limited liability company agreement, or other organizational documents of the Buyer, (ii) subject to any consents required to be obtained from any Governmental Entity, violate any Law to which the Buyer is, or its assets or properties are subject, or (iii) conflict with, result in a breach of, constitute a default under, result in the acceleration of, create in any party the right to accelerate, terminate, modify or cancel, or require any notice under any Contract to which the Buyer is a party or by which it is bound, except, in the case of either clause (ii) or (iii), for such conflicts, breaches, defaults, accelerations, rights or failures to give notice as would not, individually or in the aggregate, reasonably be expected to prevent, materially delay or materially impair the ability of the Buyer to consummate the transactions contemplated by this Agreement or by the Related Agreements. The Buyer is not required to give any notice to, make any filing with or obtain any authorization, consent or approval of any Governmental Entity in order for the Parties to consummate the transactions contemplated by this Agreement or any of the Related Agreement, and except where the failure to give notice, file or obtain such authorization, consent or approval would not, individually or in the aggregate, reasonably be expected to prevent, materially delay or materially impair the ability of the Buyer to consummate the transactions contemplated by this Agreement or by the Related Agreements.

**Section 4.4    Litigation**.     As of the date hereof, (i) the Buyer is not subject to any outstanding Decree and (ii) the Buyer is not a party or, to the Knowledge of the Buyer, received any credible, written threat that it will be made a party to any Litigation, in either case, which would be reasonably likely to (A) result in any material Liability to the Buyer with respect to the Business or (B) materially prevent, restrict or delay the consummation of the transactions contemplated hereby or by any Related Agreement.

**Section 4.5    Brokers' Fees**.     Neither the Buyer nor any of its Affiliates has entered into any Contract to pay any fees or commissions to any broker, finder or agent with respect to the

transactions contemplated by this Agreement for which Seller could become liable or obligated to pay.

**Section 4.6    Financial Capacity**.  The Buyer (a) has the resources (including sufficient funds available to pay the Purchase Price and any other expenses and payments incurred by the Buyer in connection with the transactions contemplated by this Agreement) and capabilities (financial or otherwise) to perform its obligations hereunder, and (b) has not incurred any obligation, commitment, restriction or Liability of any kind, that would reasonably be expected to impair or adversely affect such resources and capabilities.

**Section 4.7    Condition of the Business**.  Notwithstanding anything contained in this Agreement to the contrary, the Buyer acknowledges and agrees that the Sellers are not making any representations or warranties whatsoever, express or implied, beyond those expressly set forth in Article III (as amended, supplemented and modified by the Disclosure Schedule), and the Buyer acknowledges and agrees that, except for the representations and warranties contained therein, the Acquired Assets and the Business are being transferred on a "where is" and, as to condition, "as is" basis.  Any claims the Buyer or any of its Affiliates may have for breach of representation or warranty shall be based solely on the representations and warranties set forth in Article III (as amended, supplemented and modified by the Disclosure Schedule).  The Buyer further represents that no Seller nor any other Person has made, and the Buyer is not relying upon, any representation or warranty, express or implied, as to the accuracy or completeness of any information regarding any Seller, the Business or the transactions contemplated by this Agreement not expressly set forth in Article III, and no Seller or any other Person will have or be subject to any liability to the Buyer or any other Person resulting from the distribution to the Buyer or any of its Representatives or the Buyer's use of any such information.  The Buyer represents that it is a sophisticated entity that was advised by knowledgeable counsel and financial and other advisors and hereby acknowledges that it has conducted, to its satisfaction, its own independent investigation and analysis of the Business (including its financial condition), the Acquired Assets and the Assumed Liabilities and, in making the determination to proceed with the transactions contemplated by this Agreement, the Buyer has relied solely on the results of its own independent investigation and the express representations and warranties set forth in Article III.  Notwithstanding anything to the contrary, nothing in this Section 4.7 shall be deemed to constitute a waiver by the Buyer of gross negligence, bad faith or willful misconduct on the part of any Seller or any Seller's Affiliates, Related Parties or Representatives.

**Section 4.8    Adequate Assurances Regarding Executory Contracts**.  The Buyer as of the Closing will be capable of satisfying the conditions contained in sections 365(b)(1)(C) and 365(f) of the Bankruptcy Code with respect to the Assumed Contracts.

**Section 4.9    Good Faith Purchaser**.  The Buyer is a "good faith" purchaser, as such term is used in the Bankruptcy Code and court decisions thereunder.  The Buyer is entitled to the protections of section 363(m) of the Bankruptcy Code with respect to all of the Acquired Assets.  The Buyer has negotiated and entered into this Agreement in good faith and without collusion or fraud of any kind.

38

## ARTICLE V
## PRE-CLOSING COVENANTS

The Parties agree as follows with respect to the period between the execution of this Agreement and the Closing (except as otherwise expressly stated to apply to a different period):

**Section 5.1    Certain Efforts; Cooperation**.  Subject to the Sellers' fiduciary rights in connection with pursuing an Alternative Transaction pursuant to, and in accordance with, the Bidding Procedures Order, each of the Parties shall use commercially reasonable best efforts to obtain entry of the Bidding Procedures Order and Sale Order and to make effective the transactions contemplated by this Agreement on or prior to the End Date, except as otherwise provided in Section 5.2 or as otherwise expressly provided in this Agreement.  Without limiting the generality of the foregoing, each of the Parties shall use commercially reasonable best efforts not to take any action, or permit any of its Subsidiaries to take any action, to materially diminish the ability of any other Party to consummate, or materially delay any other Party's ability to consummate, the transactions contemplated hereby, including taking any action that is intended or would reasonably be expected to result in any of the conditions to any other Party's obligations to consummate the transactions contemplated hereby set forth in Article VII to not be satisfied.

**Section 5.2    Notices and Consents**.  To the extent required by the Bankruptcy Code or the Bankruptcy Court, the Sellers shall give any notices to third parties, and the Sellers shall use commercially reasonable best efforts to obtain any third-party consents or sublicenses, in connection with the matters referred to in Section 5.2 of the Disclosure Schedule.

**Section 5.3    Bankruptcy Actions**.

(a)    The Sellers shall use commercially reasonable best efforts to cause each of Bidding Procedures Order and Sale Order to be issued, entered and become a Final Order (it being acknowledged and agreed that, to the extent necessary to comply with the milestones set forth on Section 5.3(e) of the Disclosure Schedule, the Sellers shall seek expedited or special hearing dates in connection with the sale process), including furnishing affidavits, declarations or other documents or information for filing with the Bankruptcy Court.

(b)    The Sellers shall provide appropriate notice of the hearings on the Bidding Procedures and Sale Motion, as is required by the Bankruptcy Code and the Bankruptcy Rules to all Persons entitled to notice, including all Persons that have asserted Liens in the Acquired Assets, all parties to Contracts and Leases and all Taxing and environmental authorities in jurisdictions applicable to any Seller.  The Sellers shall be responsible for making all appropriate filings relating thereto with the Bankruptcy Court.

(c)    Following entry of the Bidding Procedures Order, the Sellers shall serve a cure notice (the "Cure Notice") by first class mail on all non-debtor counterparties to all Contracts and Leases and provide a copy of the same to the Buyer.  The Cure Notice shall inform each recipient that its respective Contract or Lease may be designated by the

*ACTIVE 53667627v2*

AmericasActive:14734294.18

Buyer as either assumed or rejected, and the timing and procedures relating to such designation, and, to the extent applicable (i) the title of the Contract or Lease, (ii) the name of the counterparty to the Contract or Lease, (iii) the applicable Seller's good-faith estimates of the Cure Amounts required in connection with such Contract or Lease, (iv) the identity of the Buyer, and (v) the deadline by which any such Contract or Lease counterparty may file an objection to the proposed assumption and assignment and/or cure, and the procedures relating thereto.

(d)     Without limiting the Sellers' other obligations under this Agreement, the Sellers shall provide all pleadings, motions, applications, proposed orders and other documents to be filed with the Bankruptcy Court (collectively, the "Chapter 11 Documents") that relate to this Agreement or the transaction contemplated hereby. With respect to all provisions that affect or could reasonably be expected to affect the Buyer, Acquired Assets, Assumed Liabilities, the Bidding Procedures, the Bidding Procedures Order, or the Sale Order, such Chapter 11 Documents shall be in all respects reasonably satisfactory to the Buyer. In furtherance of the foregoing, Sellers shall use commercially reasonable best efforts to provide a draft of each Chapter 11 Document in substantially final form to the Buyer sufficiently in advance of the proposed filing date so as to permit the Buyer sufficient time to review and comment on such drafts. The Buyer will, promptly and without unreasonable delay in light of the deadlines included in this Agreement or set by the Bankruptcy Court, provide comments to or acceptance of such Chapter 11 Documents; provided, however, that if the Buyer does not provide such comments or acceptance in the manner and time deadline set forth herein, the Sellers shall have the right to file any such proposed filings with the Bankruptcy Court, subject to the rights of the Buyer. The Sellers shall not seek any modification to the Bidding Procedures Order or the Sale Order by the Bankruptcy Court or any other Governmental Entity of competent jurisdiction to which a decision relating to the Sellers' Chapter 11 Cases has been appealed, in each case, without the prior written consent of the Buyer.

(e)     The Sellers shall comply with the milestones set forth on Section 5.3(e) of the Disclosure Schedule.

(f)     Without limiting its other obligations under this Agreement, the Sellers shall promptly take such actions as are reasonably requested by the Buyer to assist in obtaining entry of the Sale Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court.

(g)     The Buyer shall promptly take such actions as are reasonably requested by the Sellers to assist in obtaining entry of the Sale Order, including a finding of adequate assurance of future performance by the Buyer, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court.

(h)     If an appeal is taken, or petition for certiorari or motion for rehearing or re-argument filed, or a stay pending appeal is requested from either the Bidding Procedures Order or the Sale Order, the Sellers will promptly notify the Buyer of such

40

appeal, petition, motion or stay request and the Sellers, with input from the Buyer, will take all reasonable steps to defend against such appeal, petition, motion or stay request.

**Section 5.4    Conduct of Business**.  Except as may be (i) required by the Bankruptcy Court, (ii) agreed to in writing by the Buyer and/or (iii) expressly permitted under the DIP Credit Agreement, including the Approved Budget, from the date hereof until the Closing, the Sellers shall:

(a)    use commercially reasonable efforts to operate the Business in the Ordinary Course of Business, including maintaining levels of insurance and performing maintenance and repairs, except for any changes in operations addressing the impact of COVID-19 and responses thereto that, in each case, are required to comply with applicable Law;

(b)    pay all administrative claims, including in the Ordinary Course of Business and in accordance with the Approved Budget;

(c)    maintain in effect all material Permits;

(d)    use commercially reasonable efforts to preserve relationships with their (i) material suppliers, (ii) customers and (iii) others doing business with them;

(e)    not amend their articles of incorporation, bylaws or other similar organizational documents (whether by merger, consolidation or otherwise) in a manner materially adverse to the Buyer;

(f)    not split, combine or reclassify their shares of capital stock or membership interests or declare, set aside or pay any dividend or other distribution (whether in cash, stock or property or any combination thereof) in respect thereof;

(g)    not incur any capital expenditures other than in accordance with the Approved Budget, or any obligations or liabilities in respect thereof without the prior written consent of the Buyer;

(h)    not purchase or acquire any indebtedness (other than the DIP Obligations), debt securities or equity securities of any Person, or make any loans, advances or capital contributions to, or investments in, any other Person;

(i)    not change their methods of accounting, except as required by concurrent changes in GAAP;

(j)    not settle, or offer or propose to settle, any material litigation, investigation, arbitration, proceeding or other claim;

(k)    not enter into, amend or modify, terminate or reject any Contract or Lease;

(l)     not waive or release any material right or claim of the Business (other than any right or claim to the extent relating to any Excluded Assets or Excluded Liabilities), other than in the Ordinary Course of Business;

(m)     not sell, lease, transfer, license or otherwise dispose of, abandon or permit to lapse, fail to take any action necessary to maintain, enforce or protect, or permit or create any Lien or Claim on, any assets or properties (other than Excluded Assets), other than (A) granting non-exclusive licenses of Intellectual Property, (B) the sale of inventory or (C) the disposition of obsolete equipment, in each case of clauses (A), (B) and (C) in the Ordinary Course of Business;

(n)     not incur or suffer to exist any indebtedness for borrowed money except any such indebtedness that is an Excluded Liability or the DIP Obligations;

(o)     not acquire, by merger or consolidation with, or by purchase of all or a substantial portion of the assets or stock of, or by any other manner, any business or entity, make any investment in any Person or enter into any joint venture, partnership or other similar arrangement for the conduct of the Business;

(p)     except as required by applicable Law or an Employee Benefit Plan, not (A) grant any severance, retention or termination pay to, or enter into or amend any severance, retention, termination, employment, consulting, bonus, change in control or severance agreement with, any Service Provider, (B) increase the compensation or benefits provided to any Service Provider, (C) grant any incentive awards to, or discretionarily accelerate the vesting or payment of any such awards held by, any Service Provider, (D) establish, adopt, enter into or amend any Employee Benefit Plan or collective bargaining agreement or (E) terminate the employment of any Service Provider other than for cause;

(q)     not fail to pay any material Tax on or before the date when it becomes due and payable;

(r)     not grant any right (including any distribution or exploitation right) or interest (whether ownership, security, participation or otherwise) in or to any of the Acquired Assets or permit or authorize any or other Person to grant any right (including any distribution or exploitation right) or interest (whether ownership, security, participation or otherwise) in or to any of the Acquired Assets;

(s)     not transfer or consent to the transfer of any tangible Acquired Asset to any location other than its location as of the date of this Agreement;

(t)     not file, commence, pursue, consent to or encourage any Challenge or any other claim or cause of action (except for claims or causes of action based upon a breach of this Agreement or the DIP Credit Agreement) against the Buyer, DIP Agents or DIP Lenders or any of their Affiliates or assignees; or

(u)    not agree in writing to take any of the foregoing actions or support any other Person to take any of the foregoing actions.

**Section 5.5    Notice of Developments**.  From the date hereof until the Closing Date, the Sellers shall promptly disclose to the Buyer, on the one hand, and the Buyer shall promptly disclose to the Sellers, on the other hand, in writing after attaining Knowledge of (i) the occurrence or non-occurrence of any event or the existence of any fact or condition that would cause or constitute a breach of any of its representations or warranties had any such representation or warranty been made as of the time of such Party's discovery of such event, fact or condition and (ii) any material failure on its part to comply with or satisfy any covenant, condition or agreement to be complied with or satisfied by it hereunder; provided, however, that the delivery of any notice pursuant to this Section 5.5 shall not limit or otherwise affect the remedies available to the Party receiving such notice under this Agreement.

**Section 5.6    Access**.  Upon reasonable advance written request by the Buyer, the Sellers shall permit the Buyer and its Representatives to have reasonable access during normal business hours, and in a manner so as not to interfere unreasonably with the normal business operations of the Sellers, to all premises, properties, personnel, Records, Contracts and Leases related to the Business, in each case, for the sole purpose of evaluating the Business; provided, however, that, for avoidance of doubt, the foregoing shall not require any Party to waive, or take any action with the effect of waiving, its attorney-client privilege or any confidentiality obligation to which it is bound with respect thereto or take any action in violation of applicable Law.

**Section 5.7    Press Releases and Public Announcements**.  Prior to the Closing, none of the Buyer or the Sellers shall issue any press release or make any public announcement relating to the existence or subject matter of this Agreement without the prior written approval of each of the Buyer and the Sellers; provided, however, that each of the Buyer and the Sellers may make any public disclosure in connection with obtaining entry of the Bidding Procedures Order and Sale Order or that it believes in good faith is required by applicable Law or court process (in which case the disclosing Party shall use commercially reasonable best efforts to advise the other prior to making the disclosure).

**Section 5.8    Bulk Transfer Laws**.  Each Seller shall ensure that the Sale Order shall provide either that (a) such Seller has complied with any applicable bulk sale or bulk transfer Laws of any jurisdiction in connection with the transactions contemplated by this Agreement or (b) compliance with such Laws described in clause (a) is not necessary or appropriate under the circumstances.  The Parties intend that pursuant to section 363(f) of the Bankruptcy Code, the transfer of the Acquired Assets shall be free and clear of any Liens other than Permitted Liens in the Acquired Assets, including any Liens arising out of the bulk transfer Laws, and the Parties shall take such steps as may be necessary or appropriate to so provide in the Sale Order.

**Section 5.9    Post-Closing Operation of the Sellers**.  The Sellers hereby acknowledge and agree that upon the consummation of the transactions contemplated hereby, the Buyer shall have the sole right to the use of the name "YouFit," "You Fit," "YF," "Fit," or similar or other relevant names or any service marks, trademarks, trade names, identifying symbols, logos,

43

emblems or signs containing or comprising the foregoing, including any name or mark confusingly similar thereto. After the Closing Date, none of the Sellers nor any of their respective Affiliates shall use the name or mark "YouFit," "You Fit," "YF," "Fit," or any derivatives thereof or other relevant names or service marks. The Parties shall seek entry of an order (which may be the Sale Order), modifying the caption as of the Closing Date in the proceedings before the Bankruptcy Court to reflect the change in the name of the Sellers, except that during the pendency of such proceedings, any Seller shall be permitted to use the name "YouFit," "You Fit," "YF," "Fit," or similar or other relevant names or derivatives thereof solely as a former name for legal and noticing purposes in connection with matters relating to the Sellers' Chapter 11 Cases. Within thirty (30) days after the Closing, the Sellers and their respective controlled Affiliates shall promptly file with the applicable Governmental Entities all documents reasonably necessary to delete from their names the words "YouFit," "You Fit," "YF," "Fit," or any derivatives thereof, other relevant names or service marks and shall do or cause to be done all other acts, including the payment of any fees required in connection therewith, to cause such documents to become effective as promptly as reasonably practicable.

**Section 5.10    Transfer of Permits**. From and after the date hereof, and for up to ninety (90) days after the Closing Date (subject to the prior entry by the Bankruptcy Court of an order confirming a Chapter 11 plan or dismissing all of the Sellers' Chapter 11 Cases) and, subject to the Sellers having appropriate levels of resources and personnel after the Closing Date, the Sellers, shall reasonably cooperate to transfer to Buyer as of the Closing Date (or as soon as reasonably practicable thereafter) all Permits included in the Acquired Assets; <u>provided</u>, that Buyer shall compensate the Sellers for any reasonable, out-of-pocket, non-fixed costs with respect to the foregoing.

**Section 5.11    Bankruptcy Court Approval**.

(a)    The Buyer and the Sellers acknowledge that, under the Bankruptcy Code, the sale of Acquired Assets is subject to approval of the Bankruptcy Court. The Buyer and the Sellers acknowledge that to obtain such approval, the Sellers must demonstrate that they have taken reasonable steps to obtain the highest or best value possible for the Acquired Assets, including giving notice of the transactions contemplated by this Agreement to creditors and other interested parties as ordered by the Bankruptcy Court, providing information about the Acquired Assets to prospective bidders, entertaining higher or better offers from qualified bidders and, if necessary, conducting an Auction and selling the Acquired Assets to another qualified bidder.

(b)    The Buyer and the Sellers acknowledge that, under the Bankruptcy Code, the sale of Acquired Assets is subject to approval of the Bankruptcy Court. The Buyer and the Sellers acknowledge that to obtain such approval, the Sellers must demonstrate that they have taken reasonable steps to obtain the highest or best value possible for the Acquired Assets, including giving notice of the transactions contemplated by this Agreement to creditors and other interested parties as ordered by the Bankruptcy Court, providing information about the Acquired Assets to prospective bidders, entertaining higher or better offers from qualified bidders and, if necessary, conducting an Auction and selling the Acquired Assets to another qualified bidder.

44

(c)    As consideration for substantial expenditures of time, effort and expense undertaken and continuing by the Buyer (solely in its capacity as such) in connection with the completion of its due diligence review of the Business and the preparation, negotiation and execution of this Agreement, the Bidding Procedures, the Bidding Procedures Order and related matters, each Seller acknowledges and agrees that: (i) subject to the entry of the Bidding Procedures Order, the Buyer will be the stalking horse bidder for the Acquired Assets at the Auction; (ii) no Seller will participate in any negotiations for the purpose of naming any Person other than the Buyer as the stalking horse bidder for the Acquired Assets, and subject to the entry of the Bidding Procedures Order, no Person other than the Buyer will be the stalking horse bidder at the Auction; and (iii) the Sellers will actively oppose any effort by any other Person to be the stalking horse bidder for the Acquired Assets; provided, however, that consistent with its fiduciary duties to elicit the highest and best offer for the Acquired Assets and to conduct the Auction, notwithstanding any provision in this Agreement to the contrary, each Seller and its representatives may solicit, encourage and negotiate higher or better offers for the Acquired Assets pursuant to the terms hereof and the Bidding Procedures Order.

## ARTICLE VI
## OTHER COVENANTS

The Parties agree as follows with respect to the period from and after the Closing:

**Section 6.1    Cooperation**.  Each of the Parties shall cooperate with each other, and shall use their commercially reasonable efforts to cause their respective Representatives to cooperate with each other, to provide an orderly transition of the Acquired Assets and Assumed Liabilities from the Sellers to the Buyer and to minimize the disruption to the Business resulting from the transactions contemplated hereby.   The Sellers shall reasonably (i) provide any information necessary or reasonably requested to allow the Buyer to comply with any information reporting or withholding requirements contained in the IRC or other applicable Laws or to compute the amount of payroll or other employment Taxes due with respect to any payment made in connection with this Agreement; and (ii) provide certificates or forms, and timely execute any Tax Return, that are necessary or appropriate to establish an exemption for (or reduction in) any Transfer Tax.

**Section 6.2    Further Assurances**.  In case at any time from and after the Closing Date any further action is necessary or reasonably required to carry out the purposes of this Agreement, subject to the terms and conditions of this Agreement and the terms and conditions of the Sale Order, at any Party's request and sole cost and expense, each Party shall take such further action (including the execution and delivery to any other Party of such other reasonable instruments of sale, transfer, conveyance, assignment, assumption or confirmation and providing materials and information) as another Party may reasonably request as shall be necessary to transfer, convey and assign to the Buyer all of the Acquired Assets, to confirm the Buyer's assumption of the Assumed Liabilities and to confirm Sellers' retention of the Excluded Assets and Excluded Liabilities.  Without limiting the generality of this Section 6.2, to the extent that either the Buyer or the Sellers discover any additional assets or properties which should have been transferred or assigned to the Buyer as Acquired Assets but were not so transferred or

45

assigned, the Buyer and the Sellers shall cooperate and execute and deliver any instruments of transfer or assignment necessary to transfer and assign such asset or property to the Buyer, and no additional consideration shall be due from the Buyer in connection therewith; provided, that Buyer shall compensate the Sellers for any reasonable, out-of-pocket, non-fixed costs with respect to the foregoing.

**Section 6.3    Availability of Business Records**.  From and after the Closing Date, the Buyer shall promptly provide to the Sellers and their respective Representatives (after reasonable notice and during normal business hours and without charge to Seller), at the Sellers' sole cost and expense, access to all Records included in the Acquired Assets for periods prior to the Closing (as long as such access does not unreasonably interfere with the Buyer's business operations) to the extent such access is necessary in order for any Seller to comply with its obligations to administer Sellers' Chapter 11 Cases or applicable Law or any contract to which it is a party, and so long as such access is subject to an obligation of confidentiality, and shall preserve such Records until the latest of (i) four (4) years after the Closing Date, (ii) the required retention period for all government contact information, records or documents, (iii) the conclusion of all bankruptcy proceedings relating to the Sellers' Chapter 11 Cases, and (iv) in the case of Records related to Taxes, the expiration of the statute of limitations applicable to such Taxes.  Such access shall include access to any information in electronic form to the extent reasonably available.  The Buyer acknowledges that the Sellers have the right to retain copies of all of Records included in the Acquired Assets for periods prior to the Closing subject to all confidentiality agreements applicable thereto.  Prior to destroying any material Records included in the Acquired Assets for periods prior to the Closing, the Buyer shall notify the Sellers thirty (30) days in advance of any such proposed destruction of its intent to destroy such Records, and the Buyer shall permit the Sellers to retain such Records.  With respect to any litigation and claims that are Excluded Liabilities, the Buyer shall render, at the Sellers' expense, all reasonable assistance that the Sellers may request in defending such litigation or claim and shall make reasonable efforts to make personnel most knowledgeable about the matter in question available to the Sellers.

**Section 6.4    Employee Matters**.

(a)    The Buyer shall, in its sole and absolute discretion, offer employment as of the Closing Date to active employees of the Business as identified on or prior to the Closing Date (such employees who accept such employment, the "Transferred Employees").  Such offers of employment made by the Buyer shall include at least the same base salary or hourly wage rate that such employees received immediately prior to the Closing Date and such other terms and conditions solely to the extent to ensure that the transactions contemplated by this Agreement do not trigger the WARN Act or similar state and local Laws.  The Sellers shall have no liability or obligation to any such Person who becomes an employee of the Buyer on and after the Closing Date.  The Buyer shall be responsible for all liabilities incurred pursuant to the WARN Act and any similar state or local Laws for Service Providers who become an employee of the Buyer in relation to any termination that occurs on or after the Closing Date.  Nothing in this Agreement shall restrict the rights of the Buyer under applicable Law or any employment contract with respect to any employee hired by the Buyer.

46

(b)    Notwithstanding anything in this Agreement to the contrary:

(i)    Each Seller shall be liable for the base wages and base salary that accrued on or prior to the Closing Date with respect to all Service Providers of such Seller (except to the extent Buyer has expressly assumed any of the same pursuant to Section 2.3(f)); and

(ii)    Nothing in this Agreement is intended to (x) prevent the Buyer from terminating the employment of any Person who becomes an employee of the Buyer or one of its Affiliates on or following the Closing, or (y) create any third-party beneficiary rights in any Service Provider of any Seller or any of its Subsidiaries, any beneficiary or dependent thereof, or any collective bargaining agreement representative.

**Section 6.5    Transfer Taxes**.    The Buyer shall pay all stamp, documentary, registration, transfer, added-value or similar Tax (each, a "Transfer Tax") imposed under any applicable Law in connection with the transactions contemplated by Article II of this Agreement. The Sellers and the Buyer shall cooperate to prepare and timely file any Tax Returns required to be filed in connection with Transfer Taxes described in the immediately preceding sentence.

**Section 6.6    Wage Reporting**.    The Buyer and the Sellers agree to utilize, or cause their respective Affiliates to utilize, the standard procedure set forth in Internal Revenue Service Revenue Procedure 2004-53 with respect to wage reporting.

**Section 6.7    Insurance Policies**.

(a)    To the extent that any current or prior Insurance Policy is not transferable to the Buyer at the Closing in accordance with the terms thereof, the applicable Seller shall hold such Insurance Policy for the benefit of the Buyer, shall reasonably cooperate with the Buyer in pursuing any claims thereunder, and shall pay over to the Buyer promptly any insurance proceeds paid or recovered thereunder with respect to the Acquired Assets or the Assumed Liabilities; provided, that Buyer shall compensate the Sellers for any reasonable, out-of-pocket, non-fixed costs with respect to the foregoing. In the event the Buyer determines to purchase replacement coverage with respect to any such Insurance Policy, such Seller shall reasonably cooperate with the Buyer to terminate such Insurance Policy to the extent only applicable to the Acquired Assets.

(b)    To the extent that any current or prior Insurance Policy of any Seller relates to the Acquired Assets or Assumed Liabilities and the Excluded Assets or the Excluded Liabilities, and such Insurance Policy is transferred to the Buyer at the Closing, the Buyer shall hold such Insurance Policy with respect to the Excluded Assets or Excluded Liabilities, as applicable, for the benefit of such Seller, shall reasonably cooperate with such Seller in pursuing any claims thereunder, and shall pay over to such Seller promptly any insurance proceeds paid or recovered thereunder with respect to the Excluded Assets or the Excluded Liabilities.

47

**Section 6.8    Collection of Accounts Receivable**.

(a)    As of the Closing Date, each Seller hereby (i) authorizes the Buyer to open any and all mail addressed to such Seller relating to the Business or the Acquired Assets (or which the Buyer believes may be related to the Business or the Acquired Assets prior to opening) and delivered to the offices of the Business or otherwise to the Buyer if received on or after the Closing Date and (ii) appoints the Buyer or its attorney-in-fact to endorse, cash and deposit any monies, checks or negotiable instruments received by the Buyer after the Closing Date with respect to Accounts Receivable that are Acquired Assets or accounts receivable relating to work performed by the Buyer after the Closing, as the case may be, made payable or endorsed to such Seller or such Seller's order, for the Buyer's own account.

(b)    As of the Closing Date, each Seller agrees that any Cash, monies, checks, or negotiable instruments received by such Seller after the Closing Date with respect to (i) Accounts Receivable (including credit card receivables), (ii) other Acquired Assets, or (iii) Cash, monies, checks, negotiable instruments or accounts receivable relating to the period after the Closing, shall be held in trust by such Seller for the Buyer's benefit and account, and promptly upon receipt by such Seller of any such payment (but in any event within five (5) Business Days of such receipt), such Seller shall pay over to the Buyer the amount of such payments with appropriate endorsements.  In addition, each Seller agrees that, after the Closing Date, it shall hold in trust and shall promptly transfer and deliver to the Buyer, from time to time as and when received by such Seller, any other property that such Seller may receive on or after the Closing Date which properly belongs to the Buyer hereunder.  The Buyer agrees that, after the Closing Date, it shall hold and shall promptly transfer and deliver to the applicable Seller, from time to time as and when received by the Buyer or its Affiliates, any Excluded Assets that the Buyer or its Affiliates may receive on or after the Closing.

(c)    As of the Closing Date, the Buyer shall have the sole authority to bill and collect Accounts Receivable that are Acquired Assets and accounts receivable relating to work performed by the Buyer after the Closing.

**Section 6.9    Reasonable, Out-of-Pocket, Non-Fixed Costs**.  With respect to any provision in this Agreement, including Sections 2.6(b), 2.6(h), 2.7, 5.10, 6.2, and 6.7, that requires the Buyer to compensate the Sellers for their reasonable, out-of-pocket, non-fixed costs, the Buyer and the Sellers shall each use their commercially reasonable efforts to agree in advance in writing as to such costs pursuant to, among other things, a Transition Services Agreement or an approved budget.

## ARTICLE VII
## CONDITIONS TO OBLIGATION TO CLOSING

**Section 7.1    Conditions to the Buyer's Obligations**.  Subject to Section 7.3, the Buyer's obligation to consummate the transactions contemplated hereby in connection with the Closing are subject to the Buyer becoming the Successful Bidder (whether following the

48

conclusion of the Auction or thereafter as a result of the Successful Bidder failing to close) and to the satisfaction or waiver of the following conditions (any of which may be waived by the Buyer, in whole or in part, in its sole and absolute discretion):

(a)    as of the date hereof and as of the Closing (in each case, except for any representation or warranty that is expressly made as of a specified date, in which case as of such specified date), all representations or warranties shall be true and correct in all material respects other than representations and warranties which by their terms are made as of a specific date, which shall have been true and correct in all respects as of such date, provided that for purposes of determining the accuracy of such representations and warranties, all materiality, Material Adverse Effect and similar qualifications contained in such representations and warranties shall be disregarded;

(b)    each Seller shall have materially performed and complied with such Seller's covenants and agreements hereunder to the extent required to be performed prior to the Closing in all material respects;

(c)    the Buyer shall have received the items listed in Section 2.9(a);

(d)    no Governmental Entity of competent jurisdiction shall have threatened, enacted, issued, promulgated, enforced or entered any Decree that is in effect and that has the effect of making the Closing illegal or otherwise prohibiting the consummation of the Closing;

(e)    the Sale Order shall have been entered by the Bankruptcy Court and shall be a Final Order; provided, however, that nothing in this Agreement precludes the Parties from consummating the transactions contemplated by this Agreement if the Sale Order has been entered and has not been stayed and the Buyer, in its sole discretion, waives in writing the condition that the Sale Order be a Final Order;

(f)    there must not be in effect any Law or Decree that would prohibit or make illegal the consummation of the transactions contemplated by this Agreement;

(g)    from the date of this Agreement until the Closing Date, there shall not have occurred and be continuing any Material Adverse Effect;

(h)    the Sellers have not closed or otherwise ceased to operate a number of the Sellers' fitness club locations that represent $1,000,000 or more of EBITDA to be calculated on a pre-COVID-19 trailing-twelve-month basis from the calendar year 2019;

(i)    the Buyer, in its sole discretion, shall have decided to assume at least 78 gym locations by assuming the related Leases as Assumed Contracts;

(j)    the Sellers shall be in compliance with all of the provisions of the DIP Loan Agreement and all related agreements, and the Final DIP Order, and there shall exist no defaults or events of default under any of the foregoing;

49

(k)      the Sellers shall have delivered a certificate from an authorized officer of the Sellers to the effect that each of the conditions specified in <u>Section 7.1(a)</u> and <u>Section 7.1(b)</u> has been satisfied;

(l)      if applicable, the Sellers shall have delivered all evidence of ownership of Owned Equity Interests that constitute Acquired Assets and transfer documentation related thereto that the Buyer shall reasonable request, which shall be in all respects reasonably satisfactory to the Buyer; and

(m)      no Challenges shall be pending.

**Section 7.2      <u>Conditions to the Sellers' Obligations</u>**.  Subject to <u>Section 7.3</u>, Sellers' obligation to consummate the transactions contemplated hereby in connection with the Closing are subject to the Buyer becoming the Successful Bidder (whether following the conclusion of the Auction, if any, or thereafter as a result of the Successful Bidder failing to close) and to the satisfaction or waiver of the following conditions (any of which may be waived by the Sellers, in whole or in part, in their sole and absolute discretion):

(a)      as of the date hereof and as of the Closing (in each case, except for any representation or warranty that is expressly made as of a specified date, in which case as of such specified date), (i) any representation or warranty contained in <u>Section 4.1</u>, <u>Section 4.2</u> or <u>Section 4.3</u> shall be true and correct in all material respects, and (ii) any other representation or warranty set forth in <u>Article IV</u> shall be true and correct in all material respects, except where the failure of such representations and warranties referred to in this clause (ii) to be true and correct, individually or in the aggregate with other such failures, would not reasonably be expected to materially prevent, restrict or delay the consummation of the transactions contemplated hereby or by any Related Agreement;

(b)      the Buyer shall have materially performed and complied with its covenants and agreements hereunder to the extent required to be performed prior to the Closing in all material respects;

(c)      the Seller shall have received the items listed in <u>Section 2.9(b)</u>;

(d)      no Governmental Entity of competent jurisdiction shall have enacted, issued, promulgated, enforced or entered any Decree that is in effect and that has the effect of making the Closing illegal or otherwise prohibiting the consummation of the Closing;

(e)      the Sale Order shall have been entered by the Bankruptcy Court and shall be a Final Order; and

(f)      the Buyer shall have delivered a certificate from an authorized officer of the Buyer to the effect that each of the conditions specified in <u>Section 7.2(a)</u> and <u>Section 7.2(b)</u> has been satisfied.

*ACTIVE 53667627v2*

AmericasActive:14734294.18

**Section 7.3    No Frustration of Closing Conditions.**  Neither the Buyer nor any Seller may rely on the failure of any condition to its obligation to consummate the transactions contemplated hereby set forth in <u>Section 7.1</u> or <u>Section 7.2</u>, as the case may be, to be satisfied if such failure was caused by such Party's failure to use commercially reasonable best efforts or commercially reasonable efforts, as applicable, with respect to those matters contemplated by the applicable Sections of this Agreement to satisfy the conditions to the consummation of the transactions contemplated hereby or other breach of a representation, warranty or covenant hereunder.

**ARTICLE VIII**
**TERMINATION**

**Section 8.1    Termination of Agreement.**

(a)    This Agreement may, by written notice given before the Closing, be terminated:

(1)    by mutual consent of the Buyer and the Sellers;

(2)    by the Buyer (so long as the Buyer is not then in material breach of any of its representations, warranties or covenants contained in this Agreement), if there has been a breach of any of the Sellers' representations, warranties or covenants contained in this Agreement which would result in the failure of the condition set forth in <u>Section 7.2</u> to be satisfied, and which breach has not been cured within ten (10) days after written notice of such breach has been delivered to the Sellers from the Buyer or cannot be cured by the End Date;

(3)    by the Sellers (so long as the Sellers are not then in material breach of any of their representations, warranties or covenants contained in this Agreement), if there has been a breach of any of the Buyer's representations, warranties or covenants contained in this Agreement which would result in the failure of a condition set forth in <u>Section 7.1</u> to be satisfied, and which breach has not been cured within ten (10) days after written notice of such breach has been delivered to the Buyer from the Sellers or cannot be cured by the End Date;

(4)    by either the Buyer or the Sellers, if there is in effect a Final Order restraining, enjoining or otherwise prohibiting the transactions contemplated by this Agreement; <u>provided</u>, <u>however</u>, that the right to terminate this Agreement under this <u>Section 8(a)(4)</u> will not be available to any Party whose failure to fulfill any covenant or obligation under this Agreement is the cause of or resulted in the action or event described in this <u>Section 8(a)(4)</u> occurring;

(5)    by the Buyer if (a) any of the Sellers' Chapter 11 Cases is dismissed or converted into a case under Chapter 7 of the Bankruptcy Code or (b) an examiner with expanded powers or trustee is appointed in any of the Sellers' Chapter 11 Cases;

51

(6)    by the Buyer if there shall occur any Event of Default, under and as defined in the DIP Credit Agreement (after giving effect to any applicable cure periods thereunder, if any); or

(7)    by either the Buyer or the Sellers, if the Closing on the sale to the Buyer does not occur by the End Date.

(b)    This Agreement shall terminate automatically in the event that (i) the Buyer is not chosen at the Auction to be the Successful Bidder or the Back-Up Bidder, (ii) an Alternative Transaction has been consummated following approval by the Bankruptcy Court, or (iii) if the Buyer is chosen at the Auction to be the Back-Up Bidder, upon the expiration of the period during which the Buyer is required to keep its back-up bid open and irrevocable under the Bidding Procedures and Bidding Procedures Order.

Section 8.2    **Effect of Termination**.  If this Agreement is terminated pursuant to Section 8.1, this Agreement and all rights and obligations of the parties under this Agreement automatically end without Liability against any other Party or its Affiliates, except that Section 5.7 and Article IX shall remain in full force and survive any termination of this Agreement. Notwithstanding the foregoing, in the event this Agreement is terminated by a Party because of the knowing and intentional breach of this Agreement by the other Party or because one or more of the conditions to the terminating Party's obligations under this Agreement is not satisfied as a result of the other Party's knowing and intentional failure to comply with its obligations under this Agreement, the terminating Party's right to pursue all legal rights and remedies hereunder and under applicable Law will survive such termination unimpaired.

Section 8.3    **Expenses**.  The Sellers shall pay their own direct and indirect expenses incurred in connection with the preparation and negotiation of this Agreement, all Related Agreements, and the consummation of the transactions contemplated by this Agreement, including all fees and expenses of its advisors and representatives. Subject to the entry of the Final DIP Order and the Sale Order approving the following, all actual and documented out-of-pocket costs and expenses of the Buyer (including fees and disbursements of counsel, including local counsel, and financial advisors) in connection with the negotiation, preparation, execution and entry, as applicable, of this Agreement, the Bidding Procedures Order, the Sale Order and all related documents and pleadings, and the consummation of the transactions contemplated hereby, shall be automatically added to the DIP Obligations (and begin to bear interest under the DIP Credit Agreement) following the Sellers' receipt of an invoice therefor from the Buyer and shall be added to the amount the Buyer or its assignee can credit bid for the Acquired Assets.   In the event that the Final DIP Order and the Sale Order shall not approve the foregoing, whether or not the transactions contemplated by this Agreement are consummated, the Buyer shall pay its own direct and indirect expenses incurred in connection with the preparation and negotiation of this Agreement and the consummation of the transactions contemplated by this Agreement, including all fees and expenses of its advisors and representatives.

Section 8.4    **Acknowledgement**.  Each of the Parties acknowledges that (i) the agreements contained in this Article VIII are an integral part of the transactions contemplated by this Agreement and (ii) without the agreements contained in this Section 8.4, the Buyer would

52

not have entered into this Agreement. In no event shall the Sellers have any liability to the Buyer or any other Person for any special, incidental, exemplary, indirect, consequential or punitive damages, and any such claim, right or cause of action for any damages that are special, incidental, exemplary, indirect, consequential or punitive is hereby fully waived, released and forever discharged. In no event shall the Buyer have any liability to the Sellers or any other Person for any special, incidental, exemplary, indirect, consequential or punitive damages, and any such claim, right or cause of action for any damages that are special, incidental, exemplary, indirect, consequential or punitive is hereby fully waived, released and forever discharged.

## ARTICLE IX
## MISCELLANEOUS

**Section 9.1    Entire Agreement**. This Agreement, the Related Agreements the Bidding Procedures Order (once entered) and the Sale Order (once entered), including all schedules and exhibits attached to any of the foregoing, and the documents and instruments referred to in this Agreement that are to be delivered at or in connection with the Closing, constitute the entire agreement among the Parties and supersede any prior understandings, agreements or representations (whether written or oral) by or among the Parties, written or oral, with respect to the subject matter hereof and the subject matter of the Related Agreements.

**Section 9.2    Incorporation of Annexes, Exhibits and Disclosure Schedule**. The annexes and exhibits to this Agreement and the documents and other information made available in the Disclosure Schedule are incorporated herein by reference and made a part hereof.

**Section 9.3    Amendments and Waivers**. No amendment of any provision of this Agreement shall be valid unless the same shall be in writing and signed by each Party. No waiver of any breach of this Agreement shall be construed as an implied amendment or agreement to amend or modify any provision of this Agreement. No waiver by any Party of any default, misrepresentation, or breach of warranty or covenant hereunder, whether intentional or not, shall be valid unless the same shall be in writing and signed by the Party making such waiver, nor shall such waiver be deemed to extend to any prior or subsequent default, misrepresentation or breach of warranty or covenant hereunder or affect in any way any rights arising by virtue of any prior or subsequent default, misrepresentation or breach of warranty or covenant. No conditions, course of dealing or performance, understanding or agreement purporting to modify, vary, explain or supplement the terms or conditions of this Agreement shall be binding unless this Agreement is amended or modified in writing pursuant to the first sentence of this Section 9.4 except as expressly provided herein. Except where a specific period for action or inaction is provided herein, no delay on the part of any Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof.

**Section 9.4    Succession and Assignment**. This Agreement binds and benefits the Parties and their respective successors (including any trustee, receiver, receiver-manager, interim receiver or monitor or similar officer appointed in any respect of the Sellers under Chapter 11 or Chapter 7 of the Bankruptcy Code and any entity appointed as a successor to any Seller pursuant to a confirmed chapter 11 plan). No party may delegate any performance of its obligations under this Agreement, except that the Buyer may at any time assign or delegate the performance of its

obligations to any Affiliate of the Buyer so long as the Buyer remains responsible for the performance of the delegated obligation.  Without limiting the foregoing, the Buyer shall have the right to designate one or more Affiliates, including any special purpose entities that may be organized by or at the direction of the Buyer for such purpose, to bid at the Auction or take title to the Acquired Assets at the Closing (or thereafter) or any portion thereof and operate the business going forward, and upon written notice to the Sellers of any such designation by the Buyer, the Sellers agree to execute and deliver all instruments of transfer with respect to the Acquired Assets directly to, and in the name of, the Buyer's assignees.  In addition, notwithstanding the foregoing, the Buyer may assign any Indebtedness owed to it by the Sellers to any Affiliate of the Buyer, any other Buyer or any other assignee or designee at any time.

      **Section 9.5**    **Notices**.    All notices, requests, demands, claims and other communications hereunder shall be in writing except as expressly provided herein.  Any notice, request, demand, claim or other communication hereunder shall be deemed duly given (i) when delivered personally or by electronic mail to the recipient; (ii) one (1) Business Day after being sent to the recipient by reputable overnight courier service (charges prepaid); or (iii) three (3) Business Days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid, and addressed to the intended recipient as set forth below:

    If to the Sellers or any Seller:

> c/o
> YouFit Health Clubs, LLC
> Attention:  Brian Gleason
> 1350 E. Newport Center Drive, Suite 110
> Deerfield Beach, FL 33442
> Email: bgleason@phoenixmanagement.com

> with a copy (which shall not constitute notice) to:

> Greenberg Traurig, LLP
> 77 West Wacker Drive, Suite 3100
> Chicago, Illinois 60601
> Attn:   Nancy A. Peterman and Eric J. Howe
> Email: petermann@gtlaw.com; howee@gtlaw.com

    If to the Buyer:

> YF FC Acquisition, LLC
> Attention: Scott Cragg
> 660 Madison Avenue, 15th Floor
> New York, NY 10065
> Email: scragg@birchgrovecap.com

54

AmericasActive:14734294.18

with copies (which shall not constitute notice) to:

> Winston & Strawn LLP
> 200 Park Avenue
> New York, NY 10166
> Attn: Carey D. Schreiber and Gregory M. Gartland
> Email: cschreiber@winston.com; GGartland@winston.com
>
> -and-
>
> Hogan Lovells US LLP
> 1999 Avenue of the Stars, Suite 1400
> Los Angeles, CA 90067
> Attn: David P. Simonds and Christopher R. Bryant
> Email: david.simonds@hoganlovells.com; chris.bryant@hoganlovells.com

Any Party may change the physical address or e-mail address to which notices, requests, demands, claims and other communications hereunder are to be delivered by giving the other Party notice in the manner set forth in this Section 9.5.

**Section 9.6    Governing Law; Jurisdiction**.  This Agreement shall in all aspects be governed by and construed in accordance with the internal Laws of the State of Delaware without giving effect to any choice or conflict of laws provisions or rules (whether of the State of Delaware or any other jurisdiction) that would cause the application of the Laws of any jurisdiction other than the State of Delaware, and the obligations, rights and remedies of the Parties shall be determined in accordance with such Laws.  The Parties agree that any Litigation one Party commences against any other Party pursuant to this Agreement shall be brought exclusively in the Bankruptcy Court; provided that if the Bankruptcy Court is unwilling or unable to hear any such Litigation, then the courts of the State of Delaware, sitting in New Castle County, and the federal courts of the United States of America sitting in the State of Delaware shall have exclusive jurisdiction over such Litigation.

**Section 9.7    Consent to Service of Process**.  In addition to any other method allowed by applicable Law, each of the Parties hereby consents to process being served by any Party in any suit, action or proceeding by delivery of a copy thereof in accordance with the provisions of Section 9.5.

**Section 9.8    WAIVERS OF JURY TRIAL**.  **EACH OF THE PARTIES IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, THE RELATED AGREEMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY.**

*ACTIVE 53667627v2*

AmericasActive:14734294.18

**Section 9.9**     **Specific Performance**.

(a)     Each of the Parties acknowledges and agrees that the other Parties (collectively, the "<u>Enforcing Parties</u>") would be damaged irreparably in the event any provision of this Agreement is not performed in accordance with its specific terms or otherwise breached, so that, prior to the termination of this Agreement pursuant to <u>Section 8.2</u>, in addition to any other remedy that each of the Parties may have under Law or equity, each of the Parties shall be entitled to injunctive relief to prevent breaches of the provisions of this Agreement and to enforce specifically this Agreement and the terms and provisions hereof.

(b)     Each of the Parties agrees that it shall not oppose the granting of specific performance or an injunction sought in accordance with this <u>Section 9.9</u> on the basis that the Enforcing Parties have an adequate remedy at law or that any award of specific performance is, for any reason, not an appropriate remedy. The Enforcing Parties shall not be required to provide any bond or other security in connection with any such injunction or other equitable remedy. The End Date shall be tolled from the date any of the Enforcing Parties files a petition seeking specific performance or an injunction under this <u>Section 9.9</u> until a final, non-appealable decision regarding this matter is obtained from a court of competent jurisdiction.

**Section 9.10     Severability**.     The provisions of this Agreement shall be deemed severable, and the invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement. If any provision of this Agreement, or the application thereof to any Person or any circumstance, is invalid or unenforceable, (a) a suitable and equitable provision shall be substituted therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision and (b) the remainder of this Agreement and the application of such provision to other Persons or circumstances shall not be affected by such invalidity or unenforceability, nor shall such invalidity or unenforceability in any one jurisdiction affect the validity or enforceability of such provision, or the application thereof, in any other jurisdiction.

**Section 9.11     No Third-Party Beneficiaries**.     This Agreement shall not confer any rights or remedies upon any Person other than the Parties and their respective successors and permitted assigns except such rights as may inure to a successor or permitted assignee or designee under <u>Section 9.4</u>.

**Section 9.12     No Survival of Representations, Warranties and Agreements**.     None of the Parties' representations, warranties, covenants, and other agreements in this Agreement, including any rights of the other Party or any third party arising out of any breach of such representations, warranties, covenants and other agreements, shall survive the Closing, except for (i) those covenants and agreements contained herein that by their terms apply or are to be performed in whole or in part after the Closing, (ii) the Parties' representations and warranties relating to such Party's authority with regard to the execution of this Agreement to which it is a party and the consummation of the transactions contemplated hereby and thereby, (iii) the Buyer's representations and warranties in connection with the Sellers' Chapter 11 Cases or the

*ACTIVE 53667627v2*

AmericasActive:14734294.18

Bankruptcy Code, (iv) this <u>Article IX</u>, and (v) all defined terms set forth in <u>Article I</u> that are referenced in the foregoing provisions referred to in clauses (i) through (iv) above.

**Section 9.13    <u>Construction</u>**.  The definitions contained in this Agreement are applicable to the singular as well as the plural forms of such terms.  Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of names and pronouns shall include the plural and vice versa.  The word "including" and "include" and other words of similar import shall be deemed to be followed by the phrase "without limitation."  The words "herein," "hereto," "hereby," and other words of similar import refer to this Agreement as a whole and not to any particular Article, Section or other subdivision of this Agreement.  The words "includes" and "including" are not limiting.  Unless expressly stated in connection therewith or the context otherwise requires, the phrase "relating to the Business" and other words of similar import shall be deemed to mean "relating to the operation of the Business as conducted as of the date hereof."  Except as otherwise provided herein, references to Articles, Sections, clauses, subclauses, subparagraphs, Annexes, Exhibits and the Disclosure Schedule herein are references to Articles, Sections, clauses, subclauses, subparagraphs, Annexes, Exhibits and the Disclosure Schedule of this Agreement.  Any reference herein to any Law (or any provision thereof) shall include such Law (or any provision thereof) and any rule or regulation promulgated thereunder, in each case, including any successor thereto, and as it may be amended, modified or supplemented from time to time.  Any reference herein to "dollars" or "$" means United States dollars.  To the extent not contrary to the foregoing, the rules of construction contained in section 102 of the Bankruptcy Code shall apply.  Any option, consent, approval, discretion or similar right of the Buyer set forth in this Agreement or any other Related Agreement may be exercised by the Buyer in its sole, absolute and unreviewable discretion (regardless of whether any or all such words are used in connection therewith), unless the provisions of this Agreement or Related Agreement specifically require another standard for such option, consent, approval, discretion or similar right.

**Section 9.14    <u>Computation of Time</u>**.  In computing any period of time prescribed by or allowed with respect to any provision of this Agreement that relates to a Seller's or the Sellers' Chapter 11 Cases, the provisions of Bankruptcy Rule 9006(a) shall apply.

**Section 9.15    <u>Mutual Drafting</u>**.  Each of the Parties has participated jointly in the negotiation and drafting of this Agreement.  In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

**Section 9.16    <u>Disclosure Schedule</u>**.  All capitalized terms not defined in the Disclosure Schedule shall have the meaning ascribed to them in this Agreement.  The representations and warranties of the Sellers in this Agreement are made and given, and the covenants are agreed to, subject to the disclosures and exceptions set forth in the Disclosure Schedule.  The Seller Disclosure Schedule is arranged in sections and paragraphs corresponding to the numbered and lettered sections and paragraphs of this Agreement to which it relates.  The disclosure in any section or paragraph of the Disclosure Schedule, and those in any amendment or supplement thereto, shall be deemed to relate to and to qualify only the particular representation or warranty

57

set forth in the corresponding numbered or lettered section of this Agreement, except to the extent that: (a) such information is cross-referenced in another part of the Disclosure Schedule; or (b) it is reasonably apparent on the face of the disclosure (without reference to any document referred to therein or any independent knowledge on the part of the reader regarding the matter disclosed) that such information qualifies another representation or warranty of the Sellers. The listing of any matter shall expressly not be deemed to constitute an admission by any Seller, or to otherwise imply, that any such matter is material, is required to be disclosed under this Agreement or falls within relevant minimum thresholds or materiality standards set forth in this Agreement. No disclosure in the Disclosure Schedule relating to any possible breach or violation of any Contract or law shall be construed as an admission or indication that any such breach or violation exists or has actually occurred. All attachments to the Disclosure Schedule are incorporated by reference into the Disclosure Schedule in which they are directly or indirectly referenced.

Section 9.17   **Headings; Table of Contents**.   The section headings and the table of contents contained in this Agreement and the Disclosure Schedule are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

Section 9.18   **Counterparts: Facsimile and Email Signatures**.   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. This Agreement or any counterpart may be executed and delivered by facsimile or email with scan attachment copies, each of which shall be deemed an original.

Section 9.19   **Time of Essence**.   Time is of the essence of this Agreement.

[END OF PAGE]<br>[SIGNATURE PAGES FOLLOW]

*ACTIVE 53667627v2*

AmericasActive:14734294.18

## SIGNATURE PAGES TO
## ASSET PURCHASE AGREEMENT

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date first above written.

**SELLERS**:

**YouFit Health Clubs, LLC**

By: _____
Name: Brian Gleason
Title: Chief Restructuring Officer

**Seven B-Fit, LLC**
**YF Admin, LLC**
**YF Arizona, LLC**
**YF Coral Way II, LLC**
**YF East Fowler, LLC**
**YF Group A, LLC**
**YF Hammock, LLC**
**YF Hialeah, LLC**
**YF Horizon, LLC**
**YF Lafayette Place, LLC**
**YF Olney, LLC**
**YF Pompano, LLC**
**YF Randallstown, LLC**
**YF Riverdale, LLC**
**YF SE FLA, LLC**
**You Fit Enterprises, LLC**
**You Fit Nine, LLC**
**You Fit Pinellas Park, LLC**
**You Fit, LLC**
**YF Rhode Island, LLC**

By: _____
Name: Brian Gleason
Title: Chief Restructuring Officer

**South Florida Health and Fitness, Inc.**

By: _____
Name: Brian Gleason
Title: Chief Restructuring Officer

**Lime Time, LLC**
**YF Boynton Mall, LLC**
**YF Buford, LLC**
**YF Carrollwood, LLC**
**YF Concord, LLC**
**YF Coral Way, LLC**
**YF Deerfield, LLC**
**YF Douglasville, LLC**
**YF Dunwoody, LLC**
**YF Gateway, LLC**
**YF Greenacres, LLC**
**YF Hollywood, LLC**
**YF Huntsville, LLC**
**YF Kendall LLC**
**YF Lago Mar, LLC**
**YF Land O Lakes, LLC**
**YF Lauderdale Lakes, LLC**
**YF Margate, LLC**
**YF Noles, LLC**
**YF North Point, LLC**
**YF Okeechobee, LLC**
**YF Parkland, LLC**
**YF Pine Island, LLC**
**YF Pines Boulevard, LLC**
**YF Quail Roost, LLC**
**YF Racetrack, LLC**
**YF Sandalfoot, LLC**
**YF Shiloh, LLC**
**YF Singleton, LLC**
**YF Southaven, LLC**
**YF Spring Creek, LLC**
**YF Suwanee, LLC**
**YF Unigold, LLC**
**YF Venice, LLC**
**YF Wellington, LLC**
**YF West Brandon, LLC**
**YF Weston, LLC**
**You Fit Eight, LLC**
**You Fit Four, LLC**
**You Fit Seven, LLC**

By YF Group A, LLC
Its Member

By: _____
          Name: Brian Gleason
          Title: Chief Restructuring Officer

**YF Port Charlotte, LLC**
**YF Shelby, LLC**
**You Fit Five, LLC**
**You Fit-One, LLC**
**YF Dania Pointe, LLC**
**YF Flagler LLC**
**YF Hialeah-Okeechobee Rd., LLC**
**YF Largo Plaza LLC**
**YF Lauderhill, LLC**
**YF Loch Raven LLC**
**YF Miami 110th LLC**
**YF Miami Gardens, LLC**
**YF North Lauderdale, LLC**
**YF Paradise Square LLC**
**YF Tamarac LLC**
**YF University Village, LLC**
**You Fit Cryoskin, LLC**
**You Fit Spa, LLC**

By You Fit, LLC
Its Member

By: _____
        Name: Brian Gleason
        Title: Chief Restructuring Officer

**B-Fit Health Club, LLC**
**Five B-Fit, LLC**
**Four B-Fit, LLC**
**Six B-Fit, LLC**
**Three B-Fit, LLC**
**YF Lantana, LLC**
**YF Town Center**

By YF SE FLA, LLC
Its Member

By: _____
        Name: Brian Gleason
        Title: Chief Restructuring Officer

**YF Bethanny, LLC**
**YF Bethany Towne Center, LLC**
**YF Cactus Village, LLC**
**YF Hancock, LLC**
**YF Scottsdale, LLC**
**YF Shea, LLC**
**YF Chandler South, LLC**
**YF Gilbert North, LLC**
**YF Gilbert South, LLC**
**YF Glendale, LLC**
**YF Mesa, LLC**


By YF Arizona, LLC
Its Member

By: _____
      Name: Brian Gleason
      Title: Chief Restructuring Officer

**BUYER**:

**YF FC Acquisition, LLC**

By BGC Lender Rep LLC
Its Member

By: _____
Name:
Title:

## **Exhibit A–2**

**First Amendment to Asset Purchase Agreement**
**December 4, 2020**

*Execution Version*

**FIRST AMENDMENT TO
ASSET PURCHASE AGREEMENT**

**THIS FIRST AMENDMENT TO ASSET PURCHASE AGREEMENT** (this "**First Amendment**") is dated as of December 4, 2020, by and among (a) (i) YouFit Health Clubs, LLC, a Delaware limited liability company ("**Holdings**") and (ii) the direct and indirect Subsidiaries of Holdings set forth on <u>Exhibit A</u>, (collectively, all of the Persons listed in this clause (a) are the "**Sellers**" and each a "**Seller**") and (b) YF FC Acquisition, LLC, a Delaware limited liability company (the "**Buyer**").

**WHEREAS**, Sellers and Buyer are parties to that certain Asset Purchase Agreement, dated as of November 10, 2020 (the "**Purchase Agreement**"); and

**WHEREAS**, the parties desire to amend the Purchase Agreement as expressly set forth herein.

**NOW, THEREFORE**, in consideration of the premises, the parties hereto hereby agree as follows:

1.    The Purchase Agreement is hereby amended by amending and restating Section 2.1(b) in its entirety as follows:

"all of the Business' customer lists, customer files, customer accounts, membership agreements, Membership Information, customer purchases or services provided to members or customers, in each case, to the extent permitted to be assigned by Sellers under applicable Laws;"

2.    The Purchase Agreement is hereby amended by adding this definition to Article I in the appropriate alphabetical order:

"'<u>Membership Information</u>' shall mean all member, customer and end-user data and information, including lists of members, personally identifiable information of members, and any other information related to membership of the Business."

3.    Terms not defined in this First Amendment shall have the meanings ascribed to them in the Purchase Agreement.

4.    Except as amended hereby, all terms and conditions of the Purchase Agreement shall continue and remain in full force and effect.

[Signature page follows]

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date first above written.

**<u>SELLERS</u>**:

**YouFit Health Clubs, LLC**

By: _____
           Brian F. Gleason
           2020.12.04 17:39:14 -05'00'
Name: Brian Gleason
Title: Chief Restructuring Officer

**Seven B-Fit, LLC**
**YF Admin, LLC**
**YF Arizona, LLC**
**YF Coral Way II, LLC**
**YF East Fowler, LLC**
**YF Group A, LLC**
**YF Hammock, LLC**
**YF Hialeah, LLC**
**YF Horizon, LLC**
**YF Lafayette Place, LLC**
**YF Olney, LLC**
**YF Pompano, LLC**
**YF Randallstown, LLC**
**YF Riverdale, LLC**
**YF SE FLA, LLC**
**You Fit Enterprises, LLC**
**You Fit Nine, LLC**
**You Fit Pinellas Park, LLC**
**You Fit, LLC**
**YF Rhode Island, LLC**

By: _____

Brian F. Gleason
2020.12.04 17:39:34
-05'00'

Name: Brian Gleason
Title: Chief Restructuring Officer

**South Florida Health and Fitness, Inc.**

By: _____

Brian F. Gleason
2020.12.04 17:39:49
-05'00'

Name: Brian Gleason
Title: Chief Restructuring Officer

[SIGNATURE PAGE TO FIRST AMENDMENT TO ASSET PURCHASE AGREEMENT]

**Lime Time, LLC**
**YF Boynton Mall, LLC**
**YF Buford, LLC**
**YF Carrollwood, LLC**
**YF Concord, LLC**
**YF Coral Way, LLC**
**YF Deerfield, LLC**
**YF Douglasville, LLC**
**YF Dunwoody, LLC**
**YF Gateway, LLC**
**YF Greenacres, LLC**
**YF Hollywood, LLC**
**YF Huntsville, LLC**
**YF Kendall LLC**
**YF Lago Mar, LLC**
**YF Land O Lakes, LLC**
**YF Lauderdale Lakes, LLC**
**YF Margate, LLC**
**YF Noles, LLC**
**YF North Point, LLC**
**YF Okeechobee, LLC**
**YF Parkland, LLC**
**YF Pine Island, LLC**
**YF Pines Boulevard, LLC**
**YF Quail Roost, LLC**
**YF Racetrack, LLC**
**YF Sandalfoot, LLC**
**YF Shiloh, LLC**
**YF Singleton, LLC**
**YF Southaven, LLC**
**YF Spring Creek, LLC**
**YF Suwanee, LLC**
**YF Unigold, LLC**
**YF Venice, LLC**
**YF Wellington, LLC**
**YF West Brandon, LLC**
**YF Weston, LLC**
**You Fit Eight, LLC**
**You Fit Four, LLC**
**You Fit Seven, LLC**

By YF Group A, LLC
Its Member

By: _____  Brian F. Gleason
                               2020.12.04 17:40:09 -05'00'

Name: Brian Gleason
Title: Chief Restructuring Officer

[SIGNATURE PAGE TO FIRST AMENDMENT TO ASSET PURCHASE AGREEMENT]

**YF Port Charlotte, LLC**
**YF Shelby, LLC**
**You Fit Five, LLC**
**You Fit-One, LLC**
**YF Dania Pointe, LLC**
**YF Flagler LLC**
**YF Hialeah-Okeechobee Rd., LLC**
**YF Largo Plaza LLC**
**YF Lauderhill, LLC**
**YF Loch Raven LLC**
**YF Miami 110th LLC**
**YF Miami Gardens, LLC**
**YF North Lauderdale, LLC**
**YF Paradise Square LLC**
**YF Tamarac LLC**
**YF University Village, LLC**
**You Fit Cryoskin, LLC**
**You Fit Spa, LLC**


By You Fit, LLC
Its Member


By: _____
           Brian F. Gleason
           2020.12.04 17:40:26 -05'00'
    Name: Brian Gleason
    Title: Chief Restructuring Officer


[SIGNATURE PAGE TO FIRST AMENDMENT TO ASSET PURCHASE AGREEMENT]

**B-Fit Health Club, LLC**
**Five B-Fit, LLC**
**Four B-Fit, LLC**
**Six B-Fit, LLC**
**Three B-Fit, LLC**
**YF Lantana, LLC**
**YF Town Center**


By YF SE FLA, LLC
Its Member

By: _____
      Name: Brian Gleason
      Title: Chief Restructuring Officer

Brian F. Gleason
2020.12.04 17:40:44
-05'00'

**YF Bethanny, LLC**
**YF Bethany Towne Center, LLC**
**YF Cactus Village, LLC**
**YF Hancock, LLC**
**YF Scottsdale, LLC**
**YF Shea, LLC**
**YF Chandler South, LLC**
**YF Gilbert North, LLC**
**YF Gilbert South, LLC**
**YF Glendale, LLC**
**YF Mesa, LLC**


By YF Arizona, LLC
Its Member

By: _____
      Name: Brian Gleason
      Title: Chief Restructuring Officer

Brian F. Gleason
2020.12.04 17:41:12 -05'00'

[SIGNATURE PAGE TO FIRST AMENDMENT TO ASSET PURCHASE AGREEMENT]

**<u>BUYER</u>**:

**YF FC Acquisition, LLC**

By BGC Lender Rep LLC
Its Member

By: _____
Name:  Rodd D. Evonsky
Title:  Authorized Person

[SIGNATURE PAGE TO FIRST AMENDMENT TO ASSET PURCHASE AGREEMENT]

## Exhibit A

### Additional Seller Parties

Direct and indirect Subsidiaries of Holdings that are Party to this Agreement.

1. The following direct Subsidiaries of Holdings (collectively, the "Holdings Subsidiaries"):
a) Seven B-Fit, LLC, a Florida limited liability company
b) YF Admin, LLC, a Florida limited liability company
c) YF Arizona, LLC, a Florida limited liability company ("YF Arizona")
d) YF Coral Way II, LLC, a Florida limited liability company
e) YF East Fowler, LLC, a Florida limited liability company
f) YF Group A, LLC, a Florida limited liability company ("YF Group A")
g) YF Hammock, LLC, a Florida limited liability company
h) YF Hialeah, LLC, a Florida limited liability company
i) YF Horizon, LLC, a Florida limited liability company
j) YF Lafayette Place, LLC, a Florida limited liability company
k) YF Olney, LLC, a Florida limited liability company
l) YF Pompano, LLC, a Florida limited liability company
m) YF Randallstown, LLC, a Florida limited liability company
n) YF Riverdale, LLC, a Florida limited liability company
o) YF SE FLA, LLC, a Florida limited liability company ("YF SE FLA")
p) You Fit Enterprises, LLC, a Florida limited liability company
q) You Fit Nine, LLC, a Florida limited liability company
r) You Fit Pinellas Park, LLC, a Florida limited liability company
s) You Fit, LLC, a Florida limited liability company ("You Fit")
t) South Florida Health and Fitness, Inc., a Florida corporation

2. The following direct Subsidiaries of YF Group A (collectively, the "YF Group A Subsidiaries"):
a) Lime Time, LLC, a Florida limited liability company
b) YF Boynton Mall, LLC, a Florida limited liability company
c) YF Buford, LLC, a Georgia limited liability company
d) YF Carrollwood, LLC, a Florida limited liability company
e) YF Concord, LLC, a Florida limited liability company
f) YF Coral Way, LLC, a Florida limited liability company
g) YF Deerfield, LLC, a Florida limited liability company
h) YF Douglasville, LLC, a Georgia limited liability company
i) YF Dunwoody, LLC, a Georgia limited liability company
j) YF Gateway, LLC, a Florida limited liability company
k) YF Greenacres, LLC, a Florida limited liability company
l) YF Hollywood, LLC, a Florida limited liability company
m) YF Huntsville, LLC, a Florida limited liability company
n) YF Kendall LLC, a Florida limited liability company
o) YF Lago Mar, LLC, a Florida limited liability company
p) YF Land O Lakes, LLC, a Florida limited liability company

q)  YF Lauderdale Lakes, LLC, a Florida limited liability company
r)  YF Margate, LLC, a Florida limited liability company
s)  YF Noles, LLC, a Florida limited liability company
t)  YF North Point, LLC, a Georgia limited liability company
u)  YF Okeechobee, LLC, a Florida limited liability company
v)  YF Parkland, LLC, a Florida limited liability company
w)  YF Pine Island, LLC, a Florida limited liability company
x)  YF Pines Boulevard, LLC, a Florida limited liability company
y)  YF Quail Roost, LLC, a Florida limited liability company
z)  YF Racetrack, LLC, a Florida limited liability company
aa) YF Sandalfoot, LLC, a Florida limited liability company
bb) YF Shiloh, LLC, a Georgia limited liability company
cc) YF Singleton, LLC, a Georgia limited liability company
dd) YF Southaven, LLC, a Mississippi limited liability company
ee) YF Spring Creek, LLC, a Florida limited liability company
ff)  YF Suwanee, LLC, a Georgia limited liability company
gg) YF Unigold, LLC, a Florida limited liability company
hh) YF Venice, LLC, a Florida limited liability company
ii)  YF Wellington, LLC, a Florida limited liability company
jj)  YF West Brandon, LLC, a Florida limited liability company
kk) YF Weston, LLC, a Florida limited liability company
ll)  You Fit Eight, LLC, a Florida limited liability company
mm) You Fit Four, LLC, a Florida limited liability company
nn) You Fit Seven, LLC, a Florida limited liability company

3.  The following direct Subsidiaries of You Fit (collectively, the "You Fit Subsidiaries"):
a)  YF Port Charlotte, LLC, a Florida limited liability company
b)  YF Shelby, LLC, a Tennessee limited liability company
c)  You Fit Five, LLC, a Florida limited liability company
d)  You Fit-One, LLC, a Florida limited liability company
e)  YF Dania Pointe, LLC, a Florida limited liability company
f)  YF Flagler LLC, a Florida limited liability company
g)  YF Hialeah-Okeechobee Rd., LLC, a Florida limited liability company
h)  YF Largo Plaza LLC, a Florida limited liability company
i)  YF Lauderhill, LLC, a Florida limited liability company
j)  YF Loch Raven LLC, a Florida limited liability company
k)  YF Miami 110th LLC, a Florida limited liability company
l)  YF Miami Gardens, LLC, a Florida limited liability company
m) YF North Lauderdale, LLC, a Florida limited liability company
n)  YF Paradise Square LLC, an Arizona limited liability company
o)  YF Rhode Island, LLC, a Florida limited liability company
p)  YF Tamarac LLC, a Florida limited liability company
q)  YF University Village, LLC, a Florida limited liability company
r)  You Fit Cryoskin, LLC, a Florida limited liability company
s)  You Fit Spa, LLC, a Florida limited liability company

4. The following direct Subsidiaries of YF SE FLA (collectively, the "<u>YF SE FLA Subsidiaries</u>"):

a) B-Fit Health Club, LLC, a Florida limited liability company
b) Five B-Fit, LLC, a Florida limited liability company
c) Four B-Fit, LLC, a Florida limited liability company
d) Six B-Fit, LLC, a Florida limited liability company
e) Three B-Fit, LLC, a Florida limited liability company
f) YF Lantana, LLC, a Florida limited liability company
g) YF Town Center, LLC, a Florida limited liability company

5. The following direct Subsidiaries of YF Arizona (collectively, the "<u>YF Arizona Subsidiaries</u>"):

a) YF Bethanny, LLC, a Florida limited liability company
b) YF Bethany Towne Center, LLC, an Arizona limited liability company
c) YF Cactus Village, LLC, an Arizona limited liability company
d) YF Hancock, LLC, an Arizona limited liability company
e) YF Scottsdale, LLC, an Arizona limited liability company
f) YF Shea, LLC, an Arizona limited liability company
g) YF Chandler South, LLC, an Arizona limited liability company
h) YF Gilbert North, LLC, an Arizona limited liability company
i) YF Gilbert South, LLC, an Arizona limited liability company
j) YF Glendale, LLC, an Arizona limited liability company
k) YF Mesa, LLC, an Arizona limited liability company

**<u>Exhibit B</u>**

**Assumed Contracts**

None.

**<u>Exhibit C</u>**

**Challenge Expiration Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| YOUFIT HEALTH CLUBS, LLC, *et al.*,[1] | Case No. 20-12841 (MFW) |
| Debtors. | (Jointly Administered) |

## NOTICE OF TERMINATION OF CHALLENGE PERIOD

**PLEASE TAKE NOTICE THAT** on November 9, 2020, the Debtors filed a motion [Docket No. 17] (the "**Sale Motion**") with the United States Bankruptcy Court for the District of Delaware (the "**Court**") seeking, among other things, entry of an order approving the sale of substantially all of the Debtors' assets (the "**Sale**") to YF FC Acquisition, LLC (the "**Buyer**"), which is an entity formed by the Debtors prepetition and postpetition lenders, subject to the submission of higher or better offers.  On December 15, 2020, the Debtors filed a notice [Docket No. 521] cancelling the Auction (as defined in the Sale Motion) and designating the Buyer as the Successful Bidder (as defined in the Sale Motion).

**PLEASE TAKE FURTHER NOTICE THAT** the official committee of unsecured creditors (the "**Committee**") provided the Debtors and the Buyer a draft objection to the Sale. Following discussions among the Committee, the Debtors, and the Buyer, the Committee's objection was resolved on the terms reflected in the Sale Order (as defined below), discussed on the record at the hearing to consider the Sale, and summarized on the attached **Schedule 1** (the "**Committee Objection Resolution**").

**PLEASE TAKE FURTHER NOTICE THAT** one of the terms of the Committee Objection Resolution relates to the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 365 and 507, Bankruptcy Rules 2002, 4001, 6004 and 9014 and Local Bankruptcy Rule 4001-2 (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Superpriority Financing, (II) Authorizing the Debtors' Limited Use of Cash Collateral, (III) Granting Adequate Protection to the Prepetition Secured Parties, and (IV) Granting Related Relief* [Docket No. 231] (the "**Final DIP Order**")[2] entered by the Court on December 4, 2020.  Specifically, the Committee has agreed that the deadline, which under the terms of the Final DIP Order is currently January 22, 2021 (the "**Challenge Deadline**"), for any party in interest and all of their successors-in-interest and assigns, with requisite standing and authority, who has timely filed the appropriate pleadings (including a motion to obtain requisite standing or authority) to commence and has timely commenced an

---

[1]    The last four digits of YouFit Health Clubs, LLC's tax identification number are 6607.  Due to the large number of debtor entities in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the claims and noticing agent at www.donlinrecano.com/yfhc.  The mailing address for the debtor entities for purposes of these chapter 11 cases is: 1350 E. Newport Center Dr., Suite 110, Deerfield Beach, FL 33442.

[2]    Capitalized terms not otherwise defined herein shall have the meaning ascribed to those terms in the Final DIP Order.

appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules challenging the Prepetition Lien and Claim Matters shall expire upon the entry of the Sale Order.

**PLEASE TAKE FURTHER NOTICE THAT** on December [●], 2020 the Court entered the *Order (i) Authorizing the Sale of All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and other Interests, (ii) Authorizing and Approving the Debtors' Performance Under the Stalking Horse Purchase Agreement, (iii) Approving the Assumption and Assignment of Certain of the Debtors' Executory Contracts and Unexpired Leases Related Thereto and (iv) Granting Related Relief* [Docket No. [●]] (the "**Sale Order**").

**PLEASE TAKE FURTHER NOTICE THAT**, as set forth in Paragraph 8 of the Sale Order, **objections to the expiration of the Challenge Deadline must be filed by January [12], 2021** (the "**Objection Deadline**"). All such objections must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, and (c) be timely filed with the Court and served so as to be **actually received** no later than the Objection Deadline by: (i) counsel for the Debtors, Greenberg Traurig, LLP, (a) The Nemours Building, 1007 North Orange Street, Suite 1200, Wilmington, DE 19801 (Attn: Dennis A. Meloro (melorod@gtlaw.com) and (b) 77 West Wacker Dr., Suite 3100, Chicago, IL 60601 (Attn: Nancy A. Peterman (petermann@gtlaw.com), Eric Howe (howee@gtlaw.com), and Nicholas E. Ballen (ballenn@gtlaw.com)); (ii) the Office of the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Hannah McCollum, Esq. (hannah.mccollum@usdoj.gov); (iii) counsel for the Debtors' prepetition and postpetition agent and lenders and the Stalking Horse Bidder, (a) Winston & Strawn LLP, 200 Park Avenue, New York, NY 10166, Attn: Carey D. Schreiber, Esq. (cschreiber@winston.com) and and Gregory M. Gartland, Esq. (ggartland@winston.com), and (b) Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, Delaware 19801, Attn: Joseph Barry, Esq. (jbarry@ycst.com) and Joseph M. Mulvihill, Esq. (jmulvihill@ycst.com); (iv) counsel for the DIP Agent and Prepetition Agent, Holland & Knight LLP, 150 N. Riverside Plaza, Suite 2700, Chicago, IL 60606, Attn: Joshua Spencer (joshua.spencer@hklaw.com), Phillip W. Nelson (phillip.nelson@hklaw.com), and Anastasia Sotiropoulos (anastasia.sotiropoulos@hklaw.com); (v) counsel for the Official Committee of Unsecured Creditors, Berger Singerman, LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131 (Attn: Brian G Rich (brich@bergersingerman.com) and Michael Niles (mniles@bergersingerman.com)) and Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 19801 (Attn: Bradford Sandler (bsandler@pszjlaw.com) and Colin Robinson (crobinson@pszjlaw.com)).

**PLEASE TAKE FURTHER NOTICE THAT the expiration of the Challenge Deadline shall apply to any party-in-interest that does not file an objection by the Objection Deadline**. Solely as to any party-in-interest (other than the Debtors and the Committee) that files an objection by the Objection Deadline, the Challenge Deadline is deemed extended through the earlier of (i) the Challenge Deadline (as set forth in the Final DIP Order solely for such party filing such objection), (ii) the date such objection is resolved amongst the DIP Agent, the DIP Lenders, the Debtors, and the objecting party, or (iii) the date the Court acts on such objection. To the extent any such objections are filed and not resolved among the DIP Agent, the DIP Lenders, the Debtors, and the objecting party, if any, such parties' rights are reserved to request a hearing on the matter on shortened notice.

Dated:  December [__], 2020

GREENBERG TRAURIG, LLP

*/s/ DRAFT*

Dennis A. Meloro (DE Bar No. 4435)
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile  (302) 661-7360
Email:   melorod@gtlaw.com

-and-

Nancy A. Peterman (admitted *pro hac vice*)
Eric Howe (admitted *pro hac vice*)
Nicholas E. Ballen (admitted *pro hac vice*)
77 West Wacker Dr., Suite 3100
Chicago, Illinois 60601
Telephone:  (312) 456-8410
Facsimile:  (312) 456-8435
Email:   petermann@gtlaw.com
        howee@gtlaw.com
        ballenn@gtlaw.com

*Counsel for the Debtors and
Debtors in Possession*

## **Schedule 1**

(Summary of Committee Objection Resolution)

## Summary of Committee Objection Resolution

*This document is for summary purposes only and is subject in all respects to entry of appropriate orders by the Bankruptcy Court, including, as applicable, the Sale Order and/or an order confirming a plan of liquidation.*

1. Committee agrees to support the sale to the Lenders/Stalking Horse Bidder pursuant to the Stalking Horse APA.

2. Lenders to have an allowed prepetition deficiency claim up to $23,500,000 (the "Lender Deficiency Claim"), which may be reduced by the lenders in their sole discretion if they choose to credit bid/assume more than $75,000,000.

3. Upon entry of the Sale Order, the Challenge Period under the Final DIP Order will expire.

4. Without limiting the Acquired Assets in the APA, all claims, rights, credits causes of action, etc. set forth in section 2.1(p) of the APA, including all Avoidance Actions (as defined in the DIP Credit Agreement) and D&O Causes of Action (including claims against Rick Berks, Christy Berks Stross, Melissa Berks Muniz, Melinda Berks and their other family members—e.g., noncompete—other than West Central Avoidance Action (as defined below) subject to paragraphs 6.b.2 and 7 below) and proceeds thereof would be Acquired Assets.

   a. The Lenders would agree not to prosecute Avoidance Actions against trade vendors and lessors.

   b. See paragraph 6.b.3. below regarding cash recovery to Lenders from Avoidance Actions against Rick Berks, Christy Berks Stross, Melissa Berks Muniz or Melinda Berks (such Avoidance Actions against such individuals, the "**Berks Actions**").

   c. Lenders have no obligation to prosecute any claims or assert any rights whatsoever.

5. Lenders agree to a plan process (no extra funds or action required) subject to agreement that the plan will provide for treatment of remaining lender claims per the Code, releases and exculpation of all lender parties and their advisors and plan is consistent with the settlement.

6. Funds in the Budget—GT Professional Line Item, Committee Professional Line Item and Wind Down Line Item—can be used for drafting, filing and implementing combined disclosure statement/plan, including potential funding of claims under the plan, including

   a. Payment of any priority and admin claims.

   b. Any leftover funds from such line items ("**Wind Down Funds**") would go to a liquidating trust to fund prosecution of West Central Avoidance Action (as defined below) and distributions

      1. Liquidating trust to be part of the plan, to be controlled by the Committee;

2. Avoidance Action against West Central Construction ($12,500,000 in past 4 years) (the "**West Central Avoidance Action**") will be left for the liquidating trust to prosecute and with full authority to resolve;

3. The holders of the Lender Deficiency Claim shall be entitled to receive from liquidating trust recoveries no more than the lesser of (x) their pro rata share of the total GUC pool or (y) 65% (such lesser amount, the "**Lender Recovery Percentage**") of such recoveries; provided that the first $350,000 of recoveries by the liquidating trust plus any remaining Wind Down Funds shall be distributed to holders allowed GUC claims except to the holders of the Lender Deficiency Claim; provided further that, in addition to the prior proviso, in the event that the lenders receive a cash recovery on account of Berks Actions, an amount equal to the Lender Recovery Percentage as applied to such recovery shall first be distributed from any recovery on account of the West Central Avoidance Action to holders allowed GUC claims other than the holders of the Lender Deficiency Claim—said otherwise, if the lenders receive a cash recovery on account of Berks Actions, in addition to the 300k above, the lenders subordinate the right to receive from the West Central Avoidance Action an amount equal to the Lender Recovery Percentage as applied to the cash recovery they received on account of Berks Actions to other GUCs.

7. In the event a plan is not confirmed and cases are dismissed or converted, the West Central Avoidance Action will automatically revert to the Lenders as an Acquired Asset with no obligation to any other party.

8. Nothing in here addresses TSA costs which would have to be separately addresses as is currently contemplated in the APA.

**Exhibit D**

**Member Notice**

## **FORM OF MEMBER NOTICE**

Dear YouFit Members,

As you know, our mission has always been to change what going to the gym means. Our health clubs are a place where you can get a great workout in a welcoming environment, and where you will get the support and services you need to make the most of your fitness journey.

As we navigate these unprecedented times together, we wanted to inform you of some exciting news which we think would allow YouFit to strengthen our continuing commitment to you and your healthy and active lifestyle going forward, at the same high standards you have come to expect from us. We recently notified you about our choice to strengthen our business by restructuring and filing for chapter 11 relief on November 9, 2020, and the positive milestones we have reached towards that goal, including an agreement to sell the business.

Today, we are happy to give you an update on the restructuring process, what it means for you, and notify you of certain rights you have.  On December [●], 2020, the bankruptcy court approved the sale of YouFit's business to the buyer, YF FC Acquisition LLC, a group of well-funded and sophisticated investors.  The court order approving that sale is available here. The purchase agreement between YouFit and the buyer is available here, and the first amendment to the purchase agreement is available here.  **As part of that sale, we have agreed to transfer all of our rights related to our members, including customer accounts, customer purchases, customer lists, or membership or personal training agreements (the "Membership Assets") to the buyer free and clear of any and all claims and liens. We believe that closing this sale transaction provides the best opportunity for us to continue our business as a going concern and to support you with what matters most, your health and your well-being.**

**If you have an objection to the sale, including the transfer of the Membership Assets, you must file your objection in writing with the court by or before January [●], 2021, at 4:00 p.m. eastern time.  Instructions on how to file an objection are available here.[1]  If you do not timely file an objection, the sale, including the transfer of the Membership Assets, will apply to you.**

If you need more information or would like to learn more about our restructuring efforts, you may do so by visiting our claims and noticing agent's website here.

As always, thank you for your continued membership at YouFit.  We love seeing you at the gym and being a part of your journey to live a healthier, more fit life.

Sincerely,

The YouFit Executive Team

Dated: December 29, 2020

---

[1] Link will take members to instructions on the website of the Debtors' claims and noticing agent, the form of which are included on the following page.

## FORM OF OBJECTION INSTRUCTIONS

These instructions pertain to the notice, dated December 29, 2020, sent to members of YouFit Health Clubs, LLC ("**YouFit**") informing them of the sale of Membership Assets (as defined in the notice) to YF FC Acquisition, LLC (the "**Buyer**"). YouFit and certain of its subsidiaries are each debtors and debtors-in-possession (collectively, the "**Debtors**") in bankruptcy cases commenced under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), which are jointly administered as Case No. 20-12841 (MFW). **If you wish to file an objection to the sale of the Membership Assets to the Buyer, you may do so as follows:**

All Objections must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, and (c) be filed with the Clerk of the Bankruptcy Court, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801, and served so as to be **actually received** no later than **January [●], 2021, at 4:00 p.m. eastern time,** by:

(i) counsel for the Debtors, Greenberg Traurig, LLP, (a) The Nemours Building, 1007 North Orange Street, Suite 1200, Wilmington, DE 19801 (Attn: Dennis A. Meloro (melorod@gtlaw.com) and (b) 77 West Wacker Dr., Suite 3100, Chicago, IL 60601 (Attn: Nancy A. Peterman (petermann@gtlaw.com), Eric Howe (howee@gtlaw.com), and Nicholas E. Ballen (ballenn@gtlaw.com));

(ii) the Office of the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Hannah McCollum, Esq. (hannah.mccollum@usdoj.gov);

(iii) counsel for the Debtors' prepetition and postpetition agent and lenders and the Stalking Horse Bidder, (a) Winston & Strawn LLP, 200 Park Avenue, New York, NY 10166, Attn: Carey D. Schreiber, Esq. (cschreiber@winston.com) and and Gregory M. Gartland, Esq. (ggartland@winston.com), (b) Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, Delaware 19801, Attn: Joseph Barry, Esq. (jbarry@ycst.com) and Joseph M. Mulvihill, Esq. (jmulvihill@ycst.com), and (c) Holland & Knight LLP, 150 N. Riverside Plaza, Suite 2700, Chicago, IL 60606, Attn: Joshua Spencer (joshua.spencer@hklaw.com), Phillip W. Nelson (phillip.nelson@hklaw.com), and Anastasia Sotiropoulos (anastasia.sotiropoulos@hklaw.com); and

(iv) counsel to the Official Committee of Unsecured Creditors, Berger Singerman, LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131 (Attn: Brian G Rich (brich@bergersingerman.com) and Michael Niles (mniles@bergersingerman.com)) and Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 19801 (Attn: Bradford Sandler (bsandler@pszjlaw.com) and Colin Robinson (crobinson@pszjlaw.com)).

## CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION

**ANY MEMBER WHO FAILS TO TIMELY FILE AND SERVE AN OBJECTION ON OR BEFORE THE APPLICABLE OBJECTION DEADLINE MAY BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT**

*ACTIVE 54406238v2*

**TO THE TRANSFER OF THE MEMBERSHIP ASSETS OF THE DEBTOR ESTATES FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS EFFECTED THEREUNDER.**

*ACTIVE 54406238v2*

## **Exhibit E**

### **Committee Avoidance Actions**

1.  Any Avoidance Actions against West Central Construction in the aggregate amount of $12,500,000 for amounts received in the four years prior to the Petition Date.

**<u>Exhibit F</u>**

**Notice of Designated Contracts**

**Exhibit F–1**

## NOTICE OF DESIGNATION

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On November 9, 2020, the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**").  On the same date, the Debtors filed a motion (the "**Sale Motion**") [Docket No. 17] with the Court seeking entry of orders, among other things, approving (a) the sale of the Debtors' Assets[1] (the "**Sale**") to YF FC Acquisition, LLC, a Delaware limited liability company (the "**Stalking Horse Bidder**"), subject to the submission of higher or better offers in an auction process (the "**Auction**"); (b) procedures for the solicitation of bids in connection with the Auction (the "**Bidding Procedures**"); (c) the form and manner of notices related to the Sale; and (d) procedures for the assumption and assignment of contracts and leases in connection with the Sale (the "**Assumption and Assignment Procedures**").

2.      On November 23, 2020, the Court entered an order (the "**Bidding Procedures Order**") [Docket No. 136] granting certain relief sought in the Sale Motion, including, among other things, approving: (a) the Bidding Procedures, which establish the key dates and times related to the Sale and the Auction, including the deadline to submit Qualified Bids (December 15, 2020 at 12:00 p.m. ET), and (b) the Assumption and Assignment Procedures.

3.      In accordance with the Bidding Procedures Order, the Debtors have previously filed and served on applicable parties the Initial Cure Schedule[2] and the First Supplemental Cure Schedule[3] (collectively, the "**Cure Notices**").

4.      On December 15, 2020, the Debtors filed the *Notice of Cancellation of Auction and Designation of Stalking Horse Bidder as Successful Bidder* [Docket No. 521], indicating that: (a) the Debtors did not receive any Qualified Bids, other than that of the Stalking Horse Bidder; (b) pursuant to the Bidding Procedures Order, the Auction that was scheduled to occur on December 21, 2020 was cancelled; and (c) the Stalking Horse Bidder was designated as the Successful Bidder for the Debtors' Assets.

5.      In accordance with Sections 2.6 and 2.7 of the Stalking Horse Purchase Agreement, the undersigned Stalking Horse Bidder hereby timely designates for inclusion on the Designation List, prior to the Designation Deadline, all of the Debtors' Contracts, Leases, Employee Benefit Plans, and Assumable Permits, including without limitation, each (a) Contract and Lease set forth in Section 2.6(c)(i) of the Disclosure Schedule to the Stalking Horse Purchase Agreement, (b)

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order (as defined below) or the Stalking Horse Purchase Agreement, as applicable.

[2] On November 25, 2020, the Debtors filed the *Notice of Potential Assumption and Assignment* [Docket No. 146] (the "**Initial Cure Schedule**").

[3] On December 4, 2020, the Debtors filed the *First Supplemental Notice of Potential Assumption and Assignment* [Docket No. 210] (the "**First Supplemental Cure Schedule**").

Employee Benefit Plan set forth in Section 2.6(c)(ii) of the Disclosure Schedule to the Stalking Horse Purchase Agreement, (c) Assumable Permit set forth in Section 2.6(c)(iii) of the Disclosure Schedule to the Stalking Horse Purchase Agreement, (d) any other Contract, Lease, Employee Benefit Plan, and Assumable Permit included on the Cure Notices for potential assumption and assignment to the Stalking Horse Bidder (each a "**Designated Contract**"), other than the Contracts, Leases, Employee Benefit Plans, and Assumable Permits (i) that have been previously rejected and (ii) those identified on __**Exhibit A**__ hereto that the Buyer hereby designates for rejection (the "**Rejection List**").

6.      The inclusion of any Contract, Lease, Employee Benefit Plan, or Assumable Permit on the Designation List or the Rejection List does not constitute an admission that a particular Contract, Lease, Employee Benefit Plan, or Assumable Permit is an executory contract or unexpired lease within the meaning of the Bankruptcy Code or require or guarantee that such Designated Contract will ultimately be assumed.

7.      In accordance with the Stalking Horse Purchase Agreement, from and after the Closing Date until ninety (90) days following the Closing Date, the Stalking Horse Bidder may (but shall have no obligation to) amend the Designation List or deliver written notice designating any Designated Contract for either: (a) assumption and assignment to the Stalking Horse Bidder; or (b) rejection.

[*Remainder of Page Intentionally Left Blank*]

Dated: December 22, 2020

**STALKING HORSE BIDDER**:

**YF FC Acquisition, LLC**

By BGC Lender Rep LLC
Its Member

By: _____
Name:
Title:

**<u>Exhibit A</u>**

**Rejection List**

| Cure Notice Item No. | CONTRACT PARTY | NAME 2 | NAME3 | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | DEBTOR ENTITY NAME | CONTRACT / LEASE DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 202 | FIT3D | | | 2955 CAMPUS DR., SUITE 110 | | SAN MATEO | CA | 94403 | YOUFIT HEALTH CLUBS, LLC | MISC |
| 203 | FIT3D | | | 2955 CAMPUS DR., SUITE 110 | | SAN MATEO | CA | 94403 | YOUFIT HEALTH CLUBS, LLC | MISC |
| 204 | FIT3D | | | 2955 CAMPUS DR., SUITE 110 | | SAN MATEO | CA | 94403 | YOUFIT HEALTH CLUBS, LLC | MISC |
| 205 | FIT3D | | | 2955 CAMPUS DR., SUITE 110 | | SAN MATEO | CA | 94403 | YOUFIT HEALTH CLUBS, LLC | MISC |
| 206 | FIT3D | | | 2955 CAMPUS DR., SUITE 110 | | SAN MATEO | CA | 94403 | YOUFIT HEALTH CLUBS, LLC | MISC |
| 207 | FIT3D | | | 2955 CAMPUS DR., SUITE 110 | | SAN MATEO | CA | 94403 | YOUFIT HEALTH CLUBS, LLC | MISC |
| 208 | FIT3D | | | 2955 CAMPUS DR., SUITE 110 | | SAN MATEO | CA | 94403 | YOUFIT HEALTH CLUBS, LLC | MISC |
| 209 | FIT3D | | | 2955 CAMPUS DR., SUITE 110 | | SAN MATEO | CA | 94403 | YOUFIT HEALTH CLUBS, LLC | MISC |
| 210 | FIT3D | | | 2955 CAMPUS DR., SUITE 110 | | SAN MATEO | CA | 94403 | YOUFIT HEALTH CLUBS, LLC | MISC |
| 211 | FIT3D | | | 2955 CAMPUS DR., SUITE 110 | | SAN MATEO | CA | 94403 | YOUFIT HEALTH CLUBS, LLC | MISC |
| 212 | FIT3D | | | 2955 CAMPUS DR., SUITE 110 | | SAN MATEO | CA | 94403 | YOUFIT HEALTH CLUBS, LLC | MISC |
| 213 | FIT3D | | | 2955 CAMPUS DR., SUITE 110 | | SAN MATEO | CA | 94403 | YOUFIT HEALTH CLUBS, LLC | MISC |
| 214 | FIT3D | | | 2955 CAMPUS DR., SUITE 110 | | SAN MATEO | CA | 94403 | YOUFIT HEALTH CLUBS, LLC | MISC |
| 215 | FIT3D | | | 2955 CAMPUS DR., SUITE 110 | | SAN MATEO | CA | 94403 | YOUFIT HEALTH CLUBS, LLC | MISC |
| 216 | FIT3D | | | 2955 CAMPUS DR., SUITE 110 | | SAN MATEO | CA | 94403 | YOUFIT HEALTH CLUBS, LLC | MISC |
| 217 | FIT3D | | | 2955 CAMPUS DR., SUITE 110 | | SAN MATEO | CA | 94403 | YOUFIT HEALTH CLUBS, LLC | MISC |
| 228 | GILBERT CENTER HOLDINGS, LLC | | C/O CAPITAL ASSET MANAGEMENT | 3770 N. 7TH STREET #100 | | PHOENIX, AZ 85014 | | | YF ARIZONA LLC | CLUB NO. 5467 - GILBERT SOUTH FORMER FITNESS WORKS REAL PROPERTY LEASE - 1433 E. WILLIAMS FIELD RD., GILBERT, AZ 85234 |
| 242 | IGT MEDIA HOLDINGS, INC | | | 8395 NE 2ND AVE | | MIAMI | FL | 33138 | YOUFIT HEALTH CLUBS, LLC | ADV |
| 262 | LAGRANGE PLAZA, LLC | BEN LEAHY | | 1714 E BETHANY HOME RD | | PHOENIX | AZ | 85253 | YF GILBERT NORTH, LLC | CLUB NO. 7908 - GILBERT HIGLEY YF GILBERT NORTH REAL PROPERTY LEASE - 1668 N. HIGLEY RD., GILBERT, AZ 85234 |
| 272 | LOCAL MANAGEMENT | | | 200 LINDELL BLVD | SUITE #914 | DELRAY BEACH | FL | 33483 | YOUFIT HEALTH CLUBS, LLC | ADV |
| 403 | RIVERDALE CROSSING SHOPPING CENTER, LLC | RAFAT SHAIKJ | OWNER & MANAGING MEMBER | 6961 PEACHTREE INDUSTRIAL BLVD | STE 101 | NORCROSS | GA | 30092 | YF RIVERDALE, LLC | CLUB NO. 7783 - RIVERDALE REAL PROPERTY LEASE - 7520 HIGHWAY 85, RIVERDALE, GA 30274 |

**Exhibit F–2**

Exhibit F-2

| Item No. | CONTRACT PARTY | NAME 2 | NAME3 | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | DEBTOR ENTITY NAME | CONTRACT / LEASE DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1525 SMITH STREET ASSOCIATES, LLC | | | 139 CHARLES ST UNIT 216 | | BOSTON | MA | 02114 | YF RHODE ISLAND, LLC | CLUB NO. 7741 - PROVIDENCE REAL PROPERTY LEASE - 1525 SMITH STREET, NORTH PROVIDENCE, RI 02911 |
| 2 | 16 BETHANY STATION, LLC | JAMES M SHOUGH | | 4771 N 20TH STREET SUITE B22 | | PHOENIX | AZ | 85016 | YF BETHANY, LLC | CLUB NO. 7397 - BETHANY HOME ROAD REAL PROPERTY LEASE - 1515 E. BETHANY HOME RD, PHOENIX, AZ 85014 |
| 3 | 79 BISCAYNE, L.L.C. | GLOBAL REALTY AND MANAGEMENT FL INC | | 4125 NW 88TH AVE | | SUNRISE | FL | 33351 | YOU FIT, LLC | CLUB NO. 7763 - BISCAYNE REAL PROPERTY LEASE - 591 NE 79TH STREET, MIAMI, FL 33138 |
| 4 | ABC FINANCIAL SERVICES, LLC | | | PO BOX 6800 | | N LITTLE ROCK | AR | 72124 | YOUFIT HEALTH CLUBS, LLC | ABC BILLING SERVICES AGREEMENT |
| 5 | AETNA (HEALTH, DENTAL, VISION) | AETNA | | PO BOX 804735 | | CHICAGO | IL | 60680-4108 | YOUFIT HEALTH CLUBS, LLC | EMP BENEF - HEALTH, DENTAL, VISION |
| 6 | AETNA LIFE INSURANCE COMPANY | AETNA LIFE INSURANCE COMPANY | | P. O. BOX 536919 | | ATLANTA, | GA | 30353-6919 | YOUFIT HEALTH CLUBS, LLC | EMP BENEF - INSURANCE |
| 7 | AJ REAL ESTATE INVESTMENTS, LLC | | | 2323 CROWN RD | | DALLAS | TX | 75229 | YOU FIT, LLC | CLUB NO. 7760 - GARLAND REAL PROPERTY LEASE - 3265 BROADWAY SUITE 102, GARLAND, TX 75043 |
| 8 | ALACHUA COUNTY FL | SYLVIA E. TORRES, COUNTY ATTORNEY | | 12 SE 1ST ST. | | GAINESVILLE | FL | 32601 | YOUFIT LLC | LOCAL BUSINESS TAX (CITY) |
| 9 | ALL PHASE SECURITY, INC. | ALL PHASE SECURITY, INC | | 114 49TH STREET SOUTH | | ST. PETERSBURG | FL | 33707 | YOUFIT HEALTH CLUBS, LLC | OUTSIDESVC |
| 10 | ARENA SHOPPES, LLLP | | | 3550 BISCAYNE BLVD STE 501 | | MIAMI | FL | 33137 | YF NORTH LAUDERDALE, LLC | CLUB NO. 7788 - 7788 YF N LAUDERDALE REAL PROPERTY LEASE - 7346 W MCNAB RD, NORTH LAUDERDALE, FL 33068 |
| 11 | ARIZONA | KATIE HOBBS | | 1700 W WASHINGTON STREET FLOOR 7 | | PHOENIX | AZ | 85007 | YF ARIZONA LLC | SALES TAX PERMIT |
| 12 | ARIZONA | KATIE HOBBS | | 1700 W WASHINGTON STREET FLOOR 7 | | PHOENIX | AZ | 85007 | YF ARIZONA LLC | SALES TAX PERMIT |
| 13 | ASCAP | ASCAP | | 21678 NETWORK PLACE | | CHICAGO | IL | 60673-1216 | YOUFIT HEALTH CLUBS, LLC | LIC & FEES |
| 14 | BAILEY COVE, LLC | CHASE COMMERCIAL REAL ESTATE SVC | | 7900 BAILEY COVE RD SE | | HUNTSVILLE | AL | 35802 | YF HUNTSVILLE, LLC | CLUB NO. 7456 - HUNTSVILLE REAL PROPERTY LEASE - 7900 BAILEY COVE RD STE# 10, HUNTSVILLE, AL 35802 |
| 15 | BALTIMORE COUNTY MD | JOHN OLSZEWSKI, JR. | | 400 WASHINGTON AVENUE, ROOM 150 | | TOWNSON | MD | 21204 | YF RANDALLSTOWN LLC | SALES TAX PERMIT |
| 16 | BAY ALARM COMPANY | | | 5130 COMMERCIAL CIRCLE | | CONCORD | CA | 94520 | YOUFIT HEALTH CLUBS, LLC | OUTSIDESVC |
| 17 | BEACH HOLDING, INC. | FADI KALOUSIA LEASING MGR | | 696 NE 125TH ST | | NORTH MIAMI | FL | 33161 | B-FIT HEALTH CLUB, LLC | CLUB NO. 6439 - SUNRISE REAL PROPERTY LEASE - 2101 N UNIVERSITY DRIVE, SUNRISE, FL 33322 |
| 18 | BERKS, RICK | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YouFit Health Clubs, LLC | PREFERRED UNIT PURCHASE AGREEMENT |
| 19 | BERMUDEZ, BEATRIZ | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YOUFIT HEALTH CLUBS, LLC | RETENTION AGREEMENTS |
| 20 | BLDG-ICS OLNEY, LLC | WHARTON REALTY GROUP INC | MARK MASSRY | 8 INDUSTRIAL WAY EAST 2ND FLOOR | | EATONTOWN | NJ | 07724 | YF OLNEY, LLC | CLUB NO. 7765 - OLNEY REAL PROPERTY LEASE - 101 EAST OLNEY AVENUE, PHILADELPHIA, PA 19120 |
| 21 | BLOOD, PETER | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YouFit Health Clubs, LLC | PREFERRED UNIT PURCHASE AGREEMENT |
| 22 | BOYNTON BEACH MALL, LLC | | | 180 EAST BROAD ST | | COLUMBUS | OH | 43215 | YF BOYNTON MALL, LLC | CLUB NO. 7370 - BOYNTON REAL PROPERTY LEASE - 801 N CONGRESS AVE SUITE 8142, BOYNTON BEACH, FL 33426 |
| 23 | BROWARD COUNTY | TODD B. HANNON | | 3500 PAN AMERICAN DRIVE | | MIAMI | FL | 33133 | YOUFIT LLC | SALES TAX PERMIT |
| 24 | BROWARD COUNTY | TODD B. HANNON | | 3500 PAN AMERICAN DRIVE | | MIAMI | FL | 33133 | SEVEN B-FIT, LLC | SALES TAX PERMIT |
| 25 | BROWARD COUNTY | TODD B. HANNON | | 3500 PAN AMERICAN DRIVE | | MIAMI | FL | 33133 | YF KENDALL LLC | SALES TAX PERMIT |
| 26 | BROWARD COUNTY | TODD B. HANNON | | 3500 PAN AMERICAN DRIVE | | MIAMI | FL | 33133 | YF CONCORD LLC | SALES TAX PERMIT |
| 27 | BROWARD COUNTY | TODD B. HANNON | | 3500 PAN AMERICAN DRIVE | | MIAMI | FL | 33133 | YF LAGO MAR LLC | SALES TAX PERMIT |
| 28 | BROWARD COUNTY | TODD B. HANNON | | 3500 PAN AMERICAN DRIVE | | MIAMI | FL | 33133 | YF QUAIL ROOST LLC | SALES TAX PERMIT |
| 29 | BROWARD COUNTY | TODD B. HANNON | | 3500 PAN AMERICAN DRIVE | | MIAMI | FL | 33133 | YF CORAL WAY LLC | SALES TAX PERMIT |
| 30 | BROWARD COUNTY | TODD B. HANNON | | 3500 PAN AMERICAN DRIVE | | MIAMI | FL | 33133 | YF MIAMI 110TH LLC | SALES TAX PERMIT |
| 31 | BROWARD COUNTY | TODD B. HANNON | | 3500 PAN AMERICAN DRIVE | | MIAMI | FL | 33133 | YOUFIT LLC | SALES TAX PERMIT |
| 32 | BROWARD COUNTY | TODD B. HANNON | | 3500 PAN AMERICAN DRIVE | | MIAMI | FL | 33133 | YOUFIT LLC | SALES TAX PERMIT |
| 33 | BROWARD COUNTY | TODD B. HANNON | | 3500 PAN AMERICAN DRIVE | | MIAMI | FL | 33133 | YF CORAL WAY II LLC | SALES TAX PERMIT |
| 34 | BROWARD COUNTY | TODD B. HANNON | | 3500 PAN AMERICAN DRIVE | | MIAMI | FL | 33133 | YF HAMMOCKS LLC | SALES TAX PERMIT |
| 35 | BROWARD COUNTY | TODD B. HANNON | | 3500 PAN AMERICAN DRIVE | | MIAMI | FL | 33133 | YF FLAGLER LLC | SALES TAX PERMIT |
| 36 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | YF LAUDERDALE LAKES LLC | CERTIFICATE OF USE |
| 37 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | YOUFIT LLC | LOCAL BUSINESS TAX (CITY) |
| 38 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | YF NORTH LAUDERDALE LLC | LOCAL BUSINESS TAX (CITY) |
| 39 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | B-FIT HEALTH CLUB, LLC | LOCAL BUSINESS TAX (CITY) |
| 40 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | FOUR B-FIT, LLC | LOCAL BUSINESS TAX (CITY) |
| 41 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | SIX B-FIT, LLC | LOCAL BUSINESS TAX (CITY) |
| 42 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | FIVE B-FIT, LLC | LOCAL BUSINESS TAX (CITY) |
| 43 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | FIVE B-FIT, LLC | LOCAL BUSINESS TAX (CITY) |
| 44 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | FIVE B-FIT, LLC | LOCAL BUSINESS TAX (CITY) |
| 45 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | YF PARKLAND LLC | LOCAL BUSINESS TAX (CITY) |
| 46 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | YF HOLLYWOOD LLC | LOCAL BUSINESS TAX (CITY) |
| 47 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | YF WESTON LLC | LOCAL BUSINESS TAX (CITY) |
| 48 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | YF POMPANO LLC | LOCAL BUSINESS TAX (CITY) |
| 49 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | YF POMPANO LLC | LOCAL BUSINESS TAX (CITY) |
| 50 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | YF POMPANO LLC | LOCAL BUSINESS TAX (CITY) |
| 51 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | YF MARGATE LLC | LOCAL BUSINESS TAX (CITY) |
| 52 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | YF MARGATE LLC | LOCAL BUSINESS TAX (CITY) |
| 53 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | YF PINE ISLAND LLC | LOCAL BUSINESS TAX (CITY) |
| 54 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | YF PINES BOULEVARD LLC | LOCAL BUSINESS TAX (CITY) |
| 55 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | YF LAUDERDALE LAKES LLC | LOCAL BUSINESS TAX (CITY) |
| 56 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | YF DEERFIELD LLC | LOCAL BUSINESS TAX (CITY) |
| 57 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | YOUFIT LLC | LOCAL BUSINESS TAX (CITY) |

Exhibit F-2

| Item No. | CONTRACT PARTY | NAME 2 | NAME3 | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | DEBTOR ENTITY NAME | CONTRACT / LEASE DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 58 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | YOUFIT LLC | LOCAL BUSINESS TAX (COUNTY) |
| 59 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | YF NORTH LAUDERDALE LLC | LOCAL BUSINESS TAX (COUNTY) |
| 60 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | YF DANIA POINTE LLC | LOCAL BUSINESS TAX (COUNTY) |
| 61 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | B-FIT HEALTH CLUB LLC | LOCAL BUSINESS TAX (COUNTY) |
| 62 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | FOUR B-FIT, LLC | LOCAL BUSINESS TAX (COUNTY) |
| 63 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | SIX B-FIT, LLC | LOCAL BUSINESS TAX (COUNTY) |
| 64 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | FIVE B-FIT, LLC | LOCAL BUSINESS TAX (COUNTY) |
| 65 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | YF PARKLAND LLC | LOCAL BUSINESS TAX (COUNTY) |
| 66 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | YF HOLLYWOOD LLC | LOCAL BUSINESS TAX (COUNTY) |
| 67 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | YF WESTON LLC | LOCAL BUSINESS TAX (COUNTY) |
| 68 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | YF POMPANO LLC | LOCAL BUSINESS TAX (COUNTY) |
| 69 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | YF MARGATE LLC | LOCAL BUSINESS TAX (COUNTY) |
| 70 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | YF PINE ISLAND LLC | LOCAL BUSINESS TAX (COUNTY) |
| 71 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | YF PINES BOULEVARD LLC | LOCAL BUSINESS TAX (COUNTY) |
| 72 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | YF LAUDERDALE LAKES LLC | LOCAL BUSINESS TAX (COUNTY) |
| 73 | BROWARD COUNTY FL | ANDREW J MEYERS | COUNTY ATTORNEY | 115 S ANDREWS AVE | ROOM 423 | FORT LAUDERDALE | FL | 33301 | YF DEERFIELD LLC | LOCAL BUSINESS TAX (COUNTY) |
| 74 | BSF RICHMOND, LP | BOND COMPANIES INC | ROBERT BOND | 350 WEST HUBBARD ST STE 450 | | CHICAGO | IL | 60654 | YOU FIT, LLC | CLUB NO. 7738 - SPRING ROCK GREEN CHIPPENHAM PKWY REAL PROPERTY LEASE - 7100 MIDLOATHIAN TURNPIKE, RICHMOND, VA 23235 |
| 75 | CAPITAL GROWTH OF VENICE, LLC | STEVEN P LIPKINS | | 15 VALLEY DRIVER | | GREENWICH | CT | 06831 | YF VENICE, LLC | CLUB NO. 7361 - VENICE REAL PROPERTY LEASE - 1228 JACARANDA BLVD, VENICE, FL 34292 |
| 76 | CARROLLWOOD PARTNERS, LLC | IDEAL MANAGEMENT CO | | 12568 N KENDALL DR | | MIAMI | FL | 33186 | YF CARROLLWOOD, LLC | CLUB NO. 7435 - CARROLLWOOD REAL PROPERTY LEASE - 14350 N DALE MABRY HWY, TAMPA, FL 33618 |
| 77 | CBIZ MHM, LLC | | | PO BOX 953152 | | ST LOUIS | MO | 63195-3152 | YOUFIT HEALTH CLUBS, LLC | CAPX FURN |
| 78 | CEDAR HILLS CONSOLIDATED, LLC | VICTORY REAL ESTATE INVESTMENTS LLC | LEASING DEPT | 240 BROOKSTONE CENTRE PKWY | | COLUMBUS | GA | 31904 | YOU FIT, LLC | CLUB NO. 7757 - CEDAR HILLS REAL PROPERTY LEASE - 3566 BLANDING BLVD, SUITE 01, JACKSONVILLE, FL 33442 |
| 79 | CENTRAL BANK OF ST. LOUIS | | | 7707 FORSYTH BLVD. | | ST. LOUIS | MO | 63105 | YF WEST COBB, LLC | MERCHANT AGREEMENT |
| 80 | CENTRAL BANK OF ST. LOUIS | | | 7707 FORSYTH BLVD. | | ST. LOUIS | MO | 63105 | YF ARIZONA, LLC | MERCHANT AGREEMENT |
| 81 | CENTRAL BANK OF ST. LOUIS | | | 7707 FORSYTH BLVD. | | ST. LOUIS | MO | 63105 | YF ARIZONA, LLC | MERCHANT AGREEMENT |
| 82 | CENTRAL BANK OF ST. LOUIS | | | 7707 FORSYTH BLVD. | | ST. LOUIS | MO | 63105 | YOU FIT, LLC | MERCHANT AGREEMENT |
| 83 | CENTRAL BANK OF ST. LOUIS | | | 7707 FORSYTH BLVD. | | ST. LOUIS | MO | 63105 | YF RHODE ISLAND, LLC | MERCHANT AGREEMENT |
| 84 | CENTRAL BANK OF ST. LOUIS | | | 7707 FORSYTH BLVD. | | ST. LOUIS | MO | 63105 | YF MIAMI 110TH LLC | MERCHANT AGREEMENT |
| 85 | CENTRAL BANK OF ST. LOUIS | | | 7707 FORSYTH BLVD. | | ST. LOUIS | MO | 63105 | YF NORTH LAUDERDALE, LLC | MERCHANT AGREEMENT |
| 86 | CENTRAL BANK OF ST. LOUIS | | | 7707 FORSYTH BLVD. | | ST. LOUIS | MO | 63105 | YF MIAMI GARDENS, LLC | MERCHANT AGREEMENT |
| 87 | CENTRAL BANK OF ST. LOUIS | | | 7707 FORSYTH BLVD. | | ST. LOUIS | MO | 63105 | YF LARGO PLAZA LLC | MERCHANT AGREEMENT |
| 88 | CENTRAL BANK OF ST. LOUIS | | | 7707 FORSYTH BLVD. | | ST. LOUIS | MO | 63105 | YF LOCH RAVEN LLC | MERCHANT AGREEMENT |
| 89 | CENTRAL BANK OF ST. LOUIS | | | 7707 FORSYTH BLVD. | | ST. LOUIS | MO | 63105 | YF DANIA POINTE LLC | MERCHANT AGREEMENT |
| 90 | CENTRAL BANK OF ST. LOUIS | | | 7707 FORSYTH BLVD. | | ST. LOUIS | MO | 63105 | YF FLAGLER LLC | MERCHANT AGREEMENT |
| 91 | CENTRAL BANK OF ST. LOUIS | | | 7707 FORSYTH BLVD. | | ST. LOUIS | MO | 63105 | YF PARADISE SQUARE LLC | MERCHANT AGREEMENT |
| 92 | CENTRAL BANK OF ST. LOUIS | | | 7707 FORSYTH BLVD. | | ST. LOUIS | MO | 63105 | YF ARIZONA, LLC | MERCHANT AGREEMENT |
| 93 | CENTRAL BANK OF ST. LOUIS | | | 7707 FORSYTH BLVD. | | ST. LOUIS | MO | 63105 | YF ARIZONA, LLC | MERCHANT AGREEMENT |
| 94 | CH REALTY VII/R ORLANDO ALTAMONTE, L.L.C. | ASSET MANAGER ALTAMONTE | | 3819 MAPLE AVE | | DALLAS | TX | 75219 | YOU FIT, LLC | CLUB NO. 7460 - ALTAMONTE TOWN CENTER REAL PROPERTY LEASE - 140 CRANES ROOST BLVD, ALTAMONTE SPRINGS, FL 32701 |
| 95 | CHAMPION ENERGY SERVICES | | A CALPINE COMPANY | 02524 N GALLOWAY AVE | | MESQUITE | TX | 75150 | YOU FIT, LLC | UTILITIES |
| 96 | CHARLOTTE COUNTY FL | JANETTE S KNOWLTON | COUNTY ATTORNEY | 18500 MURDOCK CIR | | PORT CHARLOTTE | FL | 33948 | YF PORT CHARLOTTE LLC | LOCAL BUSINESS TAX (COUNTY) |
| 97 | CHESTERFIELD COUNTY | DAN GECKER | | P.O. BOX 40 | | CHESTERFIELD | VA | 23832 | YOUFIT LLC | SALES TAX PERMIT |
| 98 | CHESTERFIELD COUNTY VA | JEFFREY L MINCKS | COUNTY ATTORNEY | P.O. BOX 40 | | CHESTERFIELD | VA | 23832 | YOUFIT LLC | COUNTY BUSINESS LICENSE |
| 99 | CHESTERFIELD COUNTY VA | JEFFREY L MINCKS | COUNTY ATTORNEY | PO BOX 40 | | CHESTERFIELD | VA | 23832 | YOUFIT LLC | COUNTY BUSINESS LICENSE |
| 100 | CIGNA (LIFE INSURANCE) | | | PO BOX 644546 | | PITTSBURGH | PA | 15264-4546 | YOUFIT HEALTH CLUBS, LLC | EMP BENEF - INSURANCE |
| 101 | CITY OF ALTAMONTE SPRINGS FL | ANGIE APPERSON | CITY CLERK | 225 NEWBURYPORT AVE | | ALTAMONTE SPRINGS | FL | 32701 | YOUFIT LLC | LOCAL BUSINESS TAX (CITY) |
| 102 | CITY OF ALTAMONTE SPRINGS FL | ANGIE APPERSON | | 225 NEWBURYPORT AVENUE | | ALTAMONTE SPRINGS | FL | 32701 | YOUFIT LLC | SALES TAX PERMIT |
| 103 | CITY OF AUSTELL GA | ELIZABETH YOUNG | | 5000 AUSTELL-POWDER SPRINGS ROAD | SUITE 137 | AUSTELL | GA | 30106 | YF WEST COBB, LLC | SALES TAX PERMIT |
| 104 | CITY OF BALTIMORE MD | BERNARD C. YOUNG | | 100 N. HOLIDAY STREET | | BALTIMORE | MD | 21202 | YF LOCH RAVEN LLC | SALES TAX PERMIT |
| 105 | CITY OF BOCA RATON FL | SUSAN S SAXTON | | 201 W PALMETTO PK RD | | BOCA RATON | FL | 33432 | THREE B-FIT, LLC | LOCAL BUSINESS TAX (CITY) |
| 106 | CITY OF BOCA RATON FL | SUSAN S SAXTON | | 201 W PALMETTO PK RD | | BOCA RATON | FL | 33432 | YF TOWN CENTER LLC | LOCAL BUSINESS TAX (CITY) |
| 107 | CITY OF BOCA RATON FL | SUSAN S. SAXTON | | 201 W. PALMETTO PARK RD. | | BOCA RATON | FL | 33432 | THREE B-FIT, LLC | SALES TAX PERMIT |
| 108 | CITY OF BOCA RATON FL | SUSAN S. SAXTON | | 201 W. PALMETTO PARK RD. | | BOCA RATON | FL | 33432 | YF TOWN CENTER LLC | SALES TAX PERMIT |
| 109 | CITY OF BOCA RATON FL | SUSAN S. SAXTON | | 201 W. PALMETTO PARK RD. | | BOCA RATON | FL | 33432 | YF SANDALFOOT LLC | SALES TAX PERMIT |
| 110 | CITY OF BOYNTON BEACH FL | CRYSTAL GIBSON | | 100 E OCEAN AVE | | BOYNTON BEACH | FL | 33435 | YF BOYNTON MALL LLC | LOCAL BUSINESS TAX (CITY) |
| 111 | CITY OF BOYNTON BEACH FL | CRYSTAL GIBSON | CITY CLERK | 100 E. OCEAN AVENUE | | BOYNTON BEACH | FL | 33435 | YF BOYNTON MALL LLC | SALES TAX PERMIT |
| 112 | CITY OF BRADENTON FL | TERRI SANCLEMENTE | | 107 GULF DRIVE N. | | BRADENTON BEACH | FL | 34217 | YOU FIT EIGHT, LLC | SALES TAX PERMIT |
| 113 | CITY OF CORAL SPRINGS FL | DEBRA THOMAS | | 9500 WEST SAMPLE ROAD | | CORAL SPRINGS | FL | 33065 | FOUR B-FIT, LLC | SALES TAX PERMIT |
| 114 | CITY OF CORAL SPRINGS FL | DEBRA THOMAS | | 9500 WEST SAMPLE ROAD | | CORAL SPRINGS | FL | 33065 | YF PARKLAND LLC | SALES TAX PERMIT |
| 115 | CITY OF DANIA BEACH FL | TOM SCHNEIDER | | 100 W DANIA BEACH BOULEVARD | | DANIA BEACH | FL | 33004 | YF DANIA POINTE LLC | SALES TAX PERMIT |
| 116 | CITY OF DAVIE FL | EVELYN ROIG | | TOWN CLERK, 6591 ORANGE DRIVE | | DAVIE | FL | 33314 | YF PINE ISLAND LLC | SALES TAX PERMIT |
| 117 | CITY OF DEERFIELD BEACH FL | SAMANTHA GILLYARD | | 150 N.E. 2ND AVE. | | DEERFIELD BEACH | FL | 33441 | YF DEERFIELD LLC | SALES TAX PERMIT |
| 118 | CITY OF DOUGLASVILLE GA | VICKI ACKER | | P.O. BOX 219 | | DOUGLASVILLE | GA | 30134 | YF DOUGLASVILLE LLC | SALES TAX PERMIT |
| 119 | CITY OF GAINESVILLE FL | OMICHELE GAINEY | | P.O. BOX 490 STATION 19 | | GAINESVILLE | FL | 32627 | YOUFIT LLC | SALES TAX PERMIT |
| 120 | CITY OF GARLAND TX | RENÉ DOWL | | P.O. BOX 469002 | | GARLAND | TX | 75046 | YOUFIT LLC | SALES TAX PERMIT |
| 121 | CITY OF GREENACRES FL | QUINTELLA MOORER | CITY CLERK | 5800 MELALEUCA LN | | GREENACRES | FL | 33463 | YF GREENACRES LLC | LOCAL BUSINESS TAX (CITY) |

In re: YouFit Health Clubs, LLC, et al.
Case No. 20-12841 (MFW)

Page 2 of 12

Exhibit F-2

| Item No. | CONTRACT PARTY | NAME 2 | NAME3 | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | DEBTOR ENTITY NAME | CONTRACT / LEASE DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 122 | CITY OF GREENACRES FL | QUINTELLA MOORER | | 5800 MELALEUCA LANE | | GREENACRES | FL | 33463 | YF GREENACRES LLC | SALES TAX PERMIT |
| 123 | CITY OF HIALEAH FL | MARBELYS FATJO | | 501 PALM AVENUE 3RD FLOOR | | HIALEAH | FL | 33010 | YF HIALEAH LLC | SALES TAX PERMIT |
| 124 | CITY OF HOLLYWOOD FL | PATRICIA CERNY | | P.O. BOX 229045 | | HOLLYWOOD | FL | 33022 | YF HOLLYWOOD LLC | SALES TAX PERMIT |
| 125 | CITY OF HUNTSVILLE AL | KENNETH BENION | | 3RD FLOOR 308 FOUNTAIN CIRCLE | | HUNTSVILLE | AL | 35801 | YF HUNTSVILLE LLC | SALES TAX PERMIT |
| 126 | CITY OF KENNESAW GA | LEA ALVAREZ | | 2529 J O STEPHENSON AVE | | KENNESAW | GA | 30144 | YF SHILOH LLC | SALES TAX PERMIT |
| 127 | CITY OF LANTANA FL | KATHLEEN DOMINGUEZ | | 500 GREYNOLDS CIRCLE | | LANTANA | FL | 33462 | YF LANTANA LLC | SALES TAX PERMIT |
| 128 | CITY OF LARGO FL | DIANE L BRUNER | CITY CLERK | 201 HIGHLAND AVE NE | | LARGO | FL | 33770 | YF LARGO PLAZA LLC | LOCAL BUSINESS TAX (CITY) |
| 129 | CITY OF LARGO FL | DIANE L. BRUNER | | 201 HIGHLAND AVE. | | LARGO | FL | 33770 | YF LARGO PLAZA LLC | SALES TAX PERMIT |
| 130 | CITY OF LAUDERDALE LAKES FL | VENICE HOWARD | | 4300 NW 36TH ST. | | LAUDERDALE LAKES | FL | 33319 | YF LAUDERDALE LAKES LLC | SALES TAX PERMIT |
| 131 | CITY OF MARGATE FL | JOSEPH J. KAVANAGH | | 5790 MARGATE BOULEVARD | | MARGATE | FL | 33063 | YF MARGATE LLC | SALES TAX PERMIT |
| 132 | CITY OF MESQUITE TX | SONJA LAND | | BOX 850137 | | MESQUITE | TX | 75185 | YOUFIT LLC | SALES TAX PERMIT |
| 133 | CITY OF MIAMI GARDENS FL | MARIO BATAILLE | | 18605 NW 27TH AVENUE | | MIAMI GARDENS | FL | 33056 | YF MIAMI GARDENS LLC | SALES TAX PERMIT |
| 134 | CITY OF NEW ORLEANS LA | CHELSEY RICHARD NAPOLEON | | 1340 POYDRAS STREET, 4TH FLOOR | | NEW ORLEANS | LA | 70112 | YOUFIT LLC | SALES TAX PERMIT |
| 135 | CITY OF NEW ORLEANS LA | CHELSEY RICHARD NAPOLEON | | 1340 POYDRAS ST | 4TH FLOOR | NEW ORLEANS | LA | 70112 | YOUFIT LLC | OCCUPATIONAL TAX |
| 136 | CITY OF NORCROSS GA | MONIQUE LANG | | 65 LAWRENCEVILLE ST. | | NORCROSS | GA | 30071 | YF SINGLETON LLC | SALES TAX PERMIT |
| 137 | CITY OF NORTH LAUDERDALE FL | ELIZABETH GARCIA-BECKFORD | | 701 SW 71ST AVE | | NORTH LAUDERDALE | FL | 33068 | YF NORTH LAUDERDALE LLC | SALES TAX PERMIT |
| 138 | CITY OF NORTH PORT FL | HEATHER TAYLOR | CITY CLERK CITY HALL | SECOND FLOOR 4970 CITY HALL BLVD | | NORTH PORT | FL | 34286 | YF NORTH PORT LLC | LOCAL BUSINESS TAX (CITY) |
| 139 | CITY OF NORTH PORT FL | HEATHER TAYLOR | | 4970 CITY HALL BOULEVARD | SECOND FLOOR | NORTH PORT | FL | 34286 | YF NORTH PORT LLC | SALES TAX PERMIT |
| 140 | CITY OF NORTH PROVIDENCE RI | MARY ANN DEANGELUS | | NORTH PROVIDENCE TOWN HALL | 2000 SMITH ST. | NORTH PROVIDENCE | RI | 02911 | YF RHODE ISLAND, LLC | SALES TAX PERMIT |
| 141 | CITY OF OAKLAND PARK FL | RENEE M. SHROUT | | 3650 NE 12TH AVENUE | | OAKLAND PARK | FL | 33334 | YOUFIT LLC | SALES TAX PERMIT |
| 142 | CITY OF ORLANDO FL | STEPHANIE HERDOCIA | CITY CLERK CITY HALL | 400 SOUTH ORANGE AVE | | ORLANDO | FL | 32802 | YOUFIT LLC | LOCAL BUSINESS TAX (CITY) |
| 143 | CITY OF ORLANDO FL | STEPHANIE HERDOCIA | | 400 SOUTH ORANGE AVE | | ORLANDO | FL | 32802 | YOUFIT LLC | SALES TAX PERMIT |
| 144 | CITY OF ORLANDO FL | STEPHANIE HERDOCIA | | 400 SOUTH ORANGE AVE | | ORLANDO | FL | 32802 | YOUFIT LLC | SALES TAX PERMIT |
| 145 | CITY OF PEMBROKE PINES FL | MARLENE GRAHAM | | 601 CITY CENTER WAY 4TH | | PEMBROKE PINES | FL | 33025 | SIX B-FIT, LLC | SALES TAX PERMIT |
| 146 | CITY OF PEMBROKE PINES FL | MARLENE GRAHAM | | 601 CITY CENTER WAY 4TH | | PEMBROKE PINES | FL | 33025 | YF PINES BOULEVARD LLC | SALES TAX PERMIT |
| 147 | CITY OF PHILADELPHIA PA | ERIC FEDER | | 284 CITY HALL | | PHILADELPHIA | PA | 19107 | YF OLNEY LLC | SALES TAX PERMIT |
| 148 | CITY OF PHOENIX AZ | DENISE ARCHIBALD | | 200 W. WASHINGTON STREET | | PHOENIX | AZ | 85003 | YF BETHANY LLC | SALES TAX PERMIT |
| 149 | CITY OF PINELLAS PARK FL | DIANE CORNA | | 5141 78TH AVENUE N | | PINELLAS PARK | FL | 33781 | YOU FIT PINELLAS PARK, LLC | SALES TAX PERMIT |
| 150 | CITY OF PINELLAS PARK FL | DIANE CORNA CITY CLERK | | 5141 78TH AVE N | | PINELLAS PARK | FL | 33781 | YOU FIT PINELLAS PARK, LLC | LOCAL BUSINESS TAX (CITY) |
| 151 | CITY OF POMPANO BEACH FL | ASCELETA HAMMOND | | 100 WEST ATLANTIC BLVD | SECOND FLOOR | POMPANO BEACH | FL | 33060 | FIVE B-FIT, LLC | SALES TAX PERMIT |
| 152 | CITY OF POMPANO BEACH FL | ASCELETA HAMMOND | | 100 WEST ATLANTIC BLVD | SECOND FLOOR | POMPANO BEACH | FL | 33060 | YF POMPANO LLC | SALES TAX PERMIT |
| 153 | CITY OF PORT CHARLOTTE FL | ROGER D. EATON | | 18500 MURDOCK CIR | | PORT CHARLOTTE | FL | 33948 | YF PORT CHARLOTTE LLC | SALES TAX PERMIT |
| 154 | CITY OF RICHARDSON TX | AIMEE NEMER | | P.O. BOX 830309 | | RICHARDSON | TX | 75083 | YOUFIT LLC | SALES TAX PERMIT |
| 155 | CITY OF RICHMOND VA | CANDICE D. REID | | 900 E. BROAD ST., SUITE 200 | | RICHMOND | VA | 23219 | YOUFIT LLC | SALES TAX PERMIT |
| 156 | CITY OF RICHMOND VA | CANDICE D. REID | | 900 E. BROAD ST., SUITE 200 | | RICHMOND | VA | 23219 | YOUFIT LLC | SALES TAX PERMIT |
| 157 | CITY OF RIVERDALE GA | SYLVIA VAUGHAN | | 7200 CHURCH | | ST. RIVERDALE | GA | 30274 | YF RIVERDALE LLC | SALES TAX PERMIT |
| 158 | CITY OF SARASOTA FL | SHAYLA GRIGGS | | 1565 1ST STREET ROOM 110 | | SARASOTA | FL | 34236 | YOU FIT SEVEN, LLC | SALES TAX PERMIT |
| 159 | CITY OF SCOTTSDALE AZ | CAROLYN JAGGER | | 3939 N. DRINKWATER BLVD. | | SCOTTSDALE | AZ | 85251 | YF SCOTTSDALE LLC | SALES TAX PERMIT |
| 160 | CITY OF ST PETERSBURG FL | CHAN SRINIVASA | CITY CLERK | PO BOX 2842 | | ST PETERSBURG | FL | 33731 | YOU FIT ONE,LLC | LOCAL BUSINESS TAX (CITY) |
| 161 | CITY OF ST PETERSBURG FL | CHAN SRINIVASA | CITY CLERK | PO BOX 2842 | | ST PETERSBURG | FL | 33731 | CORPORATE - LEGAL | LOCAL BUSINESS TAX (CITY) |
| 162 | CITY OF ST PETERSBURG FL | CHAN SRINIVASA | | P.O. BOX 2842 | | ST PETERSBURG | FL | 33731 | YOU FIT-ONE, LLC | SALES TAX PERMIT |
| 163 | CITY OF SUNRISE FL | FELICIA M. BRAVO | | 10770 WEST OAKLAND PARK | | SUNRISE | FL | 33351 | B-FIT HEALTH CLUB, LLC | SALES TAX PERMIT |
| 164 | CITY OF SUNRISE FL | FELICIA M. BRAVO | | 10770 WEST OAKLAND PARK | | SUNRISE | FL | 33351 | YF WESTON LLC | SALES TAX PERMIT |
| 165 | CITY OF SUWANEE GA | ELVIRA ROGERS | | 330 TOWN CENTER AVENUE | | SUWANEE | GA | 30024 | YF SUWANEE LLC | SALES TAX PERMIT |
| 166 | CITY OF TALLAHASSEE FL | JIM COOKE | | 300 S. ADAMS ST. | | TALLAHASSEE | FL | 32301 | YF NOLES LLC | SALES TAX PERMIT |
| 167 | CITY OF TALLAHASSEE FL | JIM COOKE | | 300 S. ADAMS ST. | | TALLAHASSEE | FL | 32301 | YF LAFAYETTE PLACE, LLC | SALES TAX PERMIT |
| 168 | CITY OF TALLAHASSEE FL | JIM COOKE | | 300 S. ADAMS ST. | | TALLAHASSEE | FL | 32301 | YF UNIVERSITY VILLAGE LLC | SALES TAX PERMIT |
| 169 | CITY OF TAMPA FL | SHIRLEY FOXX-KNOWLES | | 306 EAST JACKSON STREET | | TAMPA | FL | 33602 | YF RACETRACK LLC | SALES TAX PERMIT |
| 170 | CITY OF TAMPA FL | SHIRLEY FOXX-KNOWLES | | 306 EAST JACKSON STREET | | TAMPA | FL | 33602 | YF CARROLLWOOD LLC | SALES TAX PERMIT |
| 171 | CITY OF VENICE FL | LORI STELZER | | 401 WEST VENICE AVENUE | | VENICE | FL | 34285 | YF VENICE LLC | SALES TAX PERMIT |
| 172 | CITY OF WELLINGTON FL | CHEVELLE D ADDIE | VILLAGE CLERK | 12300 FOREST HILL BLVD | | WELLINGTON | FL | 33414 | YF WELLINGTON LLC | LOCAL BUSINESS TAX (CITY) |
| 173 | CITY OF WELLINGTON FL | CHEVELLE D. ADDIE | | 12300 FOREST HILL BOULEVARD | | WELLINGTON | FL | 33414 | YF WELLINGTON LLC | SALES TAX PERMIT |
| 174 | CITY OF WEST PALM BEACH FL | HAZELINE CARSON | | P.O. BOX 3366 | | WEST PALM BEACH | FL | 33402 | YOU FIT NINE, LLC | SALES TAX PERMIT |
| 175 | CITY OF WEST PALM BEACH FL | HAZELINE CARSON | | P.O. BOX 3366 | | WEST PALM BEACH | FL | 33402 | YF OKEECHOBEE LLC | SALES TAX PERMIT |
| 176 | CITY OF WINTER PARK FL | RENE CRANIS | | 401 SOUTH PARK AVENUE | | WINTER PARK | FL | 32789 | YF UNIGOLD INC LLC | SALES TAX PERMIT |
| 177 | CLAYTON COUNTY GA | DETRICK STANFORD | CLAYTON COUNTY ADMINISTRATION | 112 SMITH ST | ANNEX 1 | JONESBORO | GA | 30236 | YF RIVERDALE, LLC | BUSINESS LICENSE |
| 178 | CLOUD-ONSITE TECHNOLOGIES INC | | | 18851 NE 29 AVE | SUITE 700-143 | AVENTURA | FL | 33180 | YOUFIT HEALTH CLUBS, LLC | ADV |
| 179 | CLOVER CORTEZ LLC | COMMONWEALTH COMMERCIAL PARTNERS | | PO BOX 71150 | | RICHMOND | VA | 23255 | YOU FIT EIGHT, LLC | CLUB NO. 7385 - CORTEZ (W BRANDENTON) REAL PROPERTY LEASE - 5574 CORTEZ ROAD W, BRADENTON, FL 34210 |
| 180 | COBB COUNTY GA | DR JACKIE MCMORRIS | COUNTY MANAGER | 100 CHEROKEE ST | | MARIETTA | GA | 30090 | YF WEST COBB, LLC | COUNTY BUSINESS LICENSE |
| 181 | COBB COUNTY GA | DR JACKIE MCMORRIS | COUNTY MANAGER | 100 CHEROKEE ST | | MARIETTA | GA | 30090 | YF SHILOH LLC | OCCUPATIONAL LICENSE |
| 182 | COLONIAL LIFE & ACCIDENT INSURANCE | | PROCESSING CENTER | P. O. BOX 1365 | | COLUMBIA | SC | 29202-1365 | YOUFIT HEALTH CLUBS, LLC | EMP BENEF - INSURANCE |
| 183 | COMDATA | | | PO BOX 100647 | | ATLANTA | GA | 30384-0647 | YouFit Health Clubs, LLC | CORPORATE PAYMENT SOLUTION AGREEMENT |
| 184 | COMPTON PROPERTIES, LLLP | REAL ESTATE DEPT | | POST OFFICE BOX 568367 | | ORLANDO | FL | 32856 | YOU FIT, LLC | CLUB NO. 7457 - MARKET AT SOUTHSIDE REAL PROPERTY LEASE - 2847 S. ORANGE AVE, ORLANDO, FL 32806 |
| 185 | CORNERSTONE ONDEMAND, INC. | | | 1601 CLOVERFIELD BLVD | SUITE 620 SOUTH | SANTA MONICA | CA | 90404 | YOUFIT HEALTH CLUBS, LLC | LIC & FEES |
| 186 | CP DEERFIELD, LLC | SELECT STRATEGIES BROKERAGE | | 5770 HOFFNER AVE STE 102 | | ORLANDO | FL | 32822 | YF DEERFIELD, LLC | CLUB NO. 7455 - DEERFIELD REAL PROPERTY LEASE - 4032 W HILLSBORO BLVD, DEERFIELD BEACH, FL 33442 |
| 187 | CP PEMBROKE PINES, LLC | THE CORNFELD GROUP | | 3859 HOLLYWOOD BLVD STE 400 | | HOLLYWOOD | FL | 33021 | YF PINES BOULEVARD, LLC | CLUB NO. 7432 - PP2 REAL PROPERTY LEASE - 10840 PINES BLVD, PEMBROKE PINES, FL 33026 |

In re: YouFit Health Clubs, LLC, et al.
Case No. 20-12841 (MFW)

Page 3 of 12

Exhibit F-2

| Item No. | CONTRACT PARTY | NAME 2 | NAME3 | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | DEBTOR ENTITY NAME | CONTRACT / LEASE DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 188 | CREEGAN, III, JOSEPH J. | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YouFit Health Clubs, LLC | PREFERRED UNIT PURCHASE AGREEMENT |
| 189 | CROSS COUNTY OWNER, LLC | | | 3333 NEW HYDE PK RD STE 100 | PO BOX 5020 | NEW HYDE PARK | NY | 11042 | YF OKEECHOBEE, LLC | CLUB NO. 7396 - OKEECHOBEE REAL PROPERTY LEASE - 4364 OKEECHOBEE BLVD, WEST PALM BEACH, FL 33409 |
| 190 | CROSSINGS SHOPPING VILLAGE ASSOCIATES LLLP | | | 6625 MIAMI LAKES DR STE 340 | | MIAMI LAKES | FL | 33014-2705 | YF KENDALL, LLC | CLUB NO. 7348 - KENDALL REAL PROPERTY LEASE - 13065 SW 112TH ST, MIAMI, FL 33186 |
| 191 | DAASLY, INC | | | 8004 NW 154 STREET, #632 | | MIAMI LAKES | FL | 33016 | YOUFIT HEALTH CLUBS, LLC | MISC |
| 192 | DADE | NIKKI ALVAREZ-SOWLES | | 38053 LIVE OAK AVENUE | | DADE CITY | FL | 33523 | YF LAND O LAKES LLC | SALES TAX PERMIT |
| 193 | DALLAS COUNTY | JOHN F. WARREN | | RENAISSANCE TOWER | 1201 ELM STREET, SUITE 2100 | DALLAS | TX | 75270 | YF SPRING CREEK LLC | SALES TAX PERMIT |
| 194 | DANIA LIVE 1748, LLC | | | 500 NORTH BROADWAY STE 201 | PO BOX 9010 | JERICHO | NY | 11753 | YF DANIA POINTE, LLC | CLUB NO. 7797 - DANIA POINT REAL PROPERTY LEASE - 140 SOUTH COMPASS WAY, DANIA BEACH, FL 33004 |
| 195 | DDS LIBERTY ROAD, LLC | | | POST OFFICE BOX 32429 | | PIKESVILLE | MD | 21208 | YF RANDALLSTOWN, LLC | CLUB NO. 7781 - RANDALLSTOWN REAL PROPERTY LEASE - 8606 LIBERTY RD., RANDALLSTOWN, MD 21133 |
| 196 | DEX IMAGING LLC (STAPLES) | | | PO BAX 17454 | | CLEAR WATER | FL | 33762 | YOUFIT HEALTH CLUBS, LLC | OFC & COMP |
| 197 | DIM VASTGOED, N.V. | LEGAL DEPT | | 1600 NORTHEAST MIAMI GARDENS DR | | NORTH MIAMI BEACH | FL | 33179 | YF HAMMOCK, LLC | CLUB NO. 7780 - MIAMI HAMMOCKS REAL PROPERTY LEASE - 10201 HAMMOCKS BLVD SUITE 130, MIAMI, FL 33196 |
| 198 | DIRECTTV NATIONAL ACCOUNT COMMERCIAL CUSTOMER AGREEMENT | | | PO BOX 105249 | | ATLANTA | GA | 30348 | YOU FIT, LLC | UTILITIES |
| 199 | DIRECTV, LLC | | | PO BOX 105249 | | ATLANTA | GA | 30348 | YOU FIT, LLC | UTILITIES |
| 200 | DOMO | | | 772 E UTAH VALLEY DR | | AMERICAN FORK | UT | 84003-9773 | YOU FIT, LLC | OFC & COMP |
| 201 | DOUGLAS COUNTY GA | MARK TEAL | COUNTY ADMINISTRATOR | 8700 HOSPITAL DR | | DOUGLASVILLE | GA | 30134 | YF DOUGLASVILLE LLC | CITY OCCUPATIONAL TAX |
| 202 | DUVAL COUNTY FL | | | 231 EAST FORSYTH STREET | | JACKSONVILLE | FL | 32202 | YOUFIT LLC | LOCAL BUSINESS TAX (COUNTY) |
| 203 | DUVAL COUNTY FL | | | 231 EAST FORSYTH STREET | | JACKSONVILLE | FL | 32202 | YF GATEWAY LLC | LOCAL BUSINESS TAX (COUNTY) |
| 204 | EBLR, LLC | LEON CAPITAL GROUP | ROB SOLLS | 2311 CEDAR SPRINGS STE 100 | | DALLAS | TX | 75201 | YOU FIT, LLC | CLUB NO. 7752 - RICHARDSON REAL PROPERTY LEASE - 111 N PLANO ROAD, RICHARDSON, TX 75081 |
| 205 | EQUITY ONE (FLORIDA PORTFOLIO) LLC. | LEGAL DEPT | | 1600 NE MIAMI GARDENS DR STE 500 | | NORTH MIAMI BEACH | FL | 33179 | YF PINE ISLAND, LLC | CLUB NO. 7411 - PINES ISLAND REAL PROPERTY LEASE - 8942 W STATE ROAD 84, DAVIE, FL 33324 |
| 206 | FLAGLER S.C., LLC | | | 500 NORTH BROADWAY STE 201 | PO BOX 9010 | JERICHO | NY | 11753 | YF FLAGLER LLC | CLUB NO. 7798 - FLAGLER REAL PROPERTY LEASE - 8311 WEST FLAGLER STREET, MIAMI, FL 33144 |
| 207 | FORTRESS SECURITY, LLC | | | PO BOX 200337 | | ARLINGTON | TX | 76006 | YOUFIT HEALTH CLUBS, LLC | OUTSIDESVC |
| 208 | FORTRESS SECURITY, LLC | | | PO BOX 200337 | | ARLINGTON | TX | 76006 | YOUFIT HEALTH CLUBS, LLC | OUTSIDESVC |
| 209 | FORTRESS SECURITY, LLC | | | PO BOX 200337 | | ARLINGTON | TX | 76006 | YOUFIT HEALTH CLUBS, LLC | OUTSIDESVC |
| 210 | FORUM ANALYTICS, LLC, A CBRE COMPANY | CBRE - 608844 | | PO BOX 848844 | | LOS ANGELES | CA | 90084-8844 | YOU FIT, LLC | PROF FEES |
| 211 | FRIT COCOWALK OWNER, LLC | PROPERTY ONE INC | | 4141 VETERANS BLVD STE 300 | | METAIRIE | LA | 70002 | YOU FIT, LLC | CLUB NO. 7743 - COCO WALK REAL PROPERTY LEASE - 3015 GRAND AVE SUITE #, 311, COCONUT GROVE, FL 33133 |
| 212 | FWI 16, LLC | BRUCE STRUMPF INC | | 2120 DREW ST | | CLEARWATER | FL | 33765 | YF WELLINGTON, LLC | CLUB NO. 7334 - WELLINGTON REAL PROPERTY LEASE - 13865 WELLINGTON TRACE -C, WELLINGTON, FL 33414 |
| 213 | GATEWAY RETAIL CENTER, LLC | TERRANOVA CORP | | 801 ARTHUR GODFREY RD STE 600 | | MIAMI BEACH | FL | 33140 | YF GATEWAY, LLC | CLUB NO. 7442 - GATEWAY REAL PROPERTY LEASE - 5920 NORWOOD AVE SUITE 2, JACKSONVILLE, FL 32208 |
| 214 | GATOR ARGATE GAINESVILLE, LLC | | | 1595 NE 163RD ST | | NORTH MIAMI BEACH | FL | 33162 | YOU FIT, LLC | CLUB NO. 7736 - UNIVERSITY TOWN CENTER REAL PROPERTY LEASE - 3345 SW 34TH STREET, GAINESVILLE, FL 32608 |
| 215 | GATOR GREEN ACRES, LTD. | | | 1595 NE 163RD ST | | NORTH MIAMI BEACH | FL | 33162 | YF GREENACRES, LLC | CLUB NO. 7434 - GREENACRES REAL PROPERTY LEASE - 3911B JOG ROAD, GREENACRES, FL 33467 |
| 216 | GLASSDOOR, INC | | | P. O. BOX 123436 | DEPARTMENT 3436 | DALLAS | TX | 75312-3436 | YOU FIT, LLC | PROF FEES |
| 217 | GLOBAL MUSIC RIGHTS, LLC | | | 1801 W. OLYMPIC BLVD. | | PASADENA | CA | 91199-2281 | YOUFIT HEALTH CLUBS, LLC | LIC & FEES |
| 218 | GLOBAL NORTH BAY, LLC | GLOBAL REALTY AND MANAGEMENT FL INC | PROPERTY MANAGEMENT DEPT | 4125 NW 88TH AVE | | SUNRISE | FL | 33351 | YF RACETRACK, LLC | CLUB NO. 7358 - TAMPA REAL PROPERTY LEASE - 13891 W HILLSBOROUGH AVE, TAMPA, FL 33635 |
| 219 | GREAT AMERICAN INSURANCE COMPANY | SPECIALTY ACCOUNTING | | PO BOX 89400 | | CLEVELAND | OH | 44101-6400 | YOUFIT HEALTH CLUBS, LLC | INSURANCE |
| 220 | GRETNA | JON A. GEGENHEIMER | | P.O. BOX 10 | | GRETNA | LA | 70054 | YOUFIT LLC | SALES TAX PERMIT |
| 221 | GRI-EQY (CONCORD) LLC | LEGAL DEPT | | 1600 NORTHEAST MIAMI GARDENS DR | | NORTH MIAMI BEACH | FL | 33179 | YF CONCORD, LLC | CLUB NO. 7363 - MIAMI REAL PROPERTY LEASE - 3900 SW 112TH AVE, MIAMI, FL 35868 |
| 222 | GRI-EQY (QUAIL ROOST) LLC | LEGAL DEPT | | 1600 NORTHEAST MIAMI GARDENS DR | | NORTH MIAMI BEACH | FL | 33179 | YF QUAIL ROOST, LLC | CLUB NO. 7438 - MIAMI 3 REAL PROPERTY LEASE - 20001 SW 127TH AVE, MIAMI, FL 33177 |
| 223 | GWINNETT COUNTY GA | GLENN STEPHENS | COUNTY ADMINISTRATOR | 75 LANGLEY DR | | LAWRENCEVILLE | GA | 30046 | YF SINGLETON LLC | COUNTY BUSINESS LICENSE |
| 224 | GWINNETT COUNTY GA | GLENN STEPHENS | COUNTY ADMINISTRATOR | 75 LANGLEY DR | | LAWRENCEVILLE | GA | 30046 | YF SUWANEE LLC | OCCUPATIONAL LICENSE (CITY) |
| 225 | HILLSBOROUGH COUNTY FL | CHRISTINE BECK | COUNTY ATTORNEY | 601 E KENNEDY BLVD 27TH FLOOR | PO BOX 1110 | TAMPA | FL | 33601-1110 | YF RACETRACK, LLC | LOCAL BUSINESS TAX (COUNTY) |
| 226 | HILLSBOROUGH COUNTY FL | CHRISTINE BECK | COUNTY ATTORNEY | 601 E KENNEDY BLVD 27TH FLOOR | PO BOX 1110 | TAMPA | FL | 33601-1110 | YF CARROLLWOOD LLC | LOCAL BUSINESS TAX (COUNTY) |
| 227 | HORIZON VILLAGE SC LLC | JBL ASSET MANAGEMENT LLC | | 2028 HARRISON ST | STE 202 | HOLLYWOOD | FL | 33020 | YF SUWANEE, LLC | CLUB NO. 7389 - SUWANEE REAL PROPERTY LEASE - 2856 LAWRENCEVILLE SUWANEE RD, SUITE 500, SUWANEE, GA 30024 |

Exhibit F-2

| Item No. | CONTRACT PARTY | NAME 2 | NAME3 | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | DEBTOR ENTITY NAME | CONTRACT / LEASE DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 228 | HRP SINGLETON SQUARE PARTNERS, L.P. | | | 35 JOHNSON FERRY RD | | MARIETTA | GA | 30068 | YF SINGLETON, LLC | CLUB NO. 7349 - SINGLETON (NORCROSS) REAL PROPERTY LEASE - 6000 SINGLETON RD, SUITE 321, NORCROSS, GA 30093 |
| 229 | INNEX II, LLC | | | 8004 NW 154 ST STE 243 | | MIAMI LAKES | FL | 33016 | SIX B-FIT, LLC | CLUB NO. 6441 - PEMBROKE PINES REAL PROPERTY LEASE - 9057 TAFT ST, PEMBROKE PINES, FL 33024 |
| 230 | IRONSHORE INSURANCE SERVICES, LLC | | | 28 LIBERTY STREET | 5TH FLOOR | NEW YORK | NY | 10005 | YOUFIT HEALTH CLUBS, LLC | D&O POLICY |
| 231 | IRT PARTNERS, L.P. | LEGAL DEPT | | 1600 NORTHEAST MIAMI GARDENS DR | | NORTH MIAMI BEACH | FL | 33179 | YF LAGO MAR, LLC | CLUB NO. 7368 - WEST KENDALL REAL PROPERTY LEASE - 15762 SW 72ND ST, MIAMI, FL 33192 |
| 232 | IRT PARTNERS, LP | LEGAL DEPT | | 1600 NORTHEAST MIAMI GARDENS DR | | NORTH MIAMI BEACH | FL | 33179 | YF UNIGOLD, LLC | CLUB NO. 7360 - UNIGOLD REAL PROPERTY LEASE - 7706 UNIVERSITY BLVD., WINTER PARK, FL 32792 |
| 233 | JACKSONVILLE BEACH | LAURIE SCOTT | | FIRST FLOOR 11 NORTH THIRD STREET | | JACKSONVILLE BEACH | FL | 32250 | YF GATEWAY LLC | SALES TAX PERMIT |
| 234 | JACKSONVILLE BEACH | LAURIE SCOTT | | FIRST FLOOR 11 NORTH THIRD STREET | | JACKSONVILLE BEACH | FL | 32250 | CEDAR HILLS | SALES TAX PERMIT |
| 235 | JAHCO SPRING CREEK VILLAGE, L.L.C. | JAH REALTY LP | JEFF NORMAN | PO BOX 14586 | | OKLAHOMA CITY | OK | 73113-0586 | YF SPRING CREEK, LLC | CLUB NO. 7729 - SPRING CREEK REAL PROPERTY LEASE - 7989 BELT LINE RD STE#200, DALLAS, TX 35248 |
| 236 | JEFFERSON PARISH COUNTY LA | EULA LOPEZ | COUNCIL CLERK | 200 DERBIGNY ST | 6TH FLOOR | GRETNA | LA | 70053-5850 | YOUFIT LLC | OCCUPATIONAL LICENSE |
| 237 | JEM INVESTMENTS, LTD. | | | 501 N MORGAN ST STE 502 | | TAMPA | FL | 33602 | YOU FIT SEVEN, LLC | CLUB NO. 7384 - TUTTLE REAL PROPERTY LEASE - 3840 S TUTTLE AVE, SARASOTA, FL 34239 |
| 238 | JLJI PC, LLC | REDEVCO MANAGEMENT | | 11098 BISCAYNE BLVD STE 103 | | MIAMI | FL | 33161 | YOU FIT, LLC | CLUB NO. 7753 - PROMENADE REAL PROPERTY LEASE - 11237 SW 152ND STREET, MIAMI, FL 33157 |
| 239 | JLJI PC, LLC PROMENADES MALL (E&A) LLC | EDENS AND AVANT INVESTMENTS LTD PARTNERSHIP | LEGAL DEPT | 1221 MAIN ST STE 1000 | | COLUMBIA | SC | 29201 | YF PORT CHARLOTTE, LLC | CLUB NO. 7393 - PORT CHARLOTTE REAL PROPERTY LEASE - 3280 TAMIAMI TRAIL SUITE 33, PORT CHARLOTTE, FL 33952 |
| 240 | JOHNSON CONTROLS | | | 4700 EXCHANGE COURT, SUITE 300 | | BOCA RATON | FL | 33431 | YOUFIT HEALTH CLUBS, LLC | OUTSIDESVC |
| 241 | JOHNSON, JESSICA ANN | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YOUFIT HEALTH CLUBS, LLC | RETENTION AGREEMENTS |
| 242 | JPMORGAN CHASE BANK, N.A. | ATTN. COMMERICAL CARD LEGAL | | MAIL CODE IL 1-0286 | 10 S. DEARBORN STREET | CHICAGO | IL | 60603-2300 | YOUFIT HEALTH CLUBS, LLC | MASTER COMMERCIAL CARD AGREEMENT |
| 243 | JULIANELLI, ROGER | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YouFit Health Clubs, LLC | PREFERRED UNIT PURCHASE AGREEMENT |
| 244 | JULIANELLI, ROGER | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YOUFIT HEALTH CLUBS, LLC | RETENTION AGREEMENTS |
| 245 | JUNGLE SHORES, LLC | | | 13650 66TH ST | | NORTHLARGO | FL | 33771 | YOU FIT PINELLAS PARK, LLC | CLUB NO. 7759 - PINELLAS PARK REAL PROPERTY LEASE - 6421 66TH STREET NORTH, PINELLAS PARK, FL 33781 |
| 246 | KIMZAY OF FLORIDA, INC. | | | 500 NORTH BROADWAY STE 201 | PO BOX 9010 | JERICHO | NY | 11753 | YF LARGO PLAZA LLC | CLUB NO. 7794 - LARGO-MISSOURI AVE REAL PROPERTY LEASE - 1111 N. MISSOURI AVENUE, LARGO, FL 33770 |
| 247 | KIRELAND CORAL TERRACE , LLC | PAN AMERICAN GROUP | | 150 ALHAMBRA CIR STE 925 | | CORAL GABLES | FL | 33134 | YF CORAL WAY, LLC | CLUB NO. 7446 - CORAL WAY REAL PROPERTY LEASE - 7070 SW 24TH ST, MIAMI, FL 33155 |
| 248 | KIZMAY OF FLORIDA, INC. | | | 500 NORTH BROADWAY STE 201 | PO BOX 9010 | JERICHO | NY | 11753 | YOU FIT-ONE, LLC | CLUB NO. 7378 - ST. PETE REAL PROPERTY LEASE - 6161 9TH AVE NORTH, ST PETERSBURG, FL 33710 |
| 249 | LAFAYETTE PLACE OMV, LLC | | | 4008 N FLORIDA AVE | | TAMPA | FL | 33603 | YF LAFAYETTE PLACE, LLC | CLUB NO. 7394 - LAFAYETTE (MAHAN DRIVE) REAL PROPERTY LEASE - 3111 MAHAN DRIVE SUITE 12, TALLAHASSEE, FL 32308 |
| 250 | LARISE ATLANTIS, INC. | | | 3107 STIRLING RD STE 104 | | FORT LAUDERDALE | FL | 33312 | YF LANTANA, LLC | CLUB NO. 6437 - LANTANA REAL PROPERTY LEASE - 6198 S CONGRESS AVE, #B, LANTANA, FL 33462 |
| 251 | LAUDERDALE MARKETPLACE INVESTMENTS, LLC | BLACK ROCK PARTNERS LTD AUTHORIZED AGENT | | 1600 SE 17TH ST CAUSEWAY STE 200 | | FORT LAUDERDALE | FL | 33316 | YF LAUDERDALE LAKES, LLC | CLUB NO. 7447 - LAUDERDALE LAKES REAL PROPERTY LEASE - 3708 WEST OAKLAND PARK BLVD, LAUDERDALE LAKES, FL 33311 |
| 252 | LAURICELLA MANHATTAN, L.L.C. | MR LOUIS LAURICELLA | | 1200 S CLEARVIEW PKWY | STE 1166 | NEW ORLEANS | LA | 70123 | YOU FIT, LLC | CLUB NO. 7739 - MANHATTAN REAL PROPERTY LEASE - 2424 MANHATTAN BLVD., HARVEY, LA 70058 |
| 253 | LBX ALAFAYA, LLC | THE SHOPPING CENTER GROUP LLC | PROPERTY MANAGER | 300 GALLERIA PKWY 12TH FLOOR | | ATLANTA | GA | 30339 | YOU FIT, LLC | CLUB NO. 7762 - ALAFAYA COMMONS REAL PROPERTY LEASE - 11792 E COLONIAL DRIVE, ORLANDO, FL 32817 |
| 254 | LEON COUNTY FL | CHASITY H OSTEEN | COUNTY ATTORNEY | 301 S MONROE ST | STE 202 | TALLAHASSEE | FL | 32301 | YF NOLES LLC | LOCAL BUSINESS TAX (CITY) |
| 255 | LEON COUNTY FL | CHASITY H OSTEEN | COUNTY ATTORNEY | 301 S MONROE ST | STE 202 | TALLAHASSEE | FL | 32301 | YF LAFAYETTE PLACE, LLC | LOCAL BUSINESS TAX (CITY) |
| 256 | LES MILL UNITED STATES TRADING, INC. | | | PO BOX 74008587 | | CHICAGO | IL | 60674-8587 | YOUFIT HEALTH CLUBS, LLC | MISC |
| 257 | LINA | | | P. O. BOX 782447 | | PHILADELPHIA, | PA | 19178-2447 | YOUFIT HEALTH CLUBS, LLC | EMP BENEF |
| 258 | LISTEN360 | | | 11625 RAINWATER DRIVE, SUITE 645 | | ALPHARETTA | GA | 30009 | YOUFIT HEALTH CLUBS, LLC | MISC |
| 259 | LOCH RAVEN SHOPPING CENTER LLC | ALLEN AND ROCKS INC | | 1960 GALLOWS RD | STE 300 | VIENNA | VA | 22128 | YF LOCH RAVEN LLC | CLUB NO. 7795 - LOCH RAVEN REAL PROPERTY LEASE - 1700 E. NORTHERN PARKWAY, BALTIMORE, MD 21239 |
| 260 | MADE VENTURE HOLDINGS, LLC | NEW GROUP MANAGEMENT | | 1140 NE 163RD ST | STE 28 | N. MIAMI BEACH | FL | 33162 | YF PARKLAND, LLC | CLUB NO. 7335 - PARKLAND REAL PROPERTY LEASE - 9535 WESTVIEW DRIVE, CORAL SPRINGS, FL 33076 |
| 261 | MADISON COUNTY AL | DALE W STRONG | | 100 N SIDE SQUARE | STE 700 | HUNTSVILLE | AL | 35801 | YF HUNTSVILLE LLC | CITY PRIVILEGE TAX LICENSE |
| 262 | MADISON COUNTY AL | DALE W STRONG | | 100 N SIDE SQUARE | STE 700 | HUNTSVILLE | AL | 35801 | YF HUNTSVILLE LLC | OCCUPATIONAL LICENSE |
| 263 | MANATEE COUNTY FL | MITCHELL PALMER | COUNTY ATTORNEY | 1112 MANATEE AVE WEST | | BRADENTON | FL | 34205 | YOU FIT EIGHT, LLC | LOCAL BUSINESS TAX (CITY) |

In re: YouFit Health Clubs, LLC, et al.
Case No. 20-12841 (MFW)

Page 5 of 12

Exhibit F-2

| Item No. | CONTRACT PARTY | NAME 2 | NAME3 | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | DEBTOR ENTITY NAME | CONTRACT / LEASE DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 264 | MARICOPA COUNTY AZ | FRAN MCCARROLL | CLERK OF THE BOARD OF SUPERVISORS | OF MARICOPA COUNTY | 301 W JEFFERSON 10TH FLOOR | PHOENIX | AZ | 85003 | YF ARIZONA | BUSINESS LICENSE |
| 265 | MARICOPA COUNTY AZ | FRAN MCCARROLL | CLERK OF THE BOARD OF SUPERVISORS | OF MARICOPA COUNTY | 301 W JEFFERSON 10TH FLOOR | PHOENIX | AZ | 85003 | YF ARIZONA | BUSINESS LICENSE |
| 266 | MARICOPA COUNTY AZ | FRAN MCCARROLL | CLERK OF THE BOARD OF SUPERVISORS | OF MARICOPA COUNTY | 301 W JEFFERSON 10TH FLOOR | PHOENIX | AZ | 85003 | YF SCOTTSDALE LLC | CITY (SCOTTSDALE) PRIVILEGE TAX LICENSE |
| 267 | MAYER, DAVID | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YOUFIT HEALTH CLUBS, LLC | RETENTION AGREEMENTS |
| 268 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | MERCHANT AGREEMENT |
| 269 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | MERCHANT AGREEMENT |
| 270 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | MERCHANT AGREEMENT |
| 271 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | MERCHANT AGREEMENT |
| 272 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YF OLNEY, LLC | MERCHANT AGREEMENT |
| 273 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YF RIVERDALE, LLC | MERCHANT AGREEMENT |
| 274 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 275 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 276 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 277 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 278 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 279 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 280 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 281 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 282 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 283 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 284 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 285 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 286 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 287 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 288 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 289 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 290 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 291 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 292 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 293 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 294 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 295 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 296 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 297 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 298 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 299 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 300 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 301 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 302 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 303 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 304 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 305 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 306 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 307 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 308 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | AZ | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 309 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 310 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 311 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 312 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 313 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 314 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 315 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 316 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 317 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 318 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 319 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 320 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 321 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 322 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 323 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 324 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 325 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 326 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 327 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 328 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 329 | MERRICK BANK | | | 135 CROSSWAYS PARK DRIVE NORTH | | WOODBURY | NY | 11797 | YOU FIT, LLC | PROCESSING APPLICATION |
| 330 | MERRYMAN, RON | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YOUFIT HEALTH CLUBS, LLC | RETENTION AGREEMENTS |
| 331 | MIAMI-DADE COUNTY FL | ABIGAIL PRICE-WILLIAMS | COUNTY ATTORNEY | STEPHEN P CLARK CENTER | 111 NW 1ST ST | MIAMI | FL | 33128 | YOUFIT LLC | CERTIFICATE OF USE |
| 332 | MIAMI-DADE COUNTY FL | ABIGAIL PRICE-WILLIAMS | COUNTY ATTORNEY | STEPHEN P CLARK CENTER | 111 NW 1ST ST | MIAMI | FL | 33128 | YF MIAMI 110TH LLC | CERTIFICATE OF USE |
| 333 | MIAMI-DADE COUNTY FL | ABIGAIL PRICE-WILLIAMS | COUNTY ATTORNEY | STEPHEN P CLARK CENTER | 111 NW 1ST ST | MIAMI | FL | 33128 | YOUFIT LLC | CERTIFICATE OF USE |
| 334 | MIAMI-DADE COUNTY FL | ABIGAIL PRICE-WILLIAMS | COUNTY ATTORNEY | STEPHEN P CLARK CENTER | 111 NW 1ST ST | MIAMI | FL | 33128 | YF MIAMI GARDENS LLC | CERTIFICATE OF USE |
| 335 | MIAMI-DADE COUNTY FL | ABIGAIL PRICE-WILLIAMS | COUNTY ATTORNEY | STEPHEN P CLARK CENTER | 111 NW 1ST ST | MIAMI | FL | 33128 | SEVEN B-FIT, LLC | CERTIFICATE OF USE |
| 336 | MIAMI-DADE COUNTY FL | ABIGAIL PRICE-WILLIAMS | COUNTY ATTORNEY | STEPHEN P CLARK CENTER | 111 NW 1ST ST | MIAMI | FL | 33128 | YF MIAMI 110TH LLC | COUNTY BUSINESS LICENSE |
| 337 | MIAMI-DADE COUNTY FL | ABIGAIL PRICE-WILLIAMS | COUNTY ATTORNEY | STEPHEN P CLARK CENTER | 111 NW 1ST ST | MIAMI | FL | 33128 | YOUFIT LLC | LOCAL BUSINESS TAX (CITY) |

In re: YouFit Health Clubs, LLC, et al.
Case No. 20-12841 (MFW)

Page 6 of 12

Exhibit F-2

| Item No. | CONTRACT PARTY | NAME 2 | NAME3 | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | DEBTOR ENTITY NAME | CONTRACT / LEASE DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 338 | MIAMI-DADE COUNTY FL | ABIGAIL PRICE-WILLIAMS | COUNTY ATTORNEY | STEPHEN P CLARK CENTER | 111 NW 1ST ST | MIAMI | FL | 33128 | YOUFIT LLC | LOCAL BUSINESS TAX (CITY) |
| 339 | MIAMI-DADE COUNTY FL | ABIGAIL PRICE-WILLIAMS | COUNTY ATTORNEY | STEPHEN P CLARK CENTER | 111 NW 1ST ST | MIAMI | FL | 33128 | YF HIALEAH LLC | LOCAL BUSINESS TAX (CITY) |
| 340 | MIAMI-DADE COUNTY FL | ABIGAIL PRICE-WILLIAMS | COUNTY ATTORNEY | STEPHEN P CLARK CENTER | 111 NW 1ST ST | MIAMI | FL | 33128 | YF MIAMI GARDENS LLC | LOCAL BUSINESS TAX (CITY) |
| 341 | MIAMI-DADE COUNTY FL | ABIGAIL PRICE-WILLIAMS | COUNTY ATTORNEY | STEPHEN P CLARK CENTER | 111 NW 1ST ST | MIAMI | FL | 33128 | YOUFIT LLC | LOCAL BUSINESS TAX (COUNTY) |
| 342 | MIAMI-DADE COUNTY FL | ABIGAIL PRICE-WILLIAMS | COUNTY ATTORNEY | STEPHEN P CLARK CENTER | 111 NW 1ST ST | MIAMI | FL | 33128 | YOUFIT LLC | LOCAL BUSINESS TAX (COUNTY) |
| 343 | MIAMI-DADE COUNTY FL | ABIGAIL PRICE-WILLIAMS | COUNTY ATTORNEY | STEPHEN P CLARK CENTER | 111 NW 1ST ST | MIAMI | FL | 33128 | YOUFIT LLC | LOCAL BUSINESS TAX (COUNTY) |
| 344 | MIAMI-DADE COUNTY FL | ABIGAIL PRICE-WILLIAMS | COUNTY ATTORNEY | STEPHEN P CLARK CENTER | 111 NW 1ST ST | MIAMI | FL | 33128 | YF CORAL WAY II LLC | LOCAL BUSINESS TAX (COUNTY) |
| 345 | MIAMI-DADE COUNTY FL | ABIGAIL PRICE-WILLIAMS | COUNTY ATTORNEY | STEPHEN P CLARK CENTER | 111 NW 1ST ST | MIAMI | FL | 33128 | YF HIALEAH LLC | LOCAL BUSINESS TAX (COUNTY) |
| 346 | MIAMI-DADE COUNTY FL | ABIGAIL PRICE-WILLIAMS | COUNTY ATTORNEY | STEPHEN P CLARK CENTER | 111 NW 1ST ST | MIAMI | FL | 33128 | YF HAMMOCKS LLC | LOCAL BUSINESS TAX (COUNTY) |
| 347 | MIAMI-DADE COUNTY FL | ABIGAIL PRICE-WILLIAMS | COUNTY ATTORNEY | STEPHEN P CLARK CENTER | 111 NW 1ST ST | MIAMI | FL | 33128 | YF MIAMI GARDENS LLC | LOCAL BUSINESS TAX (COUNTY) |
| 348 | MIAMI-DADE COUNTY FL | ABIGAIL PRICE-WILLIAMS | COUNTY ATTORNEY | STEPHEN P CLARK CENTER | 111 NW 1ST ST | MIAMI | FL | 33128 | YF FLAGLER LLC | LOCAL BUSINESS TAX (COUNTY) |
| 349 | MIAMI-DADE COUNTY FL | ABIGAIL PRICE-WILLIAMS | COUNTY ATTORNEY | STEPHEN P CLARK CENTER | 111 NW 1ST ST | MIAMI | FL | 33128 | SEVEN B-FIT, LLC | LOCAL BUSINESS TAX (COUNTY) |
| 350 | MIAMI-DADE COUNTY FL | ABIGAIL PRICE-WILLIAMS | COUNTY ATTORNEY | STEPHEN P CLARK CENTER | 111 NW 1ST ST | MIAMI | FL | 33128 | SEVEN B-FIT, LLC | LOCAL BUSINESS TAX (COUNTY) |
| 351 | MIAMI-DADE COUNTY FL | ABIGAIL PRICE-WILLIAMS | COUNTY ATTORNEY | STEPHEN P CLARK CENTER | 111 NW 1ST ST | MIAMI | FL | 33128 | YF KENDALL LLC | LOCAL BUSINESS TAX (COUNTY) |
| 352 | MIAMI-DADE COUNTY FL | ABIGAIL PRICE-WILLIAMS | COUNTY ATTORNEY | STEPHEN P CLARK CENTER | 111 NW 1ST ST | MIAMI | FL | 33128 | YF CONCORD LLC | LOCAL BUSINESS TAX (COUNTY) |
| 353 | MIAMI-DADE COUNTY FL | ABIGAIL PRICE-WILLIAMS | COUNTY ATTORNEY | STEPHEN P CLARK CENTER | 111 NW 1ST ST | MIAMI | FL | 33128 | YF LAGO MAR LLC | LOCAL BUSINESS TAX (COUNTY) |
| 354 | MIAMI-DADE COUNTY FL | ABIGAIL PRICE-WILLIAMS | COUNTY ATTORNEY | STEPHEN P CLARK CENTER | 111 NW 1ST ST | MIAMI | FL | 33128 | YF QUAIL ROOST LLC | LOCAL BUSINESS TAX (COUNTY) |
| 355 | MIAMI-DADE COUNTY FL | ABIGAIL PRICE-WILLIAMS | COUNTY ATTORNEY | STEPHEN P CLARK CENTER | 111 NW 1ST ST | MIAMI | FL | 33128 | YF CORAL WAY LLC | LOCAL BUSINESS TAX (COUNTY) |
| 356 | MIDLOTHIAN CENTER, LLC | CB RICHARD ELLIS | LEASE ADMINISTRATOR | 6641 W BROAD ST STE 101 | | RICHMOND | VA | 23230 | YOU FIT, LLC | CLUB NO. 7459 - MIDLOTHIAN REAL PROPERTY LEASE - 13583 MIDLOTHIAN TURNPIKE, MIDLOTHIAN, VA 23113 |
| 357 | MILTON COOPER | | | 500 NORTH BROADWAY STE 201 | PO BOX 9010 | JERICHO | NY | 11753 | YF MIAMI 110TH LLC | CLUB NO. 7730 - MIAMI 87TH AVE REAL PROPERTY LEASE - 8755 SW 24TH STREET, MIAMI, FL 33165 |
| 358 | MOSAIC OXBRIDGE OWNERS, LLC | MARYLAND FINANCIAL INVESTORS INC | | 2800 QUARRY LAKE DR STE 340 | | BALTIMORE | MD | 21209 | YOU FIT, LLC | CLUB NO. 7730 - COURTHOUSE RD - OXBRIDGE REAL PROPERTY LEASE - 9923 HULL STREET ROAD, RICHMOND, VA 23236 |
| 359 | MOTUS CREATIVE | | | 7304 10TH ST SE | STE A203 | LAKE STEVENS | WA | 98258 | YOUFIT HEALTH CLUBS, LLC | MISC |
| 360 | NEKOLOFF, NICOLE | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YOUFIT HEALTH CLUBS, LLC | RETENTION AGREEMENTS |
| 361 | NEW HORIZON COMMUNICATIONS | | | P.O. BOX 981073 | | BOSTON | MA | 02298-1073 | YOUFIT HEALTH CLUBS, LLC | UTILITIES |
| 362 | NG SHOPPES AT CRESTHAVEN, LLC | | | 1430 BROADWAY #1605 | | NEW YORK | NY | 10018 | YOU FIT NINE, LLC | CLUB NO. 7387 - CRESTHAVEN REAL PROPERTY LEASE - 2601 S MILITARY TRAIL, WEST PALM BEACH, FL 33415 |
| 363 | NIMA PLAZA, LLC | | | 2899 W 2 AVE | | HIALEAH | FL | 33010 | YF HIALEAH, LLC | CLUB NO. 7768 - HIALEAH REAL PROPERTY LEASE - 5348 W 16TH AVE, HIALEAH, FL 33012 |
| 364 | NORTH PORT OMV II, LLC | OM VENTURE REALTY | | 4008 N FLORIDA AVE | | TAMPA | FL | 33603 | YF NORTH PORT, LLC | CLUB NO. 7362 - NORTH PORT REAL PROPERTY LEASE - 14979 TAMIAMI TRAIL, NORTH PORT, FL 33883 |
| 365 | OAKWOOD PLAZA LIMITED PARTNERSHIP | | | 500 NORTH BROADWAY STE 201 PO BOX 9010 | | JERICHO | NY | 11753 | YF HOLLYWOOD, LLC | CLUB NO. 7344 - HOLLYWOOD REAL PROPERTY LEASE - 3120 OAKWOOD BLVD, HOLLYWOOD, FL 33020 |
| 366 | OFFICE DEPOT, INC. | COHEN COMMERCIAL MANAGEMENT | NANCY VIRGA | 5041 OKEECHOBEE BLVD | | WEST PALM BEACH | FL | 33417 | YF MIAMI GARDENS, LLC | CLUB NO. 7789 - MIAMI GARDENS REAL PROPERTY LEASE - 19400 NW 27TH AVENUE, MIAMI GARDENS, FL 33056 |
| 367 | OPENSESAME | | | DEPT LA 24661 | | PASADENA | CA | 91185-4661 | YOUFIT HEALTH CLUBS, LLC | MISC |
| 368 | OPTUMHEALTH CARE SOLUTIONS, LLC | | | 11000 OPTUM CIRCLE | | EDEN PRAIRIE | MN | 55344 | YOU FIT, LLC | REVENUE |
| 369 | ORANGE COUNTY FL | JERRY L DEMINGS | ORANGE COUNTY MAYOR | 201 S ROSALIND AVE | 5TH FLOOR | ORLANDO | FL | 32801 | YOUFIT LLC | LOCAL BUSINESS TAX (COUNTY) |
| 370 | PALM BEACH COUNTY FL | DENISE NIEMAN | COUNTY ATTORNEY | 301 N OLIVE AVE | STE 601 | WEST PALM BEACH | FL | 33401 | YF LANTANA LLC | LOCAL BUSINESS TAX (COUNTY) |
| 371 | PALM BEACH COUNTY FL | DENISE NIEMAN | COUNTY ATTORNEY | 301 N OLIVE AVE | STE 601 | WEST PALM BEACH | FL | 33401 | YF LANTANA LLC | LOCAL BUSINESS TAX (COUNTY) |
| 372 | PALM BEACH COUNTY FL | DENISE NIEMAN | COUNTY ATTORNEY | 301 N OLIVE AVE | STE 601 | WEST PALM BEACH | FL | 33401 | THREE B-FIT, LLC | LOCAL BUSINESS TAX (COUNTY) |
| 373 | PALM BEACH COUNTY FL | DENISE NIEMAN | COUNTY ATTORNEY | 301 N OLIVE AVE | STE 601 | WEST PALM BEACH | FL | 33401 | THREE B-FIT, LLC | LOCAL BUSINESS TAX (COUNTY) |
| 374 | PALM BEACH COUNTY FL | DENISE NIEMAN | COUNTY ATTORNEY | 301 N OLIVE AVE | STE 601 | WEST PALM BEACH | FL | 33401 | YF WELLINGTON LLC | LOCAL BUSINESS TAX (COUNTY) |
| 375 | PALM BEACH COUNTY FL | DENISE NIEMAN | COUNTY ATTORNEY | 301 N OLIVE AVE | STE 601 | WEST PALM BEACH | FL | 33401 | YF BOYNTON MALL LLC | LOCAL BUSINESS TAX (COUNTY) |
| 376 | PALM BEACH COUNTY FL | DENISE NIEMAN | COUNTY ATTORNEY | 301 N OLIVE AVE | STE 601 | WEST PALM BEACH | FL | 33401 | YF OKEECHOBEE LLC | LOCAL BUSINESS TAX (COUNTY) |
| 377 | PALM BEACH COUNTY FL | DENISE NIEMAN | COUNTY ATTORNEY | 301 N OLIVE AVE | STE 601 | WEST PALM BEACH | FL | 33401 | YF GREENACRES LLC | LOCAL BUSINESS TAX (COUNTY) |
| 378 | PARTRIDGE EQUITY GROUP I, LLC | | | 1769 NE 33RD ST | | POMPANO BEACH | FL | 33064 | YF POMPANO, LLC | CLUB NO. 7388 - NORTH POMPANO REAL PROPERTY LEASE - 3555 N FEDERAL HWY, POMPANO BEACH, FL 33339 |
| 379 | PEAK ACTIVITY, LLC | | | 1880 N CONGRESS AVE | SUITE 210 | BOYNTON BEACH | FL | 33426 | YOU FIT, LLC | ADV |
| 380 | PENN DUTCH PLAZA, LLC | | | 3325 S UNIVERSITY DR | | SUITE 210 DAVIE | FL | 33328 | YF MARGATE, LLC | CLUB NO. 7392 - MARGATE REAL PROPERTY LEASE - 3133 N STATE ROAD 7, MARGATE, FL 33063 |
| 381 | PETINOS, LLC | | | 562 WYLIE RD SE STE TWO | | MARIETTA | GA | 30067 | YF WEST COBB, LLC | CLUB NO. 2602 - AUSTELL-EAST-WEST CONNECTOR REAL PROPERTY LEASE - 2840 EAST-WEST CONNECTOR, POWDER SPRINGS, GA 30106 |
| 382 | PMAT ALGIERS PLAZA, L.L.C. | PROPERTY ONE INC | | 4141 VETERANS BLVD STE 300 | | METAIRIE | LA | 70002 | YOU FIT, LLC | CLUB NO. 7728 - ALGIERS REAL PROPERTY LEASE - 3066 HOLIDAY DR, NEW ORLEANS, LA 70131 |
| 383 | POLYGLASS USA INC | | | DEPT 2663 | PO BOX 122663 | DALLAS | TX | 75312 | YOUFIT HEALTH CLUBS, LLC | HEADQUARTERS REAL PROPERTY LEASE - 1350 E NEWPORT CENTER DR, SUITE 110, DEERFIELD BEACH, FL 33442 |
| 384 | POTTS, JASON | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YOUFIT HEALTH CLUBS, LLC | RETENTION AGREEMENTS |
| 385 | RED HAWK FIRE & SECURITY | | | PO BOX 530212 | | ATLANTA | GA | 30353-0212 | YOUFIT HEALTH CLUBS, LLC | OUTSIDESVC |
| 386 | REDWIRE | | | 1136 THOMASVILLE RD | | TALLAHASSEE | FL | 32303 | YOUFIT HEALTH CLUBS, LLC | OUTSIDESVC |

Exhibit F-2

| Item No. | CONTRACT PARTY | NAME 2 | NAME3 | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | DEBTOR ENTITY NAME | CONTRACT / LEASE DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 387 | RHODES-BOONE PARTNERS, LP | | | 649 PINETREE DR | | DECATUR | GA | 30030 | YF NOLES, LLC | CLUB NO. 7336 - NOLE (MONROE) REAL PROPERTY LEASE - 2432 N MONROE STREET, TALLAHASSEE, FL 32303 |
| 388 | RICHMOND COUNTY VA | ELIZABETH TRIBLE | COMMONWEALTHS ATTORNEY | 116 WALLACE ST | PO BOX 1475 | WARSAW | VA | 22572 | YOUFIT LLC | COUNTY BUSINESS LICENSE |
| 389 | RPT REALTY, L.P. F/K/A RAMCO-GERSHENSON PROPERTIES, LP | GERSHENSON PROPERTIES LP | FKA RAMCO GERSHENSON PROPERTIES LP | ADAMS AND REESE LLP ERIC PARTLOW ESQ | 101 E KENNEDY BLVD STE 4000 | TAMPA | FL | 33602 | YF LAND O LAKES, LLC | CLUB NO. 7333 - LAND O LAKES REAL PROPERTY LEASE - 21707 VILLAGE LAKES SHOPPING CENTER DR, LAND O LAKES, FL 34639 |
| 390 | SADA SYSTEMS, INC | | | 5250 LANKERSHIM BLVD #620 | | NORTH HOLLYWOOD | CA | 91601 | YOUFIT HEALTH CLUBS, LLC | LIC & FEES |
| 391 | SAFEGUARD | | | P. O. BOX 840180 | | DALLAS | TX | 75284-0180 | YOUFIT HEALTH CLUBS, LLC | OUTSIDESVC |
| 392 | SALESFORCE | | | P.O. BOX 203141 | | DALLAS | TX | 75320-3141 | YOUFIT HEALTH CLUBS, LLC | ADV |
| 393 | SALESFORCE | | | P.O. BOX 203141 | | DALLAS | TX | 75320-3141 | YOUFIT HEALTH CLUBS, LLC | ADV |
| 394 | SALESFORCE.COM, INC | | | P.O. BOX 203141 | | DALLAS | TX | 75320-3141 | YOUFIT HEALTH CLUBS, LLC | ADV |
| 395 | SARASOTA COUNTY FL | FREDERICK J ELBRECHT | OFFICE OF THE COUNTY ATTORNEY | 1660 RINGLING BLVD | 2ND FLOOR | SARASOTA | FL | 34236 | YF VENICE LLC | LOCAL BUSINESS TAX (COUNTY) |
| 396 | SARASOTA COUNTY FL | FREDERICK J ELBRECHT | OFFICE OF THE COUNTY ATTORNEY | 1660 RINGLING BLVD | 2ND FLOOR | SARASOTA | FL | 34236 | YF NORTH PORT LLC | LOCAL BUSINESS TAX (COUNTY) |
| 397 | SARASOTA COUNTY FL | FREDERICK J ELBRECHT | OFFICE OF THE COUNTY ATTORNEY | 1660 RINGLING BLVD | 2ND FLOOR | SARASOTA | FL | 34236 | YOU FIT SEVEN, LLC | LOCAL BUSINESS TAX (COUNTY) |
| 398 | SCC MARKET SQUARE LLC | SITE CENTERS CORP | ATTN: EXECUTIVE VICE PRESIDENT - LEASING | 3300 ENTERPRISE PKWY | | BEACHWOOD | OH | 44122 | YF DOUGLASVILLE, LLC | CLUB NO. 7366 - DOUGLASVILLE REAL PROPERTY LEASE - 9559 GEORGIA HWY 5, SUITE 401, DOUGLASVILLE, GA 31035 |
| 399 | SCOTTSDALE RETAIL CENTER 02 LLC | ACF PROPERTY MANAGEMENT INC | | 12411 VENTURA BLVD | | STUDIO CITY | CA | 91604 | YF SCOTTSDALE, LLC | CLUB NO. 7346 - SCOTTSDALE REAL PROPERTY LEASE - 2845 N SCOTTSDALE RD, SUITE 160, SCOTTSDALE, AZ 85257 |
| 400 | SECURITY SYSTEMS OF SOUTH FLORIDA, LLC | | | 1440 CORAL RIDGE DRIVE | SUITE 497 | CORAL SPRINGS | FL | 33071 | YOUFIT HEALTH CLUBS, LLC | MISC |
| 401 | SECURITY SYSTEMS OF SOUTH FLORIDA, LLC | | | 1440 CORAL RIDGE DRIVE | SUITE 497 | CORAL SPRINGS | FL | 33071 | YF BOCA RATON | MISC |
| 402 | SECURITY SYSTEMS OF SOUTH FLORIDA, LLC | | | 1440 CORAL RIDGE DRIVE | SUITE 497 | CORAL SPRINGS | FL | 33071 | YF BOCA RATON | MISC |
| 403 | SECURITY SYSTEMS OF SOUTH FLORIDA, LLC | | | 1440 CORAL RIDGE DRIVE | SUITE 497 | CORAL SPRINGS | FL | 33071 | YF CORAL SPRINGS | MISC |
| 404 | SECURITY SYSTEMS OF SOUTH FLORIDA, LLC | | | 1440 CORAL RIDGE DRIVE | SUITE 497 | CORAL SPRINGS | FL | 33071 | YF DEERFIELD BEACH | MISC |
| 405 | SECURITY SYSTEMS OF SOUTH FLORIDA, LLC | | | 1440 CORAL RIDGE DRIVE | SUITE 497 | CORAL SPRINGS | FL | 33071 | YF HOLLYWOOD OAKWOOD | MISC |
| 406 | SECURITY SYSTEMS OF SOUTH FLORIDA, LLC | | | 1440 CORAL RIDGE DRIVE | SUITE 497 | CORAL SPRINGS | FL | 33071 | YF LAGO MAR | MISC |
| 407 | SECURITY SYSTEMS OF SOUTH FLORIDA, LLC | | | 1440 CORAL RIDGE DRIVE | SUITE 497 | CORAL SPRINGS | FL | 33071 | YF MARGATE | MISC |
| 408 | SECURITY SYSTEMS OF SOUTH FLORIDA, LLC | | | 1440 CORAL RIDGE DRIVE | SUITE 497 | CORAL SPRINGS | FL | 33071 | YF MIAMI - QUAIL ROOST | MISC |
| 409 | SECURITY SYSTEMS OF SOUTH FLORIDA, LLC | | | 1440 CORAL RIDGE DRIVE | SUITE 497 | CORAL SPRINGS | FL | 33071 | YF OKEECHOBEE | MISC |
| 410 | SECURITY SYSTEMS OF SOUTH FLORIDA, LLC | | | 1440 CORAL RIDGE DRIVE | SUITE 497 | CORAL SPRINGS | FL | 33071 | YF PEMBROKE PINES | MISC |
| 411 | SECURITY SYSTEMS OF SOUTH FLORIDA, LLC | | | 1440 CORAL RIDGE DRIVE | SUITE 497 | CORAL SPRINGS | FL | 33071 | YF POMPANO NORTH | MISC |
| 412 | SECURITY SYSTEMS OF SOUTH FLORIDA, LLC | | | 1440 CORAL RIDGE DRIVE | SUITE 497 | CORAL SPRINGS | FL | 33071 | YF POMPANO SOUTH | MISC |
| 413 | SECURITY SYSTEMS OF SOUTH FLORIDA, LLC | | | 1440 CORAL RIDGE DRIVE | SUITE 497 | CORAL SPRINGS | FL | 33071 | YF WELLINGTON | MISC |
| 414 | SECURITY SYSTEMS OF SOUTH FLORIDA, LLC | | | 1440 CORAL RIDGE DRIVE | SUITE 497 | CORAL SPRINGS | FL | 33071 | YF WEST PALM BEACH | MISC |
| 415 | SECURITY SYSTEMS OF SOUTH FLORIDA, LLC | | | 1440 CORAL RIDGE DRIVE | SUITE 497 | CORAL SPRINGS | FL | 33071 | YF WESTON | MISC |
| 416 | SELIG ENTERPRISES, INC. | | | 1100 SPRING ST STE 550 | | ATLANTA | GA | 30308-2848 | THREE B-FIT, LLC | CLUB NO. 6438 - BOCA RATON REAL PROPERTY LEASE - 1309 W PALMETTO PARK RD, BOCA RATON, FL 33486 |
| 417 | SESAC | | | P. O. BOX 5246 | | NEW YORK, | NY | 10008-5246 | YOUFIT HEALTH CLUBS, LLC | LIC & FEES |
| 418 | SHILOH STATION, LLC | PHILLIPS EDISON | RESINA HENDRIX AMANDA RIGGS | TENANT ACCOUNT SPECIALIST | 11501 NORTHLAKE DR | CINCINNATI | OH | 45249 | YF SHILOH, LLC | CLUB NO. 7364 - KENNESAW REAL PROPERTY LEASE - 3895 CHEROKEE ST SUITE 100, KENNESAW, GA 30144 |
| 419 | SMITH, STUART | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YOUFIT HEALTH CLUBS, LLC | RETENTION AGREEMENTS |
| 420 | SPANNING CLOUD APPS LLC | SPANNING CLOUD APPS LLC | | PO BOX 392288 | | PITTSBURGH | PA | 15251-9288 | YOUFIT HEALTH CLUBS, LLC | ADV - SPANNING CONTRACT |
| 421 | SPP SUNWEST PORTFOLIO, LLC | | | PO BOX 203710 | | DALLAS | TX | 75320 | YOU FIT, LLC | CLUB NO. 6292 - MESQUITE REAL PROPERTY LEASE - 2524 N GALLOWAY AVE, MESQUITE, TX 75150 |
| 422 | STAPLES BUSINESS ADVANTAGE | STAPLES CONTRACT & COMMERCIAL LLC | | 500 STAPLES DRIVE | | FRAMINGHAM | MA | 01702 | YOU FIT, LLC | OFC & COMP |
| 423 | STAPLES BUSINESS ADVANTAGE | STAPLES CONTRACT & COMMERCIAL LLC | | 500 STAPLES DRIVE | | FRAMINGHAM | MA | 01702 | YOU FIT, LLC | OFC & COMP |
| 424 | STAR 2 STAR COMMUNICATIONS LLC | | | 600 TAILEVEST ROAD | SUITE 202 | SARASOTA | FL | 34243 | YOUFIT HEALTH CLUBS, LLC | UTILITIES |
| 425 | STAR 2 STAR COMMUNICATIONS LLC | | | 600 TAILEVEST ROAD | SUITE 202 | SARASOTA | FL | 34243 | YOUFIT HEALTH CLUBS, LLC | UTILITIES |
| 426 | STAR 2 STAR COMMUNICATIONS LLC | | | 600 TAILEVEST ROAD | SUITE 202 | SARASOTA | FL | 34243 | YOUFIT HEALTH CLUBS, LLC | UTILITIES |
| 427 | STAR 2 STAR COMMUNICATIONS LLC | | | 600 TAILEVEST ROAD | SUITE 202 | SARASOTA | FL | 34243 | YOUFIT HEALTH CLUBS, LLC | UTILITIES |
| 428 | STAR 2 STAR COMMUNICATIONS LLC | | | 600 TAILEVEST ROAD | SUITE 202 | SARASOTA | FL | 34243 | YOUFIT HEALTH CLUBS, LLC | UTILITIES |
| 429 | STAR 2 STAR COMMUNICATIONS LLC | | | 600 TAILEVEST ROAD | SUITE 202 | SARASOTA | FL | 34243 | YOUFIT HEALTH CLUBS, LLC | UTILITIES |
| 430 | STROSS, CHRISTY B. | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YouFit Health Clubs, LLC | PREFERRED UNIT PURCHASE AGREEMENT |
| 431 | STROSS, CHRISTY B. | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YouFit Health Clubs, LLC | CHANGE IN CONTROL SEVERANCE AGREEMENT |
| 432 | STROSS, CHRISTY B. | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YouFit Health Clubs, LLC | PROFITS INTEREST UNIT GRANT AGREEMENT |
| 433 | STROSS, JASON | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YouFit Health Clubs, LLC | PREFERRED UNIT PURCHASE AGREEMENT |
| 434 | T.J. HEALTH & FITNESS, INC. | | | 3501 N OCEAN DR #7G | | HOLLYWOOD | FL | 33019 | YF WESTON, LLC | CLUB NO. 7377 - WESTON REAL PROPERTY LEASE - 15451 SW 13TH LANE, SUNRISE, FL 33326 |
| 435 | THE TOWN CENTER AT BOCA RATON TRUST | C/O MS MANAGEMENT ASSOC | | 225 WEST WASHINGTON ST | | INDIANAPOLIS | IN | 46204-3428 | YF TOWN CENTER, LLC | CLUB NO. 7339 - BOCA TOWN CENTER REAL PROPERTY LEASE - 6000 GLADES ROAD, SUITE 1410, BOCA RATON, FL 33431 |

Exhibit F-2

| Item No. | CONTRACT PARTY | NAME 2 | NAME3 | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | DEBTOR ENTITY NAME | CONTRACT / LEASE DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 436 | TIVITY HEALTH SERVICES, LLC (SLIVER SNEAKERS) | | | 701 COOL SPRINGS BLVD. | | FRANKLIN | TN | 37067 | YOUFIT HEALTH CLUBS, LLC | REVENUE |
| 437 | TKG-STORAGE MART PARTNERS PORTFOLIO, LLC | AS SUCCESSOR TO STORAGEMART II LLC | CRIS BURNAM | 2407 RANGELINE ST | | COLUMBIA | MS | 65205 | FIVE B-FIT, LLC | CLUB NO. 6443 - POMPANO REAL PROPERTY LEASE - 401 S FEDERAL HWY, POMPANO BEACH, FL 33062 |
| 438 | TOKIO MARINE HHC | | D&O GROUP | 8 FOREST PARK DRIVE | | FARMINGTON | CT | 06032 | YOUFIT HEALTH CLUBS, LLC | INSURANCE - D&O POLICY & RUN-OFF POLICY |
| 439 | TPS ANCILLARY SERVICES, LLC | THE PENSION STUDIO | | 1226 OMAR ROAD | | WEST PALM BEACH | FL | 33405 | YOU FIT, LLC | YOU FIT, LLC 401(K) PROFIT SHARING PLAN AND TRUST PLAN |
| 440 | TRAVELERS | | | PO BOX 660317 | | DALLAS | TX | 75266-0317 | YOUFIT HEALTH CLUBS, LLC | INSURANCE - WORKERS COMPENSATION |
| 441 | TSC RAMBLEWOOD, LTD. | | | 333 W CAMINO GARDENS BLVD STE 200 | | BOCA RATON | FL | 33432 | FOUR B-FIT, LLC | CLUB NO. 6440 - CORAL SPRINGS REAL PROPERTY LEASE - 8301 W ATLANTIC BLVD, CORAL SPRINGS, FL 33071 |
| 442 | U.S. BANK EQUIPMENT FINANCE (RICOH) | US BANK EQUIPMENT FINANCE | | PO BOX 790448 | | ST LOUIS | MO | 63179-0448 | YF SE FLA, INC. | OFC & COMP |
| 443 | U.S. SPECIALTY INSURANCE COMPANY | TOKIO MARINE HHC | U.S. SPECIALTY INSURANCE COMPANY | 8 FOREST PARK DRIVE | | FARMINGTON | CT | 06032 | YOUFIT HEALTH CLUBS, LLC | INSURANCE |
| 444 | ULTIMATE SOFTWARE GROUP, INC. | THE ULTIMATE SOFTWARE GROUP, INC | | P.O. BOX 930953 | | ATLANTA | GA | 31193-0953 | YOUFIT HEALTH CLUBS, LLC | PROF FEES |
| 445 | UNITED STATES DEVELOPMENT LTD. | | | 100 MIRACLE MILE | STE 310 | CORAL GABLES | FL | 33134 | YF CORAL WAY II, LLC | CLUB NO. 7766 - CORAL WAY II REAL PROPERTY LEASE - 11865 SW 26TH ST SUITE B13, MIAMI, FL 33175 |
| 446 | UNIVERSITY SHOPPES, LLC | | | 14024 NW 82ND AVE | | MIAMI LAKES | FL | 33016 | SEVEN B-FIT, LLC | CLUB NO. 6771 - MIAMI REAL PROPERTY LEASE - 1605 SW 107 AVENUE, MIAMI, FL 33165 |
| 447 | VERITIV OPERATING COMPANY | | | 9 CRYSTAL POND ROAD | | SOUTHBOROUGH | MA | 01772 | YOUFIT HEALTH CLUBS, LLC | OUTSIDESVC |
| 448 | WESSON, RICK | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YOUFIT HEALTH CLUBS, LLC | RETENTION AGREEMENTS |
| 449 | WESTERN BEEF RETAIL, INC. | CACTUS HOLDINGS INC | SANDALFOOT PLAZA BOCA LLC | 47-05 METROPOLITAN AVE | | RIDGEWOOD | NY | 11385 | YF SANDALFOOT, LLC | CLUB NO. 7444 - SANDALFOOT REAL PROPERTY LEASE - 23078 SANDALFOOT PLAZA DR., BOCA RATON, FL 33428 |
| 450 | WESTWOOD PLAZA, LLC | STUDENT HOUSING SOLUTIONS LLC | COMMERCIAL PROPERTY MANAGER | 2020 WEST PENSACOLA ST STE #300 | | TALLAHASSEE | FL | 32304 | YF UNIVERSITY VILLAGE, LLC | CLUB NO. 7749 - TALLAHASSEE - UNIVERSITY NEAR FSU REAL PROPERTY LEASE - 2020 WEST PENSACOLA STREET, SUITE 205, TALLAHASSEE, FL 32304 |
| 451 | WRI JT NORTHRIDGE, LP | | | PO BOX 924133 | | HOUSTON | TX | 77292 | YOU FIT, LLC | CLUB NO. 7751 - NORTHRIDGE REAL PROPERTY LEASE - 959 E COMMERCIAL BLD, OAKLAND PARK, FL 33334 |
| 452 | YF ARIZONA, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF BETHANY, LLC | LICENSE AGREEMENT |
| 453 | YF ARIZONA, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF CACTUS VILLAGE, LLC | LICENSE AGREEMENT |
| 454 | YF ARIZONA, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF CHANDLER SOUTH, LLC | LICENSE AGREEMENT |
| 455 | YF ARIZONA, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF FULTON RANCH, LLC | LICENSE AGREEMENT |
| 456 | YF ARIZONA, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF GILBERT NORTH, LLC | LICENSE AGREEMENT |
| 457 | YF ARIZONA, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF GILBERT SOUTH, LLC | LICENSE AGREEMENT |
| 458 | YF ARIZONA, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF GLENDALE, LLC | LICENSE AGREEMENT |
| 459 | YF ARIZONA, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF GLENDALE, LLC | LICENSE AGREEMENT |
| 460 | YF ARIZONA, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF HANCOCK, LLC | LICENSE AGREEMENT |
| 461 | YF ARIZONA, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF MESA, LLC | LICENSE AGREEMENT |
| 462 | YF ARIZONA, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF WEST VALLEY, LLC | LICENSE AGREEMENT |
| 463 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF AURORA, LLC | LICENSE AGREEMENT |
| 464 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF BENEVA, LLC | LICENSE AGREEMENT |
| 465 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF BETHANY TOWNE CENTER, LLC | LICENSE AGREEMENT |
| 466 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF BOYNTON MALL, LLC | LICENSE AGREEMENT |
| 467 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF BUFORD, LLC | LICENSE AGREEMENT |
| 468 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF CARROLLWOOD, LLC | LICENSE AGREEMENT |
| 469 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF CONCORD, LLC | LICENSE AGREEMENT |
| 470 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF CORAL WAY, LLC | LICENSE AGREEMENT |
| 471 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF DEERFIELD, LLC | LICENSE AGREEMENT |
| 472 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF DOUGLASVILLE, LLC | LICENSE AGREEMENT |
| 473 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF DULUTH, LLC | LICENSE AGREEMENT |
| 474 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF DUNWOODY, LLC | LICENSE AGREEMENT |
| 475 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF GATEWAY, LLC | LICENSE AGREEMENT |
| 476 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF GILBERT, LLC | LICENSE AGREEMENT |
| 477 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF GREENACRES, LLC | LICENSE AGREEMENT |
| 478 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF HOLLYWOOD, LLC | LICENSE AGREEMENT |
| 479 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF HUNTSVILLE, LLC | LICENSE AGREEMENT |
| 480 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF KENDALL, LLC | LICENSE AGREEMENT |
| 481 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF LAGO MAR, LLC | LICENSE AGREEMENT |
| 482 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF LAND O LAKES, LLC | LICENSE AGREEMENT |
| 483 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF LAUDERDALE LAKES, LLC | LICENSE AGREEMENT |
| 484 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF LYNNWOOD, LLC | LICENSE AGREEMENT |
| 485 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF MARGATE, LLC | LICENSE AGREEMENT |
| 486 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF MESQUITE, LLC | LICENSE AGREEMENT |
| 487 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF MURRIETA, LLC | LICENSE AGREEMENT |
| 488 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF NEW PORT RICHEY, LLC | LICENSE AGREEMENT |
| 489 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF NOLES, LLC | LICENSE AGREEMENT |
| 490 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF NORTH NAPLES, LLC | LICENSE AGREEMENT |
| 491 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF NORTH POINT, LLC | LICENSE AGREEMENT |

Exhibit F-2

| Item No. | CONTRACT PARTY | NAME 2 | NAME3 | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | DEBTOR ENTITY NAME | CONTRACT / LEASE DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 492 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF NORTH PORT, LLC | LICENSE AGREEMENT |
| 493 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF OKEECHOBEE, LLC | LICENSE AGREEMENT |
| 494 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF PARKLAND, LLC | LICENSE AGREEMENT |
| 495 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF PEACHTREE PARKWAY, LLC | LICENSE AGREEMENT |
| 496 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF PINE ISLAND, LLC | LICENSE AGREEMENT |
| 497 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF PINES BOULEVARD, LLC | LICENSE AGREEMENT |
| 498 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF QUAIL ROOST, LLC | LICENSE AGREEMENT |
| 499 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF RACETRACK, LLC | LICENSE AGREEMENT |
| 500 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF ROCKWELL, LLC | LICENSE AGREEMENT |
| 501 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF ROSWELL, LLC | LICENSE AGREEMENT |
| 502 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF SANDALFOOT, LLC | LICENSE AGREEMENT |
| 503 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF SCOTTSDALE, LLC | LICENSE AGREEMENT |
| 504 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF SHEA, LLC | LICENSE AGREEMENT |
| 505 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF SHILOH, LLC | LICENSE AGREEMENT |
| 506 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF SINGLETON, LLC | LICENSE AGREEMENT |
| 507 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF SOUTHAVEN, LLC | LICENSE AGREEMENT |
| 508 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF SPRING CREEK, LLC | LICENSE AGREEMENT |
| 509 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF SUWANEE, LLC | LICENSE AGREEMENT |
| 510 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF THORNTON PLAZA, LLC | LICENSE AGREEMENT |
| 511 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF UNIGOLD, LLC | LICENSE AGREEMENT |
| 512 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF VENICE, LLC | LICENSE AGREEMENT |
| 513 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF WELLINGTON, LLC | LICENSE AGREEMENT |
| 514 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF WEST BRANDON, LLC | LICENSE AGREEMENT |
| 515 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF WESTON, LLC | LICENSE AGREEMENT |
| 516 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF YOU FIT SEVEN, LLC | LICENSE AGREEMENT |
| 517 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YOU FIT EIGHT, LLC | LICENSE AGREEMENT |
| 518 | YF GROUP A, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YOU FIT FOUR, LLC | LICENSE AGREEMENT |
| 519 | YF LIME, LLC | | | 6475 1ST AVE. SOUTH | | ST. PETERSBURG | FL | 33707 | YouFit Health Clubs, LLC | PREFERRED UNIT PURCHASE AGREEMENT |
| 520 | YF NORTH POINT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF NORTH POINT, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 521 | YF SE FLA, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | B-FIT HEALTH CLUB, LLC | LICENSE AGREEMENT |
| 522 | YF SE FLA, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | FIVE B-FIT, LLC | LICENSE AGREEMENT |
| 523 | YF SE FLA, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | FOUR B-FIT, LLC | LICENSE AGREEMENT |
| 524 | YF SE FLA, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | SIX B-FIT, LLC | LICENSE AGREEMENT |
| 525 | YF SE FLA, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | THREE B-FIT, LLC | LICENSE AGREEMENT |
| 526 | YF SE FLA, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF LANTANA, LLC | LICENSE AGREEMENT |
| 527 | YF SE FLA, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF TOWN CENTER, LLC | LICENSE AGREEMENT |
| 528 | YF-GEF HOLDINGS, LLC | PERELLA WEINBERG PARTNERS | | 767 FIFTH AVENUE | | NEW YORK | NY | 10153 | YouFit Health Clubs, LLC | PREFERRED UNIT PURCHASE AGREEMENT |
| 529 | YOU FIT HEALTH CLUBS, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | SEVEN B-FIT, LLC | LICENSE AGREEMENT |
| 530 | YOU FIT HEALTH CLUBS, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | SOUTH FLORIDA HEALTH AND FITNESS, INC. | LICENSE AGREEMENT |
| 531 | YOU FIT HEALTH CLUBS, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF EAST FOWLER, LLC | LICENSE AGREEMENT |
| 532 | YOU FIT HEALTH CLUBS, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF HORIZON, LLC | LICENSE AGREEMENT |
| 533 | YOU FIT HEALTH CLUBS, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF LAFAYETTE PLACE, LLC | LICENSE AGREEMENT |
| 534 | YOU FIT HEALTH CLUBS, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF POMPANO, LLC | LICENSE AGREEMENT |
| 535 | YOU FIT HEALTH CLUBS, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YOU FIT NINE, LLC | LICENSE AGREEMENT |
| 536 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF ARIZONA, LLC | LICENSE AGREEMENT |
| 537 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF CORAL WAY II, LLC | LICENSE AGREEMENT |
| 538 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF DANIA POINTE, LLC | LICENSE AGREEMENT |
| 539 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF ETHAN, LLC | LICENSE AGREEMENT |
| 540 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF FLAGLER, LLC | LICENSE AGREEMENT |
| 541 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF GERMANTOWN, LLC | LICENSE AGREEMENT |
| 542 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF GILBERT, LLC | LICENSE AGREEMENT |
| 543 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF HAMMOCK, LLC | LICENSE AGREEMENT |
| 544 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF HIALEAH, LLC | LICENSE AGREEMENT |
| 545 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF HIALEAH-OKEECHOBEE, LLC | LICENSE AGREEMENT |
| 546 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF LARGO PLAZA, LLC | LICENSE AGREEMENT |
| 547 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF LAUDERHILL, LLC | LICENSE AGREEMENT |
| 548 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF LOCH RAVEN, LLC | LICENSE AGREEMENT |
| 549 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF MIAMI 110TH, LLC | LICENSE AGREEMENT |
| 550 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF MIAMI GARDENS, LLC | LICENSE AGREEMENT |
| 551 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF MOUNT CLARE, LLC | LICENSE AGREEMENT |
| 552 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF NORTH LAUDERDALE, LLC | LICENSE AGREEMENT |
| 553 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF NORTH POINT, LLC | LICENSE AGREEMENT |
| 554 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF OAK HILL, LLC | LICENSE AGREEMENT |
| 555 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF OLNEY, LLC | LICENSE AGREEMENT |
| 556 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF PALM BAY, LLC | LICENSE AGREEMENT |
| 557 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF PARADISE SQUARE, LLC | LICENSE AGREEMENT |
| 558 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF PORT CHARLOTTE, LLC | LICENSE AGREEMENT |
| 559 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF RANDALLSTOWN, LLC | LICENSE AGREEMENT |
| 560 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF RHODE ISLAND, LLC | LICENSE AGREEMENT |
| 561 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF RIVERDALE, LLC | LICENSE AGREEMENT |
| 562 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF SHELBY, LLC | LICENSE AGREEMENT |
| 563 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF UNIVERSITY VILLAGE, LLC | LICENSE AGREEMENT |
| 564 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF WEST COBB, LLC | LICENSE AGREEMENT |
| 565 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF WEST VALLEY, LLC | LICENSE AGREEMENT |
| 566 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YOU FIT FIVE, LLC | LICENSE AGREEMENT |
| 567 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YOU FIT ONE, LLC | LICENSE AGREEMENT |

Exhibit F-2

| Item No. | CONTRACT PARTY | NAME 2 | NAME3 | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | DEBTOR ENTITY NAME | CONTRACT / LEASE DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 568 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YOU FIT PINELLAS PARK, LLC | LICENSE AGREEMENT |
| 569 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YOU FIT SIX, LLC | LICENSE AGREEMENT |
| 570 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YOU FIT THREE, LLC | LICENSE AGREEMENT |
| 571 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YOU FIT TWO, LLC | LICENSE AGREEMENT |
| 572 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YOUFIT HEALTH CLUBS, LLC | LICENSE AGREEMENT |
| 573 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | B-FIT HEALTH CLUB, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 574 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | FIVE B-FIT, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 575 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | FOUR B-FIT, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 576 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | SEVEN B-FIT, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 577 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | SIX B-FIT, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 578 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | SOUTH FLORIDA HEALTH AND FITNESS, INC> | LICENSE AGREEMENT - EQUIPMENT |
| 579 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | THREE B-FIT, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 580 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF BENEVA, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 581 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF BETHANNY, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 582 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF BETHANY TOWNE CENTER, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 583 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF BOYNTON MALL, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 584 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF BUFORD, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 585 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF CACTUS VILLAGE, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 586 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF CARROLLWOOD, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 587 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF CHANDLER SOUTH, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 588 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF CONCORD, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 589 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF CORAL WAY II, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 590 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF CORAL WAY, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 591 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF DANIA POINTE, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 592 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF DOUGLASVILLE, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 593 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF DULUTH, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 594 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF DUNWOODY, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 595 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF EAST FOWLER, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 596 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF ETHAN, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 597 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF FLAGLER, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 598 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF FULTON RANCH, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 599 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF GATEWAY, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 600 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF GILBERT NORTH, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 601 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF GILBERT SOUTH, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 602 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF GLENDALE, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 603 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF GLENDALE, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 604 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF GREENACRES, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 605 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF HAMMOCK, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 606 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF HANCOCK, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 607 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF HIALEAH, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 608 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF HIALEAH-OKEECHOBEE, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 609 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF HOLLYWOOD, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 610 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF HORIZON, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 611 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF HUNTSVILLE, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 612 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF KENDALL, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 613 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF LAFAYETTE PLACE, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 614 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF LAGO MAR, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 615 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF LAND O LAKES, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 616 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF LANTANA, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 617 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF LARGO PLAZA, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 618 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF LAUDERDALE LAKES, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 619 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF LAUDERHILL, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 620 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF LOCH RAVEN, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 621 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF LYNNWOOD, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 622 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF MARGATE, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 623 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF MESA, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 624 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF MESQUITE, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 625 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF MIAMI 110TH, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 626 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF MIAMI GARDENS, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 627 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF MOUNT CLARE, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 628 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF MURRIETA, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 629 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF NEW PORT RICHEY, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 630 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF NOLES, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 631 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF NORTH LAUDERDALE, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 632 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF NORTH NAPLES, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 633 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF NORTH PORT, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 634 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF OAK HILL, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 635 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF OKEECHOBEE, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 636 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF OLNEY, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 637 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF PALM BAY, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 638 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF PARADISE SQUARE, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 639 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF PARKLAND, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 640 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF PEACHTREE PARKWAY, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 641 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF PINE ISLAND, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 642 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF PINES BOULEVARD, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 643 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF POMPANO, LLC | LICENSE AGREEMENT - EQUIPMENT |

In re: YouFit Health Clubs, LLC, et al.
Case No. 20-12841 (MFW)

Page 11 of 12

Exhibit F-2

| Item No. | CONTRACT PARTY | NAME 2 | NAME3 | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | DEBTOR ENTITY NAME | CONTRACT / LEASE DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|---|
| 644 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF PORT CHARLOTTE, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 645 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF QUAIL ROOST, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 646 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF RACETRACK, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 647 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF RANDALLSTOWN, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 648 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF RHODE ISLAND, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 649 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF RIVERDALE, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 650 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF ROCKWELL, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 651 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF ROSWELL, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 652 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF SANDALFOOT, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 653 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF SCOTTSDALE, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 654 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF SHEA, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 655 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF SHELBY, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 656 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF SHILOH, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 657 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF SINGLETON, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 658 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF SOUTHAVEN, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 659 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF SPRING CREEK, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 660 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF SUWANEE, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 661 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF THORNTON PLAZA, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 662 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF TOWN CENTER, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 663 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF UNIGOLD, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 664 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF UNIVERSITY VILLAGE, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 665 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF VENICE, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 666 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF WELLINGTON, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 667 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF WEST BRANDON, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 668 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF WEST COBB, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 669 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF WEST VALLEY, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 670 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YF WESTON, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 671 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YOU FIT EIGHT, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 672 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YOU FIT FIVE, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 673 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YOU FIT FOUR, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 674 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YOU FIT NINE, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 675 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YOU FIT ONE, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 676 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YOU FIT PINELLAS PARK, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 677 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YOU FIT SEVEN, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 678 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YOU FIT SIX, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 679 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YOU FIT THREE, LLC | LICENSE AGREEMENT - EQUIPMENT |
| 680 | YOU FIT, LLC | | | 1350 E. NEWPORT CENTER DRIVE | SUITE 110 | DEERFIELD BEACH | FL | 33442 | YOU FIT TWO, LLC | LICENSE AGREEMENT - EQUIPMENT |

In re: YouFit Health Clubs, LLC, et al.
Case No. 20-12841 (MFW)

Page 12 of 12

**<u>Exhibit G</u>**

**Adjourned Objections**

| Docket Number | Objecting Party[1] | Date Objection was Filed |
|---|---|---|
| 171 | EBLR, LLC | December 2, 2020 |
| 174 | Life Insurance Company of North America | December 2, 2020 |
| 203<br>512 | Midlo Properties, LLC | December 3, 2020<br>December 14, 2020 |
| 204 | Simon Property Group, L.P. | December 3, 2020 |
| 213 | Gator Argate Gainesville, LLC,<br>Gateway Retail Center, LLC, and<br>Gator Green Acres, Ltd. | December 4, 2020 |
| 215<br>507 | Washington Prime Group Inc. | December 4, 2020<br>December 14, 2020 |
| 216<br>511 | FRIT Cocowalk Owners, LLC | December 4, 2020<br>December 14, 2020 |
| 217 | 16 Bethany Station, LLC | December 4, 2020 |
| 218 | The Promenade Plaza Partnership | December 4, 2020 |
| 219<br>514 | Regency Centers L.P. | December 4, 2020<br>December 14, 2020 |
| 220 | Puffin Management, Inc. f/k/a<br>T.J. Health & Fitness, Inc. | December 4, 2020 |
| 221 | SCC Market Square LLC and<br>RPT Realty, L.P. | December 4, 2020 |
| 222 | Kimco Realty | December 4, 2020 |
| 223 | Selig Enterprises, Inc. | December 4, 2020 |
| 224 | Weingarten Realty Investors and<br>WRI JT Northridge, LP | December 4, 2020 |
| 229 | CH Realty VII/R Orlando Altamonte, L.L.C. | December 4, 2020 |
| 230 | Westwood Plaza, LLC | December 4, 2020 |
| 233 | Petinos, LLC | December 4, 2020 |
| 240 | Shiloh Station LLC | December 7, 2020 |
| 248 | Mosaic Oxbridge Owners, LLC | December 7, 2020 |
| 498 | Carrollwood Partners LLC | December 10, 2020 |
| 510 | JEM Investments, Ltd. | December 14, 2020 |
| 515 | Rick Berks, Christy Berks-Stross,<br>and Jason Stross | December 14, 2020 |
| 517 | Gator Antoine Partners, LLLP,<br>Gator Argate Gainesville, LLC,<br>Gateway Retail Center, LLC,<br>Gator Flower Mound, LLC,<br>Gator Green Acres, Ltd., and<br>Gator Shelby Partners, Ltd. | December 14, 2020 |

[1] For the avoidance of doubt, the rights of the objecting parties listed herein are reserved solely to the extent related to assumption, assumption and assignment, adequate assurance of future performance, or Cure Amounts until a hearing on the assumption of their Assumed Contract or Designated Contract to be set by further order of the Court, unless otherwise resolved by the Buyers, the Debtors, and such objecting parties.

| Docket Number | Objecting Party[1] | Date Objection was Filed |
|---|---|---|
| 518 | RPT Realty, L.P. | December 15, 2020 |
| 519 | SCC Market Square LLC | December 15, 2020 |